UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA AND STATE OF TENNESSEE *Ex rel.* JEFFREY LIEBMAN and DAVID M. STERN, M.D. <br><br> Plaintiffs-Relators, <br><br> v. <br><br> METHODIST LE BONHEUR HEALTHCARE, METHODIST HEALTHCARE-MEMPHIS HOSPITALS, THE WEST CLINIC, PLLC d/b/a WEST CANCER CENTER, WEST PARTNERS, LLC, LEE SCHWARTZBERG, M.D., ERICH MOUNCE, CHRIS MCLEAN, GARY SHORB, AND JOHN DOES 1-100 <br><br> Defendants. | Case No. 3:17-CV-00902 <br><br> District Judge William L. Campbell, Jr. <br><br> Magistrate Judge Barbara D. Holmes <br><br> **JURY DEMAND** |

**MEMORANDUM OF LAW IN SUPPORT OF RELATORS' MOTION TO QUASH PORTIONS OF THE METHODIST DEFENDANTS' SUBPOENA TO THE UNIVERSITY OF TENNESSEE**

I. **Introduction**

This action under the False Claims Act ("FCA") charges the Defendants with fraud on federal and state healthcare programs. The Second Amended Complaint ("SAC") does not include any legal claim on behalf of Relator Dr. David Stern arising out of his employment with non-party University of Tennessee ("UT"). Yet the Methodist Defendants have served a subpoena on UT requesting "all documents and communications" related to Dr. Stern's work performance at UT over an 8-year period, including any "personnel files or records, performance reviews, performance improvement plans or any complaints or concerns raised by any person about Dr. Stern." Relators now bring this motion to quash the improper requests designed to embarrass and

harass Dr. Stern with an investigation into his employment performance totally irrelevant to the legal claims at issue under the False Claims Act.

### A. The Legal Claims at Issue in the Second Amended Complaint

The SAC provides detailed factual evidence that from 2012 through 2018, the Methodist Defendants ("Methodist") orchestrated financial inducements and kickbacks to independent physicians (the West Clinic Defendants or "West") for (1) generating referrals of cancer patients that resulted in (2) lucrative profits to the hospital system. The SAC asserts legal claims against the Defendants for violating the Anti-Kickback Statute's ("AKS")[1] and Stark laws'[2] core prohibitions against buying and selling patient referrals.

The SAC only asserts claims against the Defendants on behalf of the federal and state governments under the False Claims Act. There are no pending counterclaims. The Relators have not brought any personal claims for damages arising from their employment.

### B. Relator David Stern, M.D.'s Former Employment with the University of Tennessee

The Relators are Jeffrey Liebman ("Liebman") and Dr. David Stern ("Stern"). Liebman is the former Chief Executive Officer of Methodist's largest hospital, University Hospital. (Second Amended Complaint ("SAC") ¶ 22). Stern served on the Board of Directors of Defendant Methodist LeBonheur Healthcare from 2011 to 2017 and the Methodist Board Finance Committee.

---

[1] The AKS prohibits a healthcare provider from offering or paying "any remuneration…directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person to…refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b). Claims submitted in violation of the AKS automatically constitute false claims for purposes of the False Claims Act. The statute states, "[A] claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of subchapter III of chapter 37 of Title 31 [the False Claims Act]." 42 U.S.C. § 1320a-7b(g).

[2] The Stark laws prohibit the United States from paying for designated health services ("DHS") prescribed by physicians who have improper financial relationships with the DHS provider. "No payment may be made under this subchapter for a designated health service which is provided in violation of subsection (a)(1) of this section." 42 U.S.C. §1395nn (g)(1).

Stern's service on the Methodist Board overlapped with the years that West Clinic, Methodist, and UTHSC negotiated and implemented the three-way oncology "affiliation" arrangement. Stern was one of 12 members of the Executive Cancer Operations Council, composed of primarily West physicians, Methodist senior executives, and West senior executives. (SAC ¶ 19). Relators Liebman and Stern also both served on West Cancer Center's Strategy and Partnership Model Steering Committee which met in 2015 and 2016 to review and formulate the financial terms, structure, and revenues of the "partnership" between Methodist and West. (SAC ¶¶ 20, 25, 243-245, 251-283).

During the same time period, Stern served in numerous executive leadership positions at the University of Tennessee Health Sciences Center ("UTHSC").

- From March of 2011 until August of 2017, Stern served as Executive Dean and Vice Chancellor for Clinical Affairs of the University of Tennessee Medical School. As Executive Dean, Stern was responsible for clinical, research, educational and administrative activities of the College of Medicine at UTHSC on four campuses, Memphis (main campus) and three satellites (Chattanooga, Knoxville, and Nashville).
- As Vice-Chancellor for Health Affairs, Stern was charged with overseeing the clinical programs of the Colleges of Pharmacy, Nursing and Health Professions in addition to the College of Medicine.
- Stern served as a tenured Professor of Medicine and Physiology at UTHSC from 2012-2019.
- Stern served as Interim Vice-Chancellor for Research at UTHSC from 2011-2012 and Chair of the Research Council at UTHSC from 2012-2013.
- In 2017, Stern was appointed Vice Chancellor for Health Affairs for Statewide Initiatives at UTHSC.
- He was also Chairman of the Board of the University of Tennessee Medical Group (the faculty practice plan that was later renamed University Clinical Health), Co-Chair of the University-LeBonheur Pediatrics Specialists (the pediatrics faculty practice plan), and Co-Chair of University of Tennessee Methodist Physicians (an adult faculty practice plan associated with Methodist).

His work responsibilities and performance in these multiple roles at UT are completely irrelevant to any legal claim at issue in this case.

3

### C. The Discovery at Issue: Methodist Defendants Have Served a Subpoena Seeking Dr. Stern's Entire Employment, Personnel, and Work Performance Files from the University of Tennessee

On August 21, 2020, the Methodist Defendants issued a subpoena to UT seeking a range of documents for the 8-year time period of January 1, 2011 through December 13, 2019. A copy of the Methodist Defendants' subpoena to UT is attached as Exhibit 1. The subpoena directed UT to produce the documents on September 21, 2020.

Some of the document requests seek relevant documents regarding West Clinic and West Cancer Center and Relators do not object to such requests. Yet other requests seek documents clearly irrelevant to the subject matter of this case:

- Request No. 4 seeks "all documents and communications" relating to Dr. Stern's "performance of his role(s) during his employment with UTHSC, including but not limited to any personnel files or records, performance reviews, performance improvement plans, any complaints or concerns raised by any person about Dr. Stern, and any other documents or communications discussing his job performance."
- Request No. 5 seeks, "All documents and communications discussing or relating to any compliance hotline complaint or any other complaint or concern made to UTHSC's compliance department relating to Dr. Stern."
- Request No. 6 seeks "[a]ll documents and communications discussing or relating to Dr. Stern leaving or being removed from the position of Executive Dean of the College of Medicine at UTHSC."
- Request No. 7 seeks "[a]ll documents and communications discussing or relating to Dr. Stern leaving or being removed from any other position at UTHSC or his employment ending at UTHSC.

After receiving the subpoena, Relators' counsel, Bryan Vroon, emailed the Methodist Defendants' counsel, Brian Roark and Taylor Chenery, on August 31, 2020 and requested that the Methodist Defendants withdraw the document requests at issue. (Copy of email dated August 31, 2020 attached as Exhibit 2). On September 1, 2020, Methodist's counsel Taylor Chenery declined to withdraw these requests within the subpoena. (Copy of email dated from Taylor Chenery to Bryan Vroon attached as Exhibit 3).

4

On September 4, 2020, UT served its objections to the subpoena. (Copy of UT's Objections attached as Exhibit 4). UT objected to each of the four document requests at issue in this Motion to Quash.

In response to Request No. 4, UT specifically objected as follows:

> The University specifically objects that the request is overly broad, unduly burdensome, and seeks information that is not relevant or likely to lead to the discovery of admissible evidence in that it seeks all documents and communications regarding Dr. Stern's employment performance regardless of the subject of the documents or communications, or their relation to any issues in the case. The request would literally require the University to search every document and communication that mentions Dr. Stern in existence for nine years (including requiring the University to make an impossible judgment as to whether or not each such document constitutes such a "concern" or "complaint," as opposed to just an instruction, suggestion, recommendation, or better way of conducting business, for example). Therefore, the request does not comply with F.R.C.P. Rule 45(d)(1) due to the undue burden and expense that would be imposed on the University in responding. The University further objects to the extent that this request seeks any privileged document or information. The University is willing to discuss a protocol for searching electronic databases for relevant information.

In response to Request No. 5, UT specifically objected as follows:

> The University specifically objects that the request is overly broad, unduly burdensome, and seeks information that is not relevant or likely to lead to the discovery of admissible evidence in that it seeks all documents and communications regarding Dr. Stern regardless of the subject of the documents or communications, or their relation to any issues in the case. The request would literally require the University to search every document and communication that mentions Dr. Stern in existence for nine years (including requiring the University to make an impossible judgment as to whether or not each such document constitutes such a "concern" or "complaint," as opposed to just an instruction, suggestion, recommendation, or better way of conducting business, for example). Therefore, the request does not comply with F.R.C.P. Rule 45(d)(1) due to the undue burden and expense that would be imposed on the University in responding. The University further objects to the extent that this request seeks any privileged document or information. The University is willing to discuss a protocol for searching electronic databases for relevant information.

In Response to Request No. 6, UT specifically objected as follows:

> The University specifically objects that the request is overly broad, unduly burdensome, and seeks information that is not relevant or likely to lead to the discovery of admissible evidence in that it seeks all documents and communications regarding Dr. Stern's leaving

or being removed from the position of Executive Dean, regardless of the subject of the documents or communications, or their relation to any issues in the case. Therefore, the request does not comply with F.R.C.P. Rule 45(d)(1) due to the undue burden and expense that would be imposed on the University in responding. The University further objects to the extent that this request seeks any privileged document or information. The University is willing to discuss a protocol for searching electronic data bases for relevant information.

In Response to Request No. 7, UT specifically objected as follows:

The University specifically objects that the request is overly broad, unduly burdensome, and seeks information that is not relevant or likely to lead to the discovery of admissible evidence in that it seeks all documents and communications regarding Dr. Stern's leaving or being removed from any position or his employment ending at UTHSC, regardless of the subject of the documents or communications, or their relation to any issues in the case. Therefore, the request does not comply with F.R.C.P. Rule 45(d)(1) due to the undue burden and expense that would be imposed on the University in responding. The University further objects to the extent that this request seeks any privileged document or information. The University is willing to discuss a protocol for searching electronic databases for relevant information.

On September 10, 2020, Relators' counsel, Bryan Vroon, sent a letter to UT's counsel and confirmed Relators' agreement with the objections raised by UT to the subpoena and requested 2-week notice if UT intended to produce documents from Dr. Stern's personnel file or employment files and identify such documents with particularity so that Relators' counsel could evaluate an appropriate motion to quash. (Copy of letter from Relators' counsel to UT's counsel dated September 10, 2020 attached as Exhibit 5). Despite UT's stated specific objections to the requests at issue, UT's counsel informed Relators' counsel, Bryan Vroon, on Friday September 11, 2020 that, "In the absence of the University's receipt of notice of any party's filing of a motion to quash or limit the scope of the subpoena, the University will be turning over documents in its possession (that are not subject to the University's objections) to Methodist in response to the subpoena (including but not limited to requests 4-7, and any other document requests relating to Dr. Stern's employment and performance records at the University)." (Copy of email from UT counsel Walt Schuler dated September 11, 2020 attached as Exhibit 6). UT's counsel stated that documents

responsive to Request Numbers 4, 5, 6, and 7 would be produced on the deadline of September 21 unless UT received "notice of any party's filing of a motion to quash or limit the scope of the subpoena."

## II. Arguments and Citations of Legal Authorities

### A. The Boundaries of Relevancy under Rule 26

The reach of subpoenas issued under Rule 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1). *Syposs v. United States*, 181 F.R.D. 224 (W.D.N.Y. 1998); *Cofield v. City of LaGrange,* 913 F. Supp. 608, 614 (D.D.C. 1996) (court has authority to enforce broad relevancy standard against subpoena under Fed. R. Civ. P. 26(b)); 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2457 (1971)). Fed. R. Civ. P. 45(c)(3)(B)(i) allows the court to quash, modify or condition a subpoena to protect a person affected by the subpoena from unnecessary or unduly harmful disclosures of confidential information. *Sierra Rutile Limited v. Katz,* 1994 U.S. Dist. LEXIS 6188, 1994 WL 185751, *2 (S.D.N.Y. 1994)

Relators support the importance of broad discovery under federal law. As the Court is aware, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering various factors. Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Yet the scope of relevancy is not unlimited. Under Rule 26, the Court has discretion to limit the time, place, and manner of discovery as required "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); *see also Herbert v. Lando*, 441 U.S. 153, 177 (1979).

7

The Court's intervention is necessary here because the Methodist Defendants' subpoena is overly broad and seeks information that is totally unrelated to the claims asserted in the SAC. The subpoena is a fishing expedition aimed only at digging up information to harass or embarrass Dr. Stern.

**B.  The Methodist Defendants' Requests Seeking Dr. Stern's Personnel Files Exceed the Boundaries of Relevancy**

The Methodist Defendants' requests for all documents related to Dr. Stern's entire "work performance," "any personnel files," "any complaints or concerns raised by any person about Dr. Stern," and "any…complaint or concern made to UTHSC's compliance department relating to Dr. Stern" are shotgun tactics calculated to put Dr. Stern on trial for his performance of multiple executive leadership and teaching positions at UTHSC. Yet Dr. Stern's employment performance at the University of Tennessee is not relevant to the claims of the SAC. At issue in this case is the Defendants' violations of the Anti-Kickback Statute and Stark laws in buying patient referrals and defrauding federal and state healthcare programs. The SAC does not include any legal claim on behalf of Dr. Stern arising out of his employment. Dr. Stern has not, for example, asserted any claims for retaliation against him under the False Claims Act, 31 U.S.C. § 3730(h), or any other laws. Rule 26(b)(1) defines relevancy in relation to any "party's claim or defense and proportional to the needs of the case."

The Methodist Defendants apparently justify the document requests at issue based on two paragraphs in the SAC. First, Paragraph 291 of the SAC alleges:

> When Liebman and Stern objected to sharing drug profits with West Clinic physicians, Methodist CEO Shorb removed them from the inner circle of communications. In approximately December of 2016, Chancellor Schwab told Dr. Stern not to attend Methodist Board meetings or Cancer Center meetings. After a meeting between UTHSC surgical oncologists, Dr. Stern, and Methodist CEO Shorb, Shorb ostracized and excluded Dr. Stern from Methodist/West Clinic communications because of his refusal to support the model of UTHSC surgical oncologists being controlled by the West Clinic in the "captive PC."

8

Second, Paragraph 339 of the SAC alleges:

> Methodist leaders considered Dr. Stern as the "behind the scenes" organizer of the resistance by UTHSC physicians against West Clinic's control. Chancellor Schwab and Methodist COO Ugwueke told Dr. Stern that his resistance would have "serious consequences" for him. Dr. Stern was increasingly excluded from meetings by Methodist executives, removed from the Methodist Board, and fired as Executive Dean on July 31, 2017.

The factual chronology of events and conversations stated in these two paragraphs do not give rise to a legal claim for employment damages by Dr. Stern against the Methodist Defendants or any other entity. Because there are no claims in the SAC relevant to Dr. Stern's employment at UTHSC, the Methodist Defendants' requests for Dr. Stern's entire "work performance," "any personnel files," and "any complaints or concerns raised by any person about Dr. Stern" from UT are inappropriate. The Methodist Defendants' requests also extend through December of 2019—over two years beyond the time that Dr. Stern left the Methodist Board and over two years beyond his tenure as Executive Dean at UTHSC. If the Methodist Defendants wish to issue discovery regarding these two paragraphs of the SAC, they should narrowly tailor their requests to the allegations in these two paragraphs.

Dr. Stern held multiple executive leadership and teaching positions with UTHSC. The Methodist Defendants' Requests Nos. 4, 5, 6, and 7 are not limited to any subject matter and would result in the production of entire personnel files with numerous confidential[3] documents personal to Dr. Stern and clearly irrelevant to the legal claims at issue in this case.

---

[3] Under Tennessee law, "job performance evaluations" of "employees of public institutions of higher learning…**shall be treated as confidential**." T.C.A. § 10-7-504(a)(26)(A)(emphasis added). The definition of "job performance evaluations" includes, "but is not limited to, job performance evaluations completed by supervisors, communications concerning job performance evaluations, self-evaluations of job performance prepared by employees, job performance evaluation scores, drafts, notes, memoranda, and all other records relating to job performance evaluations." T.C.A. § 10-7-504(a)(26)(B).

9

*United States ex rel. Sibley v. Handrup*, 2016 U.S. Dist. LEXIS 188443* (N.D. Ill. 2016) is directly on point. In *Handrup* a relator similar to Dr. Stern filed suit under the False Claims Act claiming that Defendants improperly submitted false claims for payment to under state and federal healthcare programs. During discovery, Defendants issued subpoenas to nine of the relator's former employers. These subpoenas sought the "[c]omplete employment records including, but not limited to, [the] employment application, personnel file, correspondence, time cards or attendance sheets and any other records regarding" the relator. 2016 U.S. Dist. LEXIS 188443 at *2.

The Court in *Handrup* quashed the subpoena to the relator's former employers, finding "[t]he request[ed] information has very little—if any—relevance to this case." 2016 U.S. Dist. LEXIS 188443 at *4. The Court noted that the relator's claims "relate to alleged fraudulent billing by Defendant" similar to the claims by Dr. Stern in this case. The Court in *Haldrup* found the Defendants "have not put forward any examples of how the information gained from the subpoenas would be relevant to either Plaintiff's claims or the affirmative defense." *Id.*

The Court in *Handrup* further found that "[e]ven if relevant, the likely benefit of the requested discovery would be minimal" and the information would "likely be inadmissible at trial." 2016 U.S. Dist. LEXIS 188443 at *5. The Court also found "the burden imposed by the discovery would be substantial." *Id.* at *7. Defendants argued that there was "little burden on Plaintiff because she personally would not be required to respond to the subpoenas." *Id.* The Court in *Handrup* found Defendants' "argument overlooks potential reputational damage to Plaintiff which arises from such broad subpoenas directed at former employers, as other courts have recognized." 2016 U.S. Dist. LEXIS 188443 at *7 (citing *Brown v. Yellow Transp., Inc.*, No. 08 C 5908, 2009 U.S. Dist. LEXIS 94693, 2009 WL 3270791, at *5 (N.D. Ill. Oct. 9, 2009)*; *Guercia v. Equinox*

10

*Holdings, Inc.*, No. 11 CIV. 6775, 2013 U.S. Dist. LEXIS 71215, 2013 WL 2156496, at *4 (S.D.N.Y. May 20, 2013); *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012); *Blotzer v. L-3 Commc'ns Corp.*, 287 F.R.D. 507, 510 (D. Ariz. 2012))*. The Court in *Handrup* also found "there are less burdensome sources for the purported (and as yet undefined) information that Defendants seek—or at least methods through which to narrow the scope of the requests to bring them into conformance with the Rules—as it appears that Defendant has not yet even deposed the Plaintiff." 2016 U.S. Dist. LEXIS 188443 at *7 *(citing Moore v. PlasmaCare, Inc., No. 1:11-CV-01090-SEB, 2012 U.S. Dist. LEXIS 22688, 2012 WL 602623, at *2 (S.D. Ind. Feb. 23, 2012)*("Requesting information from [Plaintiff's] current employer is premature and potentially duplicative. [Defendant] should first access the information they seek directly from [Plaintiff] through taking his deposition.")). The same is true in this case: Defendants have not yet deposed Dr. Stern.

These four expansive requests within the Methodist Defendants' subpoena to UT are calculated to put Dr. Stern's character on trial with information irrelevant to the claims at issue in this case. They are intended to elicit private and personal information in order to embarrass Dr. Stern. These requests will not lead to the discovery of information relevant to the claims in the SAC. As noted by the Court in *Handrup*, Federal Rule of Evidence 404 provides that "evidence of a person's character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait" and "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show on a particular occasion the person acted in accordance with the character." 2016 U.S. Dist. LEXIS 188443 at *5-6 (citing Fed. R. Evid. 404(a)(1) and (b)(1)).

The Court in *Handrup* quashed the subpoena, concluding that "given the marginal-at-best relevance of any of these documents, the breadth of Defendant's subpoenas poses a burden on Plaintiff which outweighs their potential benefit." Relators submit that the same conclusion is true in this case.

### III. Conclusion

Relators respectfully request that the Court issue an order quashing Request Nos. 4, 5, 6, and 7 in the Methodist Defendants' subpoena to the University of Tennessee.

Respectfully submitted,　　　　　　　　　　　　　　　　This 15th of September, 2020.

/s/ Jerry E. Martin
Jerry E. Martin (TNBPR No. 20193)
Seth Hyatt (TNBPR No. 31171)
Barrett, Johnston Martin & Garrison, LLC
414 Union Street; Suite 900
Nashville, TN 37219
(615) 244-2202
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com

/s/ Bryan A. Vroon
Bryan A. Vroon, Esq.
(Admitted *Pro Hac*)
Georgia Bar No. 729086
Law Offices of Bryan A. Vroon, LLC
1380 West Paces Ferry Road
Suite 2270
Atlanta Georgia 30327
(404) 441-9806
bryanvroon@gmail.com

Edward D. Robertson, Jr.
(Admitted *Pro Hac*)
Bartimus Frickleton Robertson & Rader, P.C.
109b East High Street
Jefferson City, MO. 65101
(573) 659-4454

12

Case 3:17-cv-00902   Document 113   Filed 09/15/20   Page 12 of 14 PageID #: 1329

*Counsel for Relators Jeff Liebman and David M. Stern, M.D.*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and exact copy of this *Memorandum of Law In Support Of Relators' Motion to Quash Portions Of The Methodist Defendants' Subpoena to The University Of Tennessee* has been served on the following counsel today, September 15, 2020, via the Court's CM/ECF email notification system:

| | |
|---|---|
| Kara F. Sweet<br>U.S. Attorney's Office (Nashville Office)<br>Middle District of Tennessee<br>110 Ninth Avenue, S<br>Suite A961<br>Nashville, TN 37203-3870<br>(615) 401-6598<br>kara.sweet@usdoj.gov | Brian D. Roark<br>J. Taylor Chenery<br>Taylor M. Sample<br>Hannah E. Webber<br>Bass, Berry & Sims PLC<br>150 Third Avenue South, Suite 2800<br>Nashville, TN 37201<br>Telephone (615) 742-6200<br>broark@bassberry.com<br>tchenery@bassberry.com<br>taylor.sample@bassberry.com<br>hannah.webber@bassberry.com |
| Scott M. Corley<br>Office of the Attorney General of Tennessee<br>Civil Rights and Claims Division<br>P.O. Box 20207<br>Nashville, TN 37202-0207<br>(615) 253-1103<br>Scott.corley@ag.tn.gov | John-David H. Thomas<br>Andrew Solinger<br>Waller, Lansden, Dortch & Davis, LLP<br>Nashville City Center<br>511 Union Street, Suite 2700<br>Nashville, TN 37219<br>(615) 850-8682<br>jd.thomas@wallerlaw.com<br>Andrew.solinger@wallerlaw.com |

                                            /s/ Jerry E. Martin
                                            Jerry Martin