# EXHIBIT 2

Case 3:17-cv-00902   Document 113-2   Filed 09/15/20   Page 1 of 3 PageID #: 1344

**Subject:** Methodist Defendants' subpoena to UT
**Date:** Monday, August 31, 2020 at 1:37:45 PM Eastern Daylight Time
**From:** bryan vroon
**To:** Roark, Brian, Chenery, Taylor
**CC:** Jerry Martin, Edward Robertson, Seth Hyatt, bryan vroon

August 31, 2020

## Good Faith Effort to Resolve Discovery Dispute Under Local Rule 37

Dear Brian and Taylor,

We understand that on August 21, 2020, the Methodist Defendants issued a subpoena to the University of Tennessee seeking a range of documents for the 8-year time period of January 1, 2011 through December 13, 2019. Some of the document requests seek relevant documents regarding West Clinic and West Cancer Center and Relators do not object to such requests. Yet other requests seek documents clearly irrelevant to the subject matter of this case. Specifically, Request No. 4 broadly seeks "all documents and communications" relating to Dr. Stern's "performance of his role(s) during his employment with UTHSC, including but not limited to any personnel files or records, performance reviews, performance improvement plans, any complaints or concerns raised by any person about Dr. Stern, and any other documents or communications discussing his job performance." Request No. 6 seeks "[a]ll documents and communications discussing or relating to Dr. Stern leaving or being removed from the position of Executive Dean of the College of Medicine at UTHSC." Request No. 7 seeks "[a]ll documents and communications discussing or relating to Dr. Stern leaving or being removed from any other position at UTHSC or his employment ending at UTHSC."

As you know, the reach of subpoenas issued under Rule 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1). The Methodist Defendants' requests for Dr. Stern's entire employment, personnel and work performance files appear to be calculated to put Dr. Stern on trial for his performance of multiple executive leadership positions at UTHSC. **Yet Dr. Stern's employment performance is not relevant to the allegations of the SAC.** At issue in this case is the Defendants' violations of the Anti-Kickback Statute and Stark laws in buying patient referrals and defrauding federal and state healthcare programs. The SAC does not include a legal claim on behalf of Dr. Stern for employment damages or retaliation against him under the False Claims Act, 31 U.S.C. § 3730(h), or any other laws.

The SAC does allege that when Liebman and Stern objected to Methodist sharing drug profits with West Clinic physicians, Methodist CEO Shorb removed them from the inner circle of communications. (SAC, ¶ 291). The SAC alleges that after a meeting between UTHSC surgical oncologists, Dr. Stern, and Methodist CEO Shorb, Shorb ostracized and excluded Dr. Stern from Methodist/West Clinic communications because of his refusal to support the model of UTHSC surgical oncologists being controlled by the West Clinic. (SAC, ¶ 291). The SAC also alleges that "Dr. Stern was increasingly excluded from meetings by Methodist executives, removed from the Methodist Board, and fired as Executive Dean on July 31, 2017. (SAC, ¶ 339). **None of these allegations justifies the Methodist Defendants' subpoena seeking Dr. Stern's entire personnel files, job performance records, and employment records from the University of Tennessee.** The Methodist Defendants' requests also extend through December of 2019—over two years beyond the time that Dr. Stern left the Methodist Board and over two years beyond his tenure as Executive Dean at UTHSC.

Dr. Stern held multiple executive leadership and teaching positions with UTHSC over an 8-year period. The Methodist Defendants' Requests Nos. 4, 6, and 7 are not limited to any subject matter and would result in the production of entire personnel files with numerous documents personal to Dr. Stern

and clearly irrelevant to the legal issues in this case. Under Tennessee law, "job performance evaluations" of "employees of public institutions of higher learning...**shall be treated as confidential.**" T.C.A. § 10-7-504(a)(26)(A)(emphasis added). The definition of "job performance evaluations" includes, "but is not limited to, job performance evaluations completed by supervisors, communications concerning job performance evaluations, self-evaluations of job performance prepared by employees, job performance evaluation scores, drafts, notes, memoranda, and all other records relating to job performance evaluations." T.C.A. § 10-7-504(a)(26)(B).

Under Local Rule 37, this letter is our good faith effort to resolve this discovery issue and we request that the Methodist Defendants' immediately withdraw Request Nos. 4, 6, and 7 to the University of Tennessee. We are available to discuss with you today or tomorrow. Please let us know your position by close of business tomorrow, September 1, 2020.

Sincerely,

Bryan Vroon

Bryan A. Vroon
Law Offices of Bryan A. Vroon, LLC
(404) 441-9806