# EXHIBIT 5

**Law Offices of Bryan A. Vroon, LLC**

1380 West Paces Ferry Road, Suite 2270
Atlanta, Georgia 30327
Phone: (404) 441-9806
bryanvroon@gmail.com

September 10, 2020

Walter E. Schuler, Esq.
Associate General Counsel
University of Tennessee, Office of General Counsel
66 N. Pauline Street, Suite 428
Memphis, Tennessee 38163
wschuler@tennessee.edu

Re.: *U.S. ex rel. Liebman v. Methodist Le Bonheur Healthcare, et al.*, No. 3:17-cv- 00902 (M.D. Tenn.)

Dear Walter,

My law firm represents former University of Tennessee employee Dr. David Stern in the above-referenced case along with Jerry Martin, Seth Hyatt, and Chip Robertson and their respective firms.

We have reviewed the University of Tennessee's objections to the Methodist Defendants' Subpoena and we agree with the University of Tennessee that multiple requests are improper and contrary to Rule 26 and Rule 45 of the Federal Rules of Civil Procedure.

The purpose of this letter is to provide our concerns and objections to the document requests on behalf of Dr. Stern and to request that the University of Tennessee provide us two week-notice if it intends to produce any documents from Dr. Stern's employment or personnel file and identify such documents with particularity so that we may evaluate whether a motion to quash the subpoena should be filed at that time.

### 1. Introduction to the Legal Claims at Issue Under the False Claims Act

To understand our objections on behalf of Dr. Stern it is important to address the subject matter of this case. This action under the False Claims Act ("FCA") charges the Defendants with fraud on federal and state healthcare programs. The Second Amended Complaint ("SAC") alleges that from 2012 through 2018, the Methodist Defendants ("Methodist") orchestrated financial inducements and kickbacks to independent physicians (the West Clinic Defendants or "West") for (1) generating referrals of cancer patients that resulted in (2) lucrative profits to the hospital system. The SAC alleges that the Defendants' scheme targeted the Medicare Program's coverage of elderly patients with higher incidence of cancer and

violated the Anti-Kickback Statute's ("AKS")[1] and Stark laws'[2] core prohibitions against buying and selling patient referrals. A copy of the SAC is attached for your reference.

The Relators are Jeffrey Liebman ("Liebman") and Dr. David Stern ("Stern"). Jeff. Liebman is the former Chief Executive Officer of Methodist's largest hospital, University Hospital. Dr. Stern served on the Board of Directors of Defendant Methodist LeBonheur Healthcare from 2011 to 2017 and the Methodist Board Finance Committee. He also served as Methodist's Executive Vice President of Medical Affairs from 2011 to 2016. Dr. Stern's service on the Methodist Board overlapped with the years that West Clinic, Methodist, and UTHSC negotiated and implemented the three-way oncology "affiliation" arrangement.

During the same time period, Dr. Stern served in numerous executive leadership positions at the University of Tennessee Health Sciences Center ("UTHSC"). From March of 2011 until August of 2017, Stern served as Executive Dean and Vice Chancellor for Clinical Affairs of the University of Tennessee Medical School. As Executive Dean, Stern was responsible for clinical, research, educational and administrative activities of the College of Medicine at UTHSC on four campuses, Memphis (main campus) and three satellites (Chattanooga, Knoxville, and Nashville). His responsibilities included formulating the strategic plan, budget, recruitment plans, developing programs and other activities (faculty promotions, overseeing student activities, etc.). As Vice-Chancellor for Health Affairs, Stern was charged with overseeing the clinical programs of the Colleges of Pharmacy, Nursing and Health Professions in addition to the College of Medicine.

Dr. Stern also served as a tenured Professor of Medicine and Physiology at UTHSC from 2012-2019. Additionally, Dr. Stern served as Interim Vice-Chancellor for Research at UTHSC from 2011-2012 and Chair of the Research Council at UTHSC from 2012-2013. On August 1, 2017, Dr. Stern was appointed Vice Chancellor for Health Affairs for Statewide Initiatives at UTHSC. Stern retired from UTHSC in July of 2019.

He was also Chairman of the Board of the University of Tennessee Medical Group (the faculty practice plan that was later renamed University Clinical Health), Co-Chair of the University-LeBonheur Pediatrics Specialists (the pediatrics faculty practice plan), and Co-Chair of University of Tennessee Methodist Physicians (an adult faculty practice plan associated with Methodist).

---

[1] The AKS prohibits a healthcare provider from offering or paying "any remuneration…directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person to…refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b). Claims submitted in violation of the AKS automatically constitute false claims for purposes of the False Claims Act. The statute states, "[A] claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of subchapter III of chapter 37 of Title 31 [the False Claims Act]." 42 U.S.C. § 1320a-7b(g).

[2] The Stark laws prohibit the United States from paying for designated health services ("DHS") prescribed by physicians who have improper financial relationships with the DHS provider. "No payment may be made under this subchapter for a designated health service which is provided in violation of subsection (a)(1) of this section." 42 U.S.C. §1395nn (g)(1).

2

### 2. The Methodist Defendants' Subpoena Seeking Dr. Stern's Employment, Personnel, and Performance Files from the University of Tennessee

On August 21, 2020, the Methodist Defendants issued a subpoena to the University of Tennessee seeking a range of documents for the 8-year time period of January 1, 2011 through December 13, 2019. Some of the document requests seek relevant documents regarding West Clinic and West Cancer Center and Relators do not object to such requests. Yet other requests seek documents clearly irrelevant to the subject matter of this case. Specifically, Request No. 4 broadly seeks "all documents and communications" relating to Dr. Stern's "performance of his role(s) during his employment with UTHSC, including but not limited to any personnel files or records, performance reviews, performance improvement plans, any complaints or concerns raised by any person about Dr. Stern, and any other documents or communications discussing his job performance." Request No. 5 seeks, "All documents and communications discussing or relating to any compliance hotline complaint or any other complaint or concern made to UTHSC's compliance department relating to Dr. Stern." Request No. 6 seeks "[a]ll documents and communications discussing or relating to Dr. Stern leaving or being removed from the position of Executive Dean of the College of Medicine at UTHSC." Request No. 7 seeks "[a]ll documents and communications discussing or relating to Dr. Stern leaving or being removed from any other position at UTHSC or his employment ending at UTHSC.

### 3. The Limits of Relevancy Governing the Scope of Discovery

As the University of Tennessee is aware based on its objections, the reach of subpoenas issued under Rule 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1). *Syposs v. United States*, 181 F.R.D. 224 (W.D.N.Y. 1998); *Cofield v. City of LaGrange,* 913 F. Supp. 608, 614 (D.D.C. 1996) (court has authority to enforce broad relevancy standard against subpoena under Fed. R. Civ. P. 26(b)); 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2457 (1971)). Fed. R. Civ. P. 45(c)(3)(B)(i) allows the court to quash, modify or condition a subpoena to protect a person affected by the subpoena from unnecessary or unduly harmful disclosures of confidential information. *Sierra Rutile Limited v. Katz,* 1994 U.S. Dist. LEXIS 6188, 1994 WL 185751, *2 (S.D.N.Y. 1994)

We support the importance of broad discovery under federal law. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering various factors. Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Yet the scope of relevancy is not unlimited. Under Rule 26, the Court has discretion to limit the time, place, and manner of discovery as required "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); *see also Herbert v. Lando*, 441 U.S. 153, 177 (1979).

### 4. The Methodist Defendants' Requests Seeking Dr. Stern's Personnel Files Exceed the Boundaries of Relevancy

The Methodist Defendants' requests for Dr. Stern's entire "work performance," "any personnel files," "any complaints or concerns raised by any person about Dr. Stern," and "any…complaint or concern made

3

to UTHSC's compliance department relating to Dr. Stern" are shotgun tactics calculated to put Dr. Stern on trial for his performance of multiple executive leadership and teaching positions at UTHSC. Yet Dr. Stern's employment performance at the University of Tennessee is not relevant to the claims of the SAC. At issue in this case is the Defendants' violations of the Anti-Kickback Statute and Stark laws in buying patient referrals and defrauding federal and state healthcare programs. The SAC does not include any legal claim on behalf of Dr. Stern for employment damages or retaliation against him under the False Claims Act, 31 U.S.C. § 3730(h), or any other laws. Rule 26(b)(1) defines relevancy in relation to any "party's claim or defense and proportional to the needs of the case."

The Methodist Defendants apparently justify the document requests at issue based on two paragraphs in the SAC. First, Paragraph 291 of the SAC alleges:

> When Liebman and Stern objected to sharing drug profits with West Clinic physicians, Methodist CEO Shorb removed them from the inner circle of communications. In approximately December of 2016, Chancellor Schwab told Dr. Stern not to attend Methodist Board meetings or Cancer Center meetings. After a meeting between UTHSC surgical oncologists, Dr. Stern, and Methodist CEO Shorb, Shorb ostracized and excluded Dr. Stern from Methodist/West Clinic communications because of his refusal to support the model of UTHSC surgical oncologists being controlled by the West Clinic in the "captive PC."

Second, Paragraph 339 of the SAC alleges:

> Methodist leaders considered Dr. Stern as the "behind the scenes" organizer of the resistance by UTHSC physicians against West Clinic's control. Chancellor Schwab and Methodist COO Ugwueke told Dr. Stern that his resistance would have "serious consequences" for him. Dr. Stern was increasingly excluded from meetings by Methodist executives, removed from the Methodist Board, and fired as Executive Dean on July 31, 2017.

The factual chronology of events and conversations stated in these two paragraphs do not amount to a legal claim for employment damages by Dr. Stern against the Methodist Defendants or any other entity. The SAC does not allege that the Methodist Defendants fired Dr. Stern as Executive Dean of UTHSC. The Methodist Defendants did not employ Dr. Stern. None of these allegations justifies the Methodist Defendants' subpoena requests for Dr. Stern's entire "work performance," "any personnel files," and "any complaints or concerns raised by any person about Dr. Stern" from the University of Tennessee. The Methodist Defendants' requests also extend through December of 2019—over two years beyond the time that Dr. Stern left the Methodist Board and over two years beyond his tenure as Executive Dean at UTHSC. If the Methodist Defendants wish to issue discovery regarding these two paragraphs of the SAC, they should tailor their requests to the allegations in these two paragraphs.

Dr. Stern held multiple executive leadership and teaching positions with UTHSC. The Methodist Defendants' Requests Nos. 4, 5, 6, and 7 are not limited to any subject matter and would result in the

4

production of entire personnel files with numerous confidential[3] documents personal to Dr. Stern and clearly irrelevant to the legal claims at issue in this case.

The case of *United States ex rel. Sibley v. Handrup*, 2016 U.S. Dist. LEXIS 188443* (N.D. Ill. 2016) is directly on point. In *Handrup* a relator similar to Dr. Stern filed suit under the False Claims Act claiming that Defendants improperly submitted false claims for payment to under state and federal healthcare programs. During discovery, Defendants issued subpoenas to nine of the relator's former employers. These subpoenas sought the "[c]omplete employment records including, but not limited to, [the] employment application, personnel file, correspondence, time cards or attendance sheets and any other records regarding" the relator. 2016 U.S. Dist. LEXIS 188443 at *2.

The Court in *Handrup* quashed the subpoena to the relator's former employers, finding "[t]he request[ed] information has very little—if any—relevance to this case." 2016 U.S. Dist. LEXIS 188443 at *4. The Court noted that the relator's claims "relate to alleged fraudulent billing by Defendant" similar to the claims by Dr. Stern in this case. The Court in *Haldrup* found the Defendants "have not put forward any examples of how the information gained from the subpoenas would be relevant to either Plaintiff's claims or the affirmative defense." *Id.*

The Court in *Handrup* further found that "[e]ven if relevant, the likely benefit of the requested discovery would be minimal" and the information would "likely be inadmissible at trial." 2016 U.S. Dist. LEXIS 188443 at *5. The Court also found "the burden imposed by the discovery would be substantial." *Id.* at *7. Defendants argued that there was "little burden on Plaintiff because she personally would not be required to respond to the subpoenas." *Id.* The Court in *Handrup* found Defendants' "argument overlooks potential reputational damage to Plaintiff which arises from such broad subpoenas directed at former employers, as other courts have recognized." 2016 U.S. Dist. LEXIS 188443 at *7 (citing *Brown v. Yellow Transp., Inc.*, No. 08 C 5908, 2009 U.S. Dist. LEXIS 94693, 2009 WL 3270791, at *5 (N.D. Ill. Oct. 9, 2009); *Guercia v. Equinox Holdings, Inc.*, No. 11 CIV. 6775, 2013 U.S. Dist. LEXIS 71215, 2013 WL 2156496, at *4 (S.D.N.Y. May 20, 2013); *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012); *Blotzer v. L-3 Commc'ns Corp.*, 287 F.R.D. 507, 510 (D. Ariz. 2012)). The Court in *Handrup* also found "there are less burdensome sources for the purported (and as yet undefined) information that Defendants seek—or at least methods through which to narrow the scope of the requests to bring them into conformance with the Rules—as it appears that Defendant has not yet even deposed the Plaintiff." 2016 U.S. Dist. LEXIS 188443 at *7 *(citing Moore v. PlasmaCare, Inc., No. 1:11-CV-01090-SEB, 2012 U.S. Dist. LEXIS 22688, 2012 WL 602623, at *2 (S.D. Ind. Feb. 23, 2012)*("Requesting information from [Plaintiff's] current employer is premature and potentially duplicative. [Defendant] should first access the information they seek directly from [Plaintiff] through taking his deposition.")). The same is true in this case: Defendants have not yet deposed Dr. Stern.

---

[3] Under Tennessee law, "job performance evaluations" of "employees of public institutions of higher learning...**shall be treated as confidential**." T.C.A. § 10-7-504(a)(26)(A)(emphasis added). The definition of "job performance evaluations" includes, "but is not limited to, job performance evaluations completed by supervisors, communications concerning job performance evaluations, self-evaluations of job performance prepared by employees, job performance evaluation scores, drafts, notes, memoranda, and all other records relating to job performance evaluations." T.C.A. § 10-7-504(a)(26)(B).

5

These four expansive requests within the Methodist Defendants' subpoena to UT are calculated to put Dr. Stern's character on trial with information irrelevant to the claims at issue in this case. As noted by the Court in *Handrup*, Federal Rule of Evidence 404 provides that "evidence of a person's character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait" and "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show on a particular occasion the person acted in accordance with the character." 2016 U.S. Dist. LEXIS 188443 at *5-6 (citing Fed. R. Evid. 404(a)(1) and (b)(1)).

The Court in *Handrup* quashed the subpoena, concluding that "given the marginal-at-best relevance of any of these documents, the breadth of Defendant's subpoenas poses a burden on Plaintiff which outweighs their potential benefit." The same conclusion is true in this case.

## 5. Conclusion

Thank you for considering these concerns and objections on behalf of Dr. Stern. We request that the University of Tennessee provide us two week-notice if it intends to produce any documents from Dr. Stern's employment or personnel file and identify such documents with particularity so that we may evaluate whether a motion to quash the subpoena should be filed at that time.

Sincerely,

/s/ Bryan Vroon

Bryan Vroon


cc: Jerry Martin (jmartin@barrettjohnston.com)
Chip Robertson (chiprobertson@me.com)
Seth Hyatt (shyatt@barrettjohnston.com)