1                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF TENNESSEE
2                       NASHVILLE DIVISION

3

4    JEFFREY H. LIEBMAN et al        )
                                     )
5    VS                              )   No. 3:17-cv-0902
                                     )
6    METHODIST LEBONHEUR             )
     HEALTHCARE et al                )
7    _____

8

9

10      BEFORE THE HONORABLE WILLIAM L. CAMPBELL, JR.,

11                       DISTRICT JUDGE

12                   TRANSCRIPT OF PROCEEDINGS

13                       February 3, 2021

14                    (Telephone conference)

15

16   _____

17

18

19

20

21   _____

22
     **Roxann Harkins, RPR, CRR**
23   Official Court Reporter
     801 Broadway, Suite A837
24   Nashville, TN 37203
     615.403.8314
25   roxann_harkins@tnmd.uscourts.gov

```
 1    APPEARANCES:

 2    For the Relators:        JERRY E. MARTIN
                               SETH MARCUS HYATT
 3                             Barrett Johnston Martin &
                                  Garrison
 4                             414 Union Street
                               Suite 900
 5                             Nashville, TN 37219

 6
                               BRYAN A. VROON
 7                             Law Offices of Bryan A. Vroon
                               1766 West Paces Ferry Road
 8                             Atlanta, GA 30327

 9

10    For the United States of America:

11                             KARA F. SWEET
                               US Attorney's Office
12                             110 Ninth Avenue South
                               Suite A961
13                             Nashville, TN 37203

14

15    For the State of Tennessee:

16                             SCOTT M. CORLEY
                               Office of the Attorney General
17                                of Tennessee
                               PO Box 20207
18                             Nashville, TN 37202

19    For the Methodist defendants:

20                             BRIAN D. ROARK
                               J. TAYLOR CHENERY
21                             TAYLOR M. SAMPLE
                               HANNAH E. WEBBER
22                             Bass, Berry & Sims
                               150 Third Avenue South
23                             Suite 2800
                               Nashville, TN 7201

24

25    (cont'd)
```

1   For the West defendants:

2                           JOHN-DAVID H. THOMAS
                            ANDREW F. SOLINGER
3                           Waller Lansden Dortch & Davis
                            511 Union Street
4                           Suite 2700
                            Nashville, TN 37219
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2          The above-styled cause came to be heard

3   on February 3, 2021, before the Hon. Williams L.

4   Campbell, Jr., District Judge, when the following

5   proceedings were had by telephone conference at

6   1:33 p.m. to-wit:

7

8          THE COURT:  Good afternoon.  We're here

9   on a Case 3:17-902, *United States of America, ex rel*

10  *Jeffrey Liebman versus Methodist Le Bonheur*

11  *Healthcare, et al.* for a status conference.  If

12  counsel will introduce yourselves for the record,

13  please.  We'll start with the plaintiffs.  Hello?

14         MR. MARTIN:  Your Honor, this is Jerry

15  Martin.  I'm sorry, I'd put myself on mute.  I

16  apologize.  It's Jerry Martin and Seth Hyatt of the

17  Barrett Johnston firm on behalf of the relators.  We

18  also is Brian Vroon from Atlanta on behalf of the

19  relators as well.

20         MR. ROARK:  Your Honor, this is Brian

21  Roark on behalf of the Methodist defendants.  And I'm

22  joined by Taylor Chenery, Taylor Sample and Hannah

23  Webber.

24         MR. THOMAS:  Your Honor, this is JD

25  Thomas from Waller Lansden on behalf of the West

1   defendants, West Clinic, PLLC; West Partners, LLC;

2   Erich Mounce and Dr. Lee Schwartzberg.  I'm joined by

3   my colleague, Andrew Solinger.

4                   THE COURT:  Okay.  Anybody else?

5                   MS. SWEET:  Yes, Your Honor.  This is

6   Kara Sweet on behalf of the United States of America.

7                   MR. CORLEY:  And, Your Honor, this is

8   Scott Corley on behalf of the State of Tennessee.

9                   THE COURT:  All right.  I think that's

10  it.  Anybody I missed?  All right.

11                  So we've got currently a trial date in

12  April of 2022.  There's a request to extend that by

13  six months, to October of 2022.  There's a handful of

14  motions that are pending, one of which deals with the

15  trial date and -- the trial date, and then some

16  discovery issues that I understand Judge Holmes will

17  handle.  And we've got a couple of motions to dismiss

18  that are pending.

19                  There's also some discussion of

20  settlement.  So whoever wants to go first, just kind

21  of give me a 30,000-foot view of where you are and

22  where you want to go.

23                  MR. MARTIN:  Your Honor, this is Jerry

24  Martin on behalf of the relators.  If it's okay with

25  the Court, I'll start.

1              THE COURT:  Okay.

2              MR. MARTIN:  We filed a joint motion to

3    extend -- I'll start with the trial date motion.  I

4    think you've accurately summarized the pending motions

5    that are out there.  But we'll start with the joint

6    motion that prompted this status conference.  That

7    motion's been filed by the relators and the remaining

8    defendants, what we've referred to as the Methodist

9    defendants.

10             One update.  In that motion we explained

11   that the basis for the extension was driven largely by

12   the fact that a settlement had been reached with the

13   West defendants, which includes -- there's multiple

14   defendants that fall into that category.  And we were,

15   as we explained in that motion that we filed last

16   week, there is a settlement that had been reached

17   between the relators and the West defendants and we

18   were waiting for government approval to finalize the

19   agreement.

20             We can report that subsequent to filing

21   that motion and the Court setting the status

22   conference, that approval has been granted.  And we

23   now have an executed copy of the settlement agreement.

24   And I believe -- and Mr. Thomas can correct me if I'm

25   wrong, but I believe by some point today the West

1  defendants will file a notice withdrawing their motion

2  to dismiss.

3          So that -- that is an update in terms of

4  the relief that we had sought for this status

5  conference, just to tell you those facts have changed

6  slightly, that we now have that agreement.

7          The basis for the request, the joint

8  request between the relators and the remaining

9  Methodist defendants for the six-month extension to

10  the trial date is driven largely because the

11  settlement with the West defendants will sort of

12  reshape how discovery proceeds in the case.  I want to

13  say at the outset, you know, we've been diligent in

14  this case.  I think the -- you know, evidenced by the

15  fact that we've briefed the motions to dismiss.  We've

16  been engaged in significant document discovery.  I

17  think hundreds of thousands of documents have been

18  produced in the litigation.  And, of course, the

19  relators have reached a settlement with a set of, you

20  know -- one group of the defendants, so we've been

21  diligently pursuing the case.

22          We don't come to the Court asking for the

23  extension of a trial date in any cavalier fashion.  In

24  fact, I can't recall ever -- I may have done it, but I

25  don't recall ever moving -- moving to extend a trial

1  date.  It's necessary here because it will be very

2  difficult for both the relators and the Methodist

3  defendants, I think, to complete discovery in a timely

4  manner.  The settlement is a significant development.

5  We began having settlement negotiations with the West

6  defendants back in the summer.  We reached an

7  agreement that we submitted to the government in

8  November and just got that agreement approved in the

9  last few days.

10          The agreement calls for the West

11  defendants to cooperate with the relators in

12  providing, you know, their employees, their members,

13  making them available for interviews, also kind of

14  cutting through discovery objections that they'd made

15  and to request for document production.

16          And so we're at a point now where we're

17  able to sort of benefit from that portion of the

18  settlement agreement where the West defendants have

19  agreed to cooperate with us.  That will then, I think,

20  shift the dynamics in terms of what discovery the

21  Methodist defendants -- obviously I'm going to let

22  them speak for themselves, but I think the dynamics

23  have changed significantly.

24          They may find themselves needing to take

25  more depositions than they anticipated, but in the

1    long -- you know, the short version is that the
2    settlement agreement with the West defendants is --
3    you know, has changed sort of the game in terms of
4    what discovery's going to be necessary and what
5    discovery's going to look like.
6              This is a significant case.  You know,
7    there's a -- you know, it -- there's a lot of moving
8    parts to it.  It's complicated.  And so for those
9    reasons, we -- we don't believe we're going to be able
10   to complete discovery by the current deadline, which
11   is, I believe, in May of this year.
12             So that -- that's -- you're correct,
13   there's a motion to dismiss pending from the Methodist
14   defendants because the West defendants are going to
15   withdraw their motion today.  And also there is a
16   discovery motion that the Methodist defendants had
17   filed that we're not a party to that -- or we're not a
18   movant.  They filed a motion related to a third-party
19   subpoena that they issued.
20             So that -- that's a very -- hopefully
21   that's the answer to your question at the 30,000-foot
22   level, but at the end of the day we just find
23   ourselves unable to meet -- meet all of our discovery
24   deadlines in light of the sort of developments with
25   this case with this settlement agreement.

1           I'm happy to answer any questions you
2    might have about it.  But we wanted to bring this -- I
3    think we initially began these conversations with
4    Judge Holmes back at the end of -- back in December.
5    We wanted to bring this to the Court's attention
6    sooner rather than later and not wait until the
7    deadline was upon us and to -- to be able to do this
8    in an orderly fashion and not unnecessarily delay.
9    But I think it's the consensus of both the Methodist
10   defendants and the relators that without the extension
11   we're going to have a hard time getting done what we
12   need to get done in the case.
13           THE COURT:  Okay.  All right.  Mr. Roark,
14   you want to chime in?
15           MR. ROARK:  Thank you -- thank you,
16   Your Honor.  This is Brian Roark for the Methodist
17   defendants.  I agree with Mr. Martin's
18   characterization of the status of the litigation.  All
19   parties have been diligent in prosecuting the case up
20   to this point.  I guess if this case was still
21   proceeding in its original posture, then the relators
22   would be noticing depositions of Methodist witnesses,
23   they'd be noticing depositions of West witnesses.  But
24   given the settlement, the Methodist defendants weren't
25   party to these settlement discussions, we haven't seen

1   the settlement agreement.

2            But based on how it's been described to

3   us by Mr. Martin, as he said, the -- West is settling,

4   but they are agreeing to be interviewed, their

5   witnesses are going to be interviewed by the relator's

6   counsel.  They're agreeing to turn over any

7   discovery -- any documents that they haven't already

8   in the case, which has put Methodist in the position

9   of, we're not -- we're not going to be present at

10  those interviews.  I mean, the relators have

11  obligations to notify us as set forth in Judge Holmes'

12  order from last week or two weeks ago, to the extent

13  it changes their disclosure obligations.

14            As Mr. Martin said, at the end of the

15  day, it may now mean that Methodist has to take

16  depositions of West employees.  And from having

17  discussions about this with Mr. Martin, we want to --

18  we want to try to -- we have been working on -- on a

19  schedule to complete the remaining discovery and have

20  just come to the conclusion that the parties are going

21  to need more time to do that.  I think given the scope

22  and the magnitude of this case and what's alleged, we

23  would say that that's appropriate here.

24            I would also echo Mr. Martin saying that

25  once the West defendants have withdrawn their motion

1  to dismiss in the case, the Methodist motion will

2  remain pending.  And it is a motion to both dismiss

3  one of the two relators, Dr. Stern, under the first to

4  file bar, that he's not a proper relator in the case

5  in the first place.  And then also to dismiss the

6  entirety of the case as well.  That the settlement

7  with West obviously doesn't impact those arguments

8  that have been raised by Methodist.

9            THE COURT:  All right.  I appreciate that

10 update.  Anything to add from the West defendants or

11 any counsel for the governmental entities?

12            MR. THOMAS:  Yes, Your Honor, this is

13 JD Thomas on behalf of the West defendants.  Nothing

14 to add, other than to confirm what Mr. Martin said,

15 which is we do intend to file a notice shortly here

16 withdrawing our motion to dismiss --

17            THE COURT:  Okay.

18            MR. THOMAS:  -- pursuant to the

19 settlement agreement.

20            THE COURT:  All right.

21            MS. SWEET:  This is Kara Sweet on behalf

22 of the US.  Nothing from us either.  That was an

23 accurate summation.

24            THE COURT:  Mr. Corley, you want to

25 concur?

1          MR. CORLEY:  Yes, Your Honor, I concur.

2          THE COURT:  All right.  We'll extend the

3    trial date out for the requested duration for all the

4    reasons you articulated.  I think it makes sense,

5    especially when a change -- a case of this complexity

6    changes in a way that it sounds like it's changing, I

7    realize that may reshift some discovery that's needed

8    and give y'all plenty of time to do that.

9          I did notice that there's an amendment

10   deadline that hasn't yet passed, and you may not have

11   made the decision yet or you may not be able to say

12   anything about that.  As we look ahead under the

13   current schedule, I notice that that's out there.  I

14   don't know if -- oftentimes amendments can impact

15   pending motions to dismiss, so I just mention that.

16         We're happy to roll up our sleeves and

17   handle the Methodist motion to dismiss, but at the

18   same time, if there's an amendment to be had, then

19   perhaps we may not need to, depending on the nature of

20   the amendment.  Sometimes they don't impact pending

21   motions, but I'm just putting that out there for -- to

22   the extent it matters and gives y'all something to

23   think about.

24         MR. MARTIN:  Your Honor -- oh, I'm sorry,

25   I didn't meant to interrupt.

1    THE COURT:  Go ahead.

2    MR. MARTIN:  This is Jerry Martin.  I

3 would like to address that because I -- we have a -- I

4 think it's February 28 deadline -- or February 26, I'm

5 not exactly sure, sometime at the end of the month

6 currently.  That has been kind of a moving target.

7 And we've probably spent most of our time in -- with

8 Judge Holmes in recent -- you know, three weeks ago

9 when we had the -- we had a conference with her

10 discussing that deadline.  And we are -- the relators

11 are of the position that we want an opportunity to get

12 some -- you know, do some interviews with the West

13 defendants and take advantage of the settlement that

14 we've reached.  You know, we reached back in -- back

15 in November prior to that deadline running.

16    We're not -- we have not made a -- you

17 know, it's impossible for us to make a decision as to

18 whether or not we're going to amend.  I think there's

19 a -- there's a significant chance that we will amend

20 based on those discussions.

21    And so, you know -- you know, while we're

22 here and talking about it, you know, we just got this

23 agreement finalized.  We've -- we're trying to get in

24 touch with Mr. Thomas to start talking about how and

25 when we can start scheduling some interviews and

1   working through that process.  Will we be in a

2   position by the end of February?  Not totally sure as

3   I sit here.  And I want to be totally transparent, but

4   this is something we've been raising -- you know, we

5   started raising this with Judge Holmes back in

6   December while we were waiting for the agreement to be

7   approved.

8           I would just say to the extent you're

9   inquiring as to what's the possibility of an amendment

10  while the motion to dismiss with the Methodist

11  defendant is pending, I would say that it's a distinct

12  possibility, and it's a distinct possibility that we

13  may even conclude that by the end of February.  We're

14  not totally in a -- in a position to make that

15  decision as to whether or not to amend.

16          We also recognize that the Court's going

17  to want us to make that decision.  If we're going to

18  move to amend, to do that sooner rather than later.

19  So it is probably the -- I would say in -- you know,

20  to describe it, I would say it's probably the only

21  thing in terms of the scheduling that the Methodist

22  defendants and the relators are not quite on the same

23  page about in terms of, you know, whether we're going

24  to amend and how long we should have to do that.  But

25  that's -- that is an issue that's out there and -- and

1  I do want to point that out to the Court.

2              THE COURT:  I appreciate it.  Go ahead,

3  Mr. Roark.

4              MR. ROARK:  Yes, thank you, Judge.  From

5  Methodist standpoint, the last pleading in the case

6  right now is the second amended complaint.  So the

7  relators have already amended the complaint in this

8  case twice.  The motion to dismiss filed by the

9  Methodist defendants argues that given that this is a

10  fraud case, the allegations have to be pleaded with

11  specificity under Rule 9(b).  And one of our primary

12  arguments for dismissal in the case is that the

13  relators failed to do that.  They have not

14  sufficiently alleged violations of the False Claims

15  Act.  They haven't supported it with specific facts.

16              If the relators do seek to amend the

17  second amended complaint, we –– we will look at ––

18  look at that closely.  If it's simply a matter of ––

19  of dropping some claims or cleaning up the pleading, I

20  don't know if we'll have a problem with that.  But if

21  where we end up is that the relators are going to seek

22  to shore up their deficient pleadings with discovery

23  that they've gotten in the case to date, the Methodist

24  defendants will absolutely oppose that.  And we would

25  see that basically turning Rule 9(b) and Rule 12 on

1    its head.

2              In an FCA case if a relator can file a

3    deficient complaint yet then get discovery to try to

4    shore it up, in our view would be, that would

5    basically read Rule 9(b) out of existence in the False

6    Claims Act context.  I think we will -- we will wait

7    to see what happens.

8              When the relators filed the second

9    amended complaint, they basically cut our case in half

10   from what had been alleged originally.  If that's

11   what -- if that's what happens again, then I doubt

12   we'll oppose it, but if it is to add in new facts that

13   they didn't allege before, we would anticipate that

14   that will be something to -- that we'll litigate and

15   bring before the Court.

16             THE COURT:  Okay.  Well, sounds like

17   there's some question marks there.  I mentioned it

18   because we often see motions to dismiss, perhaps not

19   on a third version of a complaint, but a motion to

20   dismiss that is rendered moot by some amendment.  I

21   just noticed that the amendment deadline hadn't

22   passed.  That's the only reason I really raised it.

23             Sounds like that's going to be a fight

24   over whether that deadline that's already in existence

25   gets moved.  Y'all can bring that to the Court's

1   attention.  Probably Judge Holmes will handle that

2   because she's been handling all these other scheduling

3   issues.  But I don't -- I don't have a strong feeling

4   one way or other on that issue.  I just mention it

5   because I saw that as a pending deadline.

6           All right.  We got the motion on the

7   trial date handled.  One of our motions to dismiss is

8   likely to go away and Judge Holmes is going to handle

9   the discovery motion.  Is there anything else that we

10  need to deal with today?

11          MR. MARTIN:  Not from the relators'

12  perspective, Your Honor.  Just real briefly.  I don't

13  know that we're going to amend the complaint.  We

14  certainly are not feeling the need to amend because we

15  think that our complaint's in any way deficient.  If

16  we were going to amend with discovery, we could have

17  already done that.  That's not our -- just to be

18  clear, we're not looking to amend because we believe

19  that there's any deficiencies.

20          And, yes, the operative complaint is the

21  second amended complaint, but that's really been the

22  only operative complaint since the case has been out

23  from under seal.  The second amended complaint was

24  filed -- it's the only -- only complaint that's been

25  litigated.  The complaint was amended while the

1  government was investigating -- the first amendment

2  was filed while the government was investigating.

3         And so it's just to give you a clear

4  picture, there haven't been multiple amendments since

5  this case came out from under seal and it's been in

6  active litigation.

7         THE COURT:  Okay.  Well, all right.  With

8  that clarification, anything else we can deal with

9  today from the plaintiff or from the relators?

10        MR. MARTIN:  I don't believe so,

11 Your Honor.

12        THE COURT:  All right.  From Mr. Roark

13 and your group?

14        MR. ROARK:  No, Your Honor.

15        THE COURT:  And from Mr. Thomas?

16        MR. THOMAS:  No, Your Honor.

17        THE COURT:  All right.  Well, everybody

18 have a good rest of the afternoon.

19        (Which were all of the proceedings had in

20 the above-captioned cause on the above-captioned

21 date.)

22

23

24

25

1    **REPORTER'S CERTIFICATE PAGE**

2

3         I, Roxann Harkins, Official Court Reporter

4    for the United States District Court for the Middle

5    District of Tennessee, in Nashville, do hereby

6    certify:

7              That I reported on the stenotype shorthand

8    machine the proceedings held via teleconference on

9    February 3, 2021, in the matter of JEFFREY H. LIEBMAN

10   et al v. METHODIST LEBONHEUR HEALTHCARE et al, Case

11   No. 3:17-cv-0902; that said proceedings were reduced

12   to typewritten form by me; and that the foregoing

13   transcript is a true and accurate transcript of said

14   proceedings.

15

16             This is the 19th day of February, 2021.

17

18                  s/ Roxann Harkins_____
                    ROXANN HARKINS, RPR, CRR
19                  Official Court Reporter

20

21

22

23

24

25