# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into among (1) Jeffrey Liebman and David Stern, M.D. ("Relators") and (2) The West Clinic, PLLC (a/k/a The West Clinic, LLC), West Partners,. LLC, Lee Schwartzberg, M.D., and Erich Mounce (the "West Defendants") (collectively, with Relators, the "Parties") through their authorized representatives. The United States and the State of Tennessee (collectively the "Government") are not a party to this Agreement, but the Parties' obligations under this agreement are on the condition that the United States and the State of Tennessee provide written consent to the dismissal as described below of the below-described Civil Action as to the West Defendants only.

## RECITALS

A.      WHEREAS, The West Clinic, PLLC (also known as or formerly known as "The West Clinic, LLC") is an independent for-profit private physician practice based in Memphis, Tennessee.

B.      WHEREAS, West Partners, LLC is an affiliated entity to the West Clinic formed and controlled by certain West Clinic physicians.

C.      WHEREAS, Dr. Lee Schwartzberg was a senior partner and Medical Director of West Clinic from the beginning of the alliance with Methodist in 2011 through the end of the alliance with Methodist in 2018.

D.      WHEREAS, Mr. Erich Mounce was the Chief Executive Officer of the West Clinic from the beginning of the alliance with Methodist in 2011 through the end of the alliance in 2018.

E.      WHEREAS, Relator Dr. David Stern ("Dr. Stern") served as the Executive Dean and Vice-Chancellor of Clinical Affairs at the University of Tennessee Health Sciences Center ("UTHSC") from 2011 to 2017 and resides in Memphis, Tennessee.

F.      WHEREAS, Relator Jeffrey Liebman ("Mr. Liebman") served as the Chief Executive Officer (CEO) of Methodist University Hospital from 2014 to 2017 and resides in Boston, Massachusetts.

G.      WHEREAS, on May 30, 2017, Mr. Liebman filed a *qui tam* complaint in the United States District Court for the Middle District of Tennessee (the "Original Complaint"). (Doc No. 1). The lawsuit is captioned *United States ex rel Liebman et al v. Methodist Le Bonheur Healthcare, et al.,* No. 3:17-cv-000902 (the "Civil Action"). On May 24, 2018, Mr. Liebman filed a First Amended Complaint (Doc. No. 20).

H.      WHEREAS, on September 3, 2019, the State of Tennessee and the United States both filed separate notices that they had "not completed" their investigation and were "not intervening at this time" in the Civil Action. (Doc. Nos. 44 & 45).

I.      WHEREAS, on December 12, 2019, Chief Judge Waverly Crenshaw, Jr. granted permission for Mr. Liebman, along with Dr. Stern, to file a Second Amended Complaint. (Doc. No. 58). The Second Amended Complaint was docketed on December 13, 2019. (Doc. No. 59).

J.      WHEREAS, in the Original Complaint, the First Amended Complaint, and the Second Amended Complaint, Relators alleged that the West Defendants violated the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, and the Tennessee Medicaid False Claims Act, Tenn. Code § 71-5-182 *et seq.*, (the "False Claims Acts" or "FCA") by receiving financial inducements, excessive compensation, and kickbacks from Defendants Methodist Le Bonheur Healthcare, Inc., and Methodist Healthcare Memphis Hospitals, Inc. (the "Methodist Defendants" or "Methodist") in exchange for generating referrals to the Methodist Defendants (all conduct and claims alleged in the Original Complaint, the First Amended Complaint, and the Second Amended Complaint are collectively referred to as the "Relators' Allegations").

K.    WHEREAS, this Agreement is made in compromise and to resolve claims against the West Defendants only in the Civil Action. This Agreement is neither an admission of facts or liability by the West Defendants, nor a concession by Relators that Relators' Allegations are not well founded. The West Defendants expressly deny Relators' Allegations. Neither this Agreement, nor the performance of any obligation under it, including any payment, nor the fact of settlement, is intended to be, or may be understood as, an admission of liability or wrongdoing, or other expression reflecting on the merits of the dispute. This Agreement is being made to avoid the delay, uncertainty, and expense of protracted litigation.

L.    WHEREAS, in consideration of the mutual promises and obligations set for in this Agreement, Relators and the West Defendants reach a final settlement pursuant to the Terms and Conditions that follow:

## TERMS

1.    The West Defendants will cooperate fully and truthfully with the Relators' investigation and prosecution of the Civil Action against individuals and entities not released in the Agreement, whether or not such individuals or entities are named in the Relators' Allegations. In addition to Dr. Schwartzberg and Mr. Mounce, the duty to cooperate extends to all current partners, physicians, executives, and employees of the West Defendants. These individuals include but are not limited to Dr. Lee Schwartzberg, Erich Mounce, and to the extent currently employed or associated with the West Clinic, PLLC, Dr. Kurt Tauer, Dr. Brad Somer, Dr. Sylvia Richey, Dr. Todd Tillmanns, Dr. Matt Ballo, as well as all other individuals who are partners, physicians, executives, and employees of the West Defendants as of the date of any requested cooperation. The West Defendants represent and warrant that they are authorized to bind such individuals with

the duties to cooperate fully and truthfully as provided in this Agreement. Cooperating fully and truthfully includes, but is not limited to:

(a) Furnishing to the Relators complete and unredacted copies of all non-privileged documents, records, and communications in their possession, custody, or control regarding any subject at issue in the Relators' investigation or prosecution of the Civil Action. The scope of subject matters shall include but not be limited to (1) any subject requested by Relators relating to the Relators' Allegations; (2) any fact or subject identified in the Second Amended Complaint; and (3) any and all financial arrangements, services, agreements, and payments between Methodist or any affiliated entity and any of the West Defendants from January 1, 2011 through February 28, 2019 (the "Relevant Time Period"). The West Defendants' duty to furnish such information, documents, records, and communications extends to all such information and materials available to the West Defendants, regardless of whether the Relators are aware of such knowledge or information or materials. No documents, records, communications or information will be withheld except pursuant to a good-faith assertion of the attorney-client privilege, the attorney work-product doctrine, Federal Rule of Evidence 408 or 410, or any other applicable privilege or protection. All documents, records, communications and information covered by such claims shall be logged consistent with the standards set forth in the Federal Rules of Civil Procedure. As used in this Agreement, the terms "documents" or "records" are intended to be read broadly and refer to any documents or electronically stored information---including but not limited to writings, memorandum, reports, slide presentations, notes, reports, audio or video

recordings, memoranda of interviews, written communications, spreadsheets, drawings, emails, graphs, charts, photographs, sound recordings, images, and other data or data compilations---stored in any medium from which information can be obtained either directly or if necessary, after translation into a reasonably usable form. As used in this Agreement, the term "communication(s)" means any writing transmitted between persons or any oral conversation of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversaions, letters, meetings, memoranda, emails, computer and facsimile communications or transmittals of documents, electronically stored information, all documents concerning such writings or oral conversations, and any recordings of such oral conversations.

(b) Identifying individuals, entities and third parties involved in, or who have knowledge, information or documents relevant to, the conduct described in the Second Amended Complaint. For the avoidance of doubt, this includes but is not limited to all financial arrangements, services, agreements, and payments between Methodist or any affiliated entity and the West Defendants during the Relevant Time Period;

(c) Disclosing relevant facts and identifying opportunities for the Relators to obtain evidence relevant to the conduct described in the Second Amended Complaint that is not in the possession of the West Defendants or otherwise not known to the Relators;

(d) Preserving and collecting all documents, records, and communications in the West Defendants' possession, custody, or control that are relevant to Relators'

Allegations. For the avoidance of doubt, the West Defendants represent that they have not knowingly discarded or deleted any documents, records, communications or information, including but not limited to any materials, notes, records, reports, presentations, documents, memoranda, spreadsheets, communications, emails or audio or video recordings, regarding the conduct alleged in the Second Amended Complaint or any financial arrangements, services, agreements or payments between Methodist or any affiliated entity and any of the West Defendants during the Relevant Time Period. The West Defendants agree that they will retain, preserve, and protect all such documents, records, communications, and information throughout the duration of the Civil Action, including any appeals;

(e) Making available Dr. Lee Schwartzberg, Erich Mounce, and all current employees, physicians, partners, and executives of the West Defendants for interviews, examinations, and depositions, for such duration and at such frequency as reasonably requested by Relators' counsel, without the presence of the Methodist Defendants' counsel or representatives. Relators' counsel shall use their best efforts to schedule the frequency and duration of all interviews, examinations, and depositions in a manner that avoids impacting the ability of the West Defendants and their current employees to provide services to their patients, including providing the West Defendants with reasonable advance notice of any requested interview, examination, or deposition. There shall be no limit on the number of times Relators' counsel may meet with or interview Dr. Lee Schwartzberg, Erich Mounce, or any current employees, officers, partners, executives or physicians of the West Defendants without the presence of the Methodist Defendants' counsel or

representatives. For the avoidance of doubt, counsel for the West Defendants may be present at any interview, examination, or deposition of any of the West Defendants or their current employees, physicians, partners, and executives. The West Defendants understand that the first round of interviews of Dr. Lee Schwartzberg, Erich Mounce, or any current employees, officers, partners, executives, and physicians of the West Defendants will be scheduled immediately after this Agreement is executed and such interviews will begin in February of 2021. With the deadlines established in the Case Management Order and pending motions to dismiss the Second Amended Complaint, the West Defendants understand that time is of the essence in their duties to cooperate;

(f) Disclosing all facts relevant to the Relators' investigation gathered during any non-privileged independent investigation undertaken by the West Defendants, including attribution of facts to specific sources rather than a general narrative of facts, and providing timely updates on the West Defendants' internal investigation, including rolling disclosures of relevant information. For the avoidance of doubt, the West Defendants represent, and Relators understand, that the West Defendants have not conducted any independent non-privileged investigation of Relators' Allegations, and all investigations undertaken by the West Defendants have been undertaken by and at the direction of the West Defendants' counsel;

(g) Providing facts relevant to potential misconduct by third party entities and individuals relevant to the conduct described in the Second Amended Complaint;

(h) Aiding the Relators in understanding the context and significance of all facts, documents, records, communications, and information provided relevant to the conduct described in the Second Amended Complaint;

(i) Providing information in native format, and facilitating review and evaluation of that information if it requires special or proprietary technologies so that the information can be evaluated; and,

(j) Testifying fully, completely, and truthfully through affidavits or declarations and in person before any and all tribunals, including the Middle District of Tennessee and elsewhere, including any and all trials of cases or other court proceedings in which the West Defendants' testimony may be requested by Relators' counsel in connection with the Civil Action.

2.     The West Defendants will not attempt to protect any person or entity through false information or omission or to implicate falsely any person or entity. The duty to cooperate described above will extend to Dr. Lee Schwartzberg, Erich Mounce, and all current partners, executives, and employees of any entity included in the West Defendants. The West Defendants will use their best efforts to facilitate and encourage the same cooperation as listed above from any former employees, partners, physicians, or executives of the West Defendants. The West Defendants' duties to cooperate with Relators in the investigation and prosecution of the Civil Action will remain in effect throughout the duration of the Civil Action, including any appeals, regardless of any potential decision by the United States or State of Tennessee to decline intervention in the Civil Action. The West Defendants agree that any cooperation obligations shall be provided with immediate diligence and attention and without any unreasonable delays. Relators agree to use best efforts to schedule all interviews, examinations, depositions and other requests

for information in a manner that avoids impacting the ability of the West Defendants and their current employees to provide necessary healthcare services to patients.

3. The West Defendants shall be entitled to produce documents subject to then applicable protective order entered in the Civil Action, or to seek enhanced protection for any documents as the West Defendants reasonably believe may be necessary. This includes designating documents as "Confidential," or any other designation provided for under the then applicable protective order entered in the Civil Action. The West Defendants' decision to designate or not designate documents pursuant to any protective order, or to seek enhanced protection for any documents or information, shall not serve as a basis to claim a breach of this Agreement.

4. The duty to cooperate described above does not require the West Defendants to waive any applicable privilege or protection that may apply to any information gathered or known by the West Defendants' counsel. The Parties agree that the cooperation obligations created by this Agreement do not extend to the West Defendants' counsel, and such counsel shall have no obligation to assist Relators in their investigation and prosecution of the Civil Action in any way. The refusal of the West Defendants to provide documents or information covered by a reasonably asserted privilege or protection shall not serve as a basis for a breach of this Agreement.

5. Except as set forth in Paragraph 3 and 4 above, and Paragraph 5(d) below, any refusal by the West Defendants to cooperate fully, truthfully, completely, and forthrightly will constitute a breach of this Agreement. Relators and the West Defendants agree that any breach of this Agreement by West Defendants including but not limited to failing to cooperate, intentionally withholding information, giving false information, committing perjury, or refusing to fully, completely, and truthfully testify before any and all tribunals, in the Middle District of Tennessee and elsewhere, including any and all trials of cases or other court proceedings in which the West

Defendants' testimony is requested by Relators' counsel, would constitute immediate and irreparable injury, loss, or damage to Relators who are relying, in good faith, upon the West Defendants' agreement to provide timely cooperation as contemplated in Paragraph 1 above. If the West Defendants breach this Agreement, the Relators may elect their remedies and such remedies shall include all remedies available in law or equity, including but not limited to the following:

(a) If the West Defendants fail to cooperate as provided in Paragraph 1 above or fail to pay any amount as provided in Paragraph 6 below within 10 days of the date on which such payment is due, the West Defendants shall be in default of their obligations under this Agreement. Relators' counsel shall provide written notice of the default to counsel for the West Defendants and the West Defendants shall have the opportunity to cure such default within 10 business days from the date of receipt of the written notice;

(b) The West Defendants recognize and acknowledge that the above terms and conditions related to their cooperation with Relators constitute material terms upon which the release by Relators of all claims and the dismissal of all claims with or without prejudice are conditioned. Furthermore, the Parties agree and acknowledge that it is difficult if not impossible to quantify the damage that would result if the West Defendants failed to abide by the terms and conditions in this Agreement related to cooperation, specifically Paragraph 1. As a result, the Parties agree that a material breach of Paragraph 1 by the West Defendants would constitute immediate and irreparable injury, loss, or damage to Relators who are relying, in good faith, upon the West Defendants' agreement to provide timely cooperation as

contemplated in Paragraph 1. The Parties agree that injunctive relief is an available remedy to Relators should the West Defendants materially breach Paragraph 1, and that any such action seeking injunctive action may be brought in federal court in the Middle District of Tennessee. The Parties agree that any factual issues relating to the breach of this Agreement shall be proven by a preponderance of the evidence;

(c) If the West Defendants materially breach this Agreement, fail to cooperate, or fail to make any of the agreed payments by the deadlines, and fail to cure such default within 10 days after written notice as provided above, Relators may also elect to rescind the Agreement by filing a motion to rescind the Settlement Agreement and motion to reinstate the claims released in the Agreement against the West Defendants in the United States District Court for the Middle District of Tennessee. The West Defendants consent to the jurisdiction and venue of the United States District Court for the Middle District of Tennessee to decide such motions and determine whether Relators may reinstate and proceed with the claims released in the Agreement. If this Agreement is recinded by court order and such claims are successfully reinstated, the West Defendants agree to waive defenses to such claims arising from the passage of time and the settlement process, including but not limited to the statute of limitations, first-to-file and or public disclosure bar, except to the extent that those defenses existed prior to the effective date of the Agreement. If the Relators successfully rescind the Agreement as determined by order of court on the basis that the West Defendants have failed to meet their obligations to cooperate with Relators, then Relators shall return to the West Defendants the settlement payments made to Relators for attorneys' fees and expenses as described

in Paragraph 6(b) below, within twenty (20) days of the court's order. The West Defendants acknowledge that neither the United States nor the State of Tennessee is obligated to return any payments made to them (including the Relators' share of such payments) by the West Defendants in order for Relators to successfully rescind this Agreement. The United States and the State of Tennessee have expressly confirmed to the Parties of this Agreement that neither will return any payments made to them under any circumstances.

(d) If the Relators successfully rescind the Agreement by court order and return all settlement payments made for attorneys' fees and expenses as describd in Paragraph 6(b), the West Defendants agree that any prior dismissal with or without prejudice of the claims against the West Defendants shall be null and void and shall have no legal effect to bar, limit, or impede in any way the Relators from reinstating or prosecuting any claims against the West Defendants. If the Relators successfully rescind the Agreement by court order and return all settlement payments made for attorneys' fees and expenses as described in Paragraph 6(b), the West Defendants explicitly waive any defenses they may have based upon the dismissal of the claims with or without prejudice, including but not limited to the doctrines of res judicata, collateral estoppel, promissory estoppel or finality. For the avoidance of doubt, nothing in this paragraph shall prevent the West Defendants from raising the dismissal of the Action, with or without prejudice, as a reason to oppose any attempt to recind this agreement.

(e) If this Agreement is recinded by court order on the basis that the West Defendants have failed to meet their obligations to cooperate with Relators, Relators shall be permitted to use against the West Defendants and any other Defendants in the Civil Action, directly or indirectly, in any civil proceeding, all statements made by the

West Defendants and any statements, documents, or information provided by the West Defendants pursuant to the Agreement.

    (f) Nothing in this paragraph will be construed as a waiver of the West Defendants' Fifth Amendment rights under the United States Constitution, and any assertion of the Fifth Amendment by any of the West Defendants or any of their current partners, executives, or employees shall not serve as a basis for Relators to claim a breach of this Agreement.

6.    The West Defendants shall pay a total of $2,600,000.00 to be divided as follows:

    (a) Within twenty (20) days after the Effective Date of the Agreement, the West Defendants will pay $1,300,000.00 in settlement to the United States and State of Tennessee per their instructions as to the division of the funds and the method of payment. The Government and Relators will negotiate and attempt to reach an agreement as to the Relators' award or percentage share of this settlement payment in accordance with the federal and state False Claims Acts. This Agreement, and the obligations to fund any payments due under it, are not contingent upon an agreement between Relators and the Government being reached by any date certain.

    (b) The West Defendants will pay $1,300,000.00 in attorneys' fees and expenses of Relators' counsel, representing a portion of the fees and expenses related to the claims asserted jointly against the West Defendants and the Methodist Defendants. Such payment shall be made in twelve (12) equal monthly payments of $108,333.33 beginning on the first day of the month following the Effective Date of this Agreement and continuing on the first day of the subsequent 11 months until paid in full. The West Defendants shall make all applicable payments by electronic funds

transfer pursuant to written instructions to be provided by Relators' counsel. The West Defendants may, at their option, accelerate any payments due under this subparagraph without penalty. In the event that the West Defendants fail to pay any amount as provided above within 10 business days of the date on which such payment is due, the West Defendants shall be in default of their payment obligations ("Default") under this Agreement. The Relators shall provide written notice of Default to West Defendants' undersigned counsel and the West Defendants shall have the opportunity to cure such Default within ten (10) business days from the date of receipt of the notice. If the West Defendants fail to cure such Default within ten (10) business days of receipt of the written Notice of Default by their counsel, the remaining unpaid balance of the Settlement Amount as of the date of default shall become accelerated and immediately due and payable.

7.       The settlement payments by the West Defendants describe above are subject to approval by the United States and State of Tennessee.

8.       Within two (2) business days following the Effective Date of this Agreement, the West Defendants will file a notice with the Court withdrawing their Motion to Dismiss the Second Amended Complaint and informing the Court that a settlement between Relators and the West Defendants has been reached and as a result the West Defendants' pending Motion to Dismiss is therefore withdrawn.

9.       Within two (2) business days following the West Defendants' withdrawal of their Motion to Dismiss as described above, Relators will file a notice dismissing all claims in the Civil Action against the West Defendants without prejudice as to Relators and without prejudice as to the United States and State of Tennessee. Within two (2) business days following payment in full

by the West Defendants of all amounts provided in Paragraph 6 above, Relators will file a notice dismissing all claims against the West Defendants in the Civil Action with prejudice as to Relators and without prejudice as to the United States and State of Tennessee unless there is a pending motion to rescind the Settlement Agreement as provided above.

10. Conditioned upon the West Defendants' obligations in this Agreement, Relators for themselves and their heirs, successors, attorneys, agents, and assigns, release the West Defendants, together with their current and former parent corporations; predecessors; direct and indirect subsidiaries; corporate affiliates; divisions; current and former owners, members, officers, directors, employees, agents, attorneys, heirs, vendors, clients, and affiliates; and the successors and assigns (collectively the "West Defendants' Released Persons and Entities"), of any of them from any and all claims, causes of action, complaints, suits, demands, damages (including those that are unanticipated, unexpected, or undisclosed, as well as any that may be disclosed), costs, expenses, liabilities, grievances, or other losses, whether known or unknown, that in any way arise from, grow out of, or are related to the Civil Action or Relators' Allegations, and from all other possible causes of action, known or unknown, that may exist as of the Effective Date. The foregoing sentence is intended to be interpreted as a general release; provided that, the release for vendors and clients is limited to matters relating only to the Civil Action. For the avoidance of doubt, this general release is intended to include and incorporates any claim Relators may have to any future attorneys' fees or costs. Further, Relators represent that they have not assigned or transferred to any person, entity, or thing any claim that Relators have or could bring against the West Defendants.

11. Conditioned upon Relators' obligations in this Agreement, the West Defendants release Relators and their heirs, successors, attorneys, agents, and assigns (collectively,

"Relators' Released Persons and Entities"), from any and all claims, causes of action, complaints, suits, demands, damages (including those that are unanticipated, unexpected, or undisclosed, as well as any that may be disclosed), costs, expenses, liabilities, grievances, or other losses, whether known or unknown, that in any way arise from, grow out of, or are related to the Civil Action or from all other possible causes of action, known or unknown, that may exist as of the Effective Date. The foregoing is intended to be interpreted as a general release. Further, the West Defendants represent that they have not assigned or transferred to any person, entity, or thing any claim the West Defendants have or could bring against the Relators.

12. Excluded from the Relators' and the West Defendants' releases are the terms, conditions, and obligations created by this Agreement. This Agreement does not release any Party's right to enforce this Agreement.

13. Notwithstanding any term of this Agreement, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person (including the Parties) are any claims of the United States or State of Tennessee, which are not parties to this Agreement, including but not limited to claims arising under 31 U.S.C. §§ 3729–33, Title 26 of the U.S. Code (Internal Revenue Code), any criminal liability, or any administrative liability to any federal agency including the suspension and debarment rights of any federal agency.

14. The West Defendants waive and shall not assert any defenses they may have to any criminal prosecution or administrative action relating to the conduct covered by this Agreement that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this

Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

15.     The West Defendants agree to the following:

a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of the West Defendants, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement;

(2)     the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3)     Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)     the negotiation and performance of this Agreement; and

(5)     the payment the West Defendants make to the United States pursuant to this Agreement and any payments that Defendants may make to Relator, including costs and attorneys' fees are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b.     Future Treatment of Unallowable Costs: Unallowable Costs shall be separately

determined and accounted for by the West Defendants, and the West Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by the West Defendants or any of their subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: The West Defendants further agree that within 90 days of the Effective Date of this Agreement they shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by the West Defendants or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. The West Defendants agree that the United States, at a minimum, shall be entitled to recoup from the West Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by the West Defendants or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on the West Defendants or any of its subsidiaries or

affiliates' cost reports, cost statements, or information reports.

d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine the West Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

e. Nothing in this Agreement will be interpreted as a release of any claims of the United States or the State of Tennessee. Under the terms of this Agreement, the dismissal of any claims shall be without prejudice to the United States and the State of Tennessee

16. The West Defendants and Relators agree that all West Defendants' Released Persons and Entities and Relators' Released Persons and Entities are intended third-party beneficiaries of this Agreement and will have the ability to enforce the releases given as part of this Agreement. Other than the West Defendants' Released Persons and Entities and Relators' Released Persons and Entities, the Parties agree that there are no other intended third-party beneficairties to this Agreement, including the United States or the State of Tennessee.

17. The Parties represent that they freely and voluntarily enter into this Agreement, without any degree of duress of compulsion.

18. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Tennessee. Each Party hereby consents to the jurisdiction of such court (and of the appropriate appellate courts therefrom) in any such suit, action, or proceeding, and irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of the venue of any such suit, action, or proceeding in any such court or that any such suit, action, or proceeding which is brought in any such court has been

brought in an inconvenient forum.

19.     If any provision of this Agreement or the application thereof to any person or circumstance will be found invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other persons or circumstances will not be affected thereby and will be enforced to the greatest extent permitted by law.

20.     For purposes of construction, this Agreement will be deemed to have been drafted by all Parties to this Agreement and may not, therefore, be construed against any party for that reason in any subsequent dispute.

21.     This Agreement, including any documents incorporated by reference herein, constitutes the complete agreement between the Parties with respect to the issues covered by the Agreement. This Agreement may not be amended except by written consent of the West Defendants and Relators.

22.     The individuals signing this Agreement on behalf of the West Defendants represent and warrant that they are authorized by the West Defendants to execute this Agreement. The individuals signing this Agreement on behalf of Relators represent and warrant that they are authorized by Relators to execute this Agreement.

23.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

24.     This Agreement is binding on the West Defendants and their partners, successors, transferees, heirs, and assigns.

25.     This Agreement is binding on Relators and their successors, transferees, heirs, and assigns.

26.     All parties consent to the United States' or State of Tennessee's disclosure of this

Agreement, and information about this Agreement, to the public.

27.     This Agreement is effective on the date of signature of the last signatory to the Agreement (the "Effective Date"). Facsimiles of signatures and signatures transmitted by PDF constitute acceptable, binding signatures for purposes of this Agreement.

28.     All written notices to any Party hereunder shall be in writing signed by or on behalf of the Party making the same, will specify the Section under this Agreement pursuant to which it is given or made, and will be delivered (a) personally or sent by registered or certified mail (return receipt requested) by any national overnight courier service, and (b) by electronic mail, and shall be given to the Parties' respective addresses set forth below. Each such notice shall be effective upon delivery at the address specified in this Section:

If to the West Defendants:

John-David Thomas
Andrew F. Solinger
Waller, Lansden, Dortch & Davis, LLP
Nashville City Center
511 Union Street, Suite 2700
Nashville, TN 37219
Email: jd.thomas@wallerlaw.com
Email: andrew.solinger@wallerlaw.com

If to the Relators:

Bryan A. Vroon
Law Offices of Bryan A. Vroon, LLC
1380 West Paces Ferry Road, Suite 2270
Atlanta, GA 30327
Email:  bryanvroon@gmail.com

and

Jerry E. Martin
Seth M. Hyatt
Barrett Johnston Martin & Garrison, LLC
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Email:  jmartin@barrettjohnston.com
Email:  shyatt@barrettjohnston.com

**RELATORS**

This 28th of January, 2021.


_____

*Jeffrey H. Liebman*


_____

*David M. Stern, M.D*

Bryan A. Vroon
Law Offices of Bryan A. Vroon, LLC
1380 West Paces Ferry Road, Suite 2270
Atlanta, GA 30327
(404) 441-9806
bryanvroon@gmail.com

Jerry E. Martin
Seth M. Hyatt
Barrett Johnston Martin & Garrison, LLC
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
(615) 244-2202
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com

Edward D. Robertson, Jr.
Bartimus Frickleton Robertson & Rader, P.C.
109b East High Street
Jefferson City, MO. 65101
(573) 659-4454

*Attorneys for Relators Jeffrey H. Liebman
and David M. Stern, M.D.*

**RELATORS**

This 28th of January, 2021.


_Jeffrey H. Liebman_

_David M Stern_
_David M. Stern, M.D_


Bryan A. Vroon
Law Offices of Bryan A. Vroon, LLC
1380 West Paces Ferry Road, Suite 2270
Atlanta, GA 30327
(404) 441-9806
bryanvroon@gmail.com

Jerry E. Martin
Seth M. Hyatt
Barrett Johnston Martin & Garrison, LLC
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
(615) 244-2202
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com


Edward D. Robertson, Jr.
Bartimus Frickleton Robertson & Rader, P.C.
109b East High Street
Jefferson City, MO. 65101
(573) 659-4454

_Attorneys for Relators Jeffrey H. Liebman_
_and David M. Stern, M.D._

## RELATORS

This 28th of January, 2021.



_____

*Jeffrey H. Liebman*




_____

*David M. Stern, M.D*

Bryan A. Vroon
Law Offices of Bryan A. Vroon, LLC
1380 West Paces Ferry Road, Suite 2270
Atlanta, GA 30327
(404) 441-9806
bryanvroon@gmail.com

Jerry E. Martin
Seth M. Hyatt
Barrett Johnston Martin & Garrison, LLC
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
(615) 244-2202
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com

Edward D. Robertson, Jr.
Bartimus Frickleton Robertson & Rader, P.C.
109b East High Street
Jefferson City, MO. 65101
(573) 659-4454

*Attorneys for Relators Jeffrey H. Liebman
and David M. Stern, M.D.*

## WEST DEFENDANTS

This 28th of January, 2021.

The West Clinic, PLLC (also known as or
formerly known as "The West Clinic, LLC")

By: _____

Title: _____

West Partners, LLC

By: _____

Title: _____

_____
Eric Mounce

_____
Dr. Lee Schwartzberg

John-David Thomas
Andrew F. Solinger
Waller, Lansden, Dortch & Davis, LLP
Nashville City Center
511 Union Street, Suite 2700
Nashville, TN 37219
(615) 850-8682
jd.thomas@wallerlaw.com
andrew.solinger@wallerlaw.com

*Attorneys for Defendants The West Clinic,
PLLC, West Partners, LLC, Lee
Schwartzberg, M.D., and Erich Mounce*

## **WEST DEFENDANTS**

This 28th of January, 2021.

The West Clinic, PLLC (also known as or
formerly known as "The West Clinic, LLC")

_____

_____

By: _____

Title:_____

John-David Thomas
Andrew F. Solinger
Waller, Lansden, Dortch & Davis, LLP
Nashville City Center
511 Union Street, Suite 2700
Nashville, TN 37219
(615) 850-8682
jd.thomas@wallerlaw.com
andrew.solinger@wallerlaw.com

*Attorneys for Defendants The West Clinic,*
*PLLC, West Partners, LLC, Lee*
*Schwartzberg, M.D., and Erich Mounce*

West Partners, LLC

_____

By: _____

Title:_____

_____

Eric Mounce

_____

Dr. Lee Schwartzberg