IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and the STATE OF TENNESSEE ex rel. JEFFREY H. LIEBMAN and DAVID STERN, M.D., | ) ) ) ) ) | |
| Relators, | ) ) | |
| v. | ) ) | Case No. 3:17-cv-00902 |
| METHODIST LE BONHEUR HEALTHCARE, METHODIST HEALTHCARE-MEMPHIS HOSPITALS, CHRIS MCLEAN, GARY SHORB, and JOHN DOES 1-100, | ) ) ) ) ) ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE HOLMES |
| Defendants. | ) | |

## **MEMORANDUM**

Pending before the Court is a Motion to Intervene by The West Clinic, PLLC ("West") (Doc. No. 197). West seeks to intervene for two purposes. The first is to oppose the United States' Motion to Intervene (Doc. No. 193). The second is to file a Motion to Enforce Settlement Agreement that seeks to preemptively estop the United States from adding West back into the case. The United States and Relators filed responses in opposition to West's Motion to Intervene. (Doc. Nos. 209 and 211). West filed a Reply. (Doc. No. 212).

### I. PROCEDURAL HISTORY

The procedural history of this case is long. Relator filed this *qui tam* action under seal on May 30, 2017. The case remained under seal for almost two years to allow the United States and Tennessee time to investigate the claims and decide whether to intervene. In September 2019, they notified the Court that they had not finished investigating but were electing not to intervene "at

this time." (Doc. Nos. 44 and 45). The case proceeded with two groups of Defendants: (1) the "West Defendants" – which included The West Clinic, West Cancer Center, Lee Schwartzberg, M.D., and Erich Mounce; and (2) the "Methodist Defendants" – which included Methodist Le Bonheur Healthcare, UT Methodist Physicians, LLC, Methodist Healthcare-Memphis Hospitals, Gary Shorb, and Chris McLean.

In December 2020, Relators[1] informed the Court they had reached a settlement agreement with the West Defendants. (Doc. No. 118). As a result of the settlement, the West Defendants were dismissed from the case on February 9, 2021. (Doc. No. 133). Pursuant to the settlement agreement, the West Defendants agreed to cooperate with Relators by, among other things, making employees available for interviews and providing additional documents not produced during discovery. (*See* Doc. No. 134 at 2 (seeking extension of deadline to amend to allow time to review addition information obtained from West as a result of post-settlement cooperation)). Relators filed a Third Amended Complaint in May 2020 (Doc. No. 169), which the Methodist Defendants (the only remaining defendants in this action) promptly moved to strike and dismiss (Doc. No. 174).[2] That motion remains pending.

Relators informed the United States about the information obtained from the West Defendants following the settlement, and the United States conducted its own interviews of West and Methodist personnel in June and July 2021. After informing the Court in September 2021 that it was seeking permission to intervene, the United States filed a Motion to Intervene on October 8, 2021. (Doc. No. 194). The Government stated that, if intervention is granted, it intends to add

---

[1] A second relator was added in the Second Amended Complaint. (Doc. No. 59).

[2] The Methodists Defendants' had also moved to dismiss the Second Amended Complaint. (Doc. No. 79). That motion was rendered moot by the filing of the Third Amended Complaint. (*See* Doc. No. 168).

West back to the case as a defendant. (*See* Doc. No. 194 at 1 n.1 (noting that West was previously dismissed without prejudice as to the United States)).

West now seeks to intervene under Federal Rule of Civil Procedure 24 for purposes of opposing the United States' Motion to Intervene and enforcing the settlement agreement with Relators, which it contends precludes the United States from adding it back into the case. (Doc. No. 197).

## II.     ANALYSIS

Rule 24 of the Federal Rules of Civil Procedure provides for two kinds of intervention: intervention as of right and permissive intervention. West contends intervention is warranted under either standard. The Court agrees.

Under Rule 24(a), "[o]n timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Before intervention as a matter of right will be granted, the proposed intervenor must establish that: (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect that interest may be impaired in the absence of intervention; and (4) the parties already before the court may not adequately represent the proposed intervenor's interest. *Kirsch v. Dean*, 733 F. App'x 268, 274 (6th Cir. 2018). The Court broadly construes factual circumstances in favor of potential intervenors. *Davis v. Lifetime Capital, Inc.*, 560 F. App'x 477, 490 (6th Cir. 2014) (recognizing that "close cases should be resolved in favor of potential intervenors").

With regard to permissive intervention under Rule 24(b), "the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).  The proposed intervenor "must establish that the motion for intervention is timely and alleges at least one common question of fact or law." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005).  If these requirements are met, "the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *Id*.

Under either standard, intervention must be timely. To determine timeliness, the Court considers the following factors: "(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they know or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention." *United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989). The Court considers the totality of the circumstances related to the timeliness of intervention, with no one factor being dispositive. *Salem Pointe Capital, LLC v. Rarity Ray Partners*, 854 F. App'x 688, 695 (6th Cir. 2021).

There appears to be no dispute that West's motion to intervene is timely. Although the case itself is not at the beginning stages, West moved to intervene within two weeks of the United States' motion to intervene in which the United States indicated it may bring West back into the case as a defendant.  Allowing West to raise its own arguments in opposition to the United States' motion to intervene will result in minimal delay.

4

A.  **Intervention As of Right**

After timeliness, the first element to consider is whether West has a substantial legal interest in the subject matter of the case. The Sixth Circuit has adopted a "rather expansive notion of the interest sufficient to invoke intervention as of right." *See Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007) (quoting *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)).

West argues that it has a substantial legal interest in the action as a whole because the partnership between West and Methodist is the subject of the lawsuit. West adds that it also has a substantial interest in the outcome of the United States' motion to intervene because the United States has expressed its intent to add West as a Defendant if it is allowed to intervene.

Relators and the United States contend West has no legal interest in the case until after the United States has been granted leave to intervene and brought West back into the case as a defendant. They argue that the appropriate time and procedure for West to challenge its inclusion as defendant is through a motion to dismiss after the United States has filed a complaint in intervention naming West as a defendant. Relators and the United States further argue that even if the United States is denied leave to intervene, it could choose to initiate an entirely separate action against West.

These arguments are not well taken. The subject matter of the case directly involves an agreement between West and Methodist. Moreover, although West will not be without legal remedy if United States' motion to intervene is granted and West is added as a defendant, it will face a different burden at the motion to dismiss stage. The Court finds West has a substantial legal interest in the case, particularly the Government's motion to intervene.

The next element concerns the potential impairment of West's ability to protect its legal interest in the absence of intervention. "To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that the impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." *Davis*, 560 F. App'x at 496 (quoting *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999)).

For reasons related to those discussed above, the Court finds West's ability to protect its legal interest may be impaired in the absence of intervention. This is West's only opportunity to raise arguments relevant to the determination of "good cause" on the Government's motion to intervene. If the Government's motion to intervene is granted and West finds itself once again a defendant in this case, it will face a different set of legal challenges. The Court finds this is sufficient to satisfy the "impairment" element.

The last element is the ability of parties already before the Court to represent West's legal interests. The threshold for this requirement is low. *Michigan State AFL-CIO*, 103 F.3d at 1247. West need only show that there is a "potential for inadequate representation." *Davis*, 560 F. App'x at 495-96.  This can be established by demonstrating "that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Id*.

Relators and the United States argue that Methodist has already opposed the United States motion to intervene and that the arguments West seeks to assert are redundant. West disagrees, noting that it is uniquely situated because of the settlement agreement. West claims that due to its involvement in settlement negotiations with Relators and the United States, it is able to address factual inconsistencies that Methodist cannot.  The Court finds West has met its minimal burden to show the potential for inadequate representation.

In summary, West satisfies the requirements for intervention as of right. It's Motion to Intervene will, therefore, be granted.

**B.      Permissive Intervention**

Having determined that West has met the requirements for intervention as of right, the Court need not consider whether permissive intervention would also be warranted. However, even if intervention as of right was not warranted, the Court would, nevertheless, exercise its discretion to allow West to intervene pursuant to Fed. R. Civ. P. 24(b).

As stated above, under Rule 24(b) "the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). West plainly has a defense that shares common questions of law or fact with the main action, as it was formerly a defendant in this case and the allegations concern an agreement between West and the remaining defendant, Methodist.

The Court must also balance prejudice to the original parties, and other relevant factors. As an initial matter, the Court finds West may have information relevant to consideration of whether the Government has "good cause" to intervene, particularly given that information provided by West appears to have been the impetus for the United States deciding to seek to intervene. (See Doc. No. 194 at 3). With regard to prejudice to the remaining parties, the proposed opposition to the Government's motion to intervene does not cause unnecessary delay or prejudice to the parties. The same is not necessarily true of West's proposed motion to enforce the settlement agreement, which the Court agrees is premature and resolution of which would unnecessarily delay resolution of the Government's motion to intervene. Indeed, if the Government's motion to intervene is denied, the motion to enforce the settlement agreement would be moot. The same

7

would be the case if the Government decides not to add West as a defendant. On balance, however, the Court finds that West should be permitted to intervene under Rule 24(b).

### III.  CONCLUSION

West's Motion to Intervene (Doc. No. 197) will be **GRANTED**.  However, the Court finds that the proposed motion to enforce settlement agreement, which effectively seeks to preclude the United States from asserting claims against West, is premature until the United States has been granted leave to intervene and adds West as a Defendant.  West may file the proposed opposition to the Government's motion to intervene. After the Court has resolved the Government's motion to intervene, West may consider filing appropriate motions.

Finally, Relators seek an opportunity to file a reply to West's response to address purported inaccuracies in the Solinger Declaration (Doc. No. 197-2).  That request is granted. Relators may file a reply of not more than ten pages within ten days of the docketing of West's opposition.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE