IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF TENNESSEE ex rel. JEFFREY H. LIEBMAN and DAVID STERN, M.D., <br><br> Relators, <br><br> v. <br><br> METHODIST LE BONHEUR HEALTHCARE, et al., <br><br> Defendants. | Case No. 3:17-cv-00902 <br><br> JUDGE CAMPBELL <br> MAGISTRATE JUDGE HOLMES |

## MEMORANDUM

Pending before the Court is the United States' Motion to Intervene for Good Cause. (Doc. No. 193). If permitted to intervene, the United States intends to assert claims against Defendants Methodist Le Bonheur Healthcare and Methodist Healthcare – Memphis Hospitals for violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), and the False Claims Act, 31 U.S.C. §§ 3729-3733. The United States stated that it also intends to assert claims against West Clinic, which was previously dismissed from this action after reaching a settlement with Relators. (Doc. No. 193 at 1 n.1). The Government states that it is not seeking to intervene to assert claims against two current defendants – Gary Shorb and Chris McLean. (*See* Doc. No. 202 at 1 n.1).

Relators Jeffrey Liebman and David Stern consent to the Motion and expressed their support for intervention. Defendants Methodist Le Bonheur Healthcare, Methodist Healthcare – Memphis Hospitals, Chris McLean, and Gary Shorb ("Methodist") filed a Response in Opposition (Doc. No. 195). The United States filed a Reply to Methodist's Response in Opposition (Doc. No. 202). Methodist filed a Sur-reply. (Doc. No. 210).

The West Clinic, PLLC ("West"), which was dismissed from the case following settlement with Relators and is no longer a party, intervened for purposes of opposing the Motion. (Order Granting West's Motion to Intervene, Doc. No. 215). West filed a Response in Opposition to the United States' Motion to Intervene. (Doc. No. 216). Relators and the United States replied to West's Response (Doc. Nos. 217, 219), and West filed a Sur-reply (Doc. No. 230).

Counsel for the United States, Methodist, West, and Relators each filed declarations in support of their respective positions. (*See* Declaration of Kara F. Sweet (United States), Doc. No. 205; Declaration of Brian D. Roark (Methodist) Doc. No. 196; Declaration of Andrew Solinger (West), Doc. No. 216-1; and Declaration of Jerry Martin (Relators), Doc. No. 218).

The Court held a hearing on the Motion on February 16, 2022. Following the hearing, the Court Ordered the United States to submit to the Court for *in camera* review all internal and external communications related to "review, assessment, and/or approval of the West Settlement." (Order, Doc. No. 224). The Government has complied with that Order.[1]

For the reasons discussed herein, the Motion to Intervene will be GRANTED.

## I. BACKGROUND

Relator Jeffrey Liebman initiated this case in May 2017 alleging that the West Cancer Center affiliation violated the Anti-kickback statute because Methodist was overpaying West Clinic for management and professional services and was sharing with West the profits generated by its referrals. (Doc. No. 1). As required by the False Claims Act, Relator filed the complaint under seal to allow the Government to investigate the claims and decide whether to intervene. *See*

---

[1] The documents submitted for *in camera* review confirmed what was already known from Court filings: the Government reviewed the West settlement before it was executed, did not object to the settlement, and consented to West's dismissal from the case with prejudice as to Relators and without prejudice as to the United States.

31 U.S.C § 3730(b)(2). The seal was extended several times, ultimately allowing the Government over two years to investigate and decide whether to intervene. On September 3, 2019, after the Court denied further extension, the United States entered a "Notice [ ] That It Is Not Intervening at This Time," explaining that it had not completed its investigation and would continue to investigate. (Doc. No. 45).

Thereafter, Relator Jeffrey Liebman and a second Relator, Dr. David Stern, filed a Second Amended Complaint, which was unsealed and made available to Methodist and West on December 19, 2019. (Doc. Nos. 59, 61). Methodist and West filed motions to dismiss. (Doc. Nos. 79, 81).

In December 2020, Relators informed the Court that they had reached an agreement with West, but were awaiting approval from the Government before executing the agreement. (*See* Doc. No. 119 at 5; *see also*, Doc. No. 126 (stating that as of Jan. 26, 2021, the Government had not finalized approval of the settlement agreement)). On January 28, 2021, after receiving Government approval for the settlement, Relators and West executed the Settlement Agreement and shortly thereafter moved to voluntarily dismiss claims against West. (Doc. No. 132 (granted at Doc. Nos. 133 and 192); *see also*, Settlement Agreement, Doc. No. 216-2).

As part of the settlement, West paid $2.6 million (divided among the United States, Tennessee, and Relators' counsel) and agreed to cooperate with the Relators' investigation "fully, truthfully, and forthrightly" in exchange for dismissal from the action. (*See* Settlement Agreement, Doc. No. 216-2). The United States was not a party to the Settlement Agreement. (*Id.*, ¶¶ 13, 15(e)). It did, however, approve the settlement payments and consent to dismissal of West with prejudice as to Relators and without prejudice as to the United States. (*Id.* at ¶¶ 7, 15(e); *see also*, Doc. Nos. 132, 191).

Pursuant to the terms of the settlement, West provided additional documents to Relators and made witnesses available for Relators to interview. (Solinger Decl., Doc. No. 216-1, ¶ 13). Relators sought leave to file the Third Amended Complaint, adding allegations based on information learned as a result of West's cooperation. (Doc. No. 154). Relators filed the Third Amended Complaint on May 12, 2021. (Doc. No. 169). Among other things, the Third Amended Complaint adds the allegation that members of West Clinic admitted they performed no inpatient management services during its affiliation with Methodist.[2] (Doc. No. 169, ¶ 20) ("In recent interviews under the terms of the Settlement Agreement, West's senior leadership has confirmed that West did not perform inpatient management services at Methodist hospitals between 2012-2018."). Methodist moved to strike allegations in Third Amended Complaint that are based on post-pleading discovery and to dismiss the Third Amended Complaint.[3] (Doc. No. 174). That motion remains pending.

Upon learning of the allegations in the Third Amended Complaint, the United States informed Methodist and West that it was investigating the new allegations. (Sweet Decl., Doc. No. 205, ¶ 5). In June and July 2021, the United States conducted its own interviews of three West witnesses that Relators had previously interviewed, interviewed former Methodist executives (current Defendants) Gary Shorb and Chris McLean, and obtained additional information and documents from Methodist. (*Id.*, ¶¶ 12-16; Roark Decl., Doc. No. 196, ¶¶ 6-7). The United States

---

[2] Both Methodist and West dispute the veracity of these allegations. The United States clarified that, during follow-up interviews, the West witnesses "did not indicate that absolutely nothing was done in terms of inpatient management, West was very clear that it did not perform any management services at two of the six locations required by the MSA … and did very little management at [two other locations] for most of the contractual period." (Doc. No. 219 at 4).

[3] Methodist's Motion to Dismiss the Second Amended Complaint (Doc. No. 79) was mooted by the Third Amended Complaint.

claims that during these interviews, West witnesses "confirmed that [West] did not perform management services at all locations in the [services agreement]." (Sweet Decl., Doc. No. 205, ¶¶ 12, 15; Doc. No. 219 at 2). The Government states that when invited to provide exculpatory information, Methodist provided documents and witnesses that "raised more questions, including whether the payments [from] Methodist to [West] under the Professional Services Agreement also constituted illegal kickbacks." (Sweet Decl., Doc. No. 205, ¶ 16).

In August 2021, counsel for the Government informed Methodist that it would seek authority to intervene and informed the Court of the same during a telephone conference on September 17, 2021. (*See* Sweet Decl., Doc. No. 205, ¶ 17; Doc. No. 189). The parties jointly requested to postpone depositions pending resolution of the Government's motion to intervene and agreed to proceed with written discovery with a focus on issues in common to the theories expected to be raised by the Government in a potential Complaint in Intervention.[4] (*See* Doc. No. 189).

The Government filed the Motion to Intervene for Good Cause on October 8, 2021. As stated above, the Motion has been fully briefed, and the Court conducted a hearing on the Motion.

## II. ANALYSIS

Under the False Claims Act, a private person, known as a relator, may file a civil action on behalf of the United States. 31 U.S.C. § 3130(b)(1). After the relator files the complaint, the Government has 60 days, subject to extensions for good cause, to decide whether it wishes to intervene. *Id*. § 3730(b)(2). If the Government elects to intervene, the Government will conduct the action; and if the Government elects not to intervene, the relator conducts the action. *Id*. § 3730(b)(4)(A), (B). However, if the Government initially elects not to intervene, the court "may

---

[4] The United States indicates that it intends to pursue narrower theory of fraud than that alleged in the Third Amended Complaint.

5

nevertheless permit the Government to intervene at a later date upon a showing of good cause." 31 U.S.C. § 3730(c)(3).

The False Claims Act does not define "good cause." In considering what constitutes "good cause" for purposes of intervention, this Court has noted that good cause is "a uniquely flexible and capricious concept" defined as a "legally sufficient reason." *U.S. ex rel. Hinds v. SavaSeniorCare, LLC*, No. 3:18-cv-1202, 2021 WL 1663579, at *11 (M.D. Tenn. Apr. 28, 2011) (citing *U.S. ex rel. CIMZNHCA, LLC v. UCB, Inc.*, 970 F.3d 835, 846 (7th Cir. 2020)); *see also*, *Polansky v. Executive Health Resources, Inc.*, 17 F.4th 376, 392 (3d Cir. 2021) (good cause for intervening requires a "legally sufficient reason") (citing *CIMZNHCA*, 970 F.3d at 846).

This is not an extraordinarily high bar. At a minimum, "it must require the government to provide some justification for its untimely intervention." *Griffith v. Conn*, No. 11-157-ART-EBA, 2016 WL 3156497, at *3 (E.D. Ky. Apr. 22, 2016). Court have generally considered whether the Government has discovered new evidence, potential prejudice to the relator and defendants, and the public interest and balanced the government's justifications for intervention against any prejudice to defendants and relators. *Id.* (finding good cause where new evidence was uncovered, the government had remained an active participant in the case and continued to investigate, and the relator consented); *U.S. ex rel. Ross v. Indep. Health Corp.*, No. 12-cv-299S, 2021 WL 3492917, at *3 (W.D.N.Y. Aug. 9, 2021) (finding good cause where there is additional information relating to the magnitude of the alleged fraud and relator consented to intervention). The Court notes that these considerations are not conditions for finding good cause, they are merely relevant considerations. *See Griffith*, 2016 WL 3156497 at *2 n.1 (finding the "FCA requires the government to show only good cause for untimely intervention, not new and significant evidence").

Pointing to this Court's recent decision in *U.S. ex rel. Odom v. SouthEast Eye Specialists, PLLC*, No. 3:17-cv-689, ECF No. 104 (M.D. Tenn. Feb. 24, 2021) (Crenshaw, J.) (hereinafter "*SEES*"), Methodist and West argue the Court should require the Government to provide evidence of newly obtained information that was not readily available during the initial sealed investigation. Although the *SEES* decision did discuss whether certain information was available to the Government during the sealed investigation, the Court did not require the Government to show that it could not have obtained the information relevant to its decision to intervene during that time. As articulated by Judge Crenshaw during the hearing, the Court considered whether the Government presented new and sufficient evidence to establish good cause to intervene. *See* Feb. 24, 2021 Hearing Trans. at 37, *SEES*, Case No. 3:17-cv-689, ECF No. 105[5] ("The United States and Tennessee acknowledge that it has the burden to present [ ] new and sufficient evidence [ ] to establish good cause for their motions to intervene.")). In *SEES*, the Court concluded that the Government did not establish that there was new evidence to justify a finding of good cause and denied the motion to intervene. (*Id.* at 41).

Unlike in *SEES*, here, the United States unquestionably points to new evidence obtained as a result of West's cooperation pursuant to its settlement agreement with Relators. Specifically, the Government states that West representatives admitted in post-settlement interviews that West did not provide inpatient management services that Methodist paid for under the services agreements.[6] The United States also notes that, following the West settlement, it obtained

---

[5] The transcript of the Feb. 24, 2021 Hearing in *SEES*, Case No. 3:17-cv-689 (M.D. Tenn.) is filed on the record in this case at docket entry 195-2.

[6] The United States identifies additional information relevant to its decision to seek intervention. For example, new evidence to counter an advice of counsel defense, though it's unknown whether Methodist, which has not yet answered the complaint, will assert the defense. However, it appears the primary impetus for the United States' renewed interest in this matter were the new allegations in the Third Amended

7

thousands of additional documents from Methodist and interviewed Methodist witnesses. That there was likely evidence related to the provision of inpatient management services in Methodist's voluminous document production during the sealed investigation does not negate the significance of witness statements (characterized by the United States as "admissions") disclosing that the services contracted for were not provided. Moreover, the Court notes that the interviews conducted after the settlement were likely more fruitful that any interviews during the sealed period would have been. Not only was West under an obligation to cooperate with the Relators' investigation "fully, truthfully, and forthrightly," but also, at that point, it was neither a defendant in the case nor a target of the investigation.

Methodist and West also argue the Government has not shown good cause because it does not offer any evidence that the magnitude of the alleged fraud has been expanded as a result of the information obtained from West. They point to numerous courts that have identified "new evidence that escalates the magnitude or complexity of the fraud" as grounds for finding good cause for late intervention. *See e.g., Contra ex rel. Hall v. Schwartzmann*, 887 F. Supp. 60, 62 (E.D.N.Y. 1995) (finding good cause when newly discovered evidence expanded the possible fraudulent activity); *Ross*, 2021 WL 3492917, at *2 (finding good cause when defendants produced additional information relating to the magnitude of alleged fraud).

The Court is unpersuaded that good cause requires new evidence as to the magnitude of fraud. As discussed above, the statute does not define "good cause." In considering whether the Government has provided a "legally sufficient reason" or "some justification" to intervene, the Court notes that new evidence can bring value to a case in myriad ways. Maybe the alleged fraud

---

Complaint that, although Methodist paid West significant sums for inpatient management services, West did not provide any such services.

becomes so large it is impossible to ignore. Maybe the scope of the alleged fraud remains the same but the evidence proving the claims becomes stronger. Either of these developments affect the assessment of a case. It appears that here the Government believes the new evidence reduces the complexity of the claims, potentially makes certain fraud claims easier to prove, and will allow it to streamline the case such that the cost-benefit analysis, from the Government's perspective, now favors intervention.

The United States argues that intervention serves the public interest in protecting Federal health care programs from fraud. In addition, the Government asserts that it has significant resources and expertise in this area of law and may reduce judicial resources by narrowing the scope of the claims and streamlining the litigation.

The Court next turns to consideration of the potential prejudice to the parties in allowing the United States to intervene and change the scope of the claims at this stage in the litigation. Relators, who have been conducting the litigation on behalf of the United States and Tennessee, consent to the intervention. Accordingly, there is no prejudice to Relators in allowing the United States to intervene. However, as counsel for Relators noted during the hearing, although it is speculative to assume that if not permitted to intervene the Government would opt to pursue these claims through a separate action, such simultaneous litigation would prejudice Relators.

Methodist contends it will suffer prejudice in the form of additional delay, the burden of having to respond to another amended complaint, and the virtual certainty of additional discovery on the Government's new fraud theory. There is no doubt that Methodist has expended significant resources defending these claims. However, it does not appear that allowing the Government to control the litigation will significantly prolong the case. Although the parties were nearing the end of discovery when the United States moved to intervene, discovery to date has consisted primarily

9

Case 3:17-cv-00902   Document 232   Filed 03/11/22   Page 9 of 11 PageID #: 3608

of document production, which should include documents related to the narrowed claims. Additional document production, if any, should be minimal. The parties have not yet conducted any depositions, so there is not duplication of effort in that respect. In addition, the Government has remained involved in reviewing the discovery provided to date and had already initiated its own investigation into the new allegations, which further serves to minimize additional delay.

On the whole, the prejudice to Methodist is principally that of allowing what is undoubtedly a burdensome litigation to proceed. Other than the obligation to respond to a new narrowed complaint post-intervention, the additional burden on Methodist is minimal. In and of itself, this burden does not outweigh the Government's interest in controlling the litigation.

With regard to West – it is not currently a defendant in this case. Following settlement with Relators, West was dismissed from this action with the consent and approval of the United States. The United States has stated that, if allowed to intervene, it will seek to assert claims against West, noting that the dismissal of West was without prejudice to the United States. There is no question that West would be prejudiced by being reinserted into this case from which it has been dismissed. Not only is the evidence that serves the basis for the United States' good cause to intervene the direct result of West's cooperation pursuant to the settlement agreement, West argues that it proceeded with settlement discussions based, in part, on repeated assurances from the United States that it was not actively investigating the claims.

In addition to the obvious prejudice of going from "dismissed" to "defendant," reinsertion of West would unquestionably delay the proceedings. West states that it has been more than a year since it was dismissed from the case, and, because of the settlement discussions, it was not actively involved in discovery. Reinserting West as a defendant would cause unnecessary additional delay in the case.

### III. CONCLUSION

The Court finds that the United States has established good cause to intervene based on the new evidence obtained as a result of the West settlement. Accordingly, the United States Motion to Intervene for Good Cause will be GRANTED. However, the United States will be permitted to Intervene only as to the current Defendants. The Court is fully cognizant that the West settlement was only with Relators and that West was dismissed from this action without prejudice as to the United States. Nevertheless, West has been dismissed from this action. The Court does not find good cause to reinsert West at this stage of the case – to do so would not only prejudice West, but would cause undue delay in the proceedings. The United States shall file an amended complaint in intervention – limited to claims against only current defendants – within 30 days.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE