IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JEFFREY H. LIEBMAN and DAVID M. STERN, M.D., <br><br> Plaintiff-Relators, <br><br> v. <br><br> METHODIST LE BONHEUR HEALTHCARE and METHODIST HEALTHCARE-MEMPHIS HOSPITALS, <br><br> Defendants. | Case No.: 3:17-cv-00902 <br><br> District Judge William L. Campbell, Jr. <br><br> Magistrate Judge Barbara D. Holmes |

**JOINT DISCOVERY DISPUTE STATEMENT**

Pursuant to the Sixth Modified Case Management Order (ECF No. 252), which adopted the procedure for resolution of discovery disputes contained in the Initial Case Management Order (ECF No. 93), the United States, together with Relators, and Defendants Methodist Le Bonheur Healthcare and Methodist Healthcare – Memphis Hospitals (collectively, "Methodist") submit this Joint Discovery Dispute Statement in furtherance of a discovery conference with the Court relating to whether Methodist may withhold as privileged certain communications and documents that were sent to or from Methodist's outside consultants and appraisers, as well as communications relating to fair market value opinions on which Methodist purports to rely in defending the allegations in this action. For the Court's convenience, the United States has highlighted relevant entries on Methodist's privilege and redaction logs that are the subject of this dispute, which are attached hereto as Exhibit A (privilege log) and Exhibit B (redaction log).

The parties have had extensive communications concerning the disputed issue, and lead counsel for all parties have discussed this issue in person during the depositions conducted to date. The parties have made a good faith effort to resolve their dispute but were unable to do so.

Accordingly, the parties now bring this issue to the Court for resolution.

A.  **United States/Relators' Position and Authorities**

Methodist and non-party the West Clinic, P.C. ("West") retained certain consultants and appraisers, including PricewaterhouseCoopers, LLC ("PwC"), HealthCare Appraisers, Inc. ("HAI") and ECG Management Consultants, Inc. ("ECG"), as well as those relating to Methodist' acquisition of certain West assets and its investment in ACORN Research, LLC, pursuant to a multi-agreement transaction that Methodist and West entered into in December 2011, which is the subject of this litigation. (ECF No. 235, ¶¶ 112, 122, 134, 146.) Methodist retained PwC on July 5, 2011 as a business consultant in structuring a relationship between Methodist and West, which is referenced in the Management Services/Performance Improvement Agreement ("MSA"). (Ex. C.) PwC was not retained to provide legal advice. (*Id.*) PwC produced a report that was presented to Methodist and West. (Ex. D.) Methodist initially withheld this report as privileged during the investigative phase. In 2021, the United States requested production of the document, which also was referenced in the MSA. Thereafter, Methodist agreed to produce it, but has withheld other communications. (Ex. E.)

Jones Day, counsel for Methodist, retained HAI on August 9, 2011 to provide an independent fair market value ("FMV") opinion of the management services that West was supposed to provide under the MSA. (Ex. F.) HAI expressly indicated that it was not providing legal advice. (*Id.*) In February 2012, HAI provided an FMV opinion for the amount of

management services, which has been produced. (Ex. G.) Methodist has withheld certain communications with HAI on the basis that they reflect legal advice. Similarly, Methodist retained ECG on April 7, 2011 to provide an independent fair market value opinion for the Professional Services Agreement ("PSA") with West. (Ex. H.) On October 5, 2011, ECG provided an FMV opinion, which has been produced (Ex. I), but other communications have not.

On July 9, 2022, the United States advised Methodist that the communications with third party consultants and valuators, which includes those retained through the relationship between Methodist and West, were not privileged and must be produced. (Ex. E.) On July 22, 2022, Methodist produced some of the communications and continued to withhold the majority of the documents at issue on the basis of privilege. Following the production, the United States immediately responded asking for the rest of the documents to be produced. Methodist refused.

Methodist, as the party seeking to withhold documents as privileged, has the burden to demonstrate that the documents are not discoverable. *Humphreys, Hutcheson and Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985). Communications with third parties generally are not privileged. Merely because internal or external counsel is included on a communication does not render a communication privileged. Further, even if communications contain legal advice, any privilege over such communications is waived if sent to a third party. *E.E.O.C. v. Texas Hydraulics, Inc.*, 246 F.R.D. 548, 554 (E.D. Tenn. 2007) (attorney-client privilege waived through voluntary disclosure of communications to third parties). Moreover, to the extent Methodist intends to rely on these independent reports and opinions, Methodist cannot assert privilege over the underlying communications. *See Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888, 892 (M.D. Tenn. 2010) (Trauger, J.) (finding that defendant could not use an investigative "report as a sword

3

… then later shield discovery of the documents underlying the report by asserting privilege or work product protection").

Here, the documents at issue involve third party consultants (*e.g.*, PwC, HAI and ECG) retained to provided business advice to both Methodist and West, involving what was supposed to be an arms' length business transaction. That HAI and ECG provided "independent" FMV opinions further evinces that there was not, and could not be, any privilege in the communications in particular. To provide inside information would render the independence of the opinions null.

Sixth Circuit case law is instructive on precisely the disputed issue, S*hahbabian v. TriHealth, Inc.*, Case No. 1:18-cv-790, 2019 WL 4958114 (S.D. Ohio Oct. 8, 2019). In that case, the court found that the documents contained "underlying factual valuation consulting data and correspondence concerning FMV determinations," which were discoverable. *Id.* at *3, 5.

In response, Methodist has broadly claimed that the communications involve "legal advice" and has refused to address the United States' arguments that it cannot use FMV opinions as a sword and a shield under *Reitz*.

Even if Methodist could somehow claim privilege over the communications (and it cannot), it has waived any privilege by relying on the documents offensively. In Methodist's public statements on a website devoted to defending this litigation, as well as in its Answer (ECF No. 242) and responses to the United States' Interrogatories (Ex. J, Response to Interrogatory No. 2), and in communications with counsel, Methodist has indicated that it is relying on these outside consultants who provided business information and FMV opinions to show that the transaction was allegedly lawful and that payments made under the various agreements were appropriate as a

4

defense to the United States' assertion that Methodist paid West remuneration, as that term is defined in the Anti-Kickback Statute.

The United States is scheduled to depose Scott Safriet of HAI on September 8, 2022, and it seeks a determination of whether communications involving HAI are privileged in advance of this deposition, as well as the other communications that may bear on other discovery to be taken.

B.  **Methodist's Position and Authorities**

   a. Background

In late 2010, The West Clinic ("West") sent a Request for Proposal to hospital systems in the Memphis area expressing West's desire to pursue an affiliation to develop a regional cancer center. In 2011, Methodist's legal counsel engaged numerous valuation and consulting firms, including Healthcare Appraisers, Inc. ("HAI"), ECG Management Consultants, Inc. ("ECG"), and Pricewaterhouse Cooper ("PwC" and, collectively, the "Consultants"), to help it provide legal advice to Methodist relating to a possible affiliation with West.[1] Jones Day engaged HAI "to assist [Jones Day] in providing legal advice" to Methodist in relation to "the fair market value ("FMV") range of compensation payable by [Methodist] to [West] under the oncology management arrangement." (Ex. F.) ECG was engaged to conduct a "fair market value (FMV) analysis that will be conducted in coordination with Jones Day, Methodist's legal counsel." (Ex. H.) PwC was engaged to "facilitate the development of a Co-Management Company for the Oncology Service Line" and to "assist with certain phases of planning, strategic decision making, and development related to the co management alignment strategy." (Ex. C.)

---

[1] Methodist's outside counsel, Jones Day, engaged the services of HAI, and Methodist's in-house counsel, Lynn Field, engaged the services of ECG and PwC.

5

The government and Relators requested during the government's sealed investigation and in discovery that Methodist produce documents related to the services the Consultants provided. Methodist produced documents and communications related to the Consultants' work. Because Methodist engaged the Consultants through legal counsel to assist counsel in providing legal advice, Methodist also withheld some communications with the Consultants as privileged. Methodist produced its initial privilege log detailing documents and communications it withheld on February 16, 2021. It produced an amended supplemental privilege log on March 3, 2021.

On July 9, 2022, more than one year after Methodist provided its privilege log, the government informed Methodist that it believed that the FMV opinions "as well as any correspondence relating to these opinions, must be produced." (Ex. E.) The government stated that the Consultants were "third parties retained to provide business advice," and the FMV opinions and correspondence related to the opinions are not privileged. (*Id.*) In response to those concerns, Methodist re-reviewed all of the documents related to the Consultants' services that it had withheld as privileged. Based on its re-review, Methodist determined that the primary purpose of some of the withheld communications was to provide business advice rather than legal advice. Methodist produced those communications and removed them from its privilege log. Methodist continued to withhold communications for which it confirmed, based on its re-review, the primary purpose of the communication was to provide legal advice.

b. **Legal Authorities**

Lawyers often require the expertise of non-lawyer professionals to provide their clients legal advice. *Genesco, Inc. v. Visa U.S.A., Inc.* 302 F.R.D. 168, 190 (M.D. Tenn. 2014); *United States v. Kovel*, 296 F.2d 918, 920-23 (2nd Cir. 1961). In those circumstances, the attorney-client

privilege can extend to the third party who assists the lawyer in providing legal advice. 302 F.R.D. at 190. Communications providing business advice to a client, however, are not privileged. *See Shahbabian v. Trihealth, Inc.*, 2019 WL 4958114, at *6 (S.D. Ohio Oct. 8, 2019).

To determine whether a communication involving a third-party consultant assisting legal counsel is privileged, courts analyze whether "the primary purpose and/or dominant intent" of the communication was to seek or provide legal advice. *Id.* "[L]egal and business considerations may frequently be inextricably intertwined. . . . The mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege." *Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 113, 117 (E.D. Mich. 2019) (internal quotation omitted). "[I]n determining whether advice is predominately legal or business in nature, courts should resolve doubts in favor of the privilege." *Id.* (citing *Ganley v. Mazda N. Am. Operations*, 2007 WL 9706988 (N.D. Ohio Nov. 15, 2007)).

In other cases involving FMV opinions, courts have refused to adopt an all-or-nothing approach. *Shahbabian*, 2019 WL 4958114, at *6. Determining the primary purpose of a communication is a document-specific analysis. *Id.* Where courts have found that "accounting documents and data that underlie the FMV analysis" are not privileged, they "conclude that the materials simply are not subject to the privilege, and not that any asserted privilege is waived based on the central issues in dispute." *Id.*

Methodist adopted exactly that approach in analyzing its communications with the Consultants. Methodist does not argue that all documents relating to the Consultants' work are privileged or that any communication involving an attorney is privileged. Rather, Methodist withheld only those communications for which the primary purpose was to assist either outside or

in-house counsel in providing legal advice to Methodist regarding the affiliation with West. Whether any engagement letters with Consultants disclaim providing legal advice to Methodist is irrelevant. As this Court recently acknowledged, "the ability of a non-attorney to lawfully provide 'legal advice' in Tennessee is limited." *Ciccio v. SmileDirectClub, LLC*, 2022 WL 2910501, at *5 (M.D. Tenn. July 22, 2022). Nonetheless, "the attorney-client privilege may extend to communications involving a third party who was retained to provide support for the *attorney's own* provision of legal advice." *Id.* In accordance with that principle, Methodist re-reviewed all of the communications related to the Consultants' work and continues to withhold only those for which the primary purpose was to support the provision of legal advice.

Dated August 23, 2022

MARK H. WILDASIN
United States Attorney
Middle District of Tennessee

  s/ Kara F. Sweet
KARA F. SWEET
WYNN M. SHUFORD
U.S. Attorney's Office
Middle District of Tennessee
719 Church Street, Suite 3300
Nashville, TN 37203
(615) 736-5151
kara.sweet@usdoj.gov
wynn.shuford@usdoj.gov

*Attorneys for United States*

 s/ Jerry E. Martin
JERRY E. MARTIN (TNBPR No. 20193)
SETH HYATT (TNBPR No. 31171)
Barrett, Johnston Martin & Garrison, LLC
414 Union Street, Suite 900
Nashville, TN 37219
Phone No. (615) 244-2202
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com

 s/ Bryan A. Vroon
BRYAN A. VROON, Esq. (Admitted *Pro Hac*)
Law Offices of Bryan A. Vroon, LLC
1380 West Paces Ferry Road, Suite 2270
Atlanta GA 30327
Phone No. (404) 441-9806
bryanvroon@gmail.com

 s/ Edward D. Robertson, Jr.
EDWARD D. ROBERTSON, JR. (Admitted *Pro Hac*)
Bartimus Frickleton Robertson & Rader, P.C.
109b East High Street
Jefferson City, MO. 65101
Phone No. (573)659-4454
crobertson@bflawfirm.com

*Attorneys for Relators Jeffrey Liebman
and David Stern*

 s/ Brian D. Roark
BRIAN D. ROARK
J. TAYLOR CHENERY
TAYLOR M. SAMPLE
HANNAH E. WEBBER
Bass, Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Phone No. (615) 742-6200
broark@bassberry.com
tchenery@bassberry.com
taylor.sample@bassberry.com

9

Case 3:17-cv-00902    Document 257    Filed 08/23/22    Page 9 of 10 PageID #: 3896

hannah.webber@bassberry.com

  s/ Robert Salcido
ROBERT SALCIDO (Admitted *Pro Hac*)
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, N.W.
Washington, D.C. 20006
Phone No. (202) 887-4095
rsalcido@akingump.com

*Attorneys for Defendants Methodist Le Bonheur Healthcare
and Methodist Healthcare-Memphis Hospitals*