IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JEFFREY H. LIEBMAN and DAVID M. STERN, M.D.,<br><br>Plaintiff-Relators,<br><br>v.<br><br>METHODIST LE BONHEUR HEALTHCARE and METHODIST HEALTHCARE-MEMPHIS HOSPITALS,<br><br>Defendants. | Case No.: 3:17-cv-00902<br><br>District Judge William L. Campbell, Jr.<br><br>Magistrate Judge Barbara D. Holmes |

## DISCOVERY DISPUTE STATEMENT

Pursuant to the Sixth Modified Case Management Order (Dkt. No. 252), which adopted the procedure for resolution of discovery disputes contained in the Initial Case Management Order (Dkt. No. 93), Defendants Methodist Le Bonheur Healthcare and Methodist Healthcare – Memphis Hospitals (collectively referred to as "Methodist") submit this Discovery Dispute Statement related to five issues concerning the government's responses to Methodist's discovery requests. Methodist is filing a contemporaneous Motion for Discovery Conference with the Court.

### I. Discovery in Dispute

The government's responses and objections to Methodist's discovery requests set forth below are in dispute. Pursuant to Local Rule 37.01(b), those discovery requests and responses are attached as Exhibits 1 – 3 to this Joint Statement.

**Issue 1:** Whether the government must identify in response to Methodist's discovery requests the false claims that it alleges Methodist submitted to the government. This issue relates to Methodist's Interrogatory Nos. 1, 3-4 and Requests for Production Nos. 14-15, 18-19.

**Issue 2:** Whether the government must produce information and documents related to factual allegations or theories of liability pled in its Complaint or, alternatively, must confirm that it will abandon those factual allegations and theories of liability if it will not produce discovery relevant to them. This issue relates to Methodist's Interrogatory Nos. 10-13, 15 and Requests for Production Nos. 20-25, 33.

**Issue 3:** Whether the government can stand on statements that it is "not aware" of responsive information or documents without disclosing the process it undertook to locate and collect responsive information and documents, including the sources of information searched. This issue relates to Methodist's Interrogatory No. 17 and Requests for Production Nos. 8-10, 16, 20-27, 29-33.

**Issue 4:** Whether the government must provide in response to Methodist's contention interrogatories specific facts to support the government's contentions pled in its Complaint. This issue relates to Methodist's Interrogatory Nos. 16, 18-19.

**Issue 5:** Whether the government must admit, deny, or state in detail why it cannot truthfully admit or deny each of Methodist's Requests for Admission. This issue relates to Methodist's Requests for Admission Nos. 3-5, 7-8.

## II. Details of Attempts at Resolution

After granting the government permission to intervene in this case, the government conducted a status/case management conference on June 7, 2022, and entered the Sixth Modified

Case Management Order on June 14, 2022. On June 15, 2022, Methodist issued its Interrogatories, Requests for Production, and Requests for Admission to the government. The government served responses to Methodist's Requests for Production and Requests for Admission on July 15, 2022, and served responses to Methodist's Interrogatories on July 25, 2022.

Beginning August 1, 2022, the parties exchanged letters and emails related to the government's discovery responses and conducted a telephonic meet and confer on August 8, 2022. The parties exchanged additional letters and emails on August 8, August 10, and August 12, 2022, and Methodist sent the government a draft joint discovery dispute statement regarding the government's responses on August 19, 2022. The government served amended responses to Methodist's Interrogatories, Requests for Production, and Requests for Admission on August 22, 2022. The parties exchanged additional letters and emails about the government's responses on August 24 and 25, 2022. On August 25, 2022, the government confirmed to Methodist "there appears to be no need to confer further" because Methodist continued to express the same concerns about the government's amended responses that it expressed with respect to the government's initial responses. On August 26, 2022, Methodist sent the government a draft joint discovery dispute statement related to the five issues set forth above and requested that the government provide its position statement by August 29, 2022. On August 27, 2022, the government proposed waiting to file a joint discovery dispute statement to include other, unidentified discovery disputes. On August 29, 2022, Methodist again requested that the government provide its position statement

3

and informed the government that it intended to file a motion for discovery conference and this Discovery Dispute Statement on August 30, 2022.[1]

### III. Methodist's Position and Authorities

#### a. Background

Relator Jeffrey Liebman filed his *qui tam* complaint under seal alleging violations of the False Claims Act against Methodist on May 20, 2017. The government investigated Liebman's claims for more than two years and informed the Court in September 2019 that it would not intervene at that time. (Dkt. Nos. 44, 45.) Liebman's Second Amended Complaint, which added Dr. David Stern as a second relator, was unsealed and made available to Methodist on December 19, 2019. After an initial case management conference on March 23, 2020, Relators and Methodist proceeded with discovery for eighteen months. (Dkt. No. 93.)

On October 8, 2021, the United States filed a motion to intervene in the case. (Dkt. No. 193.) During a hearing on that motion in March 2022, the government represented to the Court that after the case was unsealed, the government had been "monitoring what was going on in the case, staying in touch with the Relators, keeping abreast of what was happening, reviewing – reviewing the documents and the materials." (Dkt. No. 234 at 49.) The government stated it understood that it was "going to have to come in no matter what at some point and provide

---

[1] Given that Methodist provided this draft Joint Statement to the government on August 26 and has not yet received the government's position, Methodist is not in a position to wait longer for the government's response. Methodist served its discovery requests the day after the Court issued the operative case management order and has diligently followed up with the government about its discovery responses. More than two months of the three-month post-intervention discovery period has lapsed, and Methodist cannot continue to wait longer to raise these issues with the Court with less than a month remaining in the fact discovery period.

4

presumably information, documents, possibly testimony…." (*Id.* at 48.) After the Court granted the United States' motion to intervene, it entered the current case management order on June 14, 2022. (Dkt. No. 252.) Methodist served its discovery requests the next day, on June 15, 2022. More than two months later, the government still refuses to respond substantively to many of those requests.

### b. Identifying Allegedly False Claims and Damages (Interrogatory Nos. 1, 3, 4 and Request for Production Nos. 14-15, 18-19)

Methodist's Interrogatory No. 1 seeks the identification of the specific false claims that the government alleges Defendants submitted, including the damages associated with those claims. Interrogatory Nos. 3 and 4 seek the identification of referrals made in violation of the Anti-Kickback Statute ("AKS") and the damages the government claims from those referrals. Requests for Production Nos. 14-15 and 18-19 seek corresponding documents on the same topics.

In response, the government's answer refers to "claims data produced in this action by the United States and West" and estimates that the "tainted Medicare claims" from outpatient referrals is "over $300 million" and the inpatient claims is "over $50 million." The response also references additional undefined damages "arising from tainted referrals for drug prescriptions."

Through multiple rounds of email exchanges, Methodist confirmed that the "claims data produced in this action by the United States" as stated in the government's response refers to 14 files of claims data produced on July 8, 2022. However, the government continues to equivocate and refuses to confirm whether there are any additional false claims for which it seeks to hold Methodist liable.

In an email dated August 19, 2022, government counsel stated that "[t]he United States has

5

not yet had a chance to fully compare the claims data produced by West and Methodist with the data the United States has produced, and we are not in a position to supplement our interrogatory response at present." (Ex. 4.) Government counsel also noted that it still intended to seek damages relating to "prescription drug data" but needed more information from Methodist to be able to do so and "[t]he United States is not yet in a position to quantify the specific claims." (*Id.*) The government indicated that "[a]s we continue to proceed through fact and expert discovery, we will further supplement our discovery responses and clearly identify the damages sought. That is precisely why there is fact and expert discovery." (*Id.*) However, Methodist has produced data related to its prescription drug pricing under the Medicare 340B Drug Pricing Program. Far more importantly, the government has not explained why it cannot produce data related to claims submitted to the government that it alleges were false.

In an FCA case, the government's core burden is to identify the false claims the defendant submitted to the government, which are "the *sine qua non* of a False Claims Act violation." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007). Courts routinely require the government to identify in fact discovery each false claim it alleges the defendant submitted. *See, e.g., U.S. ex rel. Fry v. Guidant Corp.*, 2009 WL 3103836, at *2 (M.D. Tenn. Sep. 24, 2009).

Now more than five years into this litigation, and more than four months after the government asserted in its Complaint that Medicare paid over $300 million on outpatient claims and over $53 million on inpatient claims (Dkt. No. 235, ¶ 331), Methodist, with less than a month left in fact discovery, is entitled to know which specific claims the government is alleging were false and what specific line items or entries the government contends resulted in damages. General

6

Case 3:17-cv-00902   Document 260   Filed 08/30/22   Page 6 of 17 PageID #: 4237

references to "claims data," along with unsworn characterizations of "testimony" and "internal documents" do not satisfy the government's discovery obligations. The government's refusal to identify the false claims at issue undermines Methodist's ability to defend itself against the allegations of fraud, leaving it to guess about which claims, referrals, services, physicians, or "drug prescriptions" the government ultimately intends to put at issue at trial.

The government's argument that it does not have to identify the false claims until expert discovery also has no basis. In *U.S. ex rel. Hinkle v. Caris Healthcare, L.P.*, No. 3:14-cv-212, Mem. & Order, Dkt. 95 (E.D. Tenn. Aug. 16, 2017) (attached as Ex. 5), the court rejected a similar argument from the government that answering interrogatories would "effectively require the Government to disclose its expert's report." *Id*. at *5. As that court explained, identifying the factual information sought here – claim numbers, dates, amounts – "does not require the 'scientific, technical or other specialized' information that only an expert can provide." *Id*. at *6. Additionally, forcing Methodist to wait until expert discovery to even know the claims the government contends are false would hamstring Methodist's ability to defend itself, concealing core allegations of wrongdoing until after fact discovery is closed, and preventing Methodist from taking discovery related to the allegedly false claims.

Methodist seeks confirmation from the government that the 14 files of claims data produced by the United States on July 8, 2022, is the complete universe of false claims in this action, or for the government to immediately and specifically identify (by claim number, date, and amount) any additional false claims. Methodist has a pending Rule 30(b)(6) deposition notice on the government and needs the government's response to examine effectively the government

7

witness regarding the government's purported false claims before fact discovery closes.[2]

### c. Requests Related to Allegations or Theories Pled in the Complaint (Interrogatory Nos. 10-13, 15 and Requests for Production Nos. 20-25, 33)

The crux of this lawsuit is whether Methodist violated the AKS by paying unlawful remuneration to West Clinic ("West") in exchange for patient referrals. The government asserts that the existence of certain facts—e.g., the level of physician compensation versus physician collections, the supposed lack of certain types of documentation, the methodology used in fair market value analyses—tend to show a violation of the AKS. To defend against those allegations, Methodist has sought discovery regarding whether there is *any* governmental guidance that supports the government's contention that those alleged facts show a violation of the AKS.

Obtaining such information (or establishing that there is no governmental guidance) is key to Methodist's defense because a claim is not "false" under the FCA unless it is inconsistent with a controlling rule, regulation, or standard that authorizes it. *See, e.g., United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 674–75 (5th Cir. 2003). Further, defendants cannot knowingly submit false claims when they act within a reasonable interpretation of an ambiguous law and there

---

[2] The government objects to some of these requests as not proportional to the needs of the case. All of these requests satisfy Rule 26(b)'s proportionality requirement. The government alleges damages of "hundreds of millions of dollars" in this case. (Dkt. No. 235 ¶ 1.) Information and documents about which claims the government contends are at issue in this case are, by definition, solely in the government's possession. Methodist should not be left to guess as to which claims the government contends are at issue. Only the government can provide that information. As the Court recognized in allowing intervention, "the Government assert[ed] that it has significant resources" at its disposal, which it can use to respond to Methodist's discovery requests. (Dkt. No. 232 at 9.) The discovery sought is critical to resolving the issues in dispute because it requests basic information that the government contends support its claims against Methodist. All of the factors in Rule 26(b)'s proportionality requirement weigh in favor of the government providing the requested documents and information.

is no official government guidance to warn defendants away from their interpretation.  *See, e.g., U.S. ex rel. Olhausen v. Arriva Med., LLC*, 2022 WL 1203023, at *2 (11th Cir. Apr. 22, 2022); *U.S. ex rel. Proctor v. Safeway, Inc.*, 30 F. 4th 649 (7th Cir. 2022).

For example, Methodist seeks information relating to the payment of wRVUs through a professional services agreement ("PSA"). (*E.g.,* Interrogatory Nos. 10(a), 11(a), 12(a), 13(a), 15(a).)  The Complaint specifically alleges that the PSA between Methodist and West violates the AKS in part because the utilization of wRVUs meant that the aggregate compensation paid under the PSA "was not set in advance."  (Dkt. No. 235 ¶¶ 131, 136.)

Methodist seeks information relating to appropriate ratio of professional collections to physician compensation. (*E.g.,* Interrogatory Nos. 10(b), 11(b), 12(b), 13(b), 15(b).)  The Complaint specifically alleges that the compensation paid by Methodist to West under the professional services agreement exceeded the amount of professional collections Methodist received for the West physicians' services, (Dkt. No. 235 ¶¶ 278–79), and the government specifically identifies this as a type of unlawful remuneration in response to Methodist's Interrogatory No. 2 (which asks the government to identify "all unlawful remuneration").

Methodist seeks information relating to the definition of "fair market value" as it relates to physician compensation.  (*E.g.,* Interrogatory Nos. 10(c), 11(c), 12(c), 13(c), 15(c).)  The Complaint contains specific allegations relating to the terms of the fair market value opinions obtained by Methodist to support the payment of wRVUs to West, (Dkt. No. 235 ¶ 134), and the government's response to Interrogatory No. 2 claims that the wRVU payments for professional services amounted to unlawful remuneration under the AKS.

Methodist seeks information regarding whether the United States has ever required

9

timesheets or other similar documentation to justify the payment of management fees under a management agreement. (*E.g.,* Interrogatory Nos. 10(g), 11(g), 12(g), 13(g), 15(g).) The Complaint specifically alleges that Methodist never asked West for any time records to support the payment of management fees, (Dkt. No. 235 ¶ 246), and the government's response to Interrogatory No. 2 expressly states that the absence of "time records" kept by West and requested by Methodist is evidence that the management fees are unlawful remuneration.

Remarkably, the government objects to each of these interrogatories on grounds that the information sought is "not relevant to any material fact in dispute" because the government does not intend to "rely[] on any sub-regulatory guidance or other laws as a basis for the claims asserted in this action." The fact that the government does not intend to rely on such information in no way relieves it of the obligation to provide responsive information to Methodist in discovery. If that were the case, then a party would only produce documents or information supporting its position while withholding harmful information that it did not intend to rely on.

The government cannot argue that Methodist violated the AKS by, for example, paying West more in compensation for professional services than the amount of professional collections received for those services, but then refuse to provide discovery to Methodist regarding guidance that the government has issued on that topic. In response to Interrogatory No. 8, which asks the government to identify "every instance in which You allege Defendants did not comport with relevant industry guidance, including but not limited to guidelines published by HHS-OIG or CMS," the government answered that "Methodist was aware of the AKS **and the industry guidance** against partnerships between hospitals and physicians related to financial arrangements that would violate the AKS." (emphasis added). Yet, in response to interrogatories asking the

10

government to identify that **industry guidance**, the government has responded that Methodist's requests are "not relevant."

Given the government's contentions that these alleged facts tend to show a violation, Methodist is entitled to show that there is not *any* governmental guidance that supports the government's contention that these alleged facts show a violation of the AKS or that, at a minimum, there is no "official" governmental guidance that would warn defendants from their reasonable interpretation that no such guidance exists. The government needs to either renounce its prior positions so no discovery is needed or if it intends to rely on those contentions, like any other party, produce the information it possesses related to the position it has asserted.

### d. Lack of Awareness of Responsive Information or Documents (Interrogatory No. 17 and Requests for Production Nos. 8-10, 16, 20-27, 29-33)

In its initial discovery responses, the government stated that it was "not aware" of documents or information relevant to certain of Methodist's requests and therefore produced no such documents or information. In its initial deficiency letter dated August 1, 2022, Methodist requested that the government summarize the steps it took to identify, collect, and produce responsive documents and information to establish that the government was "not aware" of responsive documents or information. (*See* Ex. 6.) The government did not provide that information. Instead, it served amended discovery responses in which it *added* to its responses to numerous *additional* requests the unsupported statement that the government "is not aware" of responsive documents or information. As Methodist noted after receiving the government's amended discovery responses, the government still has not provided any information about the

steps it took to identify, collect, and produce documents or information responsive to those requests. (*See* Ex. 7.)

The government cannot make itself "unaware" of responsive documents or information by failing to adequately search for such documents or information. For example, Request for Production Nos. 21 and 23 seek communications with third parties, including healthcare providers, and Medicare Contractors regarding multiple topics raised in the government's Complaint, including, among other things, compensation formulas and ratios for payment of professional services performed by physicians and the definition of and process for calculating the fair market value of compensation paid to physicians. Request for Production No. 33 seeks documents and communications related to other enforcement actions on those same topics set forth in the government's Complaint. The government responds that it is "not aware" of a single responsive document or action, but it strains credulity that none exist. And, the government still has not explained how or even whether it attempted to obtain responsive documents or information.

Methodist does not expect the government to produce documents where none exist and expects that the government may not have documents responsive to some requests. If the government refuses to provide *any* responsive documents or information, however, Methodist is entitled either to an unqualified, clear representation that none exist or, at a minimum, an explanation of the steps the government took to identify, collect, and produce responsive documents and information such that it was unable to locate any.

    e. **Responses to Methodist's Contention Interrogatories (Interrogatory Nos. 16, 18-19.)**

"An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact…." Fed. R. Civ. P. 33(a)(2). "'Contention'

12

interrogatories are interrogatories that seek to clarify the basis for or scope of an adversary's legal claims. The general view is that contention interrogatories are a perfectly permissible form of discovery, to which a response ordinarily would be required." *Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 421 n.2 (6th Cir. 1998), *aff'd sub nom. Cunningham v. Hamilton Cnty., Ohio*, 527 U.S. 198 (1999) (citing *Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997); *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996)). The government refuses to respond substantively to three of Methodist's contention interrogatories.

The Complaint contains numerous allegations relating to the so-called "Foley model" that Foley & Lardner allegedly marketed and presented, including allegations that the model presented risks under the AKS and that Methodist acted with knowledge of those risks. (Dkt. No. 235 ¶¶ 89-95, 108, 112, 140, 142, 244 & n.10, 280, 308.) Interrogatory No. 16 asks the government to identify instances in which it contends Foley & Lardner or anyone else communicated those risks to Methodist. The government's responses do not identify any such instance and state that West's Erich Mounce attended "throughout the course of the parties' relationship" but identify no specific instance.

Interrogatory No. 18 asks the government to identify all facts supporting its allegation in paragraph 2 of the Complaint that the creation of a "legal partnership" between Methodist and West "likely would have run afoul of regulatory requirements for participation in federal health care programs." The government's responses "refer[] to the presentations Foley gave that are in the production and the internal documents that Methodist has produced, including materials produced by PwC." The government does not identify any specific documents or provide any specific facts that answer this interrogatory.

13

Interrogatory No. 19 asks the government to identify all facts supporting its allegation in paragraph 238 of the Complaint that "Methodist and West acknowledged to the United States that much of the management services required under the MSA did not occur in the first two years." In response, the government identifies no facts but refers generally to statements made during informal interviews of five witnesses that counsel for the government and Relators conducted in 2021 and which the government and Relators prohibited Methodist and its counsel from attending. The government also states that "intends to supplement this response further **after the close of fact discovery**." (Interrogatory Resp. No. 19) (emphasis added).

The government must provide all of the specific facts that it contends support the above allegations *before the close of fact discovery*.

### f. Responses to Methodist's Requests for Admission (Request for Admission Nos. 3-5, 7-8)

Federal Rule of Civil Procedure 36 provides that a party may request that another party admit the truth of any matters within the scope of discovery set forth in Rule 26(b)(1). Fed. R. Civ. P. 36(a)(1). "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). The responding party may only assert lack of knowledge or information as a reason for failing to admit or deny if it states that it has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny. *Id.* If the Court determines that an answer does not comply with Rule 36, it may order either that the matter is admitted or that an amended answer be served. Fed. R. Civ. P. 36(a)(6).

In response to Methodist's Requests for Admission Nos. 3 and 5, the government states that it "has not investigated" the subject of those Requests. In response to Methodist's Requests

14

for Admission Nos. 4, 7, and 8, the government states that it "has not considered such issues in connection with this litigation and is not under any obligation to do so." Those responses directly contradict the government's obligation to admit or deny the Requests or to make a reasonable inquiry to obtain information to admit or deny each Request.

Each of Methodist's Requests is relevant to the claims and defenses in this case. Request No. 4 relates to specific factual allegations set forth in the government's Complaint.[3] Request Nos. 7 and 8 relate to rules or guidance proposed or set forth by the government that relate to allegations in the Complaint. Request Nos. 3 and 5 relate to whether the government has identified adverse patient outcomes related to the affiliation that is the subject of the government's Complaint.[4]

Because the government has refused repeatedly to respond to these Requests, and in light of the impending September 23, 2022 deadline for fact discovery, Methodist respectfully requests

---

3 The government claims that no response is required because Methodist's Request for Admission, which concerns guidance the government has furnished underlying the government's contentions in this lawsuit, is not relevant. But the guidance the government issues regarding a disputed legal issue is extraordinarily relevant to determining whether a defendant knowingly violated the law. *See, e.g., U.S. ex rel. Olhausen v. Arriva Med., LLC*, No. 21-10366, 2022 WL 1203023, at *2 (11th Cir. Apr. 22, 2022); *U.S. ex rel. Proctor v. Safeway, Inc.*, 30 F. 4th 649 (7th Cir. 2022); *U.S. ex rel. Sheldon v. Allergan Sales, LLC*, 24 F.4th 340, 343-44 (4th Cir. 2022); *U.S. ex rel. Schutte v. SuperValu Inc.*, 9 F.4th 455, 472 (7th Cir. 2021); *United States v. Allergan, Inc.*, 746 F. App'x 101, 109-10 (3d Cir. 2018); *U.S. ex rel. McGrath v. Microsemi Corp.*, 690 F. App'x 551, 552 (9th Cir. 2017); *U.S. ex rel. Donegan v. Anesthesia Assocs. of Kansas City, PC*, 833 F.3d 874, 880 (8th Cir. 2016); *U.S. ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 289 (D.C. Cir. 2015).

4 The government objects on the basis of relevance. But the government contends that Methodist entered into a multi-year sham arrangement regarding the provision of cancer care involving thousands of patients. Methodist can surely contend that if, as the government alleges, the arrangement were a sham, it would be manifested in some type of patient harm, and the fact that none has been identified tends to show that the arrangement was not a sham but a bona fide arrangement under which valuable services were provided. If the government has not identified any adverse patient impact, it need only admit that fact.

15

that the Court order that the matters set forth in Request Nos. 3-5 and 7-8 are admitted. Alternatively, Methodist requests that the Court compel the government to promptly serve amended answers that comply with Rule 36.

Dated:   August 30, 2022

Respectfully submitted,

/s/ Brian D. Roark
Brian D. Roark
J. Taylor Chenery
Taylor M. Sample
Hannah E. Webber
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone (615) 742-6200
Facsimile (615) 742-6293
broark@bassberry.com
tchenery@bassberry.com
taylor.sample@bassberry.com
hannah.webber@bassberry.com

Robert S. Salcido
(Admitted *Pro Hac Vice*)
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4095
rsalcido@akingump.com

*Attorneys for Defendants Methodist Le Bonheur Healthcare and Methodist Healthcare-Memphis Hospitals*

## CERTIFICATE OF SERVICE

       I hereby certify that a true and exact copy of the foregoing has been served on the following counsel via email on this the 30th day of August, 2022:

Bryan A. Vroon
Law Offices of Bryan A. Vroon, LLC
1766 West Paces Ferry Road
Atlanta, GA 30327
(404) 441-9806
bryanvroon@gmail.com

Jerry E. Martin
Seth Marcus Hyatt
Barrett Johnston Martin & Garrison, LLC
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
(615) 244-2202
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com

Edward D. Robertson , Jr.
Bartimus Frickleton Robertson Rader PC
109 B East High Street
Jefferson City, MO 65101
(573) 659-4454
crobertson@bflawfirm.com

Kara F. Sweet
U.S. Attorney's Office (Nashville Office)
Middle District of Tennessee
110 Ninth Avenue, S
Suite A961
Nashville, TN 37203-3870
(615) 401-6598
kara.sweet@usdoj.gov

Wynn M. Shuford
U.S. Attorney's Office (Nashville)
719 Church Street
Suite 3300
Nashville, TN 37203
615-401-6601
Wynn.Shuford@usdoj.gov

                                                */s/ Brian D. Roark*

17

Case 3:17-cv-00902   Document 260   Filed 08/30/22   Page 17 of 17 PageID #: 4248