# EXHIBIT 6



**ROBERT S. SALCIDO**
202.887.4095/fax: 1.202.887.4288
rsalcido@akingump.com

August 1, 2022

<u>**Via Email**</u>
Kara Sweet
U.S. Attorney's Office
Middle District of Tennessee
719 Church Street, Suite 3300
Nashville, TN 37203
Kara.sweet@usdoj.gov

  **Re:**  *U.S. ex rel. Liebman v. Methodist Le Bonheur Healthcare*, No. 3:17-cv-902 (M.D. Tenn.) – Government's Responses to Requests for Production and Requests for Admission

Dear Counsel:

This letter is in response to the government's recent responses to Methodist Le Bonheur Healthcare's Requests for Admission and Requests for Production of Documents. I am writing to address multiple deficiencies in the government's responses. This letter is not intended to address all of the deficiencies in the government's responses to date, and Methodist may raise additional deficiencies in a separate communication.

**Failure to Admit or Deny Requests for Admission**

Specifically, the Government's Responses to Methodist's Requests for Admission are deficient in refusing to substantively answer any of the Requests for Admission. As a preliminary matter, Fed. R. Civ. P. 36 requires that if the government does not admit a matter, "the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." The government has done neither. The government objects to each and every request on grounds that it is not relevant to any claim or defense in this action and refuses to admit or deny any request. Rule 36 requires that each response admit, deny, or state why the answering party cannot truthfully admit or deny each Request. Please provide responses compliant with Rule 36.

**Failure to State When Government Will Produce**

The Government's Responses to Methodist's Requests for Production of Documents do not indicate when documents will be produced in response to any of those requests. The government writes that it intends to produce documents in response to <u>Requests Nos. 1, 3, 5, 6,</u>

Robert S. Strauss Tower | 2001 K Street, N.W. | Washington, DC 20006-1037 | 202.887.4000 | fax 202.887.4288 | akingump.com
4 Park Plaza | Suite 1900 | Irvine, California 92614-2585 | 949.885.4100 | fax: 949.885.4101 | akingump.com

Case 3:17-cv-00902   Document 260-6   Filed 08/30/22   Page 2 of 12 PageID #: 4318



Kara Sweet
August 1, 2022
Page 2

12, 13, 14, 15, 17, 18, and 19, but has produced no documents with its responses and does not indicate when such production is forthcoming. Methodist served its Requests for Production on June 15, 2022. The government ostensibly has been investigating matters related to this action since 2017 and should have anticipated that documents related to that investigation would be sought in discovery when it moved to intervene. Such documents should be readily identifiable by the government, and those that are responsive to Methodist's requests must be produced promptly. Given that depositions in this case have already begun and that fact discovery closes in less than two months, the government must confirm immediately when outstanding documents will be produced.

**Objections on Grounds of Scope and Relevance**

The government objects to Requests No. 4, 6, 8, 9, 10, 11, 14, 15, 16, 18, 20, 21, 22, 23, 24, 25, 26, 27, 29, 30, 31, 32, and 33 on grounds that the documents requested are overbroad or not relevant. Among these are objections to requests for (i) documents specifically related to the allegations in the operative complaint (Requests No. 4, 8, 9, and 10); (ii) documents related to the unlawful remuneration alleged by the government (Request No. 15); and (iii) documents related to the alleged false claims (Request No. 14). All of these subjects are integral to the government's allegations, as set forth in the Complaint in Intervention.

When objecting that a request is overbroad, the government may not state a blanket objection without identifying the portion of the request that it concedes is not overbroad. *See* Fed. R. Civ. P. 34, 2015 Adv. Comm. Note ("An objection may state that a request is overbroad, but if the objection recognizes that some part of the request is appropriate the objection should state the scope that is not overbroad."). Likewise, the government may not object "in a conclusory fashion that certain requests are overly broad, unduly burdensome, vague and ambiguous" without including "facts justifying the objection or setting forth an assessment of the costs in time and/or money [the party] would incur if it produced the requested discovery." *Duffy v. Lawrence Mem'l Hosp.*, 2016 WL 7386413, at *3 (D. Kan. Dec. 21, 2016). Methodist disagrees that any of the Requests are overly broad or unduly burdensome, but is willing to confer regarding any perceived ambiguity following your review of this letter.

With respect to Requests No. 16, 20, 21, 22, 23, 24, and 25, the government responds that the requests are not relevant to any material issue in this action. To the contrary, these requests concern the determination of fair market value, which is central to the claim that Methodist paid unlawful remuneration in violation of the Anti-Kickback Statute ("AKS"). Documentation supporting the fair market value of payments to physicians may be used to rebut an assertion that those payments were for an illegitimate purpose. By example, the OIG stated in its 2014 Special Fraud Alert concerning laboratory payments to referring physicians that "[t]he probability that a payment is for an illegitimate purpose is increased . . . if a payment exceeds fair market value or if it is for a service for which the physician is paid by a third party, including Medicare."



Methodist requests that the government either withdraw these relevancy objections or propose a date to meet and confer on this issue.

**Responses That Documents Are Publicly Available**

In response to <u>Requests No. 20, 21, 22, 23 and 24,</u> the government asserts that all non-privileged responsive documents are publicly available. These requests include demands for a variety of documents that are not tied to a specific litigation and are not routinely publicized. For instance, Request No. 21 calls for communications between DOJ, HHS-OIG, or CMS and third parties concerning topics relevant to claims in this action. The government cannot reasonably assert that all communications between DOJ, HHS-OIG, or CMS and third parties are privileged, and all such communications are not routinely publicized by those agencies. Please amend the government's responses to these requests, produce documents that are not privileged or publicly available, and include any documents withheld on the basis of privilege or protection on a privilege log.

**Efforts to Search for and Collect Responsive Documents**

<u>Requests No. 29, 30, 31, and 32</u> pertain to reviews or audits conducted by the government or any contractor. The government asserts that it is "not aware of any documents relevant to the issues in this case responsive to this request," but the government has provided no information to date on its efforts to search for and produce responsive documents. We request that the government provide a summary of the steps it has taken to identify, collect, and produce documents responsive to Methodists requests, according to its obligations under the Federal Rules of Civil Procedure.

These responses also appear to conflict with your response to Request for Admission No. 1, in which the government refuses to admit or deny whether it has conducted an audit of Methodist's claims based on the Affiliation Agreements. Please supplement the government's responses to Request for Admission No. 1 and Requests No. 29, 30, 31, and 32 accordingly.

**Assertions of Privilege or Protection from Production**

Finally, the government indicates in its General Objections that it objects to providing a privilege log because doing so "is burdensome." Meanwhile, the government objects to twenty-three (23) requests for production on the basis that they called for documents that are protected as attorney-client communications, as work product, and/or under some other privilege or protection (<u>Requests No. 1, 3, 4, 5, 7, 8, 9, 10, 11, 13, 14, 15, 17, 20, 21, 22, 23, 24, 26, 28, 31, 32, and 33</u>). Fed. R. Civ. P. 26(b)(5) requires that when a party "withholds information otherwise discoverable by claiming that the information is privileged or subject to protection" the party must "describe the nature of the documents . . . in a manner that, without revealing information itself United States privileged or protected, will enable other parties to assess the



Kara Sweet
August 1, 2022
Page 4

claim." To the extent the government intends to withhold otherwise responsive documents on the grounds that they are privileged or protected, it must produce a privilege log to substantiate those determinations. *See U.S. ex rel. Simms v. Austin Radiological Ass'n*, No. A-10-CV-914-AWA, 2013 WL 1136668, at *13 (W.D. Tex. Mar. 18, 2013) (recognizing that some communication between the relator and the government regarding a potential False Claims Act violation may be protected from disclosure, but ordering the relator to produce a privilege log to allow the defendant to assess the applicability of the privileges asserted).

In addition to inexcusably refusing to produce a privilege log to substantiate its withholding decisions, the government asserts privilege over several categories of documents inappropriately. Namely, the government objects on privilege grounds to Request No. 5, which calls for subpoenas and other requests for information sent to third parties. By their very nature, investigative documents directed at third parties are not privileged and must be produced. Similarly, Request No. 6 calls for documents provided to the government by third parties in connection with this action and Request No. 10 demands communications with third parties regarding the allegations in any of the complaints in this action. The government objects to both requests by asserting that such communications are privileged. Communications with third parties under these circumstances are not privileged and must be produced if otherwise responsive.

The government also objects on privilege grounds to Request No. 11, which seeks the government's document retention and deletion policies. Such policies are in place separate and apart from any litigation, are not protected, and must be produced. Methodist remains in the dark as to the government's other privilege designations because of its refusal to produce a privilege log. We reserve the right to object to other privilege designations once they have been disclosed in a privilege log, as required by Fed. R. Civ. P. 26(b)(5).

**Specific Objections to Specific Document Requests**

The government, as you concede, like the Relators before, has traversed through multiple theories regarding potential AKS liability in this action. *See* Letter from K. Sweet to B. Roark and R. Salcido (dated July 26, 2022) ("Government letter") at 4. Apparently, the government's current theories include: (1) Methodist provided West free office space and overhead and paid for West's employees ("Free Office Space and Overhead allegation"); (2) Methodist paid West more under the PSA than West paid for physician compensation ("Government's Compensation to Collections allegation"); (3) Methodist paid West to Manage itself; and (4) Methodist paid West for Performing Services under both the MSA and the LEA (the government's third and fourth theories are collectively referred to as "Excessive MSA payments" allegations). *Id.* at 4-6. Methodist does not believe it paid excessive payments under the MSA because all MSA payments were set at fair market value.



Kara Sweet
August 1, 2022
Page 5

    Methodist's document requests are responsive to the government's theories and Methodist's defenses. In failing to produce responsive documents, the government contends that Methodist's requests are "unduly burdensome and not proportional to the needs of the case as violations of the Anti-Kickback Statute are per se material" to the government and "Methodist has not asserted any safe harbor as an affirmative defense."

    As explained in detail below, Methodist's requests are unrelated to the False Claims Act's ("FCA's") materiality element and have nothing to do with a safe harbor affirmative defense, which is not, as you note, raised in this action.[1] Instead, it is directed at whether the government can, in the first instance, assert the basic elements of a violation of law such as that Methodist knowingly submitted false claims or knowingly and willfully violated the AKS.

**Legal Background Establishing Need for Requested Documents**

    As you know, to be "false," under the FCA, a claim must be inconsistent with the controlling rule, regulation or standard that authorizes it. *United States v. Southland Mgmt. Corp.,* 326 F.3d 669, 674-75 (5th Cir. 2003). When there is no violation of a rule, regulation or standard, courts rule that as a matter of law, there cannot be a violation of the FCA. *See id.; see also Thulin v. Shopko Stores Operating Co., LLC,* 771 F.3d 994, 998-1000 (7th Cir. 2014); *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 732 (7th Cir. 1999); *U.S. ex rel. Gudur v. Deloitte Consulting*, 512 F. Supp. 2d 920, 948 (S.D. Tex. 2007), *aff'd*, 2008 WL 3244000 (5th Cir. Aug. 7, 2008); *United States v. Prabhu*, 442 F. Supp. 2d 1008, 1026 (D. Nev. 2006); *United States v. Medica-Rents Co.*, 285 F. Supp. 2d 742, 770-71 (N.D. Tex. 2003), *aff'd in relevant part,* No. 03-11297, 2008 WL 3876307 (5th Cir. Aug. 19, 2008). Further, to be false under the FCA, a statement must be objectively false. *See U.S. ex rel. Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 377-78 (4th Cir. 2008); *see also U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 340, n.12 (5th Cir. 2008); *U.S. ex rel. Morton v. A Plus Benefits, Inc.*, 139 F. App'x 980, 982 (10th Cir. 2005); *U.S. ex rel. Jamison v. McKesson Corp.*, 784 F. Supp. 2d 664, 676-77 (N.D. Miss. 2011); *Prabhu,* 442 F. Supp. 2d at 1032-33.

    Moreover, as you know, the case law is clear—indeed, overwhelming—that defendants do not knowingly submit false claims when they act within a reasonable interpretation of what is, at worst, an ambiguous law and there is no official governmental guidance, such as a court of appeals decision or binding agency determination, that would warn defendants away from their reasonable interpretation. *See, e.g., U.S. ex rel. Olhausen v. Arriva Med., LLC*, No. 21-10366, 2022 WL 1203023, at *2 (11th Cir. Apr. 22, 2022); *U.S. ex rel. Proctor v. Safeway, Inc.*, 30 F. 4th 649 (7th Cir. 2022); *U.S. ex rel. Sheldon v. Allergan Sales, LLC*, 24 F.4th 340, 343-44 (4th Cir.

---

[1] As you know, compliance with safe harbors is not required under the law. They are irrelevant to this action. Instead, the government bears the burden of proof as to each element under the AKS and FCA. *See, e.g.,* 31 U.S.C. § 3731(d) ("United States shall be required to prove all essential elements of the cause of action").



Kara Sweet
August 1, 2022
Page 6

2022); *U.S. ex rel. Schutte v. SuperValu Inc.*, 9 F.4th 455, 472 (7th Cir. 2021); *United States v. Allergan, Inc.*, 746 F. App'x 101, 109-10 (3d Cir. 2018); *U.S. ex rel. McGrath v. Microsemi Corp.*, 690 F. App'x 551, 552 (9th Cir. 2017); *U.S. ex rel. Donegan v. Anesthesia Assocs. of Kansas City, PC*, 833 F.3d 874, 880 (8th Cir. 2016); *U.S. ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 289 (D.C. Cir. 2015).  These uniform seven circuits base their rulings on the Supreme Court's decision in *Safeco Ins. v. Burr*, 551 U.S. 47, 70 n.20 (2007) (finding that where the "text and relevant court and agency guidance allow for more than one reasonable interpretation [of a regulation], it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator").

Another knowledge-based defense, uniformly recognized in the case law, is that a defendant does not knowingly submit false claims when the government knows of the underlying alleged misconduct and undertakes no action to stop the conduct.  *See, e.g., U.S. ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321 (9th Cir. 1995); *see also U.S. ex rel. Stebner v. Stewart & Stephenson Services*, 144 Fed. Appx. 389, 394 (5th Cir. 2005); *U.S. ex rel. Costner v. URS Consultants*, 317 F.3d 883, 888 (8th Cir. 2003); *U.S. ex rel. Becker v. Westinghouse Savannah River*, 305 F.3d 284, 289 (4th Cir. 2002); *Gudar*, 2007 U.S. Dist. LEXIS 18297 at *38; *U.S. ex rel. Englund v. Los Angeles County*, No. S-04-282, 2006 U.S. Dist. LEXIS 82034 at *38, *40 (E.D. Cal. Oct. 31, 2006); *U.S. ex rel. Grynberg v. Praxair, Inc.*, 207 F. Supp. 2d 1163, 1181 (D. Colo. 2001), *aff'd in part and rev'd on other grounds*, 389 F.3d 1038 (10th Cir. 2004).  Indeed, because of this defense, in the context of FCA discovery disputes, courts have gone so far as to sanction the government when it undertakes sloppy, haphazard efforts to safeguard information CMS possesses by failing to issue a preservation notice to CMS even before it intervenes in the action because it would potentially undermine defendant's ability to invoke the government knowledge defense.  *See, e.g., U.S. ex rel. Baker v. Cmty. Health Sys.*, No. 05-279, 2012 U.S. Dist. LEXIS 146865 at *38 (D.N.M. Aug. 31, 2012).

Here, the statute that the government alleges Methodist breached is the AKS.  Methodist, as it asserts in its Answer, does not believe that it breached the AKS.  Moreover, Methodist believes, as at least one circuit court has concluded, that in obtaining fair market value opinions and paying within that range, it could not have paid, as a matter of law, "remuneration" to West.  *See Bingham v. HCA, Inc.*, 783 F. App'x 868 (11th Cir. 2019); *see also Miller v. Abbott Labs*, 648 F. App'x 555, 561 (6th Cir. 2016); *Jones-McNamara v. Holzer Health Sys.,* 630 F. App'x 394, 400 (6th Cir. 2015).  Although we understand that you disagree with these circuit court decisions, in light of them, one must conclude the issue is, at a minimum, ambiguous.  That is, as the Eleventh Circuit and Sixth Circuit have concluded remuneration means a payment other than payment at fair market value.  If a statute is ambiguous, then under Supreme Court precedent, and the uniform FCA rulings of *seven* circuits, the critical inquiry becomes what official governmental guidance was issued to warn the defendant away from defendant's reasonable interpretation of law and whether the defendant's interpretation can be objectively false in light of the guidance or non-existence of any guidance.



**Legal Background Applied to Specific Inquiries**

Given the government's precise allegations, Methodist has made a series of inquiries into what governmental guidance the government has issued regarding what is remuneration, what documentation must exist to support an arrangement, and what constitutes fair market value.

### Government's Free Office Space and Overhead Allegation

As to the government's free office space and overhead allegation, the government asserts that Methodist did not have a "formal agreement that required West to pay rent" and additional proof of a violation is that the "parties did not obtain a fair market opinion for the use of space." Government Letter at 4. Directly related to those contentions, Methodist has inquired into what guidance the government has offered regarding what constitutes "fair market value" and what documentation requirements the government believes defendants must possess to comply with the AKS. *See* Requests 20(d), (g), 21(d), (g), 22(d), (g), 23(d), (g), 24(d), (g), 25(d), (g), 33(d), (g).

Obviously, these Requests are responsive to determining whether Methodist knowingly and willfully violated any rule, regulation or standard under the AKS. As noted, Methodist believes that it had an adequate process in place to ensure payments were made at fair market value and appropriately documented under law. But, if the government has issued official governmental guidance under the AKS stating that an overt fair market value review must be conducted, or must be conducted in a particular manner, or that defendant violates the AKS if it does not document its relationship in a precise manner, Methodist is entitled to know what that guidance is and not be surprised by it at trial. Alternatively, if no such guidance exists, Methodist is entitled to know that as well. If there is no such guidance, you may, of course, simply indicate that no such guidance exists that states that a fair market review must be conducted on each component of a transaction or that each component of a transaction must be documented in a particular fashion or else the party violates the AKS. But, under either scenario the requested information is relevant to determining whether Methodist possessed, at a minimum, a reasonable interpretation of an ambiguous law and the government issued no official governmental guidance to warn Methodist away from its reasonable interpretation.

### Government's Compensation to Collections Allegations

As to the government's compensation to collection allegations, the government asserts that Methodist "paid West oncologists over $60 million more in wRVU payments than their professional collections" and that an "initial fair market value opinion does not support the payments." Government Letter at 5-6. The government concludes that as a result, the amount Methodist paid to West physicians "constitute remuneration" for purposes of the AKS. *Id.* at 6.



Directly related to those contentions, Methodist has inquired into what guidance the government has offered regarding the use of compensation formulas that base payment for professional services agreements on wRVUs for professional services and into what the government considers the appropriate ratio of collections received for professional services performed by physicians to professional compensation for those services should be. *See* Requests 20(a-c), 21(a-c), 22(a-c), 23(a-c), 24(a-c), 25(a-c), 33(a-c).

Obviously, these Requests are responsive to determining whether Methodist knowingly violated any rule, regulation or standard under the AKS. Methodist believes that no such guidance exists that would put it on notice that if its payments to West physicians exceed collections, the amount paid would run afoul of the AKS or constitute unlawful remuneration. Indeed, the governmental guidance about which Methodist is aware—arising in the Stark law context—is to the opposite effect, which is that CMS anticipates that there are multiple reasons why physician compensation may exceed physician collections. *See, e.g.,* 84 Fed. Reg. 55766, 55790 (Oct. 17, 2019) (acknowledging that physician compensation may exceed collections to satisfy, among other things, community need, provide timely access to health care, satisfy licensure and regulatory requirements, improve quality and health outcomes or provide the community certain service lines). But if you are contending that the government has issued official governmental guidance under the AKS that is directly contrary to what CMS has furnished under the Stark law and that states that any amount paid to physicians that exceeds collections breaches the AKS or that there is a precise ratio of compensation to collections that must exist, Methodist is entitled to know what that guidance is and to not be surprised by it at trial. Alternatively, if no such guidance exists that supports the government's contention, which Methodist anticipates is the truth, Methodist is entitled to know that as well. If there is no such guidance, you may, of course, simply indicate that no such guidance exists that states that any compensation paid in excess of physician collections violates the AKS. But, under either scenario the requested information is relevant to determining whether Methodist possessed, at a minimum, a reasonable interpretation of an ambiguous law and the government issued no official governmental guidance to warn Methodist away from its reasonable interpretation.

**Government's Excessive MSA Payments Allegations**

As to the government's excessive MSA Payments allegations, the government contends that proof that payments were excessive include that "West kept no time records or specific documentation concerning the base management services, and Methodist asked for no support," and thus "there is no evidence to show exactly what was done, or by who, for base management fees, as opposed to incentive fees." *Id.* at 6.

Directly related to those contentions, Methodist has inquired into what guidance the government has offered regarding the use of "timesheets, or other similar documentation, to



Kara Sweet
August 1, 2022
Page 9

justify the payment of management fees under the management services agreement." *See, e.g.,* Requests 20(g), 21(g), 22(g), 23(g), 24(g), 25(g), 33(g).

Obviously, this Request is directly responsive to the government's contention in this lawsuit regarding whether there is some legal requirement to maintain timesheets or to document physician services in some particular fashion or else the party violates the AKS. Methodist believes that not only does no such requirement exist (and, of course, it is impossible to breach a requirement that does not exist) but also that such a requirement would be entirely inconsistent with CMS's current movement away from standards basing payment on documentation of hourly increments of time towards value-driven models that pay for health and outcomes and not merely activity. However, as with the government's other contentions, if the government's position is that it has issued official governmental guidance under the AKS stating that timesheets or precise documentation rules must be heeded or else defendant violates the AKS, Methodist is entitled to know what that guidance is and to not be surprised by it at trial. Alternatively, if no such guidance exists, Methodist is entitled to know that as well. If there is no such guidance, you may, of course, simply indicate that no such guidance exists. But, under either scenario the requested information is relevant to determining whether Methodist possessed, at a minimum, a reasonable interpretation of an ambiguous law that the maintenance of timesheets or particular documentation is not required under the AKS and that the government issued no official governmental guidance to warn Methodist away from its reasonable interpretation.[2]

**Government's Inadequate Responses to Methodist's Requests for Admission**

The government's responses to Methodist's Requests for Admission are similarly deficient in light of voluminous FCA case law. As to Methodist's Requests for the government to admit that it (i) has not audited Methodist's claims; (ii) never denied a claim submitted by Methodist based upon the AKS or Stark law; (iii) has not identified any adverse impact on patient outcomes stemming from the affiliation agreements; (iv) has not issued any regulatory guidance related to the standards it seeks to impose regarding compensation to collections, payments based upon wRVUs, use of market approach to determine fair market value, mandated the use of timesheets to comply with the AKS, or asserted that payments outside safe harbors result in AKS liability; (v) has not identified any adverse patient outcome stemming from co-management; (vi) has not identified any increased costs to the Medicare program resulting from the affiliation; (vii) has proposed rules to promote flexibility and innovations in the better coordinated care; and (viii) has acknowledged that uncertainty and regulatory barriers could prevent the best and most efficacious innovations from emerging in the marketplace, you

---

[2] As part of your objection to producing responsive documents, you made an unsupported reference to proportionality. You did not, however, explain how the government's burden would be in any way disproportionate to the burden imposed on Methodist in producing more than 100,000 pages of documents to the government in response to its Civil Investigative Demand or in having to respond to almost 200 discovery requests from Relators.



erroneously object on the basis that you believe this information is not relevant to Methodist's defenses or because you believe these admissions relate solely to the FCA's materiality element. Courts do not assess relevance based upon the government lawyer's subjective assessment of what is relevant to the case or how that attorney would choose to defend a case. *See, e.g., Baker*, 2012 U.S. Dist. LEXIS 146865, at *36, 40 (the "ultimate decision of what is relevant is not determined by [the government lawyer's] subjective assessment filtered through its own perception of self-interest" and noting defendants "are entitled to conduct discovery and present evidence regarding their theory of the case") (quoting *Goodman v. Praxair Servs. Inc.*, 632 F. Supp. 2d 494, 517 n. 12 (D. Md. 2009)).

It is not for the government to assess whether the admissions implicate an element to liability (here they clearly do) or whether it considers the admissions relevant, but it is for the court and the jury to ultimately determine the implications of the government's admissions.[3] These admissions, individually and collectively, are relevant and responsive to whether there was a violation in the first instance. *See, e.g., Southland*, 326 F.3d 674-75; *Thulin,* 771 F.3d at 998-1000; *Luckey*, 183 F.3d at 732; *Gudur*, 512 F. Supp. 2d at 948; *Prabhu*, 442 F. Supp. 2d at 1026; *Medica-Rents Co.*, 285 F. Supp. 2d at 770-71. They are relevant to whether Methodist made any certifications to the government that are objectively false. *See, e.g., U.S. ex rel. Hixson v. Health Mgmt. Sys., Inc.*, 613 F.3d 1186, 1191 (8th Cir. 2010); *U.S. ex rel. Thomas v. Siemens AG*, 593 F. App'x 139, 143 (3d Cir. 2014); *Wilson*, 525 F.3d at 377-78; *Farmer*, 523 F.3d at 340; *Morton* 139 F. App'x at 982; *Jamison*, 784 F. Supp. 2d at 676-77; *Gudur*, 512 F. Supp. 2d at 932; *Prabhu*, 442 F. Supp. 2d at 1032-33. They are relevant to whether the government issued any official governmental guidance that would have warned Methodist away from its reasonable interpretation of law. *See, e.g, Olhausen*, 2022 WL 1203023, at *2; *Proctor*, 30 F. 4th at 658; *Sheldon*, 24 F.4th at 343-44; *Schutte*, 9 F.4th at 472; *Allergan*, 746 F. App'x at 109-10; *McGrath*, 690 F. App'x at 552; *Donegan*, 833 F.3d at 880; *Purcell*, 807 F.3d at 289. And they are relevant to what the government knew. *See, e.g., Butler*, 71 F.3d at 326, 328; *see also Stebner*, 144 F. App'x at 394; *Costner*, 317 F.3d at 888; *Becker*, 305 F.3d at 289; *Gudar*, 2007 U.S. Dist. LEXIS 18297 at *38; *Englund*, 2006 U.S. Dist. LEXIS 82034 at *38, *40; *Grynberg*, 207 F. Supp. 2d at 1181; *see also Baker*, 2012 U.S. Dist. LEXIS 146865, at *38 (government's investigations and knowledge related to third parties regarding same subject matter of litigation discoverable because "evidence which illuminates the Government's knowledge is crucial to Defendant's defense").

***

In light of the voluminous case law illustrating our position, and your duty to have undertaken action to preserve documents responsive to our request even prior to intervention, we

---

[3] You must understand the implications of admitting or denying each of these facts in accordance with the Federal Rules of Civil Procedure, which is why you do neither in violation of these Rules.



Kara Sweet
August 1, 2022
Page 11

are confident you will be able to promptly comply with our discovery requests. Prompt compliance is required because we must soon issue a Rule 30(b)(6) deposition notice on the government, and the scope of the deposition notice is ultimately contingent upon the government's response to Methodist's now longstanding discovery requests.[4] If you cannot timely comply, please notify us promptly so that we can schedule a call with the Magistrate regarding each of these items.

We reserve the right to raise other deficiencies concerning the government's responses to the Requests for Admission and Requests for Production. Please supplement the government's responses by August 5, 2022, and provide any additional response to the items raised in this letter by that time so that we may identify any discovery dispute that remains unresolved. We are available at your convenience to confer regarding the contents of this letter or any other issues relating to this matter.

Sincerely,

AKIN GUMP STRAUSS HAUER & FELD LLP

Robert Salcido

cc: Counsel of Record

---

[4] Throughout the investigation and litigation, the government has made onerous and extraordinarily burdensome requests on Methodist and has continuously been quick to reach negative inferences when documentation was not immediately available. Given the standard of immediate compliance that the government has sought to impose on Methodist, Methodist assumes the government will quickly comply with these reasonable discovery requests. *See, e.g., Baker*, 2012 U.S. Dist. LEXIS 146865, at *19 (sanctioning government when it sought to mandate discovery preservation standards on defendants before the government elected to intervene in the action while failing to impose those same standards on itself by preserving documents before it intervened). Indeed, the government should have anticipated all of Methodist's discovery requests in light of literally countless FCA cases and doctrines, described above, and should have preserved these documents so that they could be promptly produced.