# EXHIBIT 7

August 24, 2022

**VIA EMAIL**
Kara F. Sweet
Wynn M. Shuford
U.S. Attorney's Office
Middle District of Tennessee
719 Church Street, Suite 3300
Nashville, Tennessee 37203
kara.sweet@usdoj.gov
Wynn.Shuford@usdoj.gov

    Re:    **United States' Discovery Responses in U.S. ex rel. Liebman v. Methodist Le Bonheur Healthcare, et al., No. 3:17-cv-00902 (M.D. Tenn.)**

Dear Kara and Wynn:

    Methodist issued its First Set of Interrogatories, its First Set of Requests for Admission, and its First Set of Requests for Production to the United States on June 15, 2022. This letter is sent in response to the government's Supplemental Objections and Responses to Defendants' First Set of Interrogatories, Supplemental Objections and Responses to Defendants' First Set of Requests for Production, and Objections and Responses to Defendants' First Set of Requests for Admission, all dated August 22, 2022. These amended Reponses followed letters and emails exchanged on August 1, August 5, and August 8, our meet and confer conference on August 8, the subsequent emails exchanged on August 8, August 10, and August 12, and circulation of our draft joint discovery dispute statement on August 19. Having now reviewed these amended Responses, significant deficiencies remain in the government's supplemental responses.

    We request that the United States respond to this letter by August 26, 2022, given the approaching fact discovery deadline and lead counsel for the United States' unavailability next week. However, we are happy for other counsel for the United States to respond if more practicable and to confer at your earliest convenience. If we are not able to reach agreement on the issues raised, we intend to raise our issues with the Court later this week or next week.

**Interrogatory Nos. 1, 3 & 4**

Interrogatory No. 1 seeks the identification of the false claims that the United States alleges Defendants submitted, including, among other things, the damages associated with the alleged false claims. Similarly, Interrogatory Nos. 3 & 4 request the identification of referrals made in violation of the AKS and the damages the United States claims in this case.

Despite seeking to hold Methodist liable for the submission of false claims, the United States nonetheless has objected that identifying those false claims is unduly burdensome and not proportional to the needs of the case. The United States' response then refers generally to "the claims data produced in this action by the United States and West" and estimates that the "tainted Medicare claims" from outpatient referrals is "over $300 million" and the inpatient claims is "over $50 million." The response also references an additional undefined amount of damages "arising from tainted referrals for drug prescriptions."

In an email dated August 19, 2022, Methodist sought clarification that the "claims data" referenced in the United States' response refers to the 14 files of claim data produced by the United States on July 8, 2022 (4 files in "Methodist – Claims Data II" and 8 files in "Data to LE for RFI-210816-00008."). We also asked that if there was additional claims data to which you were referring, that the United States identify it. In addition, Methodist sought clarification as to whether the reference to "referrals for drug prescriptions" related to claims separate from the claims contained in the 14 files the United States has produced.

You responded that the United States had not reviewed and compared the claims data produced by West or Methodist, and that you were not in a position to supplement your response. You also stated that Methodist needed either to "agree on the scope" of a production of data relating to the referenced drug prescriptions, or to "provide data on the drugs and savings for the 340B Discount Drug Program." Finally, you said that the United States was not in a position to quantify the false claims at issue, but that "testimony" and "internal documents" revealed "savings . . . from tainted claims" that ranged from ~$25-35M in "early years" and went up to "~$50M" by the end of the relationship, and you said the United States was not in a position to supplement its discovery responses further due to "convoluted contractual arrangements" relating to the pharmacies operated at 100 N. Humphreys and 7945 Wolf River. The United States' supplemental interrogatory responses served on August 22, 2022, did not include a supplemental response to this interrogatory.

The United States has alleged that Methodist improperly submitted false claims for reimbursement in violation of the False Claims Act and is seeking, by your estimation, "over" $350 million in single damages as a result of the submission of these false claims. Methodist is entitled to know which specific claims the United States is alleging were false and what it contends are its damages. General references to "claims data," along with unsworn characterizations of "testimony" and "internal documents" at this point in the proceedings do not satisfy the United States' discovery obligations under Rules 26 and 33 of the Federal Rules of Civil Procedure. We attempted to confirm the specific claims in our August 19 email that identified by name the 14 files of claims data the United States produced on July 8, 2022, but, rather than clarifying which

claims the United States alleges to be false, your response appears to expand the universe of potential documents to include claims data produced by West, claims data produced by Methodist, "testimony" and unidentified "Methodist internal documents." In addition, on July 29, you also indicated that the United States intends to produce additional documents "reflecting claims to Baptist from West's providers and relating to the 340B Discount Drug Program." These references to nonspecific documents and estimates do not satisfy the United States' obligation to respond fully to Methodist's Interrogatory No. 1 (or to Interrogatory Nos. 3 & 4).

As for the timing of your response, the United States has represented to the Court that it has been actively investigating, monitoring, or litigating this matter since it was filed more than five years ago. We do not understand why, on the eve of the fact discovery deadline, the United States is still unable to identify the claims it alleges to be false. More importantly, the United States' refusal to identify the false claims at issue undermines Methodist's ability to defend itself against the allegations of fraud leveled by the United States, leaving Methodist to guess about which claims, referrals, services, physicians, reimbursements, "drug prescriptions," "savings" and "contractual arrangements" the United States ultimately intends to put at issue at trial. Further, we see no basis for your assertion United States will only identify this basic and fundamental information about its claims during "expert discovery." The identification of the false claims at issue in this case does not require "scientific, technical or other specialization" that can be provided only by an expert. *See* Fed. R. Evid. 702(a). Given that the United States' 30(b)(6) deposition and the close of fact discovery are less than a month away, we again ask that the United States confirm that the 14 files of claims data produced by the United States on July 8, 2022, is the complete universe of false claims in this action. If the United States is contending there are additional false claims beyond those contained in the 14 files, then identify those claims in response to Methodist's Interrogatory Nos. 1, 3 & 4 by Friday, August 26, 2022.

### Interrogatory Nos. 10–13, 15

Methodist's Interrogatory Nos. 10–13, and 15 seek information related to the allegations at the heart United States' claims and specifically tracks the various types of remuneration the United States purports to identify in response to Interrogatory No. 2.

Methodist's requests seek information relating to the payment of wRVUs through a professional services agreement. (*E.g.*, Interrogatory Nos. 10(a), 11(a), 12(a), 13(a), 15(a).) The Complaint in Intervention specifically alleges that the professional services agreement between Methodist and West violates the AKS in part because the utilization of wRVUs meant that the aggregate compensation paid under the PSA "was not set in advance." (Compl. ¶¶ 131, 136.)

Methodist's requests seek information relating to appropriate ratio of professional collections to physician compensation. (*E.g.*, Interrogatory Nos. 10(b), 11(b), 12(b), 13(b), 15(b).) The Complaint in Intervention specifically alleges that the compensation paid by Methodist to West under the professional services agreement exceeded the amount of professional collections Methodist received for the West physicians' services, (Compl. ¶¶ 278–79), and the United States specifically identifies this as a type of unlawful remuneration in response to Interrogatory No. 2.

3

Methodist's requests seek information relating to the definition of fair market value as it relates to physician compensation. (*E.g.,* Interrogatory Nos. 10(c), 11(c), 12(c), 13(c), 15(c).) The Complaint in Intervention contains specific allegations relating to the terms of the fair market value opinions obtained by Methodist to support the payment of wRVUs to West, (Compl. ¶ 134), and the United States' response to Interrogatory No. 2 claims that the wRVU payments for professional services amounted to unlawful remuneration under the AKS. As you know, "remuneration" is defined under the AKS as the "transfer of items of services for free or for other than fair market value." *Miller v. Abbott Labs*, 648 F. App'x 555, 561 (6th Cir. 2016); *Jones-McNamara v. Holzer Health Sys.*, 630 F. App'x 394, 400 (6th Cir. 2015).

Methodist's requests seek information relating to how the United States has defined fair market value as it relates to compensation for management services, including any prohibition on the use of a market approach or the consideration of service line revenue to determine fair market value. (*E.g.,* Interrogatory Nos. 10(d)–(f), 11(d)–(f), 12(d)–(f), 13(d)–(f), 15(d)–(f).) The Complaint in Intervention specifically alleges that "Methodist and West were clear that to avoid running afoul of the AKS, the amount Methodist would pay West under the MSA needed to be supported by a FMV Opinion." (*Id.* ¶ 167.) It also contains specific allegations about the fair market value opinions obtained by Methodist and West to support the management fee payments, including the opinions' reliance on the market approach. (*Id.* ¶ 147.) The Complaint in Intervention alleges further that "under the Foley model" management fees were tied to the percentage of revenues for the service line, (Compl. ¶ 140), and concludes that the payments under the MSA were "ultimately…based on the volume or value of referrals to Methodist." (*Id.* ¶ 153.)

Methodist's requests seek information regarding whether the United States has ever required timesheets or other similar documentation to justify the payment of management fees under a management agreement. (*E.g.,* Interrogatory Nos. 10(g), 11(g), 12(g), 13(g), 15(g).) The Complaint in Intervention specifically alleges that Methodist never asked West for any time records to support the payment of management fees, (Compl. ¶ 246), and the United States' response to Interrogatory No. 2 expressly states that the absence of "time records" kept by West and requested by Methodist is evidence that the management fees are unlawful remuneration.

Methodist's requests seek information related to the minimum term for unwinding an affiliation between a physician practice group and a health system. (*E.g.,* Interrogatory Nos. 10(h), 11(h), 12(h), 13(h), 15(h).) The Complaint in Intervention specifically alleges that as part of the multi-year deal that the United States claims to have violated the AKS, "Methodist also agreed to an Unwind Agreement through which West could terminate the entire deal and essentially buy back its assets at any time after the first six months." (Compl. ¶ 3.) It further alleges that West only moved forward with Methodist because Methodist was willing agree to this six-month term. (*Id.* ¶ 106.)

Finally, Methodist's requests seek information relating to prior enforcement actions based on public statements made by an attorney representing a party to a transaction. (Interrogatory No. 15(i).) The Complaint in Intervention contains numerous allegations about the "structure" that was "marketed" by Foley & Lardner LLP in public presentations, (*E.g.,* Compl. ¶ 89–96), and in response to Interrogatory No. 16, the United States states that it intends to rely on Erich Mounce's

attendance at these public presentations to attribute knowledge of the contents of these presentations to Methodist.

Remarkably, however, the United States has objected to each of these interrogatories on grounds that the information sought—which is clearly tailored to allegations raised in the United States' Complaint in Intervention and Interrogatory answers—is "not relevant to any material fact in dispute" in this case (*see, e.g.,* Interrogatory Response 9 (emphasis added)). The United States claims that the information that Methodist seeks regarding past governmental guidance on these topics is not relevant because the United States does not intend to "rely[] on any sub-regulatory guidance or other laws as a basis for the claims asserted in this action." In some respects, we are not surprised that you do not intend to rely on past governmental guidance given that such guidance is at odds with several positions taken by the United States in this case. But, the fact that you do not intend to rely on such information in no way relieves the United States of its obligation to provide it to Methodist in discovery. If that were the case, then a party would only produce documents or information supporting its position while withholding harmful information that it did not intend to rely on. That clearly is not how discovery works.

The United States cannot argue that Methodist violated the AKS by, for example, paying West more in compensation for professional services than the amount of professional collections received for those services, but then refuse to provide discovery to Methodist regarding past guidance issued by the United States on that topic. In response to Interrogatory No. 8, which asks the United States to identify "every instance in which You allege Defendants did not comport with relevant industry guidance, including but not limited to guidelines published by HHS-OIG or CMS," the United States answered that "Methodist was aware of the AKS **and the industry guidance** against partnerships between hospitals and physicians related to financial arrangements that would violate the AKS." (emphasis added). Yet, in response to interrogatories asking the United States to identify that industry guidance, the United States has responded that Methodist's requests are "not relevant."

Methodist is entitled to mount a defense to the government's allegations that it knowingly submitted false claims in violation of the FCA. As we made clear in our letter sent on August 1, a claim is not "false" under the FCA unless it is inconsistent with a controlling rule, regulation or standard that authorizes it. *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 674–75 (5th Cir. 2003). Further, defendants cannot knowingly submit false claims when they act within a reasonable interpretation of an ambiguous law and there is no official government guidance to warn defendants away from their interpretation. *See, e.g., U.S. ex rel. Olhausen v. Arriva Med., LLC*, 2022 WL 1203023, at *2 (11th Cir. Apr. 22, 2022); *U.S. ex rel. Proctor v. Safeway, Inc.*, 30 F. 4th 649 (7th Cir. 2022). Also, the payment of fair market value in exchange for the performance of services does not, as matter of law, amount to "remuneration" under the AKS. *See Jones-McNamara v. Holzer Health Sys.*, 630 F. App'x 394, 400 (6th Cir. 2015).

The government's objection that it "is not asserting that Methodist *violated* any guidance, education material or other documents issued to the public concerning the AKS or the FCA," (*see, e.g.,* Interrogatory Response 9 (emphasis added)) misses the point of Defendants' discovery requests. Of course, the government is not going to have any law that supports the contentions that it has set forth in its Complaint in Intervention and Interrogatory responses related to

5

compensation to collections, the use fair market value opinions, timesheets, or other supposed documentation standards. We have informed you of that from day one. But notwithstanding that there is no applicable law supporting the government's contentions, the government in its Complaint and Interrogatory responses has contended that the existence of certain facts—e.g., the level of compensation to collections, the supposed lack of certain types of documentation, the methodology used in fair market value analysis—tend to show a violation of the AKS. Given the government's contentions that these alleged facts tend to show a violation, defendants are entitled to show that there is not *any* governmental guidance that supports the government's contention that these alleged facts shows a violation of the AKS or that, at a minimum, there is no "official" governmental guidance that would warn defendants from their reasonable interpretation that no such guidance exists.

All governmental guidance (both internal and external) regarding the positions the government has articulated in its Complaint and Interrogatory responses is extraordinarily relevant to defendants' ability to defend this case. We know you disagree as to relevance, but by implication, you are also disagreeing with the uniform rulings of seven circuits (cited in our previous letter) and we cannot abandon a defense recognized uniformly just because a government lawyer disagrees with these rulings. Time has run on the government's attempt at slow-walking – now more than two months old – and failure to make any meaningful response to these requests. The close of discovery is less than a month away. The government's choices are clear: (1) simply renounce, in clear unambiguous language, its prior positions as to compensation to collections; fair market value methodology; or documentation standards related to the AKS so no discovery is needed and so that if the government later seeks to reverse course and reinsert these issues, defendants will possess a clear paper trail showing this issue has now been resolved or (2) if you continue to make these contentions, like any other party, produce the information you possess that is related to the position you have asserted (or, as noted, admit in clear language that there is no support (public or internal) for your position in the first instance. In short, the time of you asserting these positions, and then stating, at the same time, that you do not have to produce (or even undertake to search for) any information that the government has related to these positions, has come to an end.

### **Interrogatory No. 14**

Interrogatory No. 14 seeks the identification of audits or reviews conducted by HHS-OIG, CMS, or any of their contractors of claims submitted by Defendants. Your supplemental response indicates that the United States is in the process of confirming whether Methodist was audited by any governmental entity during the time period at issue in this litigation and that it will supplement its response, but, it does not indicate when.

The United States has been involved in this litigation for more than five years. As we noted in our August 1 Letter, a uniformly-recognized defense to allegations that a defendant has knowingly submitted false claims is that government knew of the underlying alleged misconduct and took no action to stop it. For this reason, the government is obligated to undertake reasonable efforts to preserve information on the government's knowledge prior to intervention, so as to preserve the defendant's ability to invoke the government knowledge defense. *See, e.g., U.S. ex rel. Baker v. Cmty. Health Sys.*, 2012 U.S. Dist. LEXIS 146865 at *38 (D.N.M. Aug. 31, 2012)

6

(recommending sanctions for government's failure to adequately preserve relevant documents at CMS). Given the United States' multi-year involvement in this case, and that these interrogatories were served more than two months ago, and that we have less than a month to complete fact discovery, including taking the United States' 30(b)(6) deposition, we need to know when the United States intends to supplement its response to this Interrogatory. If the United States cannot provide an agreeable date by this Friday, August 26, 2022, we will need to seek relief from the Court, as Methodist needs reasonable amount of time to review the responses prior to taking the United States' 30(b)(6) deposition.

**Interrogatory No. 16**

As noted above, the Complaint in Intervention contains numerous allegations relating to the so-called "Foley model" that Foley & Lardner allegedly marketed and presented, including allegations that the model presented risks under the AKS. Interrogatory No. 16 asks the United States to identify each instance in which you contend that Foley & Lardner or anyone else communicated to Methodist that its affiliation with West Clinic presented risks of violating the AKS.

The United States' supplemental response provides only that attorneys from Foley & Lardner began making presentations "in or about 2009" and continued "throughout the parties' relationship," and that Erich Mounce attended Foley's presentations "throughout the course of the parties' relationship." This does not respond to this Interrogatory in that it does not identify a single instance in which the United States contends that Foley or anyone else communicated to Methodist that its affiliation with the West Clinic presented risks of violating the AKS. The United States' refusal to specifically identify instances in which you contend Foley, or anyone else, communicated such risks to Methodist severely undermines Methodist's ability to defend itself against the allegations of fraud raised in your Complaint in Intervention, leaving Methodist to guess as to which of the unidentified number of public presentations given by Foley over the course of a decade the United States plans to rely on at trial to support its claims that Foley communicated this information to Methodist. The United States' response states further that it reserves the right to supplement its response. Given that the deadline for fact discovery is less than one month away, the United States should either supplement its response to identify any instances when it contends that Foley, or anyone else, communicated to Methodist that the affiliation presented risks of violating the AKS or amend its response to state that the United States cannot identify any such instances. If the United States is attempting to direct Methodist to the production of business records as a substitute for providing sworn interrogatory responses pursuant to Fed. R. Civ. P. 33(d), then it must identify the particular document or documents within the productions that will answer the interrogatory.

**Interrogatory No. 17**

As explained above, the government's knowledge of alleged misconduct without action undertaken to stop it serves as a uniformly-accepted defense to FCA allegations. The Complaint in Intervention contains allegations about the structure and terms of the so-called "Foley model" that was publicly presented for more than a decade, and it further alleges that Methodist acted "in accordance with Foley's outline for the structure" in violating the AKS. (Compl. ¶¶ 89–95, 108.)

Interrogatory No. 17 asks the United States to identify any government employee who attended one of these public presentations. The United States' objection that this request seeks information "that has no relevance to the subject matter of, or any triable issue in, this litigation" is clearly without merit and should be amended from your response. Notwithstanding your objection, the United States' supplemental response to this Interrogatory provides that the United States lacks sufficient information to identify attendees of Foley's presentations. As you are aware, if a party is unable to provide an answer after reasonable investigation, it must describe the efforts taken to obtain the information. *Bryant v. Armstrong*, 285 F.R.D. 596, 612 (S.D. Cal. 2012). Please supplement your response to identify the efforts taken by the United States to identify its employees who may have attended the presentations described in this Interrogatory.

**Interrogatory No. 18**

Interrogatory No. 18 is a contention interrogatory specifically addressing the contention in paragraph 2 of the Complaint in Intervention that the creation of "legal partnership" between Methodist and West Clinic "likely would have run afoul of regulatory requirements for participation in federal health care programs."

Notwithstanding your objections regarding the burden and proportionality of identifying the basis for its contentions, the United States supplemental response makes only a general reference to Foley presentations, Methodist "internal documents" and "materials prepared by PwC." As explained above, this does not satisfy Rule 33 of the Federal Rules of Civil Procedure. If the United States is attempting to direct Methodist to the production of business records as a substitute for providing sworn interrogatory responses pursuant to Fed. R. Civ. P. 33(d), then it must affirm that the relevant information is actually in the document productions and it must identify the particular document or documents within the productions that will answer the interrogatory. Given the approaching deadlines, please amend your response by this Friday, August 26, 2022.

**Interrogatory No. 19**

Interrogatory No. 19 is a contention interrogatory specifically addressing the contention in paragraph 238 of the Complaint in Intervention that "Methodist and West acknowledged to the United States that much of the management services required under the MSA did not occur in the first two years."

The United States' supplemental response still only refers generally to statements from informal interviews of five witnesses that counsel for the government and Relators conducted in 2021. Referring generally to statements made by "Methodist" and "West" during interviews, most of which the government and Relators prohibited Methodist and its counsel from attending, does not provide responsive information. In addition, the United States responds that it "intends to supplement this response further **after the close of fact discovery**." (Interrogatory Response 19 (emphasis added)). As you are aware, the case management order in this case has set September 23, 2022, as the deadline by which the parties must complete fact discovery. We are unaware of any basis for the United States to unilaterally ignore that deadline and supplement its discovery responses "after the close of fact discovery." Indeed, given that the United States made this

8

allegation in its Complaint in Intervention after more than two years of sealed investigation and an additional two years of litigation, we cannot understand why the United States has refused to identify the specific facts supporting it. Given that the depositions Drs. Kurt Tauer and Lee Schwartzberg are scheduled to take place in a manner of weeks, the United States needs to immediately supplement its response to this Interrogatory with whatever facts it has to support its allegation in paragraph 238 of the Complaint in Intervention.

**Continued Failure to Admit or Deny Requests for Admission**

The government's supplemental Responses to Methodist's Requests for Admission remain deficient. As to Nos. 3 and 5, the government's admitted failure to investigate the subject matter of the Requests is not a proper ground for stating that the government is without sufficient information to admit or deny the request. These Requests ask the government to admit that it has not identified certain adverse patient outcomes. If the government has not investigated the subject patient outcomes, it should admit that it therefore, necessarily has not identified any such facts. As to Nos. 4, 7, and 8, although the government has expounded upon its purported relevance objection, it still fails to admit, deny, or state why the government cannot truthfully admit or deny each Request as required by Rule 36, instead saying it has not "considered such issues in connection with the litigation." Methodist's Requests are not limited to the government's "consideration" *in connection with this litigation*. The government cannot relieve itself of its discovery obligations by simply electing not to "consider" the subject matter of the Requests. Please amend your responses to comply with Rule 36, or let us know by August 26, 2022 if the United States intends to stand on its Responses so that we may raise the issue with the Court.

**Continued Objection on Scope and Relevance Grounds**

The government maintains its objections to numerous Requests for Production on the grounds that the Requests are overbroad or not relevant, but does not meaningfully elaborate on the grounds for such an objection which we raised in our letter of August 1, 2022. (See Nos. 4, 6, 8, 9, 10, 11, 14, 15, 16, 18, 20, 21, 22, 23, 24, 25, 26, 27, 29, 30, 31, 32, and 33).

In particular, the United States objects that a number of Requests are not relevant because violations of the Anti-Kickback Statute are per se material to the United States. (See Nos. 20, 21, 22, 23, 24, 25, 26, and 27). What defenses a defendant does or does not raise does not bear on the United States' obligation to respond to Requests for documents that are plainly relevant to the allegations in the case. This objection ignores that the information sought goes not only to the materiality element of the False Claims Act, but also to falsity and intent, as discussed above with regard to Interrogatory Nos. 10–13, and 15 and in our August 1 letter. *See Arriva Med.,* 2022 WL 1203023, at *2; *Safeway,* 30 F. 4th 649; *Jones-McNamara,* 630 F. App'x at 400 (6th Cir. 2015); *Southland Mgmt. Corp.,* 326 F.3d at 674–75. These Requests collectively relate to government guidance, standards, and positions on specific allegations and positions taken in the Complaint in Intervention. It is not appropriate for the United States to now state that it is not aware of responsive documents because it believes such documents "are not relevant to any material issue in this action."

9

If no responsive documents exist, please amend your responses to state as much without the relevance objection. If the United States intends to stand on its objections, please let us know by August 26, 2022 so that we may raise the issue with the Court.

**Continued Failure to Identify Responsive Documents Withheld as Privileged**

In its Supplemental Objections and Responses to Defendants' First Set of Requests for Production, the government continues to object to providing a privilege log as required by Rule 26 because it "is burdensome." However, the government now responds to twenty-one Requests for Production by cabining its responses to any *non-privileged* documents. (See Nos. 1, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 15, 16, 17, 22, 26, 27, 29, 31, 32, and 33). Methodist is entitled to know whether the government is aware of and withholding any privileged documents as well, though they may be protected from disclosure. Please provide a privilege log for such documents. Further, some of Methodist's Requests are likely to implicate non-privileged documents that should be produced. In particular, some relate to communications with or documents from third parties or other government agencies that are presumably not privileged. (See Nos. 6, 10, 21, and 27). If the government does not have *any* responsive documents to a Request, it should amend its Responses to clearly state as much.

**Identification of Allegedly False Claims**

Requests for Production Nos. 14, 18, and 19 relate to the production of documents concerning the alleged false claims at issue in this case; Medicare payments requested and received by Methodist; and the government's alleged damages, respectively. The United States responds to Nos. 14 and 18 by referencing claims data that it has produced, with no further identification of which claims the United States believes are false. As to No. 19, the United States baldly states that it has produced responsive documents without any reference to claims or any other calculation of damages. Methodist is not prematurely seeking any documents properly reserved for expert discovery, such as calculations or analyses of particular claims. However, Methodist is entitled to underlying factual documents identifying claims that the United States alleges are false. As discussed above with regard to Interrogatory Nos. 1, 3, and 4, this information is paramount to Methodist's ability to defend itself in this lawsuit. As we have previously requested, please clarify whether the United States' responses to these three requests refer to the fourteen files of claims data produced on July 8, 2022. If the United States does not have any documents sufficient to identify responsive claims or damages, please state so.

Similarly, Request No. 34 requests certain information related to the United States' testifying experts, if any. The United States' specific objection to subpart e of this Request, in which you state that "voluminous" responsive materials "already have been produced and will be identified in expert reports," is unclear. Please clarify which responsive documents you are referring to as having already been produced.

**Efforts to Search for and Collect Responsive Documents Regarding Guidance or Instruction**

In our August 1, 2022 letter, we requested that you summarize the steps taken to identify, collect, and produce responsive documents regarding certain Requests for Production, but the

United States has not provided any such response. The United States still responds that it is "not aware" of documents responsive multiple requests, and for some of these Methodist questions whether the United States has not conducted a reasonable search as required by the Federal Rules. (E.g., Nos. 20, 21, 22, 23, 24, 25, 27, 29, and 33). For example, Request Nos. 21 and 23 seek communications with third parties, including healthcare providers, and Medicare Contractors regarding multiple topics raised in the United States allegations. The United States avers that it is unaware of any responsive documents. Methodist has doubts as to the accuracy of the averment that not a single document exists. Likewise, Request No. 33 seeks documents and communications related to other enforcement actions on such topics, and the government again avers that it is not aware of any non-privileged responsive documents. However, this seems inconsistent with your allegations that Foley & Lardner "marketed" this affiliation structure, as discussed above regarding Interrogatory Nos. 16 and 17.

To the extent the United States is making itself unaware by failing to search for responsive documents, that is inappropriate. And, Methodist's inability to properly evaluate the United States' responses is compounded by the relevance and privilege objections described above. For each Request to which you respond that the United States is "not aware" of responsive documents, by August 26, 2022, please explain what steps the United States has undertaken to conduct a reasonable search and confirm whether the United States in fact does not have responsive documents, including withdrawing the above-described objections or logging privileged documents as required by the Federal Rules. Methodist of course does not expect the United States to produce documents where none exist, and Methodist is not surprised that the United States does not have documents responsive to some Requests. However, Methodist is entitled to an unqualified, clear statement to that effect where that is the case.

As noted above, we request that the government respond to the issues raised in this letter by August 26, 2022.

Sincerely,

Brian D. Roark

cc: Taylor Chenery (tchenery@bassberry.com)
Robert Salcido (rsalcido@akingump.com)
Bryan Vroon (bryanvroon@gmail.com)
Jerry Martin (jmartin@barrettjohnston.com)
Chip Robertson (crobertson@bflawfirm.com)
Seth Hyatt (shyatt@barrettjohnston.com)