IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JEFFREY H. LIEBMAN and DAVID M. STERN, M.D., <br><br> Plaintiff-Relators, <br><br> v. <br><br> METHODIST LE BONHEUR HEALTHCARE and METHODIST HEALTHCARE-MEMPHIS HOSPITALS, <br><br> Defendants. | Case No.: 3:17-cv-00902 <br><br> District Judge William L. Campbell, Jr. <br><br> Magistrate Judge Barbara D. Holmes |

**METHODIST'S MOTION TO DETERMINE SUFFICIENCY OF UNITED STATES' RESPONSES TO METHODIST'S REQUESTS FOR ADMISSION 3 & 5**

This case relates to Methodist's affiliation with the West Clinic to create the West Cancer Center, which was accomplished through a series of agreements referred to as the Affiliation Agreements. The United States' Complaint alleges that "the multi-agreement structure was a vehicle for kickbacks," that "the complicated structure was designed so that physicians and hospitals could align in a manner that would avoid regulatory issues," and that "the deal documents were a means to disguise the fraudulent relationship." (Dkt. No. 235 ("US Compl.") at 38–39, 54.) In particular, the United States' Complaint alleges that the Management Services Agreement ("MSA"), under which West provided management services for Methodist's adult oncology service line, was a "sham agreement," and Methodist's payment of management fees to West was "unlawful." (*Id.* ¶ 284.)

Methodist denies the government's allegations regarding the structure of the parties' affiliation, the nature of the MSA, and the parties' intent in forming the West Cancer Center. (*See* Dkt. No. 242.) As part of its defense, Methodist will introduce evidence that, contrary to the

government's allegations, the affiliation was designed to—and did—improve the overall quality, efficiency, and effectiveness of the cancer care delivered at Methodist, as was the parties' express intent in creating and co-managing the cancer center. Along with this evidence of improved care, Methodist also will show that the government has not identified any adverse impact on patient outcomes resulting either from the "structure of the Affiliation Agreements," (RFA No. 3), or "the co-management of any Methodist patients' care by the West Cancer Center," (RFA No. 5).

The United States has refused to admit or deny Methodist's RFA Nos. 3 and 5, contending (1) that the requests are not relevant, and (2) that it is without sufficient knowledge to respond because it has not investigated whether there was any adverse impact on patient outcomes. (*See* Dkt. No. 271-6 at 4–5.) Pursuant to the Court's Order, (Dkt. No. 297), Methodist files this motion under Fed. R. Civ. P. 36(a)(6) seeking that Methodist's RFA Nos. 3 and 5 be deemed admitted.

## I.     The Requests Are Relevant.

"A party may serve on any other party a written request to admit…the truth of any matters within the scope of Rule 26(b)(1)…" Fed. R. Civ. P. 36(a)(1). Rule 26 allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Among the basic principles of discovery in federal cases is that Rule 26 is liberally construed to permit broad discovery." *Flexider USA Corp. v. Richmond*, 2021 WL 6496809, at *4 (M.D. Tenn. Mar. 8, 2021) (Holmes, M.J.) (citing *Durand v. Hanover Ins. Group, Inc.*, 2016 WL 9458551, at *2 (W.D. Ky. Oct. 27, 2016)).

Whether the structure of the affiliation or the co-management of the cancer center resulted in any adverse patient outcomes is directly relevant to the United States' claims that the affiliation was designed as a "vehicle for kickbacks" to "disguise fraud" through "sham agreement[s]" in violation of the Anti-Kickback Statute ("AKS"), as well as to Methodist's defense of those claims.

2

"The AKS was designed to prevent medical providers from making decisions based on improper financial incentives rather than medical necessity and to ensure that federal health care programs do not bear the costs of such decisions." *U.S. ex rel. Banigan v. PharMerica, Inc.*, 950 F.3d 134, 137 (1st Cir. 2020) (citing *United States v. Patel*, 778 F.3d 607, 612 (7th Cir. 2015) ("The Statute has another purpose as well—to protect patients from doctors whose medical judgments might be clouded by improper financial considerations.")); *see also Gohil v. Sanofi U.S. Servs. Inc.*, 2020 WL 4260797, at *2 (E.D. Pa. July 24, 2020) (The AKS's prohibition on paying kickbacks for referrals, "seeks to prevent arrangements that might cause doctors to make medical decisions for non-medical reasons.") Whether the United States has identified any adverse patient outcomes is directly relevant to whether the doctors' medical judgment was "clouded by improper financial considerations" or led to "medical decisions for non-medical reasons" or were "based on improper financial incentives rather than medical necessity," particularly where Methodist will offer proof that patient outcomes improved under the affiliation. *See id.*

Failing to identify adverse patient outcomes also directly contradicts the United States' allegations that the MSA was a "sham" agreement. Recently, the United States made the same argument in an AKS case in the Northern District of Georgia, claiming that a hospital had entered into "sham" management contracts with a community obstetrics clinic meant to disguise kickbacks for referrals. *See United States v. Holland*, No. 1:17-cr-0234 (N.D. Ga. Nov. 17, 2022) (attached hereto as Exhibit 1). Addressing whether the United States established an AKS violation, the court observed that "while the Government repeatedly states that the contracts between [the hospital] and [the clinic] were pretextual, [it has] not presented any evidence to support that assertion or that Defendants believed the contracts were not legitimate." *Id.* at 32. The court held that whether "the services provided by [the clinic] were valuable to [the hospital] and to the patients" was

3

relevant to determining the parties' intent. *Id.* After discussing certain outcomes of the work provided by the clinic, the court concluded that "there is ample evidence showing that [the clinic] provided valuable services under the contracts and no evidence that the contracts were a sham." *Id.* at 33.

Methodist will make the same showing here by offering evidence of West's valuable management services, which improved cancer care for Methodist and its patients. To date, the United States has proffered no evidence to rebut these outcomes or to show any adverse impact on patient outcomes resulting from the allegedly unlawful structure of the affiliation or the alleged "sham" co-management agreement. Yet, it refuses to admit that it has not identified any adverse impact on the grounds that patient outcomes are not relevant. For the same reasons set forth in *Holland*, patient outcomes are clearly relevant to Defendants' defense of this case. Thus, the government's response is insufficient, and the Court should rule that Methodist's RFA Nos. 3 and 5 are deemed admitted.

## II. The Government's Response is Insufficient.

Despite its unfounded relevance objection, rather than admitting or denying Methodist's RFA Nos. 3 and 5, the United States answered that "subject to" its objection, it lacks sufficient knowledge to respond because it has not investigated whether there was any adverse impact on patient outcomes in this litigation. (*See* Dkt. No. 271-6 at 4–5.) As the Court explained during the December 20 hearing, "this answer is not sufficient under Rules 36(a)(4) because: 'The answering party may assert lack of knowledge or information as a reason for failing to admit or deny *only if* the party states that it has made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.'" (Dkt. No. 299 at 71:15–20) (emphasis added). If a party merely responds that it is unable to admit or deny a request for

4

admission because they lacked sufficient knowledge, the response is "facially deficient." *Cahoo v. Fast Enterprises, LLC*, 2020 WL 4333544, at *2 (E.D. Mich. July 28, 2020).

Given that the United States' responses expressly admit that it "has not investigated whether there was any adverse impact on Methodist patient outcomes in connection with this litigation," (*See* Dkt. No. 271-6 at 4–5), the admission that it has "not identified any adverse impact on Methodist's patient outcomes" should be straightforward and requires no additional investigation. As the Court stated during the December 20 hearing: "If the government has not investigated, then it must not have identified any adverse patient outcomes." (Dkt. No. 299 at 70:23–25.)

### III. The Court Should Deem Methodist's Requests Admitted.

Under Rule 36, if the responding party serves an insufficient answer, for example, by failing to admit or deny the request as specified above, the requesting party may move to determine the sufficiency of an answer or objection, and "the court may order that the matter is admitted or that an amended answer be served." Fed. R. Civ. P. 36(a). Discovery in this case closed more than three months ago, and the United States should not be permitted to further amend its response now. Instead, because the United States has failed to provide a sufficient response to Methodist's RFA Nos. 3 and 5 under Rule 36, and it has admitted that it did not investigate any impact on patient outcomes, the Court should deem that Methodist's RFA Nos. 3 and 5 are admitted.

Dated: January 6, 2023.

Respectfully submitted,

*/s/ Brian D. Roark*
Brian D. Roark

5

J. Taylor Chenery
Taylor M. Sample
Hannah E. Webber
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone (615) 742-6200
Facsimile (615) 742-6293
broark@bassberry.com
tchenery@bassberry.com
taylor.sample@bassberry.com
hannah.webber@bassberry.com

Robert S. Salcido
(Admitted *Pro Hac Vice*)
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4095
rsalcido@akingump.com

*Attorneys for Defendants Methodist Le Bonheur Healthcare and Methodist Healthcare-Memphis Hospitals*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and exact copy of the foregoing has been served on the following counsel via the Court's CM/ECF email notification system on this the 6th day of January, 2023:

Bryan A. Vroon
Law Offices of Bryan A. Vroon, LLC
1766 West Paces Ferry Road
Atlanta, GA 30327
(404) 441-9806
bryanvroon@gmail.com

Jerry E. Martin
Seth Marcus Hyatt
Barrett Johnston Martin & Garrison, LLC
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
(615) 244-2202
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com

Edward D. Robertson , Jr.
Bartimus Frickleton Robertson Rader PC
109 B East High Street
Jefferson City, MO 65101
(573) 659-4454
crobertson@bflawfirm.com

Kara F. Sweet
U.S. Attorney's Office (Nashville Office)
Middle District of Tennessee
110 Ninth Avenue, S
Suite A961
Nashville, TN 37203-3870
(615) 401-6598
kara.sweet@usdoj.gov

Wynn M. Shuford
U.S. Attorney's Office (Nashville)
719 Church Street
Suite 3300
Nashville, TN 37203
615-401-6601
Wynn.Shuford@usdoj.gov

                                                    */s/ Brian D. Roark*