IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JEFFREY H. LIEBMAN and DAVID M. STERN, M.D., <br><br> Plaintiff-Relators, <br><br> v. <br><br> METHODIST LE BONHEUR HEALTHCARE and METHODIST HEALTHCARE-MEMPHIS HOSPITALS, <br><br> Defendants. | Case No.: 3:17-cv-00902 <br><br> District Judge William L. Campbell, Jr. <br><br> Magistrate Judge Barbara D. Holmes |

## METHODIST'S MOTION TO DETERMINE SUFFICIENCY OF UNITED STATES' RESPONSE TO METHODIST'S REQUEST FOR ADMISSION 4

This case relates to Methodist's affiliation with the West Clinic to create the West Cancer Center. The United States alleges that the affiliation violated the Anti-Kickback Statute ("AKS") and resulted in the submission of false claims to Medicare in violation of the False Claims Act ("FCA"). (Dkt. No. 235, ("US Compl.").) The United States' Complaint and sworn Interrogatory Responses contain allegations regarding aspects of the affiliation that it contends violated the AKS and FCA. To defend those allegations, Methodist intends to show that the government has never issued any rules, regulations, guidance, official publications, provider education material, or reports forbidding the aspects of the West Cancer Center affiliation that the United States contends were unlawful. Accordingly, Methodist served Request for Admission ("RFA") No. 4, asking the United States to admit that it has not identified any such materials or publications. (Dkt. No. 271-6 at 4–5.) The United States has refused to admit or deny Methodist's RFA No. 4, contending (1) that the request is not relevant, and (2) that the United States "has not considered such issues in connection with this litigation and is not under any obligation to do so[.]" (*Id.*)

Pursuant to the Court's Order, (Dkt. No. 297) Methodist files this motion under Fed. R. Civ. P. 36(a)(6) seeking that Methodist's RFA No. 4 be deemed admitted.

I. **The Request Is Relevant.**

"A party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1)…." Fed. R. Civ. P. 36(a)(1). Rule 26 allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Among the basic principles of discovery in federal cases is that Rule 26 is liberally construed to permit broad discovery." *Flexider USA Corp. v. Richmond*, 2021 WL 6496809, at *4 (M.D. Tenn. Mar. 8, 2021) (Holmes, M.J.) (citing *Durand v. Hanover Ins. Grp., Inc.*, 2016 WL 9458551, at *2 (W.D. Ky. Oct. 27, 2016)).

Methodist's RFA No. 4 asks the United States to admit that it has not identified any rules, regulations, guidance, official publications, provider education material, or reports forbidding the specific aspects of the West Cancer Center affiliation that the government contends violated the AKS and FCA. Each of the topics in Methodist's RFA No. 4 is tailored to the United States' allegations in this case:

- **4(a):** The United States alleges that the compensation Methodist paid West under their Professional Services Agreement ("PSA") exceeded the amount of professional collections Methodist received for the West physician's services. (US Compl. ¶¶ 278–79). Describing the alleged unlawful remuneration in response to Methodist's Interrogatory No. 2, the United States also asserted that "Methodist also paid the West oncologists approximately $60 million in excess of their professional collections over the time period 2012-2018." (Dkt. No. 296-1 at 7.) Thus, RFA No. 4(a) asks the United States to admit that it has not identified publications forbidding the "[p]ayment to a non-employee physician in an amount greater than his or her professional collections." (Dkt. No. 271-6 at 4.)

- **4(b):** The United States alleges that the PSA violated the AKS in part because basing compensation on wRVUs meant that the aggregate compensation paid under the PSA "was not set in advance." (US Compl. ¶¶ 131, 136.) Thus, RFA No. 4(b) asks the United States to admit that it has not identified publications forbidding the "[p]ayment to a non-employee physician on the basis of wRVUs under a professional services agreement." (Dkt. No. 271-6 at 4.)

2

- **4(c)-(d):** The United States makes specific allegations about the fair market value opinions that Methodist and West obtained to support the fee payments under their Management Services Agreement, ("MSA") including the opinions' reliance on the "market approach" and that the management fees were tied to the percentage of revenues for the service line, concluding that payments under the MSA were "ultimately…based on the volume or value of West's referrals to Methodist." (*Id.* ¶¶ 140, 147, 153, 167.) Accordingly, RFA Nos. 4(c)-(d) ask the United States to admit it has not identified publications forbidding "[t]he use of the market approach as a method to determine fair market value" or "[a] market valuation approach that considers the overall revenue of a service line." (Dkt. No. 271-6 at 4.)

- **4(e):** The United States alleges that Methodist never asked West for time records to support the payment of management fees, (US Compl. ¶ 246) and the United States' response to Interrogatory No. 2 identifies the absence of "time records" as evidence that the management fees were unlawful remuneration. (Dkt. No. 296-1 at 7.) Thus, RFA No. 4(e) asks the United States to admit that it has not identified publications forbidding the "[p]ayment of management fees under a management services agreement without timesheets or other similar documentation." (Dkt. No. 271-6 at 5.)

- **4(f):** The United States alleges that "Congress has enacted safe harbors that protect certain prohibited payment and business arrangements that could otherwise implicate the AKS" but that the safe harbors are "inapplicable here." (US Compl. ¶ 34.) It also alleges that West's deal counsel, Foley, "identified 'irreducible AKS risk' in the physician-hospital integration structure [adopted by Methodist and West.]" (*Id.* ¶¶ 89, 95.) In response to Interrogatory No. 16 regarding Foley's alleged communications to Methodist about AKS risk, the United States said, "Entities entering into such agreements cannot rely on a personal services safe harbor, because as Foley noted, the aggregate compensation was not set in advance and payment was based on the volume or value of referrals." (Dkt. No. 296-1 at 16.) Accordingly, RFA No. 4(f) asks the United States to admit that it has not identified publications forbidding "[e]ntering a payment arrangement outside a safe harbor if that arrangement otherwise satisfies the Anti-Kickback Statute." (Dkt. No. 271-6 at 5.)

Although each topic identified in RFA No. 4 is based directly on allegations the United States has made in this action, the United States has argued that it need not admit or deny the request because "[t]he United States is not alleging that Methodist violated anything [except the AKS and FCA]," and, therefore, it is not a proper subject under Rule 26. (Dkt. No. 271 at 16–17.)[1]

---

[1] The United States has also argued that, despite the allegations from its Complaint and sworn Interrogatory Responses, the topics covered by RFA No. 4 relate to "irrelevant conduct" that is "not the alleged basis for wrongdoing" in this case. (Dkt. No. 271 at 17.) But, after five years and four complaints, the deadline to amend the pleadings has passed and fact discovery is closed. Methodist is entitled to mount a defense to the case that has been filed against it. The fact that the

3

That the United States has not identified rules, regulations, guidance, official publications, provider education material, or reports forbidding these specific aspects of the affiliation—while not central to the government's view of the case—is directly relevant to Methodist's defense because a claim must be inconsistent with a controlling rule, regulation, or standard that authorizes it in order to be "false" under the FCA. *See, e.g., United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 674–75 (5th Cir. 2003). And, a defendant cannot "knowingly" submit a false claim if it acts within a reasonable interpretation of an ambiguous law where there is no official guidance to warn the defendant away from its interpretation. *See, e.g., U.S. ex rel. Olhausen v. Arriva Med., LLC*, 2022 WL 1203023, at *2 (11th Cir. Apr. 22, 2022); *U.S. ex rel. Proctor v. Safeway, Inc.*, 30 F. 4th 649, 652–53 (7th Cir. 2022). Methodist will show that it did not "knowingly" violate the law because its interpretation of the law was reasonable and there was no official guidance stating otherwise. It is therefore entitled to an admission from the United States that it has not identified any rules, regulations, guidance, official publications, provider education material, or reports forbidding the conduct described in RFA No. 4. Because the request is relevant, and the United States has not sufficiently responded, it should be deemed admitted under Rule 36(a)(6).

## II.     The Government's Response is Insufficient.

In addition to its unfounded relevance objection, the United States responds only that it "has not considered such issues in connection with this litigation and is not under any obligation to do so[.]" (Dkt. No. 271-6 at 5.) Rule 36 requires that "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). Stating that the United States "has not considered such issues" is not

---

United States has apparently abandoned these theories (or concocted yet-undisclosed new theories), does not unilaterally render them irrelevant to Methodist's defense.

a sufficient response under Rule 36.  *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 78 (N.D.N.Y. 2003) ("Rule 36 requires the responding party to make a reasonable inquiry, a reasonable effort to secure information that is readily obtainable from persons and documents within the responding party's relative control and to state fully those efforts.")

In addition, the United States has <u>already admitted</u> in sworn Interrogatory Responses that "after a reasonable search and inquiry, the United States has not identified" any such rules, requirements, sub-regulatory guidance, advisory opinions or other statements of policy on these topics.  (*See* Dkt. No. 296-1 at 12–15.)[2]  At the hearing on December 20, the United States argued that since it had already indicated that there are no documents or information on these topics, "[t]here's no reason to have this request to admit" because "[t]hat's not the purpose [] of [a] request to admit."  (Dkt. No. 299 at 79:2-3, 8.)  But, "[t]he purpose of the rule is to require admission of matters which ought to be admitted, or which will not be disputed at the trial, so that the time, trouble and expense required to prove them may be avoided."  *JP Morgan Chase Bank, NA v. Winget*, 2014 WL 4926242, at *3 (E.D. Mich. Oct. 1, 2014) (internal quotations omitted); *see also In re Carney,* 258 F.3d 415, 419 (5th Cir. 2001) ("Rule 36 allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact…Such breadth allows litigants to winnow down issues prior to trial and thus focus their energy and resources on disputed matters.")

---

[2] It cannot be true that the United States conducted a "reasonable search and inquiry" into the location and identification of these documents, but also that it "has not considered" whether it has identified any responsive documents.  Rather, it appears, as the United States explained during the December 20 hearing, it is seeking a strategic advantage in the case by attempting to avoid admitting that it has not identified responsive documents, "which we presume [] is to be used at trial in some way to try to attempt to show, aha, the United States never said our conduct was wrong . . . ." (Dkt. No. 299 at 80:5–10.)  That is not an appropriate basis for refusing to engage in discovery or satisfy the requirements of Rule 36.

5

### III. The Court Should Deem Methodist's Request Admitted.

Under Rule 36, if the responding party serves an insufficient answer, the requesting party may move to determine the sufficiency of an answer or objection, and "the court may order either that the matter is admitted or that an amended answer be served." Fed. R. Civ. P. 36(a)(6). Discovery in this case closed more than three months ago, and the United States should not be permitted to further amend its response now. Instead, given that the United States has failed to provide a sufficient response to Methodist's Request for Admission No. 4 under Rule 36 and that it already admitted it has not identified responsive materials on these topics, the Court should deem that Methodist's Request for Admission No. 4 is admitted.

Dated: January 6, 2023.

        Respectfully submitted,

        */s/ Brian D. Roark*
        Brian D. Roark
        J. Taylor Chenery
        Taylor M. Sample
        Hannah E. Webber
        BASS, BERRY & SIMS PLC
        150 Third Avenue South, Suite 2800
        Nashville, TN 37201
        Telephone (615) 742-6200
        Facsimile (615) 742-6293
        broark@bassberry.com
        tchenery@bassberry.com
        taylor.sample@bassberry.com
        hannah.webber@bassberry.com

        Robert S. Salcido
        (Admitted *Pro Hac Vice*)
        Akin Gump Strauss Hauer & Feld LLP
        2001 K Street, N.W.
        Washington, DC 20006
        (202) 887-4095
        rsalcido@akingump.com

*Attorneys for Defendants Methodist Le Bonheur Healthcare and Methodist Healthcare-Memphis Hospitals*

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been served on the following counsel via the Court's CM/ECF email notification system on this the 6th day of January, 2023:

Bryan A. Vroon
Law Offices of Bryan A. Vroon, LLC
1766 West Paces Ferry Road
Atlanta, GA 30327
(404) 441-9806
bryanvroon@gmail.com

Jerry E. Martin
Seth Marcus Hyatt
Barrett Johnston Martin & Garrison, LLC
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
(615) 244-2202
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com

Edward D. Robertson , Jr.
Bartimus Frickleton Robertson Rader PC
109 B East High Street
Jefferson City, MO 65101
(573) 659-4454
crobertson@bflawfirm.com

Kara F. Sweet
U.S. Attorney's Office (Nashville Office)
Middle District of Tennessee
110 Ninth Avenue, S
Suite A961
Nashville, TN 37203-3870
(615) 401-6598
kara.sweet@usdoj.gov

Wynn M. Shuford
U.S. Attorney's Office (Nashville)
719 Church Street
Suite 3300
Nashville, TN 37203
615-401-6601
Wynn.Shuford@usdoj.gov

/s/ Brian D. Roark