IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* JEFFREY H. LIEBMAN and DAVID M. STERN, M.D., | ) ) ) ) | |
| Plaintiff-Relators, | ) ) | Case No.: 3:17-cv-00902 |
| v. | ) ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE HOLMES |
| METHODIST LE BONHEUR HEALTHCARE and METHODIST HEALTHCARE-MEMPHIS HOSPITALS, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**UNITED STATES' OPPOSITION TO METHODIST'S MOTION TO DETERMINE SUFFICIENCY OF ITS RESPONSE TO REQUEST FOR ADMISSION NOS. 3 AND 5**

The United States of America ("United States") submits this response to the motion of Defendants Methodist Le Bonheur Healthcare and Methodist Healthcare-Memphis Hospitals ("Methodist") to determine the sufficiency of the United States' response to Methodist's Request For Admission Nos. 3 and 5 ("RFAs 3 and 5") (ECF No. 301). The United States properly objected to RFAs 3 and 5. The requests do not comply with Rule 26(b)(1) of the Federal Rules of Civil Procedure in that Methodist asks the United States to admit matters that are not relevant to any claim or defense in this action as set forth below. So that the Court can fully address the relevance objection, the United States is filing simultaneously herewith motions *in limine* to exclude Methodist from introducing evidence of safe harbor and patient outcomes, which are referred to and incorporated fully herein. Notwithstanding the lack of relevance, the United States does not possess sufficient information to admit or deny RFAs 3 and 5, as Methodist did not disclose evidence of every patient outcome in discovery in this action.

ARGUMENT

Rule 36 allows a party to "serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to … facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1). Rule 26 provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit….

Fed. R. Civ. P. 26(b)(1). Requests to admit are not a discovery device; rather, they are intended to narrow the disputed issues at trial. *Misco, Inc. v. U.S. Steel Corp.*, 784 F.2d 198, 205 (6th Cir. 1986), *Tolson v. Washburn*, Case No. 3:19-00175, 2022 WL 1479945, at *4 (M.D. Tenn. May 10, 2022) (Newbern, J.). If a party objects to a request to admit, the grounds for the objection must be so stated. Fed. R. Civ. P. 36(a)(5). Where a request to admit seeks information about claims or defenses not at issue in the action, a relevance objection is proper. *Tolson*, 2022 WL 1479945, at *5 (no answer required where request to admit sought information relating to claim not in issue).

RFA 3 states: "Admit that You have not identified any adverse impact on Methodist's patient outcomes due to the structure of the Affiliation Agreements." (ECF No. 271-6 at 4). RFA 5 states: "Admit that You have not identified any adverse patient outcomes that resulted from the co-management of any Methodist patients' care by the West Cancer Center." (*Id.* at 4-5.) The United States objected to RFAs 3 and 5 on the basis that Methodist seeks an admission as to matters regarding patient outcomes that are not relevant to any claim or defense in this action and that otherwise the United States lacks sufficient information to admit or deny the requests. (*Id.*)

2

In its motion, Methodist states that RFAs 3 and 5 are relevant because "[a]s part of its defense, Methodist will introduce evidence that, contrary to the government's allegations, the affiliation was designed to—and did—improve the overall quality, efficiency, and effectiveness of the cancer care delivered at Methodist, as was the parties' express intent in creating and co-managing the cancer center." (ECF No. 301 at 1-2.) "'Along with this evidence of improved care, Methodist also will show that the government has not identified any adverse impact on patient outcomes resulting either from the 'structure of the Affiliation Agreements,' (RFA No. 3), or 'the co-management of any Methodist patients' care by the West Cancer Center,' (RFA No. 5)." *Id.* at 2. Methodist does not point to any allegation in the Complaint in Intervention that relates to patient outcomes or the quality of cancer care, and there is none.

Anti-Kickback Statute ("AKS") violations may be brought in the absence of patient harm. And there is not authority that requires the United States to identify an adverse impact on patient outcomes to establish that Methodist violated the AKS. Similarly, the absence of patient harm also is not a defense to violating the AKS. For this reason, the United States did not investigate patient outcomes. RFAs 3 and 5, however, imply that there is some affirmative burden on the United States to do so. There is no such burden. Thus, no further response should be required.

Methodist's argument that patient outcomes are relevant to the issue of intent is nothing more than a red herring. Courts in this district have concluded that only one purpose of the remuneration needs to be to induce referrals—and not the only purpose. *See U.S. v. SouthEast Eye Specialists, PLLC ("SEES")*, 570 F. Supp. 3d 561, 579 (M.D. Tenn. 2021) (Crenshaw, C.J.) ("As previously explained, the Circuits that have addressed the issue have uniformly held that if at least one purpose of the remuneration is in return for a referral, then the statute has been violated. Hence, Plaintiffs need only forward plausible allegations that *a* purpose of Defendants' scheme

3

was to induce referrals.") (emphasis in original).  Even if Methodist intended to improve cancer care, it does not impact whether it also intended to violate the AKS. *See id.* at 578 ("SEES may be truly altruistic towards its referring optometrists, but its nobility of purpose and spirit cannot run afoul of the Anti-Kickback Statue."). Moreover, "the Anti-Kickback Statute itself provides that actual knowledge of the statute or the specific intent to violate it is not required." *Id.* at 581.

For the same reason, Methodist cannot argue that there is no AKS violation because the lack of adverse patient outcomes proves that services were performed. The decision in *United States v. Holland*, Case No. 01:17-0234 (N.D. Ga.), which Methodist attached in support of its motion, makes clear that where courts apply the "one purpose" test, "an AKS violation occurs if any purpose of a payment for services was to induce, or in exchange for, patient referrals, even if services were rendered." (ECF 301-1 at 9) (citing cases).[1]  Thus, whether patients had some benefit does not impact whether Methodist also had the requisite intent to violate the AKS.

Even though Methodist's motion should be denied because it seeks irrelevant information, the United States also should not be required to respond because the United States lacks information to admit or deny the requests. Neither party served discovery on patient outcomes. The United States did not consider or make any determinations about patient harm, and it does not possess information to respond to RFAs 3 and 5. Methodist did not disclose evidence of patient outcomes for the adult oncology patients, let alone all its patients' records. RFAs 3 and 5 cannot

---

[1] Methodist's reliance on the decision in *Holland* (ECF No. 301-1), a criminal case in a different circuit involving the admissibility of statements of co-conspirators, is misplaced.  In that case, unlike here, the defendants invoked the safe harbor to the AKS. To the extent Methodist seeks to use evidence of patient outcomes as a backdoor attempt to argue a safe harbor affirmative defense it has not asserted, it cannot do so, as set forth in the accompanying responses to Methodist's motions to determine the sufficiency of the United States' responses to RFAs 4, 7 and 8 and in the United States' motions *in limine*.

4

be used as a discovery tool, and reopening discovery as to patient outcomes would not be proportional to the needs of the case, particularly given that there are thousands of patients.[2]

If Methodist contends that the purported lack of adverse outcomes for all of its patients is relevant for its defense of this action, then Methodist had an obligation to disclose documents sufficient to support such a defense in its Initial Disclosures and in response to the document requests served by Relators and the United States. It has not done so.

## CONCLUSION

For the foregoing reasons, and those set forth in the United States' accompanying submissions, Methodist's motion should be denied, and Methodist should be precluded from introducing any evidence of purported improvements in patient care and patient outcomes.

Dated: January 13, 2023

                                  HENRY C. LEVENTIS
                                  United States Attorney
                                  Middle District of Tennessee

By:   s/ Kara F. Sweet
       KARA F. SWEET
       WYNN M. SHUFORD
       Assistant United States Attorney
       United States Attorney's Office
       719 Church Street, Suite 3300
       Nashville, TN 37203
       Phone: (615) 736-5151
       kara.sweet@usdoj.gov
       wynn.shuford@usdoj.gov

*Counsel for the United States*

---

[2] If the United States is required to respond to RFAs 3 and 5, then Methodist should be required to produce documents on all patient records sufficient to determine patient outcomes during the entire seven-year time period. Further, as patient outcomes is a matter for expert discovery, such deadlines would need to be extended.

# CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2023, a true and correct copy of the foregoing was served via email to the following:

| | |
|---|---|
| Bryan A. Vroon<br>Law Offices of Bryan A. Vroon, LLC<br>1380 West Paces Ferry Road, Suite 2270<br>Atlanta, GA 30327<br>Email: bryanvroon@gmail.com | Edward D. Robertson, Jr.<br>Bartimus, Frickleton & Robertson<br>715 Swifts Highway<br>Jefferson City, MO 65109<br>Email: crobertson@bflawfirm.com |
| Jerry E. Martin<br>David Rivera<br>Seth Marcus Hyatt<br>Barrett Johnston Martin & Garrison, LLC<br>Bank of America Plaza<br>414 Union Street, Suite 900<br>Nashville, TN 37219<br>Email: jmartin@barrettjohnston.com<br>Email: shyatt@barrettjohnston.com | Robert Salcido<br>(Admitted *Pro Hac Vice*)<br>Akin Grump Strauss Hauer & Feld LLP<br>2001 K Street, N.W.<br>Washington, D.C. 20006<br>Email: rsalcido@akingrump.com |
| Brian D. Roark<br>Anna M. Grizzle<br>J. Taylor Chenery<br>Taylor M. Sample<br>Hannah E. Webber<br>Bass, Berry & Sims PLC<br>150 Third Avenue South, Suite 2800<br>Nashville, TN 37201<br>Email: broark@bassberry.com<br>Email: agrizzle@bassberry.com<br>Email: tchenery@bassberry.com<br>Email: taylor.sample@bassberry.com<br>Email: hannah.webber@bassberry.com | |

s/ Kara F. Sweet
KARA F. SWEET
Assistant United States Attorney