IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ) <br> JEFFREY H. LIEBMAN, and DAVID M. ) <br> STERN, M.D. ) <br> ) <br> v. ) <br> ) <br> METHODIST LE BONHEUR HEALTHCARE, ) <br> and METHODIST HEALTHCARE-MEMPHIS ) <br> HOSPITALS ) | No. 3:17-cv-0902 <br> Judge Campbell <br> Magistrate Judge Holmes |

**O R D E R**

On December 20, 2022, counsel for the parties to this litigation, including the United States ("the Government"), Relators Jeffrey Liebman and David Stern, and Defendants Methodist Le Bonheur Healthcare and Methodist Healthcare – Memphis Hospitals (collectively, "Methodist"), appeared for a hearing to resolve multiple outstanding discovery disputes. The Court entered a subsequent order detailing the resolution of many of those disputes but left open the issue of whether Methodist had properly withheld from production numerous documents based on attorney-client privilege. (Docket No. 300 at 11.) The Court instead directed Methodist to provide the documents in question for *in camera* review to determine whether the materials were withheld on an appropriate application of the attorney-client privilege. Having completed an *in camera* review of the documents, the Court concludes that Methodist has improperly withheld many documents that are not protected by the attorney-client privilege. Methodist must therefore produce the documents, as described in more detail below, within **14 days** of the date of entry of this order.[1]

---

[1] This issue was raised by the parties in the joint discovery dispute statements found at Docket Nos. 257 and 273.

## Background

The Court does not recite the extensive history of this case but instead notes that details of the factual background giving rise to the current dispute may be found in previous orders and memoranda. *See, e.g.,* Docket Nos. 168, 214, 300. The sole focus of this order is Methodist's claim of attorney-client privilege over upwards of 350 communications identified on its third amended supplemental privilege log. *See* Docket No. 296-3.

## Legal Standards and Analysis

It is well-established that the scope of discovery in any given case is left to the broad discretion of the trial court. *Canter v. Alkermes Blue Care Elect Preferred Provider Plan*, 328 F.R.D. 485, 495 (S.D. Ohio 2018) (citing *Pearce v. Chrysler Group, L.L.C. Pension Plan*, 615 F. App'x 342, 350 (6th Cir. 2015)). Questions of privilege must be assessed under federal common law in federal questions cases, *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998), and the burden of demonstrating proper application of the privilege lies with the party asserting it. *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002) (citing *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 2000)).

The criteria for evaluating whether the privilege applies are as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed*, 134 F.3d at 355-56 (citing *Fausek v. White,* 965 F.2d 126, 129 (6th Cir. 1992)). Because the privilege acts as "a derogation of the search for truth," it must be "narrowly construed," *In re Lott,* 424 F.3d 446, 461 (6th Cir. 2005) (citation omitted), and it "applies only where necessary to

achieve its purpose," which is to "protect[] … those communications necessary to obtain legal advice which might not have been made absent the privilege." *Jackson v. Ethicon, Inc.*, 566 F. Supp. 3d 757, 765 (E.D. Ky. 2021) (citing *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986)).

Although the privilege is generally waived by "voluntary disclosure of private communications to third parties," *New Phoenix Sunrise Corp. v. Comm'r*, 408 F. App'x 908, 918 (6th Cir. 2010) (citing *Dakota,* 197 F.3d at 825), it may be extended to protect communications "made by or to a third party to assist the attorney in giving legal advice to the client." *Ciccio v. SmileDirectClub, LLC*, No. 3:19-cv-00845, 2022 WL 2910501, at *5 (M.D. Tenn. July 22, 2022) (Trauger, J.) (citing *In re OM Sec. Litig.*, 226 F.R.D. 579, 588 (N.D. Ohio 2005)). In the corporate context, the attorney-client privilege may protect communications between corporate employees and corporate counsel, *John B. v. Goetz*, 879 F. Supp. 2d 787, 893 (M.D. Tenn. 2010) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 391 (1981)), but "only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Id*. (quoting *Fisher v. United States,* 425 U.S. 391, 403 (1976)).

### Third Party Consultants

The current discovery dispute is comprised of two separate attorney-client privilege issues, the first of which involves Methodist's assertion of privilege with respect to 342 communications sent to or from employees of three different third-party consulting firms retained by Methodist in connection with its acquisition of non-party The West Clinic, PLLC ("West"): Healthcare Appraisers, Inc. ("HAI"), ECG Consultants, Inc. ("ECG"), and Pricewaterhouse Cooper ("PwC"). Methodist avers that HAI was hired by its outside counsel, Jones Day, "to assist Jones Day in

3

providing legal advice" to Methodist regarding "the fair market value ("FMV") range of compensation payable by Methodist to West under the oncology management arrangement." (Docket No. 257 at 5.) Methodist hired ECG "to conduct a FMV analysis … in coordination with Jones Day, Methodist's legal counsel," and engaged PwC "to facilitate the development of a Co-Management Company for the Oncology Service Line" and "assist with certain phases of planning, strategic decision making, and development related to the co-management alignment strategy." (*Id*.) Methodist does not contend that all communications involving these consultants are privileged but rather has withheld "only those for which the primary purpose was to support the provision of legal advice." (*Id*. at 7-8.) The Government, in contrast, argues that because the consultants were engaged solely to provide business advice to both Methodist and West as part of the acquisition, the privilege cannot apply to any of the communications at issue. The Government additionally argues that because Methodist has relied on the three consultants and the FMV opinions provided by HAI and ECG "offensively" by posting information derived from the consultants' work on "a website devoted to defending this litigation," as well as in its responses to the Government's discovery requests, Methodist is improperly withholding relevant information while using such information as both "a sword and a shield. (*Id*. at 4.)

The central issue the Court must address is whether the communications at issue involve the facilitation of legal or business advice. As noted by a sister court in this circuit, the privilege does not attach merely because counsel is included on an email thread:

> Where a person who happens to be an attorney is not acting in that capacity, the privilege does not attach, and communications between an attorney and client which relate to business, rather than legal matters, do not fall within the protection of the attorney-client privilege. However, separating an attorney's role in a business decision from his or her role as a legal advisor is not always a simple matter. Legal

and business considerations may frequently be inextricably intertwined. This is inevitable when legal advice is rendered in the context of commercial transactions or in the operations of a business in a corporate setting. The mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege.

*Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 113, 116-17 (E.D. Mich. 2019) (internal citations and quotations omitted) (cleaned up). Additionally, a communication between non-lawyers is generally not shielded by the privilege "unless the dominant intent is to prepare the information in order to get legal advice from the lawyer." *In re Behr Dayton Thermal Prod., LLC*, 298 F.R.D. 369, 375 (S.D. Ohio 2013) (internal citation omitted). The privilege does not apply if the purpose of the communication is instead to obtain guidance that falls beyond an attorney's purview. *See e.g. Graff v. Haverhill North Coke Co.*, No. 1:09-CV-670, 2012 WL 5495514, at *10 (S.D. Ohio Nov. 13, 2012) ("[W]hen a client's goal is not legal advice, but is rather accounting, medical, or environmental advice, the privilege is inapplicable.") (quoting *In re Grand Jury Matter*, 147 F.R.D. 82, 85 (E.D. Pa. 1992)).

Bearing these principles in mind, the Court concludes that the majority of the communications being withheld by Methodist are not protected by the attorney-client privilege. A significant portion of the emails at issue relate to work done by ECG and HAI in providing FMV opinions to Methodist for purposes of establishing physician compensation rates as part of the Professional Services Agreement ("PSA") and Management Services/Performance Improvement Agreement ("MSA"), which are contractual arrangements that would eventually govern Methodist's commercial relationship with West. The discussions contained in those communication are decidedly business in nature, which makes the attorney-client privilege inapplicable. *See Shahbabian v. Trihealth*, 2019 WL 4958114, at *6 (S.D. Ohio 2019) (finding

5

that primary purpose of documents prepared to support fair market valuation of physician's compensation was not to seek legal advice even though information was shared with in-house counsel for use in contract negotiations).

The conversations contained in the emails reviewed by the Court frequently involve Methodist executives seeking advice directly from one or more of the retained consultants, as well as the consultants in turn providing guidance directly to Methodist executives. Indeed, many of the communications at issue have no attorney copied on them, which further bolsters that legal advice was not the primary objective. *See In re Grand Jury Matter*, 147 F.R.D. at 85 ("If what is sought is not legal advice but only accounting service, or if the advice sought is the accountant's rather than the lawyer's, no privilege exists."). And even assuming that counsel's inclusion on other emails reflects counsel's active participation in providing advice – which does not appear to be the case with respect to in-house counsel for Methodist – such advice chiefly involves compliance with federal regulations regarding kickbacks and physician self-referral, which courts generally find to constitute a business consideration. *See Ciccio*, 2022 WL 2182301, at *4 (collecting cases). Counsel's provision of guidance in these instances is not afforded protection by the attorney-client privilege. *See Faloney v. Wachovia Bank, N.A.*, 254 F.R.D. 204, 209 (E.D. Pa. 2008) ("Because the privilege promotes the dissemination of sound legal advice, it applies only where the advice is legal in nature, and not where the lawyer provides non-legal business advice.") (internal citations and quotations omitted).

A final factor informs the Court's conclusion that most of the communications in dispute are not protected by the privilege. There are multiple emails in the batch of documents provided that demonstrate an attempt by a consultant to protect a particular correspondence from disclosure

Case 3:17-cv-00902   Document 311   Filed 01/18/23   Page 6 of 11 PageID #: 5518

by invoking the privilege. As an example, one consultant requests an attorney's involvement in a particular endeavor for the sole purpose of being "protected" by the attorney-client privilege. The Court does not mean to suggest that this individual had nefarious intentions but instead highlights the communication for two reasons, the first of which is to emphasize the ancillary involvement of legal counsel in most of the documents in question, which reinforces the Court's finding that the disputed documents involve primarily business considerations. The second is to underscore the obvious point that unless the necessary elements for attorney-client privilege are met, most notably the solicitation of *legal* advice, merely copying an attorney on an email does not protect a communication from disclosure. *See Graff*, 2012 WL 5495514, at *44 ("Simply labeling a document as protected by a privilege does not make it so where a party fails to satisfy all of the criteria for attorney-client privilege.").

Notwithstanding the determination that most of the documents provided for *in camera* review are not protected by attorney-client privilege, the Court finds that a small number of the communications in dispute have been appropriately withheld by Methodist based on attorney-client privilege. These privileged communications largely include documents reflecting guidance provided by Jones Day attorneys and/or the provision of information to those attorneys ostensibly for the purpose of rendering legal advice. Because Jones Day is outside counsel retained by Methodist, the communications between their attorneys and Methodist personnel enjoy a presumption of privilege, *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, No. 6:09-CV-1002-ORL-31, 2012 WL 5415108, at *3 (M.D. Fla. Nov. 6, 2012), although this does not mean that every communication including a Jones Day attorney is deemed privileged.

7

In sum, with respect to the majority of the communications in dispute, because Methodist has not "clearly demonstrated that the communications in question were made for the express purpose of securing legal not business advice," *FTC v. Abbvie, Inc.*, No. CV 14-5151, 2015 WL 8623076, at *3 (E.D. Pa. Dec. 14, 2015) (internal citations omitted) (cleaned up), the Court finds that they are not subject to protection by the attorney-client privilege and must therefore be produced as directed.

The documents the Court finds constitute privileged communications appropriately withheld by Methodist consist of the following: MLH-PRIV_00026; MLH-PRIV_00080; MLH-PRIV_00100; MLH-PRIV_00129; MLH-PRIV_00130; MLH-PRIV_00131; MLH-PRIV_00132; MLH-PRIV_00133; MLH-PRIV_00143; MLH-PRIV_00148; MLH-PRIV_00155; MLH-PRIV_00187; MLH-PRIV_00209; MLH-PRIV_00229; MLH-PRIV_00230; MLH-PRIV_00344; MLH-PRIV_00387; MLH-PRIV_00403; MLH-PRIV_00411; MLH-PRIV_00452; MLH-PRIV_00453; MLH-PRIV_00454; MLH-PRIV_00455; MLH-PRIV_00456; MLH-PRIV_00457; MLH-PRIV_00458; MLH-PRIV_00554; MLH-PRIV_00555; MLH-PRIV_00567; MLH-PRIV_00568; MLH-PRIV_00569; MLH-PRIV_00570; MLH-PRIV_00571; MLH-PRIV_00572; MLH-PRIV_00573; MLH-PRIV_00579; MLH-PRIV_00580; MLH-PRIV_00763; MLH-PRIV_00764; MLH-PRIV_00765; MLH-PRIV_00832; MLH-PRIV_00833; MLH-PRIV_00843; MLH-PRIV_01207; MLH-PRIV_01208; MLH-PRIV_01259; and MLH-PRIV_01260.[2] The

---

[2] Several of these documents are duplicate files.

remaining documents provided to the Court *in camera* must be produced to the Government within 14 days of entry of this order.

**Disclosure to Third Parties**

Methodist also refused to produce 18 other communications that involve two individuals – Erich Mounce and Ron Davis – both of whom were employees of West, the purchase of which by Methodist gave rise to the alleged False Claims Act violations at issue in this action. Mr. Mounce was West's Chief Executive Officer at the time these communications were made but, according to Methodist, he also served as a "Methodist leased employee and the Senior Vice President of the Methodist Oncology Service Line" during the course of Methodist's acquisition of West. (Docket No. 273 at 12.) Methodist claims that during the same period of time, Mr. Davis similarly served dual roles, one as West's Chief Financial Officer and the other as an "independent contractor working within the service line whose salary Methodist paid." (*Id*. at 13.) Methodist emphasizes these individuals' respective roles as leased Methodist employee and Methodist contractor to argue that the communications at issue are appropriately withheld because they involve the facilitation of legal advice with respect to "Methodist or contracts relating to Methodist." (*Id*. at 13-14.) In response, the Government questions how the CEO and CFO of West could be considered representatives of Methodist for purposes of the attorney-client privilege when West and Methodist were adverse parties – or at least on the opposite side of Methodist – in a business transaction. More specifically, the Government argues that Methodist has waived any right to assert attorney-client privilege with respect to these communications given that they were disclosed to Mounce and Davis, who were not clients but third parties.

The Court agrees with the Government's position. Methodist has done little to clarify the impact of the dual roles of Mr. Mounce and Mr. Davis on application of the attorney-client privilege. Methodist glosses over the issue by asserting only it "is to be expected" that individuals working on Methodist's behalf would be included in communications that involve the rendering of legal advice. (Docket No. 273 at 13.) Methodist also obfuscates the issue by attempting to draw a comparison to *Grae v. Corrections Corporation of America*, in which Judge Trauger noted only that the privilege log at issue sufficiently described which "hat" a law firm that provided both legal counsel and lobbying services was wearing when certain communications were made, 2020 WL 3035915, at *7 (M.D. Tenn. June 5, 2020), when the instant dispute involves a much different circumstance of non-attorneys ostensibly acting on both sides of a healthcare acquisition. And when pressed to address the issue during the discovery conference – specifically, how the privilege could appropriately extend to communications involving Mounce and Davis when West and Methodist were adverse parties in a business transaction – counsel for Methodist simply accused the Government of "pure conjecture and speculation."

For all these reasons, the Court finds that Methodist failed to assert attorney-client privilege with "adequate particularity and context for the assertion to be evaluated," *Grae*, 2020 WL 3035915, at *4 (M.D. Tenn. June 5, 2020), and further finds that any claim of privilege as to the specific communications at issue was waived through the voluntary disclosure of such communications to Mr. Mounce and Mr. Davis. The 18 communications must therefore be produced within 14 days of the date of entry of this order.

## CONCLUSION

For the reasons discussed above, Methodist must, within 14 days of the date of entry of this order, turn over the withheld documents provided to the Court *in camera*, other than those identified above that the Court finds are privileged,[3] along with the 18 other withheld communications involving Erich Mounce and Ron Davis.

It is SO ORDERED.

BARBARA D. HOLMES
United States Magistrate Judge

---

[3] As detailed above, the communications that are properly protected from disclosure as privileged consist of the following: MLH-PRIV_00026; MLH-PRIV_00080; MLH-PRIV_00100; MLH-PRIV_00129; MLH-PRIV_00130; MLH-PRIV_00131; MLH-PRIV_00132; MLH-PRIV_00133; MLH-PRIV_00143; MLH-PRIV_00148; MLH-PRIV_00155; MLH-PRIV_00187; MLH-PRIV_00209; MLH-PRIV_00229; MLH-PRIV_00230; MLH-PRIV_00344; MLH-PRIV_00387; MLH-PRIV_00403; MLH-PRIV_00411; MLH-PRIV_00452; MLH-PRIV_00453; MLH-PRIV_00454; MLH-PRIV_00455; MLH-PRIV_00456; MLH-PRIV_00457; MLH-PRIV_00458; MLH-PRIV_00554; MLH-PRIV_00555; MLH-PRIV_00567; MLH-PRIV_00568; MLH-PRIV_00569; MLH-PRIV_00570; MLH-PRIV_00571; MLH-PRIV_00572; MLH-PRIV_00573; MLH-PRIV_00579; MLH-PRIV_00580; MLH-PRIV_00763; MLH-PRIV_00764; MLH-PRIV_00765; MLH-PRIV_00832; MLH-PRIV_00833; MLH-PRIV_00843; MLH-PRIV_01207; MLH-PRIV_01208; MLH-PRIV_01259; and MLH-PRIV_01260. As noted, several of these documents are duplicate files.