]IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JEFFREY H. LIEBMAN and DAVID M. STERN, M.D., <br><br> Plaintiff-Relators, <br><br> v. <br><br> METHODIST LE BONHEUR HEALTHCARE and METHODIST HEALTHCARE-MEMPHIS HOSPITALS, <br><br> Defendants. | Case No.: 3:17-cv-00902 <br><br> JUDGE CAMPBELL <br> MAGISTRATE JUDGE HOLMES |

**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
FOR REVIEW OF NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE**

Pursuant to Local Rule 72.01, the United States of America ("United States") moves this Court for review of that portion of Magistrate Judge Holmes' nondispositive order, dated January 18, 2022 (ECF No. 311), that found that Defendants Methodist Le Bonheur Healthcare and Methodist Healthcare-Memphis Hospitals (collectively, "Methodist") could assert privilege over communications with non-attorney third parties that provided business assessments and independent fair market value ("FMV") opinions in connection with the transaction between Methodist and dismissed party, The West Clinic, P.C. ("West"), as raised in the parties' joint motion for a discovery conference and discovery dispute statements regarding the assertion of privilege (ECF Nos. 256, 257, 265 and 266). As set forth more fully below, Methodist has failed to satisfy its burden to establish privilege over communications with these business consultants

over whose purportedly independent opinions and business advice it intends to rely in defending this action.[1]

## PRELIMINARY STATEMENT

As Magistrate Judge Holmes correctly found in ordering Methodist to produce almost 300 documents that it had withheld for years, Methodist cannot assert privilege over communications with business consultants that provided business advice to Methodist in connection with its transaction with West. While the ruling went a long way toward granting the relief the United States sought, it should have gone farther. It did not consider whether, as a matter of law, Methodist can rely on independent FMV opinions and business assessments in defending this action while asserting privilege over the underlying communications with the business consultants that supported those opinions and assessments. If Methodist is allowed to withhold such communications generally, as well as the specific documents identified in this motion -- some of which are communications that do not include any counsel – privilege becomes a shield and a sword. This Methodist cannot do.

There is no question that Methodist intends to rely on these FMV opinions and business assessments to try to show that it did not intend to violate the Anti-Kickback Statute. Methodist's Answer, its responses to discovery, and its public statements all confirm that these documents are central to its defense of this action. Methodist has confirmed that the consultants were retained

---

[1] With this motion, the United States seeks production of all communications between or among Methodist or its counsel and the business consultants and valuators and their counsel over which Methodist has asserted privilege in this action without limitation. This includes the following 28 documents on Methodist's privilege log that it was not ordered to produce: MLH-PRIV_00026, 00080, 00833, 00843, 00100, 00129, 00130, 00131, 00132, 00133, 00143, 00148, 00155, 00187, 00209, 00229, 00230, 00344, 00403, 00411, 00452, 00453, 00454, 00455, 00456, 00457, 00458, 01259.

2

Case 3:17-cv-00902   Document 317   Filed 02/01/23   Page 2 of 12 PageID #: 5594

based on the advice of counsel, not to provide legal advice, but to provide *independent* FMV opinions and business assessments to support the payments made to West under the various agreements. Indeed, the entire purpose of Methodist obtaining *independent* FMV opinions is to rely on a third party confirming the fairness of those amounts in the event the payments come into question – as they are now in this action alleging violations of the Anti-Kickback Statute. It is antithetical for Methodist to assert that these opinions were obtained independently while simultaneously asserting privilege over its communications with the same individuals who had a role in providing those opinions.

Notably, Methodist has not asserted advice of legal counsel as an affirmative defense in this action. If it had done so, it would have had to produce its communications with counsel. Similarly, it cannot rely on the business advice it obtained while claiming privilege over that advice.

Putting aside the obvious principle that there is no privilege for business advice in the first place, the communications also do not qualify for privilege merely because the business advice was obtained at the direction of counsel. So too, the communications do not become privileged because counsel used the non-privileged business advice in developing the transaction documents. Methodist should not be allowed to defend this action by telling the jury that it did not intend to violate the Anti-Kickback Statute because it paid West in accordance with the terms identified in FMV opinions and business assessments while not allowing the United States to discover all the communications that went into the formulation of the FMV opinions and business assessments. If Methodist wants to rely on the opinions to show that it believed its payments to West were FMV, then it needs to disclose the underlying communications.

Methodist also has not met *its* burden to establish that any privilege exists with these third parties, and Methodist cannot assert privilege over communications with third parties. To the extent counsel for Methodist disclosed legal advice in communications with third parties, any privilege has been waived. Therefore, the Court should issue a ruling that Methodist cannot assert privilege over any communications with the business consultants.[2]

## BACKGROUND

As the Court is fully familiar with the underlying facts of this action from all prior proceedings, the United States provides a summary of the facts relevant to this motion.

Methodist and West retained various third-party business consultants in connection with a multi-agreement transaction that Methodist and West entered into in December 2011, which is the subject of this litigation. (ECF No. 235, ¶¶ 112, 122, 134, 146.) Specifically, on July 5, 2011, Methodist retained PricewaterhouseCoopers, LLC ("PwC") as a business consultant in structuring a relationship between Methodist and West, which is referenced in the Management Services/Performance Improvement Agreement ("MSA"). (ECF No. 257-3.) PwC was not retained to provide legal advice in connection with this engagement. (*Id.*) PwC produced a report that was presented to Methodist and West, entitled "Oncology Service Line Baseline Assessment," which was dated September 2, 2011. (ECF No. 257-4.) Methodist initially withheld the report as privileged during the investigative phase, but after the United States requested that the document be produced following Relators' settlement with West, Methodist agreed to produce it. (ECF No. 257-5.) Ultimately, as the business assessment and MSA produced in this action demonstrate,

---

[2] Methodist also has asserted privilege over documents that are responsive to subpoenas the United States and Relators issued to such business consultants. Any ruling on this discovery issue should apply equally to all communications between Methodist and its counsel with the business consultants and their counsel in connection with this litigation.

PwC assisted both Methodist and West in developing the MSA, including the performance incentive elements, the diagnostic codes and the fees that Methodist would pay West, including the breakdown of the fees for base management as compared to the performance incentive components. PwC was retained to and did provide purely business advice.

On April 7, 2011, Methodist itself retained ECG Management Consultants, Inc. ("ECG") to provide an independent fair market value ("FMV") opinion for the Professional Services Agreement ("PSA") with West, that set forth the rates for which Methodist would reimburse West for professional services of West's physicians at certain Methodist locations based on work Relative Value Units ("wRVUs"). (ECF No. 257-8.) On October 5, 2011, ECG provided an independent FMV opinion for the PSA. (ECF No. 257-9.) ECG continued to provide FMV opinions for the PSA throughout the relevant time period concerning the rates for the wRVUs. (ECF No. 257-10.)

On August 9, 2011, Jones Day, counsel for Methodist, retained HealthCare Appraisers, Inc. ("HAI") to provide an independent FMV opinion of the fees that Methodist would pay West for management services under the terms of the MSA that HAI was sent. (ECF No. 257-6.) HAI expressly indicated that it was not providing legal advice. (*Id.*) Although the MSA was executed in December 2011, in February 2012, HAI provided a draft independent FMV opinion for the amount of management services, which was based on a draft version of the MSA it was provided. (ECF Nos. 257-7, 257-10.) Subsequently, Methodist obtained additional FMV opinions for the MSA and the PSA throughout the seven years of Methodist's relationship with West.

In Methodist's public statements on a website devoted to defending this litigation (*see* www.methodist-west.com), as well as its Answer (ECF No. 242), responses to the United States' Interrogatories (ECF No. 257-10 at Response to Interrogatory No. 2), and numerous

Case 3:17-cv-00902   Document 317   Filed 02/01/23   Page 5 of 12 PageID #: 5597

communications with litigation counsel, Methodist has indicated that it is relying on these outside consultants who provided business information and FMV opinions to show that the transaction was lawful and that payments made under the various agreements were appropriate as a defense to the United States' assertion that Methodist paid West remuneration, as that term is defined in the Anti-Kickback Statute.

On August 23, 2022, the United States and Methodist filed a joint motion for discovery conference concerning the documents Methodist withheld as privileged. (ECF No. 256.) In the discovery dispute statement (ECF No. 257), the United States identified that, as a matter of law, Methodist could not assert privilege over any of the communications with PwC, ECG or HAI, and any other consultants who provided business advice to both Methodist and West, and in particular could not rely on communications with purported independent valuators on whose FMV opinions Methodist intends to rely in this action. *See* S*hahbabian v. TriHealth, Inc.*, Case No. 1:18-cv-790, 2019 WL 4958114 (S.D. Ohio Oct. 8, 2019) (business advice is not protected); *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888, 892 (M.D. Tenn. 2010) (Trauger, J.) (noting that parties cannot shield communications as privileged while using the produced opinions as a sword).

On August 25, 2022, Magistrate Judge Holmes denied the motion without prejudice because the parties had not proposed a means to review the documents at issue. (ECF No. 258.) On September 7, 2022, the United States and Methodist filed a renewed joint motion for a discovery conference and dispute statement on this same issue. (ECF Nos. 265-266.)

On December 20, 2022, Magistrate Judge Holmes held a discovery conference on all the discovery disputes between the parties, including the privilege issue. After reviewing the documents *in camera*, on January 18, 2022, Magistrate Judge Holmes correctly ordered Methodist to produce almost 300 communications that had been withheld for years. However, this ruling

6

was predicated on the basis that the documents contained primarily business advice. (ECF No. 311 at 6.) Although the nondispositive order recognized that the United States also asserted that Methodist could not withhold documents as privileged relating to third parties that provided purported independent fair market value opinions and business assessments and on which Methodist intends to rely (*id.* at 4), such arguments were not addressed.

Methodist continues to assert privilege over its communications with these business consultants as a general matter. Specifically, the documents that continue to be improperly withheld involve communications with HAI, ECG and PwC. *See* ECF Nos. 311 at 8 and 257-1 at MLH-PRIV_00143, 00458 (communication with PwC, outside and inside counsel); MLH-PRIV_00209, 00229, 00230 (communication with PwC and inside counsel); MLH-PRIV_00026, 00148, 00403 (communication with HAI, outside and inside counsel); MLH-PRIV_00080, 00155, 00187, 00833, 00843 (communication with ECG, no counsel); MLH-PRIV_00100, 01259 (communication with ECG, inside counsel); MLH-PRIV_00129, 00130, 00131, 00132, 00133, 00411, 00452, 00453, 00454, 00455, 00456, 00457 (communication with ECG, outside and inside counsel); and MLH-PRIV_00344 (communication with inside and outside counsel conveying ECG advice).

Therefore, the United States asks the Court to review whether Methodist has met its burden to show the communications with the business consultants are privileged, particularly given that Methodist intends to rely on the materials prepared by these consultants in defending this action.

## ARGUMENT

The review of a non-dispositive pretrial matter is limited to determining whether the order is "clearly erroneous" or "contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see also Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993). Here, the order found that

Methodist could assert privilege over the communications with the non-attorney business consultants without considering whether Methodist met its burden to establish the existence of any such privilege. Further, the order noted, but failed to consider, that Methodist is relying on the opinions and assessments of these non-attorney third parties, and that it cannot do so while withholding the underlying communications. Thus, to the extent the decision allowed Methodist to withhold any communications with these third parties, it was contrary to legal precedent.

Methodist, as the party seeking to withhold documents as privileged, has the burden to demonstrate that the documents are not discoverable. *Humphreys, Hutcheson and Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985). Communications with non-lawyers generally are not privileged, as Magistrate Judge Holmes correctly noted. (ECF No. 311 at 5.) Merely because internal or external counsel is included on a communication does not render a communication privileged. (ECF No. 311 at 7.) As this Court also recently acknowledged, "the ability of a non-attorney to lawfully provide 'legal advice' in Tennessee is limited." *Ciccio v. SmileDirectClub, LLC*, 2022 WL 2910501, at *5 (M.D. Tenn. July 22, 2022). Further, even if communications involving counsel contain legal advice, any privilege over the communication is waived if sent to a third party. *E.E.O.C. v. Texas Hydraulics, Inc.*, 246 F.R.D. 548, 554 (E.D. Tenn. 2007) (attorney-client privilege waived through voluntary disclosure of communications to third parties); ECF No. 311 at 3.

The communications at issue involve non-attorney business consultants (PwC, HAI and ECG) that did not provide legal advice, and the express terms of their engagement letters make this apparent. As Judge Trauger noted recently:

> Determining whether the advice offered or supported by a consultant is actually "legal" in nature, though, can be a challenge—particularly in a heavily regulated industry such as healthcare. Nearly every major healthcare business decision has at least the potential for some regulatory/administrative implications, but courts have

generally recognized "the principle that compliance with regulations is usually a business matter, not a legal one."

*Ciccio*, 2022 WL 2910501, at *5 (citations omitted).

Here, these consultants were retained by Methodist or its counsel to provide business advice to both Methodist and West, involving what was supposed to be an arms' length business transaction in the healthcare industry. That HAI and ECG provided "independent" FMV opinions further evinces that there was not, and could not be, any privilege in the communications. Indeed, to provide inside information would render the independence of the opinions null.

Methodist obtained these FMV opinions and business assessments expressly for the purpose of relying on them in the event the terms of the agreements between Methodist and West were questioned (as they are in this action). The very nature of FMV opinions requires them to be independent. That is, the valuators are not to be manipulated or provided false or misleading information. And the ultimate amount of FMV should not be dictated by any individual or entity beyond those providing the opinion on FMV. The law is clear that correspondence concerning FMV determinations, like those at issue here, is not privileged. S*hahbabian v. TriHealth, Inc.*, Case No. 1:18-cv-790, 2019 WL 4958114, at *3, 5 (S.D. Ohio Oct. 8, 2019) ("underlying factual valuation consulting data and correspondence concerning FMV determinations" are discoverable). Thus, Methodist has not satisfied its burden to show that there is any privileged relationship with these third parties.

Some of the communications that continue to be withheld are between Methodist executives and the business consultants. *See, e.g.*, MLH-PRIV_00080, 00155, 00187, 00833, 00843 (communication with ECG, no counsel). While the United States cannot know the contents of these documents, Methodist had made no effort to demonstrate why businesspeople from ECG

9

and Methodist would be engaging in communications that would be privileged, when the nature of the relationship was to provide business advice in the regulatory context.

Notwithstanding that there is no privilege with these third parties, Methodist cannot rely on the FMV opinions and business assessments unless it discloses all the communications underlying the opinions and the business assessments. *See Reitz v. City of Mt. Juliet*, 680 F. Supp.2d 888, 892 (M.D. Tenn. 2010) (Trauger, J.) (finding that defendant could not use an investigative "report as a sword … then later shield discovery of the documents underlying the report by asserting privilege or work product protection"). If Methodist does not disclose all the communications, it should be precluded from relying on the FMV opinions and business assessments as a defense to the allegations in this action. Because the order did not address this argument, which is another basis for production of the communications, it is contrary to law.

Further, even if Methodist had communications with its lawyers that otherwise may reflect legal advice, by including these third parties on the communications, Methodist waived any privilege that might have existed. *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (noting waiver of legal advice); *Texas Hydraulics*, 246 F.R.D. at 554.

## CONCLUSION

For the foregoing reasons and those set forth in the related motions for a discovery dispute conference, the Court should review the nondispositive order and find that Methodist has not satisfied its burden to assert privilege over the communications with its business consultants on whose opinions it intends to rely in the defense of this action. Further, the Court should require Methodist to produce all communications with the business consultants, including any communications in ECG's possession over which Methodist is asserting privilege.[3]

                                          HENRY C. LEVENTIS
                                        United States Attorney
                                        Middle District of Tennessee

By:    s/ Kara F. Sweet
        KARA F. SWEET
        WYNN M. SHUFORD
        Assistant United States Attorney
        United States Attorney's Office
        719 Church Street, Suite 3300
        Nashville, TN 37203
        Phone: (615) 736-5151
        kara.sweet@usdoj.gov
        wynn.shuford@usdoj.gov

        *Counsel for the United States*

---

[3] The Court's ruling on this issue will be instructive of whether Methodist should be precluded from relying on the purportedly independent opinions without disclosing the substance of the communications underlying such opinions.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2023, a true and correct copy of the foregoing was served via email to the following:

| | |
|---|---|
| Bryan A. Vroon<br>Law Offices of Bryan A. Vroon, LLC<br>1380 West Paces Ferry Road, Suite 2270<br>Atlanta, GA  30327<br>Email:  bryanvroon@gmail.com | Edward D. Robertson, Jr.<br>Bartimus, Frickleton & Robertson<br>715 Swifts Highway<br>Jefferson City, MO  65109<br>Email: crobertson@bflawfirm.com |
| Jerry E. Martin<br>David Rivera<br>Seth Marcus Hyatt<br>Barrett Johnston Martin & Garrison, LLC<br>Bank of America Plaza<br>414 Union Street, Suite 900<br>Nashville, TN  37219<br>Email: jmartin@barrettjohnston.com<br>Email: shyatt@barrettjohnston.com | Robert Salcido<br>(Admitted *Pro Hac Vice*)<br>Akin Grump Strauss Hauer & Feld LLP<br>2001 K Street, N.W.<br>Washington, D.C. 20006<br>Email: rsalcido@akingrump.com |
| Brian D. Roark<br>Anna M. Grizzle<br>J. Taylor Chenery<br>Taylor M. Sample<br>Hannah E. Webber<br>Bass, Berry & Sims PLC<br>150 Third Avenue South, Suite 2800<br>Nashville, TN 37201<br>Email: broark@bassberry.com<br>Email: agrizzle@bassberry.com<br>Email: tchenery@bassberry.com<br>Email: taylor.sample@bassberry.com<br>Email: hannah.webber@bassberry.com | |

s/ Kara F. Sweet
KARA F. SWEET
Assistant United States Attorney