IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JEFFREY H. LIEBMAN and DAVID M. STERN, M.D., <br><br> Plaintiff-Relators, <br><br> v. <br><br> METHODIST LE BONHEUR HEALTHCARE and METHODIST HEALTHCARE-MEMPHIS HOSPITALS, <br><br> Defendants. | Case No.: 3:17-cv-00902 <br><br> District Judge William L. Campbell, Jr. <br><br> Magistrate Judge Barbara D. Holmes |

### METHODIST'S RESPONSE TO UNITED STATES' MOTION FOR REVIEW OF NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE

Defendants Methodist Le Bonheur Healthcare and Methodist Healthcare-Memphis Hospitals (collectively, "Methodist") hereby file this response in opposition to the United States' Motion for Review of Nondispositive Order of Magistrate Judge. (Dkt. No. 316.)

### PRELIMINARY STATEMENT

Almost a year and a half after Methodist provided its privilege log, the government raised for the first time that it believed communications on the log involving consultants Methodist engaged in connection with a proposed relationship with The West Clinic ("West") were not privileged. In response to the government's concerns, Methodist reviewed the withheld communications and determined that the primary purpose of some related to business—rather than legal—advice and produced them. The government, however, argued that *no* communications involving consultants can be privileged, regardless of the purpose of the communication. The government identified communications involving consultants on Methodist's privilege log that it wanted to challenge, and Methodist submitted those communications to the Court for *in camera*

review. Magistrate Judge Holmes conducted a hearing on the matter on December 20, 2022. In a January 18, 2023 Order, Judge Holmes ordered Methodist to produce most of the withheld documents but ruled that some of the withheld communications were made for the purpose of rendering legal advice and, therefore, are privileged and properly withheld. The government seeks review of the portion of Judge Holmes' Order ruling that Methodist can claim privilege over *any* communications involving consultants.

Judge Holmes' Order is not "contrary to law" or "clearly erroneous." Courts consistently recognize that lawyers often require the expertise of non-lawyer professionals to assist in providing clients legal advice and that including non-lawyer professionals on privileged communications does not vitiate or waive the privilege. Methodist's legal counsel specifically engaged the consultants at issue here to assist counsel in providing legal advice.

Nor did Judge Holmes "fail to consider" the government's argument that *no* communications involving consultants related to fair market value ("FMV") opinions can be privileged where Methodist may rely on the opinions as part of its defense. Judge Holmes heard the government's argument and refused to adopt such a blanket approach. Instead, as this Court and others have done in similar situations, Judge Holmes conducted a document-by-document *in camera* review of the communications to determine whether the purpose of the communication was to render legal advice. She found that it was for some of the withheld communications. Judge Holmes' ruling is consistent with—not contrary to—applicable law, and the government's motion should be denied.

## BACKGROUND

In late 2010, West sent a Request for Proposal to hospitals in Memphis expressing West's desire to pursue an affiliation to develop a regional comprehensive cancer center. In 2011,

2

Methodist's in-house and outside legal counsel engaged numerous valuation and consulting firms, including Healthcare Appraisers, Inc. ("HAI"), ECG Management Consultants, Inc. ("ECG"), and PricewaterhouseCoopers ("PwC" and, collectively, the "Consultants"), to help it provide legal advice to Methodist relating to a possible affiliation with West. Jones Day, Methodist's outside counsel, engaged HAI "to assist [Jones Day] in providing legal advice" to Methodist in relation to "the fair market value range ("FMV") range of compensation payable by [Methodist] to [West] under the oncology management arrangement." (Dkt. No. 257-6.) ECG was engaged to conduct a "fair market value (FMV) analysis . . . in coordination with Jones Day, Methodist's legal counsel." (Dkt. No. 257-8.) PwC was engaged to "facilitat[e] the development of a Co-Management Company for the Oncology Service Line" and to "assist with certain phases of planning, strategic decision making, and development related to the co management alignment strategy." (Dkt. No. 257-3.)

In 2018, the government requested that Methodist produce documents related to the services the Consultants provided. Methodist produced documents and communications related to the Consultants' work. Because Methodist engaged the Consultants through legal counsel to assist counsel in providing legal advice, Methodist also withheld some communications with the Consultants as privileged. Methodist produced its initial privilege log detailing documents and communications it withheld on February 16, 2021. It produced an amended supplemental privilege log on March 3, 2021.

In July 2022, approximately seventeen months after Methodist provided its privilege log, the government informed Methodist that it believed that the FMV opinions "as well as any correspondence relating to these opinions, must be produced." (Dkt. No. 257-5.) The government stated that the Consultants were "third parties retained to provide business advice," and the FMV

3

opinions and correspondence related to the opinions are not privileged. (*Id.*) In response to those concerns, Methodist re-reviewed all the communications involving the Consultants that it had withheld as privileged. Based on its re-review, Methodist determined that the primary purpose of some of the withheld communications was to provide business advice rather than legal advice. Methodist produced those communications and removed them from its privilege log. The government, for its part, continued to assert that none of the communications on the privilege log involving the Consultants were privileged.

The parties were unable to resolve their dispute with respect to the remainder of the communications involving the Consultants on Methodist's privilege log. On August 23, 2022, the parties filed a Joint Motion for Discovery Conference and Joint Discovery Dispute Statement regarding that issue. (Dkt. Nos. 256–57.) Noting the "fact-specific nature of privilege issues such as those present here," Judge Holmes denied the parties' initial Joint Motion for Discovery Conference until "the parties have presented their dispute to the Court in a manner that permits the kind of review necessary for resolution." (Dkt. No. 258 at 2.) On September 7, 2022, the parties filed a Renewed Joint Discovery Dispute Statement regarding the consultant privilege issue. (Dkt. No. 265.) Methodist subsequently submitted the communications at issue to the Court for *in camera* review. Judge Holmes conducted a hearing with respect to the matter on December 20, 2022.[1]

On January 18, 2023, Judge Holmes ordered Methodist to produce most of the withheld communications involving the Consultants but ruled that some of the communications are

---

[1] This dispute about the privileged nature of the communications with the Consultants was just one of several discovery disputes before the Court at the December 20, 2022 hearing. The Court resolved most of the issues in its Order dated January 4, 2023, (Dkt. No. 300), but it specifically reserved the privilege question regarding the communications with the Consultants, the privilege

4

privileged and were properly withheld. (Dkt. No. 311.) The Court stated that "[a]lthough the privilege is generally waived by 'voluntary disclosure of private communications to third parties,' . . . it may be extended to protect communications 'made by or to a third party to assist the attorney in giving legal advice to the client.'" (*Id.* at 3 (internal citations omitted).) Thus, the "central issue" before the Court was "whether the communications at issue involve the facilitation of legal or business advice." (*Id.* at 4.) The Court held that "[t]hese privileged communications largely include documents reflecting guidance provided by Jones Day attorneys and/or the provision of information to those attorneys ostensibly for the purpose of rendering legal advice." (*Id.* at 7.) In addition, "[b]ecause Jones Day is outside counsel retained by Methodist, the communications between their attorneys and Methodist personnel enjoy a presumption of privilege." (*Id.*) Judge Holmes did not hold, however, that all communications involving a Jones Day attorney are privileged. (*Id.*) Methodist produced documents consistent with Judge Holmes' order two days later, on January 20, 2023.

The government seeks review of Judge Holmes' nondispositive Order, continuing to argue that none of the communications involving the Consultants can be privileged.[2] The government

---

question regarding communications involving leased employees, and the disputed requests for admission for separate orders.

[2] The government attempts to skirt long-expired discovery deadlines in this case by arguing in a footnote that the Court's ruling on its Motion for Review of Judge Holmes' nondispositive Order "should apply equally to all communications" between Methodist and the Consultants, regardless of whether those documents are in Methodist's possession *or some third party's possession*. (Dkt. No. 317 at 4 n.2 and 11.) The third parties refer to consulting firms from which Relators subpoenaed documents. Some of those third parties withheld documents from production as privileged. The government never challenged privilege claims over communications withheld by any third party. Fact discovery, in this action that is more than five years old, closed on September 23, 2022, almost five months ago. (Dkt. No. 252 at 1.) The deadline to file discovery-related motions was the same day. (*Id.*) Judge Holmes stated during the December 20, 2022 hearing that the parties "have had plenty of time in this case, more than ample time, to make sure that all of the requirements under the rules of discovery have been satisfied. And we're at the end of the case." (Dkt. No. 299 at 7.) Judge Holmes' January 18, 2023 Order is limited to the documents the

5

primarily argues that Methodist cannot claim privilege over any communication involving a Consultant related to an FMV opinion if Methodist intends to rely on the opinion as part of its defense and that Judge Holmes "failed to consider" that argument. (Dkt. No. 317 at 2–3, 6–11.) The government also argues that the identified communications between Methodist and the Consultants cannot be privileged because they reflect business advice rendered by the Consultants. (*Id.* at 1–10.)

## ARGUMENT

The district court's review of a magistrate judge's non-dispositive order is "limited to determining whether the order 'is clearly erroneous' or 'contrary to law.'" *Ciccio v. SmileDirectClub, LLC*, 2022 WL 2910501, at *4 (M.D. Tenn. July 22, 2022) (quoting 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a)). A magistrate judge's finding of fact is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id.* (quoting *Adams Cnty. Reg'l Water Dist. v. Vill. of Manchester*, 226 F.3d 513, 517 (6th Cir. 2000)). A magistrate judge's legal conclusion is "contrary to law" when it "contradicts or ignores applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Id.* (quoting *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992)). "[T]he court is not empowered to reverse the magistrate judge's

---

government identified on Methodist's privilege log, which the Court reviewed *in camera*. As such, no other documents—whether documents withheld by Methodist or a third party—were at issue before Judge Holmes, nor are they properly within the scope of the government's current Motion for Review. The Court's ruling on the government's Motion for Review should be limited to the scope of the Order under review.

ruling simply because this court would have decided the issue differently." *Id.* The government cannot satisfy that high standard of review.

I.  **Judge Holmes Considered and Rejected the Government's Argument that All Communications Involving Consultants Are Not Privileged.**

The government argues that Judge Holmes' January 18, 2023 Order is "contrary to law" because Judge Holmes "failed to consider" the government's argument that Methodist cannot assert privilege over communications related to FMV opinions on which it may rely as part of its defense.[3] (Dkt. No. 317 at 2–3, 6–11.) The government argues that allowing Methodist to claim privilege over communications related to FMV opinions permits Methodist to use privilege as "a shield and a sword." (*Id.* at 2.) The government cites one case to support its argument that communications related to an FMV opinion on which a party relies are *per se* not privileged. (*Id.* at 6, 10) (citing *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888 (M.D. Tenn. 2010)).

Judge Holmes properly considered and rejected the government's argument that all communications related to an FMV opinion on which a party may rely are not privileged. During the December 20, 2022 discovery hearing, the government argued that Methodist is attempting to use the attorney client privilege as both a sword and shield, citing the *Reitz* opinion. (Dkt. No. 299 at 93–94.) Judge Holmes specifically questioned Methodist's counsel about that argument and whether the *Reitz* opinion is relevant to the current privilege analysis. (*Id.* at 96–98.) In its order holding that some of the communications involving the Consultants are privileged, the Court explicitly acknowledged the government's argument that "because Methodist has relied on the three consultants and the FMV opinions provided by HAI and ECG 'offensively' . . . Methodist is

---

[3] This argument does not apply to communications with PwC because PwC was not engaged to provide an FMV opinion, and the communications raised by the government do not relate to FMV opinions. (*See* Dkt. No. 257-1 at MLH-PRIV_00143, 00209, 00229, 00230, 00458.)

7

improperly withholding relevant information while using such information as both 'a sword and a shield.'" (Dkt. No. 311 at 4) (quoting the government's sword and shield argument as set forth in the parties' joint discovery dispute statement). Thus, the record establishes that Judge Holmes acknowledged the government's argument, questioned Methodist's counsel about it at the hearing, and rejected it by ruling that some of the communications involving the Consultants related to the FMV opinions are privileged.[4]

Moreover, the *Reitz* opinion does not support the government's argument that Methodist cannot claim privilege over *any* communications involving the Consultants related to the FMV opinions. In *Reitz,* the Court held that a party's selective disclosure of an indisputably privileged legal memorandum waived privilege as to interview memoranda underlying that memorandum. 680 F. Supp. 2d at 892–93. The defendant supported its motion for summary judgment by filing with the Court five pages of a privileged, seventeen-page memorandum drafted by the defendant's legal counsel. *Id.* The defendant argued that the partial memorandum established an affirmative defense against sexual harassment allegations. *Id.* at 892. The parties did not dispute that the memorandum was privileged, but the Court held that "when a Title VII defendant raises a *Faragher–Ellerth* defense premised on an internal investigation, the defendant waives the attorney-client privilege and work-product protection for documents underlying the final

---

[4] Judge Holmes also implicitly rejected the government's argument that *no* communications involving consultants can be privileged when she denied the parties' initial joint motion for a discovery conference about the consultant privilege issue. (*See* Dkt. No. 258.) Judge Holmes noted that the parties did not "offer to provide the disputed documents to the Court for *in camera* review, which would permit the Court to make a specific ruling for each communication and document at issue, but instead appear to seek a general ruling on the permissibility of Defendants' withholding . . . ." (*Id.* at 1–2.) Had Judge Holmes agreed with the government that communications involving consultants are *per se* not privileged or felt that she could properly make a blanket ruling on the issue, she could have granted the parties' initial joint motion, ruled in the government's favor, and saved the Court the time and effort of conducting a full *in camera* review of all the documents identified by the government.

8

investigative report—including interview memoranda authored by the investigator." *Id.* at 893. The Court ordered the defendant to produce the interview memoranda because it would be unfair to allow the defendant to use the content of privileged communications offensively but also to claim privilege as a shield to prevent "testing of the claim." *Id.* at 892–93 (quoting *Ross v. City of Memphis*, 423 F.3d 596, 605 n.5 (6th Cir. 2005)).

Here, Methodist is not using privileged documents or information as a sword, nor has it attempted to shield underlying facts or valuation data from disclosure. The government has acknowledged that the FMV opinions are not privileged. (Dkt. No. 257-5.) Methodist agrees and produced the opinions years ago. It is not claiming privilege over the opinions or the facts or information underlying the opinions. Methodist has represented—and Judge Holmes now has confirmed through her *in camera* review of the communications at issue—that it has produced the documents and data underlying the FMV opinions. As discussed below, however, consultants engaged through legal counsel may nonetheless assist counsel in providing legal advice, as courts recognize consistently. (*See* infra, Section II.)

Judge Holmes did not "fail to consider" the government's sword and shield argument based on the *Reitz* opinion, she simply disagreed with it. Judge Holmes questioned the parties about that argument at the hearing, referenced it in her Order, and rejected it based on a clear body of precedent recognizing that consultants can be involved in privileged communications where they assist legal counsel in rendering legal advice to a client. Judge Holmes' Order was not contrary to

law based on a "failure to consider" the government's argument that communications involving consultants cannot be privileged. The government's motion on those grounds should be denied.

II. **Judge Holmes' Ruling that Some Communications with Consultants Are Privileged Is Not Contrary to Law.**

Ruling that some communications involving the Consultants are privileged where the primary purpose of the communication was to render legal advice is consistent with—not contrary to—applicable law. Courts have long recognized that lawyers often require the expertise of non-lawyer professionals to assist in providing clients legal advice and that including non-lawyer professionals in otherwise privileged communications does not vitiate or waive the privilege. *United States v. Kovel*, 296 F.2d 918, 920–23 (2nd Cir. 1961); *see also Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 19 F.3d 1432, 1994 WL 58999, at *5 (6th Cir. 1994) (per curiam; unpublished table decision); *Ciccio*, 2022 WL 2910501, at *5 ("Protection may extend, however, to communications made by or to a third party 'to assist the attorney in giving legal advice to the client.'" (quoting *In re OM Sec. Litig.*, 226 F.R.D. 579, 588 (N.D. Ohio 2005))); *Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 190 (M.D. Tenn. 2014) ("[A]ttorney-client privilege extends to counsel's communications with agents and experts who are retained by counsel for the purpose of providing legal advice"). In addition, courts consistently recognize that the attorney-client privilege can protect communications involving a third party consultant engaged by legal counsel to assist in rendering legal advice. *See, e.g., In re Nat'l Prescription Opiate Litig.*, 2020 WL 9211219, at *1–2 (N.D. Ohio Mar. 30, 2020); *Graff v. Haverhill N. Coke Co.*, 2012 WL 5495514, at *13–15 (S.D. Ohio Nov. 13, 2012); *In re OM Sec. Litig.*, 226 F.R.D. at 587–90.

To determine whether a communication involving a non-lawyer professional is privileged, courts analyze whether the purpose of the communication was to render or obtain legal advice

rather than business advice. *See Ciccio*, 2022 WL 2910501, at *5; *Shahbabian v. Trihealth, Inc.*, 2019 WL 4958114, at *6 (S.D. Ohio Oct. 8, 2019). The distinction between business advice and legal advice can be "fuzzy" in heavily-regulated industries. *See Ciccio*, 2022 WL 2910501, at *5–6; *see also City of Roseville Emps. Ret. Sys. v. Apple Inc.*, 2022 WL 3083000, at *11 (N.D. Cal. Aug. 3, 2022) ("[T]here is no bright-line rule that communications related to regulatory compliance are per se business or legal communications. Rather, the content and context of such communications must be considered in order to determine the primary purpose of the communication."). Legal and business advice often are inextricably intertwined in the healthcare industry in particular. "The mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege." *Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 113, 117 (E.D. Mich. 2019) (quoting *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 685–86 (W.D. Mich. 1996)). "[I]n determining whether advice is predominately legal or business in nature, courts should resolve doubts in favor of the privilege." *Id.* (quoting *Ganley v. Mazda N. Am. Operations*, 2007 WL 9706988, at *5 (N.D. Ohio Nov. 15, 2007)).

Due to the document-specific nature of analyzing privilege claims related to communications involving non-lawyer professionals, courts often conduct a document-by-document review and analysis, as Judge Holmes did here. *See Shahbabian*, 2019 WL 4958114, at *6 (conducting "an *in camera* review of the referenced categories of documents"); *U.S. ex rel. Rembert v. Bozeman Health Deaconess Hosp.*, 2018 WL 2320645, at *2–3 (D. Mont. May 22,

11

2018); *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, 2012 WL 5415108, at *5, 9 (M.D. Fla. Nov. 6, 2012).

The government cannot meet the "difficult" standard of showing that Judge Holmes' ruling is contrary to law. *Ciccio*, 2022 WL 2910501, at *6 ("[T]he ambiguity involved in the regulatory/legal distinction means that, as a practical matter, showing a clear error or abuse of discretion under the standard is difficult."). Judge Holmes conducted a document-by-document *in camera* review of all the documents the government identified on Methodist's privilege log. She ordered Methodist to produce most of the reviewed documents but ruled that some of the communications were appropriately withheld based on attorney-client privilege. (Dkt. No. 311 at 7.) Judge Holmes stated that "[t]hese privileged communications largely include documents reflecting guidance provided by Jones Day attorneys and/or the provision of information to those attorneys ostensibly for the purpose of rendering legal advice. Because Jones Day is outside counsel retained by Methodist, the communications between their attorneys and Methodist personnel enjoy a presumption of privilege." (*Id.*) (citing *Baklid-Kunz*, 2012 WL 5415108, at *3).[5] Not only does the government fail to provide precedent or authority for its proposed blanket rule that *no* communications with the Consultants are privileged, but this Court and others consistently recognize the opposite: that determining privilege over communications involving non-lawyer professionals is a fact-intensive and document-specific analysis, which Judge Holmes determined

---

[5] *See United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (stating presumption that lawyer hired to give advice is hired to give legal advice); *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 633–34 (D. Nev. 2013) (same); *Baklid-Kunz*, 2012 WL 5415108, at *3 (same); *see also Crabtree v. Experian Info. Sols. Inc.*, 2017 WL 4740662, at *2 (N.D. Ill. Oct. 20, 2017) (stating presumption that "matter committed to a professional legal adviser is *prima facie* so committed for the sake of legal advice" (quoting *Weeks v. Samsung Heavy Indus., Ltd.*, 1996 WL 288511, at *2 (N.D. Ill. May 30, 1996))); *In re. Federated Dep't Stores, Inc.*, 170 B.R. 331, 354–55 (S.D. Ohio 1994) (same) (quoting *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 610 (8th Cir. 1977) (en banc))).

12

Methodist satisfied here for the documents the Court ruled are privileged. The government fails to satisfy its high burden of establishing that Judge Holmes' Order is contrary to law, and its motion should be denied.[6]

## CONCLUSION

For all of these reasons, the Court should deny the government's Motion for Review of Nondispositive Order of Magistrate Judge. Judge Holmes considered the government's argument in favor of a blanket approach to communications involving third party consultants and properly rejected it as contrary to the widely-adopted principle that non-lawyer professionals can assist counsel in providing legal advice. Judge Holmes' *in camera* review and document-by-document analysis comports with the significant body of case law recognizing that privilege.

Dated: February 15, 2023.

Respectfully submitted,

*/s/ Brian D. Roark*
Brian D. Roark
J. Taylor Chenery
Taylor M. Sample
Hannah E. Webber
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone (615) 742-6200
Facsimile (615) 742-6293
broark@bassberry.com

---

[6] Although the government argues that Methodist failed to satisfy its burden to establish privilege over communications with the Consultants, (Dkt. No. 317 at 1–2, 4, 7–9, 11), this Court has recognized that Rule 26 does not impose a burden to "establish" privilege but rather "to assert privilege with adequate particularity and context for the assertion to be evaluated." *Grae v. Corr. Corp. of Am.*, 2020 WL 3035915, at *4 (M.D. Tenn. June 5, 2020). Judge Holmes ruled that Methodist satisfied its burden of claiming privilege over communications with the Consultants made for the purpose of rendering legal advice, and the government cannot establish that that ruling is contrary to law.

13

tchenery@bassberry.com
taylor.sample@bassberry.com
hannah.webber@bassberry.com

Robert S. Salcido
(Admitted *Pro Hac Vice*)
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4095
rsalcido@akingump.com

*Attorneys for Defendants Methodist Le Bonheur Healthcare and Methodist Healthcare-Memphis Hospitals*

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been served on the following counsel via the Court's CM/ECF email notification system on this the 15th day of February, 2023:

Bryan A. Vroon
Law Offices of Bryan A. Vroon, LLC
1766 West Paces Ferry Road
Atlanta, GA 30327
(404) 441-9806
bryanvroon@gmail.com

Jerry E. Martin
Seth Marcus Hyatt
Barrett Johnston Martin & Garrison, LLC
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
(615) 244-2202
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com

Edward D. Robertson , Jr.
Bartimus Frickleton Robertson Rader PC
109 B East High Street
Jefferson City, MO 65101
(573) 659-4454
crobertson@bflawfirm.com

Kara F. Sweet
Wynn M. Shuford
U.S. Attorney's Office
Middle District of Tennessee
719 Church Street
Suite 3300
Nashville, TN 37203
(615) 401-6598
kara.sweet@usdoj.gov
wynn.shuford@usdoj.gov

/s/ Brian D. Roark