IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* LIEBMAN, *et al.*, | ) ) ) | Case No.: 3:17-cv-00902 |
| Plaintiff-Relators, | ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE HOLMES |
| v. | ) ) | |
| METHODIST LE BONHEUR HEALTHCARE, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR REVIEW OF NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE**

INTRODUCTION ................................................................................................................. 1

BACKGROUND AND PROCEDURAL HISTORY ........................................................ 2

I.     Nature of this Action ................................................................................................ 2

II.    Methodist Seeks Broad Discovery into CMS, Medicare Contractors, and HHS-OIG
in the Dispute that Was One Subject of the December 20, 2022 Hearing ........................... 2

III.   Conferences Following the December 20, 2022 Hearing ........................................... 5

IV.    Joint Motion for Discovery Conference and Magistrate Judge's May 10 Order ..... 6

ARGUMENT ...................................................................................................................... 9

I.     Standard of Review .................................................................................................. 9

II.    The United States Acted in Good Faith and Did Not Violate Prior Orders .............. 10

III.   Methodist's Broad Post-Hearing Discovery Demands Are Not Proportional to the
Needs of The Case ........................................................................................................... 12

       A.    Legal Standard ................................................................................................ 12

       B.    The Magistrate Judge's Order for the United States to Conduct Searches as to
       More Custodians Is Not Proportional to the Needs of the Case ...................................... 13

             1.    Discovery of CMS, Medicare Contractors, and HHS-OIG Is at Most Remotely
             Relevant ................................................................................................................. 15

    **2.**      **Discovery of CMS, Medicare Contractors and HHS-OIG Would Be Unduly Burdensome** ................................................................................................................ **16**

    **C.**     **The Search Terms Proposed by Methodist on March 8, 2023 and Ordered by the Magistrate Judge in the May 10 Order Are Overly Broad and Would Potentially Require the Collection and Review of Hundreds of Thousands of Documents** ............ **21**

  **IV.**    **Alternatively, the Court Should Postpone the June 1 Deadline for Compliance** ... **24**

**CONCLUSION** ...................................................................................................................... **24**

# INTRODUCTION

The United States seeks review and reversal of four aspects of Magistrate Judge Holmes' non-dispositive discovery order signed on May 10, 2023. ECF No. 337 ("May 10 Order"). Specifically, the United States seeks review of (1) the determination that the United States violated the Magistrate Judge's orders of December 20, 2022 and January 4, 2023, with which the United States in good faith believed it had complied; (2) the order requiring the United States to perform searches of custodians from the Centers for Medicare and Medicaid Services ("CMS") and the Medicare contractors, which have no role whatsoever with the Anti-Kickback Statute ("AKS") at issue in this case, and nearly 50 *additional* custodians from the United States Department of Health and Human Services, Office of Inspector General ("HHS-OIG") beyond the three whom the United States already searched; (3) the order for the United States to perform searches using expansive search terms proposed by Methodist on March 8, 2023 about various financial arrangements that have no connection to any conduct in or related to this case; and (4) the deadline to produce all responsive, non-privileged documents for these requests from CMS, Medicare contractors, and HHS-OIG by June 1, 2023.

The United States does not believe that it violated the Magistrate Judge's December 20, 2022 and January 4, 2023 interrelated orders, which were ambiguous, verbal remarks contained in a 108-page transcript. *See* ECF 299-300. Further, compliance with the May 10 Order mandates for (1) scores of additional custodians from CMS and Medicare contractors (who likely have no relevant documents) and HHS-OIG (which has already searched the three custodians mentioned at the December 2022 hearing) and (2) use of extremely broad search terms unconnected to any the issues in this case would be unduly burdensome, expensive, and disproportional to the needs of this case. Indeed, compliance with the May 10 Order would require the United States and its contractors to collect and review documents from nearly 120,000 custodians, take over 1,311 days,

and cost millions of dollars even though Methodist's need for such documents is dubious and far-flung at best. And even if the Court upheld the Magistrate Judge's orders, compliance with the Order by the June 1, 2023 deadline is impossible. Accordingly, the United States asks this Court to set aside these four aspects of the May 10 Order as clearly erroneous and contrary to law.

## BACKGROUND AND PROCEDURAL HISTORY

### I.     Nature of this Action

The United States' complaint in intervention alleges that the Methodist Defendants violated the False Claims Act ("FCA") with a predicate violation of the AKS by submitting false claims to Medicare for claims tainted by kickbacks paid to the West Group, PLLC ("West") in exchange for referrals to Methodist. ECF No. 235.

### II.    Methodist Seeks Broad Discovery into CMS, Medicare Contractors, and HHS-OIG in the Dispute that Was One Subject of the December 20, 2022 Hearing

The May 10 Order relates to a hearing regarding certain discovery disputes that occurred on December 20, 2022. *See* Transcript, ECF No. 299. The Magistrate Judge entered a brief, written order following that hearing on January 4, 2023. ECF No. 300. One of the items discussed at the hearing and addressed in the Magistrate Judge's written order was two requests for production propounded by Methodist (RFP Nos. 26 and 27) seeking documents and communications regarding "any presentation, conference, seminar, meeting, or event in which any individual or group, *including Michael Blau or any other attorney from Foley & Lardner LLP*, presented or offered remarks on physician-hospital alignment or integration, including the use of professional services agreements, co-management models, management services agreements, asset purchases, provider-based conversion, or leased employees." ECF No. 337 at 7-8 (emphasis added). When RFPs 26 and 27 were discussed at the December 20, 2022 hearing, counsel for Methodist explained the rationale for the requests as follows:

[T]hese requests are seeking documents and communications about these **presentations that the Foley Lardner firm gave**. Foley was counsel to West in the transaction. They put together a transaction, and then their attorneys spoke frequently at various public conferences about the structure that they put in place. The government has produced in the litigation some of those underlying slide decks from those presentations, and what we understand is the government is going to argue that statements that Foley made in these presentations at these conferences are helpful to the government's case. So in order for us to seek discovery relating to that, what we ask is, given that Foley did multiple of these conferences and they spoke multiple times, **did the government ever attend, and have there been internal communications at HHS, OIG, or at CMS or at DOJ relating to the structure that Foley discussed or statements that Foley made at these presentations?**

ECF No. 299 at 47:3-20 (emphasis added). Regarding RFPs 26 and 27, the Magistrate Judge said:

*If you do not wish to respond in any other fashion with respect to these specific discovery requests* -- and I think there may also be some interrogatories that may be in dispute, but maybe it's other Rule 30(b)(6) topic descriptions -- *then I'm not going to let the government --I'm going to enter an order that the government cannot call a witness that's going to testify about any of these presentations or how the government used any of those presentations in preparing its case against the defendants*. Because that's the relevance of it, Ms. Sweet. I mean, there's no -- we're not -- there should be no mystery about that and no argument that if the government intends to rely on these presentations as somehow supporting its contentions of the alleged wrongful conduct by the defendants, that the defendants are entitled to discover that information.

*Id.* at 50:1-16 (emphasis added). Following the Court's statements, Methodist's counsel explicitly represented to the Magistrate Judge:

[*W*]*e also stand ready to, **if the government would stipulate that in this litigation, it's not going to rely on presentations that were made by Foley at conferences, then we can drop the discovery request as well**.* We're only seeking this because we're trying to defend ourselves in the case. ***If the government isn't going to*** put *forward this proof and **seek to rely on it, then we would, of course, withdraw our discovery request.***

*Id.* at 55:25-56:11 (emphasis added). The Court then stated:

The only way I can solve it without the government having to do something more than what it seems willing to do is to enter an order that the government cannot call

any witnesses or in any way rely on these presentations as part of its case against the defendants.

*Id.* at 58:14-18.

After that, counsel for nonparty West, Andrew Solinger, stated that the United States could "identify individuals because there have already been presentations that we've made to them about people that we know were present at those presentations based on publicly available information." *Id.* at 56:19-57:7. The seven individuals whom Mr. Solinger referenced were three high-level HHS-OIG officials at HHS-OIG and four high-level Department of Justice ("DOJ") officials. *See* ECF No. 334.11, at 15-16 & 18-19.[1] The Magistrate Judge then stated:

> This is going to be the Court's ruling: that the government must search *the terms and custodians* based on discussions with West regarding Foley presentations *as described by Mr. Solinger today* and produce responsive documents.

*Id.* at 60:2-6 (emphasis added).[2]

The United States obtained a copy of the hearing transcript on January 3, 2023. On January 4, 2023, the Magistrate Judge issued an Order incorporating by reference the findings and conclusions during the hearing. ECF No. 300. The order stated:

> Regarding Methodist RFPs 26 and 27, and the Rule 30(b)(6) topics that refer to those RFPs, and as discussed during the discovery conference, *see* Docket No. 299 at 42-62, Methodist must serve a revised Rule 30(b)(6) in conformity with the narrowed requests as defined in open court. Further, **the United States must also provide supplemental responses to Interrogatories Nos. 26 and 27 to confirm**

---

[1] The seven custodians spoke at this multi-day conference in 2009 at which Foley attorneys also spoke on *different* panels, which fails to show that the custodians even heard any Foley presentations. ECF No. 334-11. This is a thin reed for the discovery ordered here.
[2] In the documents produced by Foley in this action and through a search of the internet and the subsequent searches the United States conducted as part of the meet and confer process, the United States has not been able to identify any other conference in which Mr. Blau spoke and was attended by any of the individuals that Mr. Solinger identified from the United States.

**that it has produced all non-privileged documents responsive to the narrowed requests as defined in open court**.

*Id.* at 8-9 (emphasis added).[3]

The United States advised Methodist on January 5, 2023 that it would stipulate that it would not rely on the Foley presentations for its case and asked Methodist's counsel to confirm by the following Monday that it would withdraw any discovery dispute. ECF No. 334-5. Counsel for Methodist did not respond to this email. On January 13, 2023, the United States served a supplemental response to these RFPs indicating that it would not rely on Foley-related materials, tracking the Court's language at the hearing. ECF No. 334-9, at 17. Only on January 17, 2023, did Methodist's counsel belatedly inform the United States of his new belief that the stipulation did not "adequately satisf[y] the United States' obligations for these two requests." Ex. 1.

## III.    Conferences Following the December 20, 2022 Hearing

On January 18, 2023, lead counsel for the parties met and conferred in person about the dispute. Methodist followed up with a letter on February 1, 2023, and the parties further discussed this dispute on February 9, 2023. Lead counsel for the parties again met and conferred in person about this dispute on March 8, 2023, and the United States then proposed to search five custodians – three from HHS-OIG and two in DOJ's Civil Division – and proposed using these search terms: (Foley or Blau) w/100 (presentation or conference) during the period from January 1, 2011 through December 31, 2018.[4] *See* ECF 334-7 and 334-10, at 3. In response, Methodist proposed a number

---

[3] Although the Court referred to Interrogatories in the Order, the parties understood this to refer to the RFPs. No party sought clarification of the Order.

[4] On February 27, 2023, Ellen Bowden McIntyre returned to the United States Attorney's Office after serving a one-year detail to DOJ's Consumer Protection Branch. On her return, she became Deputy Civil Chief for Affirmative Civil Enforcement, conferred with Methodist's counsel by phone and in person, and then produced responsive documents to RFPs 26 and 27 within one month. On May 10, 2023, she entered a notice of appearance in this case. ECF No. 336.

of extra search terms that were not tethered to Mr. Blau or the Foley law firm that Mr. Solinger identified at the hearing and custodians from CMS and the Medicare contractors, which the United States explained by law have no role whatsoever with the AKS. ECF 334-7.

On March 24, 2023, the United States served its last supplemental responses to RFP Nos. 26 and 27. ECF 334-2. There, the United States stated that it was producing documents based on searching the data of seven custodians: the three agreed-upon HHS-OIG custodians plus the four DOJ custodians (including DOJ criminal officials Ogrosky and Pelletier) Methodist requested; together, these were the seven custodians Mr. Solinger described at the hearing. *Id.* at 4; *see* ECF No. 334-8 (responsive documents produced by United States). The United States used more targeted search terms that included the words Foley or Blau to be consistent with the Court's orders and to reduce the burden on DOJ and HHS-OIG.[5] The United States otherwise declined to produce documents in response to RFP Nos. 26 and 27 and specifically declined to produce documents from CMS and/or CMS contractors, "because, for HHS, HHS-OIG alone is specifically charged with enforcing the Anti-Kickback Statute, which is the predicate violation of the False Claims Act alleged in this case." *Id.*; *see* ECF No. 334-10 at 6 (HHS Secretary's 1989 delegation of HHS' AKS authority to HHS-OIG alone, with no delegation of same to CMS or Medicare contractors).

## IV. Joint Motion for Discovery Conference and Magistrate Judge's May 10 Order

After the unsuccessful attempts to confer, on May 4, 2023, the parties submitted a Joint Motion for Discovery Conference and filed a Joint Discovery Dispute Statement. ECF Nos. 333-

---

[5] HHS-OIG used these search terms (Foley NEAR (100) presentation* OR Foley NEAR (100) seminar* OR Foley NEAR (100) meeting* or Foley NEAR (100) event* or Blau). ECF No. 334-9 at 3 n. 5. DOJ used those same terms, plus "physician hospital alignment," "physician-hospital alignment," "Models for Successful Collaboration with Physicians," "Professional Services Arrangements," "Co-Management Arrangements," and Co Management Arrangements." *Id*. at 3 n. 6. The United States noted that these searches were "less burdensome." *Id*. at 4.

34. On May 10, 2023, the Magistrate Judge entered the May 10 Order denying the Joint Motion for Discovery Conference and finding that the United States "has not complied with the Court's prior orders" and "as a further just order pursuant to Rule 37(b)(2)(A)" ordered the United States to produce additional responsive documents using additional custodians and search terms. ECF No. 337 at 13. In particular, the Magistrate Judge ordered: "For all custodians who are identified or whose documents have previously been searched, the United States must conduct searches using the terms proposed by Methodist in an email between counsel on March 8, 2023." ECF No. 337 at 17. In addition, the May 10 Order concluded that the United States had an obligation to identify custodians within CMS *even though CMS has no responsibility for the AKS* and appears to have determined that the United States violated its previous orders by not proposing to do searches as to CMS custodians. *Id.* Although the May 10 Order does not explicitly direct the United States to perform searches as to Medicare contractors, the May 10 Order does suggest that United States did not comply with the Magistrate Judge's prior orders with respect to RFP Nos. 26 and 27 because it did not perform a search of custodians from "CMS or other custodians." *Id.* at 10.[6]

The May 10 Order further stated that if "Methodist finds that the United States' document production in response to RFP Nos. 26 and 27 to not be satisfactory, the United States must produce a witness to testify" regarding all steps to search for and collect documents in response to RFPs No. 26 and 27 within 35 days. *Id.* at 17. In addition, the May 10 Order requires the United States to produce "all non-privileged documents and provide supplemental responses to confirm it has produced all non-privileged documents" no later than 21 days after entry of the order. *Id.*

---

[6] Since the May 10 Order was entered, Methodist has taken the position that the Magistrate Judge concluded that the United States violated the prior orders of the Magistrate Judge by failing to search custodians from CMS. Ex. 2 (Chenery email of 5/16/23).

Finally, the May 10 Order stated that "The Court is inclined to find that the United States' failure to comply with its December 4, 2022 and January 4, 2023 orders was not substantially justified." *Id.* at 16. The order also directed Methodist to file a motion for attorney's fees that in incurred with respect to the Joint Motion for Discovery Conference and Joint Discovery Dispute Statement and any pre-filing attempts at resolution within seven days. *Id.*

After Magistrate Judge Holmes' May 10 Order, the United States conferred with Methodist's counsel as required, agreeing to run the March 8th search terms on the original seven custodians and proposing one more HHS-OIG custodian and two more DOJ custodians.[7] The United States reiterated that CMS and the Medicare contractors had no responsibility for the AKS and thus could not be effectively searched. In response, Methodist emailed its position that the United States needed to search for many additional HHS-OIG custodians (which it identified both by name and position held during the applicable period) and for CMS and Medicare contractor custodians. Ex. 2 (Chenery email of 5/16/23). Counsel for the parties spoke again, but no agreements were reached about these issues.

The United States now timely seeks review of the non-dispositive May 10 Order.[8] As demonstrated above, the United States in good faith believed it was acting in compliance with Magistrate Judge Holmes' orders by stipulating and then producing responsive documents for the custodians identified by Mr. Solinger on the Foley and Blau topics he described at the hearing. And as further explained below, the significant burdens of complying with the May 10 Order now are not proportional to the needs of the case.

---

[7] The United States is not seeking review of the portion of the May 10 Order concerning DOJ.

[8] While the order was signed on May 10, 2023, it was entered on May 11, 2023, which is the same date when the United States was served with the order. *See* Ex. 3 (ECF Notice of ECF No. 337 dated 5/11/23); Fed. R. Civ. P. 72(a).

**ARGUMENT**

## I. Standard of Review

A magistrate judge's decision on a non-dispositive matter is reviewed for clear error and for whether it is contrary to law. 28 U.S.C. § 636(b). Factual findings are considered erroneous where, "although there is evidence to support them, the reviewing court on the entire evidence is left with the definite and firm impression that a mistake has been committed." *Ellison v. Clarksville Montgomery City Sch. Sys.*, 2018 WL 998337, at *1 (M.D. Tenn. 2018) (Trauger, J.) (quotations omitted) (finding such an error). Legal conclusions are contrary to law if they contradict or ignore "applicable precepts of law . . . or case precedent." *Id.*

In reviewing a magistrate judge's decision, the Court "may . . . receive further evidence," § 636(b)(1), such as "affidavits" and other "exhibits," which "must" be provided by the party seeking court review." Local Rule 72.01 (petition seeking review of non-dispositive discovery order "***must*** be accompanied by sufficient documentation including, affidavits [and] pertinent exhibits . . . to apprise the District Judge of the bases for the objections") (emphasis added); *see also Banner v. City of Flint,* 99 Fed. Appx. 29, 35 (6th Cir. 2004) (district court has "[i]nherent power to permit it to consider new evidence when considering a motion to review a magistrate judge's decision on a nondispositive issue); *United States ex rel. Goodman v. Arriva Med., LLC,* 471 F. Supp. 3d 830, 844 (M.D. Tenn. 2020) ("[T]he Sixth Circuit has held that a district court's '[i]nherent power' permits it, for good cause, to consider new evidence when considering a motion to review a magistrate judge's decision on a nondispositive issue.") (citing *Banner*); *see also Muhammad v. Close*, 2009 WL 8755520, at *2 (6th Cir. 2009) ("[T]he district court rejected the Coxton affidavit simply because it had not been presented to the magistrate judge. . . . [in light of this, we] must vacate the district court's order and remand this matter for further proceedings.").

The consideration of "affidavits" and "exhibits" by the Court is particularly appropriate here, because the discovery order was issued based solely on arguments presented in the Joint Discovery Statement, and without the benefit of a full briefing (with accompanying affidavits), which the Magistrate Judge did not permit. *See Arriva,* 471 F. Supp. 3d at 844. As contemplated by Local Rule 37.01(b), the Joint Discovery Statement did not contain the types of evidence, including affidavits,[9] which are required be filed in connection with a Local Rule 72.01 challenge to a magistrate judge's non-dispositive ruling. Moreover, the declarations submitted here merely show with additional evidence what the United States squarely argued to the Magistrate Judge— namely, that Methodist's discovery requests at issue are not proportional to the needs of the case.

## II. The United States Acted in Good Faith and Did Not Violate Prior Orders

When the United States stipulated that it would not rely upon Foley presentations, it had a good faith belief that the stipulation would resolve the discovery dispute. The United States offered that stipulation promptly, the day after the Court's written order was entered in an effort to resolve the pending discovery dispute. While that belief turned out to be incorrect, the United States emphasizes that it firmly believed the stipulation would resolve the discovery dispute, based upon unequivocal comments made by Methodist's counsel to the Court.

The United States was genuinely surprised when Methodist reversed course from its unambiguous statements at the December 20, 2022 hearing that it would withdraw Request Nos. 26 and 27 if the United States was not going to rely upon presentations made by Foley. Nonetheless, when Methodist did reverse course, the United States made reasonable efforts to perform searches for documents based upon statements by Methodist, and its reasonable

---

[9] Any exhibits attached to the Joint Discovery Statement were not newly acquired or created affidavits or declarations, but rather preexisting documents or discovery letters.

interpretation of the Court's orders, both at the December 20, 2022 hearing and the January 4, 2023 written order. As noted previously, at the hearing on December 20, 2022, the Court stated: "This is going to be the court's ruling: that the government must search *the terms and custodians* based on discussions with West *regarding Foley presentations as described by Mr. Solinger today* and produce responsive documents." ECF No. 299 at 60:2-6 (emphasis added). In its January 4, 2023 written order, the Court ordered: [T]he the United States must also provide supplemental responses to [Request] Nos. 26 and 27 to confirm it has produced all non-privileged documents responsive to *the narrowed requests as defined in open court*." ECF No. 300 at 8-9 (emphasis added). Accordingly, the Magistrate Judge ordered production *only* of documents of the DOJ and HHS-OIG custodians mentioned by counsel for West, and thus it did not order the United States to produce documents from CMS or Medicare contractors.[10] Moreover, the Court did not order the United States on either December 20th or January 4th to utilize *any and all* search terms that Methodist would thereafter propose. Rather, it only ordered production of documents "regarding Foley presentations." ECF No. 299 at 60:2-6. Following entry of the January 4, 2023 order, Methodist indicated that it wanted more than the "narrowed requests" discussed at the December 20th hearing, and the United States objected to Methodist's demands for the United States to make additional searches beyond what the Court ordered. The United States respectfully submits that this *subsequent* disagreement between the United States and Methodist concerning the scope of potential searches is not indicative that the United States violated any prior orders of the Court.

---

[10] Moreover, there is no reason to believe that any employees of CMS or Medicare contractors ever attended the 2009 Foley presentation discussed at the December 20th hearing, especially neither CMS nor Medicare contractors are charged with enforcing the Anti-Kickback Statute; rather, that responsibility is allocated to HHS-OIG. *See infra.*

The United States Attorney's Office and undersigned counsel take their responsibility to follow Court orders very seriously. The undersigned counsel had a good faith belief that they were acting in conformity with the Magistrate Judge's two orders.

Magistrate Judge Holmes' May 10 Order that the United States violated her orders is clearly erroneous. The United States acted in conformity with her orders by producing responsive documents from DOJ and HHS-OIG for the seven custodians tethered to the terms "Foley and Blau" as discussed by Mr. Solinger – which is what the Court had ordered.

## III. Methodist's Broad Post-Hearing Discovery Demands Are Not Proportional to the Needs of The Case

### A. Legal Standard

Under the 2015 revisions to the Federal Rules of Civil Procedure, discovery is permissible if it is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (2015 committee notes) ("The former provision . . . 'reasonably calculated to lead to the discovery of admissible evidence' is . . . deleted."). "One central purpose of [the proportionality standard's] inclusion is to 'encourage judges to be more aggressive in identifying and discouraging discovery overuse.'" *Russell v. Kiewit Corp*., 2019 WL 2357525, at *2 (D. Kan. 2019); *see Procraft Cabinetry, Inc. v. Sweet Home Kitchen & Bath*, 2018 WL 2382102, at *1 (M.D. Tenn. 2018) ("The Rules were amended . . . in part to address the alleged costs and abuses attendant to discovery."); *Tilem v. Travelers Comm. Ins. Co*., 2018 WL 4963124, at *7 (C.D. Cal. 2018) ("The proportionality requirement 'is designed to avoid . . . sweeping discovery that is untethered to the claims and defenses in litigation'").

The standard creates a specific duty for the court to "consider discovery in light of its "proportional[ity] to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Turner v. Chrysler Group, LLC*, 2016 WL 3233748, at *1 (M.D. Tenn. 2016) (quoting Fed. R. Civ. P. 26(b)(1)). In assessing proportionality, "courts should consider . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Schall v. Suzuki Motor of Am., Inc.*, 2017 WL 4050319, at *4 (W.D. Ky. 2017); *see Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603–04 (D. Nev. 2016) (as explained by Chief Justice Roberts, a court should "'identify the critical issues, determine the appropriate breadth of discovery, and curtail dilatory tactics, gamesmanship, and procedural posturing'") (quoting John Roberts, 2015 Year-End Report on the Federal Judiciary (Dec. 31, 2015)).

"A court need not compel discovery if the burden or expense of the proposed discovery outweighs its likely benefit." *First Horizon Nat'l Corp. v. Houston Cas. Co.*, 2016 WL 5869580, at *4 (W.D. Tenn. 2016). Additionally, "[b]efore any other factors come into play, a party seeking discovery must establish that the information sought is 'relevant.'" *Grae v. Corr. Corp. of Am.*, 326 F.R.D. 482, 486 (M.D. Tenn. 2018) (Trauger, J.). "Relevant . . . does not refer to some general, colloquial relevance to the litigation as a whole." *Id.* Rather, "the relevance that matters . . . is relevance to the disposition of the action." *Id*.

## B. The Magistrate Judge's Order for the United States to Conduct Searches as to More Custodians Is Not Proportional to the Needs of the Case

The United States originally objected to RFPs 26 and 27, among other things, on the grounds of relevance, and that the requests were unduly burdensome and not proportional to the needs of the case. ECF Nos. 271-4 at 18-19; 341-1 at 15-16. Specifically, the United States argued that whether someone from the United States attended a presentation about a generalized structure

had nothing to do with whether Methodist and West entered into a financial arrangement that violated the AKS.  ECF No. 299 at 48:8-25.

As noted previously, the Magistrate Judge ordered the United States "must search the terms and custodians based on discussions with West regarding Foley presentations." *Id.* at 60:7-11. The reference to "discussions with West" is based on a presentation that West gave to the United States prior to the United States' filing its motion to intervene in this action.  The West presentation identified one slide that included pictures of certain personnel from DOJ and HHS who West claimed attended a conference with Mr. Blau.  Ex. 4.  Following the hearing, the United States reviewed the presentation mentioned at the hearing and though an internet search identified that the custodians appear to have been identified based on the Health Care Compliance Institute's 13th Annual Conference held on April 26-29, 2009 in Nevada.  ECF No. 334.11.[11]  This conference occurred before the relevant time period and had over 200 speakers.  *Id.*  The individuals Mr. Solinger identified were there to speak on their own panels and did not speak on the same panel as Mr. Blau.  There has never been any basis to suggest that these custodians attended Mr. Blau's presentation or were even at the conference for the entire time period.  In any event, during the meet and confer process, the United States searched these custodians for documents specifically targeted to find presentations regarding the general physician-hospital alignment structure that Foley discussed.  No truly relevant documents were found.  But the United States produced some emails that were at best arguably responsive, but were merely emails referencing *other* conferences that DOJ and HHS-OIG officials attended.  *See* ECF No. 334-8.  None of these materials has anything to do with the issues involved in this case.

---

[11] https://www.friedfrank.com/uploads/siteFiles/News/DB82824CF9D34ECC600851AC426C0238.pdf , visited on May 3, 2023.

### 1. Discovery of CMS, Medicare Contractors, and HHS-OIG Is at Most Remotely Relevant

As a threshold, performing searches for documents of CMS, Medicare contractors, and HHS-OIG regarding presentations has at most "some general, colloquial relevance" to this case. *Grae*, 326 F.R.D. at 486. Within HHS, HHS-OIG is given the exclusive authority to enforce the AKS. *See* Declaration of George Gilbert Mills, Jr ("Mills Dec.") ¶ 4, *filed contemporaneously*. CMS does not issue regulations or advisory opinions regarding the AKS or initiate investigations of potential violations of the AKS. *Id.* Consequently, there are no employees within CMS whose expertise is AKS issues. *Id.* Accordingly, any statements by any CMS custodians regarding presentations about physician-hospital alignment or integration, assuming there was some reason to conclude anyone from CMS might have attended in the first place, could not possibly be relevant in this matter, because they would have no authority to speak for the United States or HHS on the AKS. Indeed, any statements by CMS employees about the AKS could not qualify as a party statement under Fed. R. Evid. 801(d)(2), because such statements could not have been made "in a representative capacity" or "on a matter within the scope" of their employment.

Similarly, performing searches on Medicare contractors does not meet the threshold standard of relevancy. CMS contracts with Medicare Administrative Contractors ("MACs") to process Medicare Part A and Part B medical claims for Medicare Fee-For-Service ("FFS") beneficiaries ("A/B claims"). MACs are private companies that have been awarded a geographic jurisdiction to process claims for FPS beneficiaries. Mills Decl., ¶ 9. Currently, there are twelve jurisdictions that are served by seven different A/B MACs. *Id.*, ¶ 12. The MACs do not have any contracted responsibilities regarding policy development or exercise of HHS's authority regarding prohibited business arrangements, including the AKS. *Id.*, ¶ 14; Declaration of Deborah Dickson ("Dickson Decl.) ¶ 3, *filed contemporaneously*; Declaration of Karen Chan ("Chan Decl") ¶ 4,

*filed contemporaneously*; Declaration of Steve Smith ("Smith Decl.") ¶ 3, *filed contemporaneously*. Accordingly, any statements that any employee of a MAC may have made regarding a presentation that someone made about physician-hospital alignment or integration could not possibly be relevant in this matter concerning whether Methodist participated in an illegal kickback arrangement.

The responsiveness ratio for the HHS-OIG documents produced in March 2023 was less than one percent. *See* Declaration of Michael Dougherty ("Dougherty Decl."), *filed contemporaneously*, ¶ 2 (only one of 1,245 documents from prior search was even arguably responsive).[12] Here, the Magistrate Judge did not engage with the lack of demonstrated relevance to the RFPs and instead expanded their reach despite the paltry results. *See Stein v. U.S. Xpress Enters., Inc*., 2022 WL 511553, at *2 (E.D. Tenn. Feb. 11, 2022) (denying motion to compel search of additional custodians where "there has been no showing that such additional discovery will yield information relevant to . . . this lawsuit . . . that is not duplicative" of other information already produced); *Arriva*, 471 F. Supp. 3d at 845 (finding that "there would be reason to question the breadth of the defendants' requests" since they entail "a great deal of discovery").

## 2. Discovery of CMS, Medicare Contractors and HHS-OIG Would Be Unduly Burdensome

In the context of this case, Magistrate Judge Holmes erred in determining that the United States must search custodians for CMS and the Medicare contractors and additional HHS-OIG custodians in addition to the three searched in March 2023. Unlike with the original seven custodians referenced by Mr. Solinger at the December 20, 2022 hearing, there is no indication that anyone from CMS or the Medicare contractors ever attended any presentation by Foley or

---

[12] For the four DOJ custodians, the searches are not yet complete, due to the complexity of the search terms.

anyone else regarding physician-hospital alignment or integration. In addition, CMS does not maintain any central records of which employees of CMS attend which conferences from time to time, so there is no way to begin to identify which employees or former employees of CMS might have attended such a presentation or conference. *Id.*, ¶ 6. Consequently, there is no logical way to narrow any search for CMS or Medicare contractor custodians.

CMS' e-discovery vendor has indicated if the search terms proposed by Methodist and ordered by the Magistrate Judge were applied to all 7,000+ CMS email accounts, the result would be millions of documents which cannot be accommodated in any of the document review platforms maintained by CMS' e-discovery vendor. *Id.*, ¶ 8. In addition, CMS' e-discovery vendor collected and searched the emails of three supervisory employees of CMS' Division of Payment Policy for 2011 to 2018 with the search terms proposed by Methodist and ordered by the Magistrate Judge in the May 10 Order. The search resulted in over 68,000 documents. Declaration of Janet Nolan ("Nolan Decl.), ¶ 7, *filed contemporaneously*. These three supervisory employees are all engaged in policymaking, and many of their emails would be protected by the attorney-client privilege or would be part of the agency's deliberative process in making policy decisions. *Id.*, ¶ 8. HHS' Office of General Counsel (OGC) estimates that it would take over 1,100 hours to review this many documents for responsiveness and privilege, and it would be impossible for CMS to complete any such review by June 1, 2023, the Magistrate Judge's production deadline. *Id.*, ¶¶ 12-13. HHS, OGC has limited attorney resources and does not have a budget for hiring contract attorneys, so performing a document review of this magnitude would take limited OGC resources away from other affirmative litigation for a significant amount of time. *Id.*, ¶¶ 10, 14. Accordingly, performing searches as to CMS custodians amounts to a burdensome, costly, and time-consuming fishing expedition that is extremely unlikely to yield any relevant evidence.

Moreover, the burden of performing searches of numerous employees of private companies that served as Medicare contractors substantially outweighs any likely benefit from such searches. From 2011 to 2018, there were *ten* different companies with whom CMS contracted to review and pay claims submitted by health care providers under Medicare Parts A and B in twelve different geographical regions of the United States at different points in time. Mills Decl., ¶ 12. There is no indication that any employee of a MAC ever attended the 2009 conference where a Foley lawyer made a presentation regarding physician-hospital alignment, or any other conference in which someone made a presentation about the physician-hospital alignment generally, much less that any such employee attending such a presentation ended up sending emails pontificating about the merits of the presentation. Yet, Methodist has requested, and the Magistrate Judge may have ordered,[13] the United States to go to each of these MACs and have them search for documents regarding presentations about physician-hospital alignment or integration.

Performing searches as to ten private companies using the broad search terms proposed by Methodist would be prohibitively expensive and burdensome. Since none of the MACs have any contracted responsibilities with respect to the AKS, or to prohibited business arrangements generally, there is no practical way to identify employees who worked for a MAC who might possibly have had communications that in any way related to the issues in this case or that could possibly be attributed to the United States. Mills Decl., ¶ 11; Chan Decl., ¶ 4; Dickson Decl., ¶ 3; Smith Decl., ¶ 3. Moreover, neither the United States, nor the MACs themselves, have a way to identify any their employees who might have attended a conference, seminar, or event in which someone offered remarks on physician-hospital alignment or integration or more importantly, had

---

[13] As noted previously, the May 10 Order does not expressly direct the United States to perform searches as to Medicare contractors, but Methodist has since taken the position that the May 10 Order requires that the United States do just that.

communications regarding any such conference or event.  Mills Decl., ¶ 17; Chan Decl., ¶ 8; Dickson Decl., ¶ 9; Smith Decl., ¶ 8.

In addition, the United States does not have the ability to obtain documents from all of the companies who had contracted responsibilities to process Medicare claims from 2011 to 2018. When a different MAC is awarded the contract to review and process claims for a particular jurisdiction, that MAC will receive relevant files from the former MAC that had the contract, however, that typically does not include a wholesale transfer of all of the emails of the prior MAC. Mills Decl., ¶ 14.  Furthermore, the United States does not have a contractual right to compel any MAC that is no longer under contract to produce communications.  *Id.*

In addition, performing an enterprise-wide search of emails within each MAC would be prohibitively expensive.  For example, National Government Services, Inc. ("NGS") is currently the MAC for two jurisdictions.  Chan Decl., ¶ 2.  Emails of NGS employees are housed within the same email archive of its parent company and most of its affiliates.  *Id.*, ¶ 5.  While there are currently approximately 1,740 employees of NGS, the emails are housed within the same email archive as NGS' parent company and most of its affiliates, and there are more than 117,000 email accounts on this system.  Declaration of Brent Griffey (Griffey Decl.) ¶ 4, *filed contemporaneously.*  There is no way to reliably segregate the email accounts of current or former NGS employees.  *Id.*  Its parent company has the ability to perform some limited enterprise-wide searches, however, any such search is not completely reliable, as it would not capture emails if the email is larger than 20 MB or if the attachment is larger than 10 MB.  *Id.*  Elevance attempted to run of Methodist's proposed search terms across its email archive, and the search was so broad that it resulted in over 2.5 million positive hits.  *Id.*  The first item returned was a lunch meeting with someone with the first name of LeeAnn, which was responsive to this broad search term.  *Id.*

19

Elevance has an e-discovery vendor it uses to process and cull emails for searching. The approximate cost to process and cull 1,740 email accounts for searching would be over $19 million.

CGS and Palmetto are MACs for one and two jurisdictions respectively and are both owned by Blue Cross and Blue Shield of South Carolina ("BCBSSC"). Clarkson Decl., ¶ 2. CGS has approximately 1,000 employees, 450 of which support CGS' contract to process Medicare A/B claims in Jurisdiction J15. Smith Decl., ¶ 6. Palmetto has approximately 2,300 employees, of which over 1,800 support its contract to process Medicare A/B claims in Jurisdictions JJ and JM. Dickson Decl., ¶ 6. BCBSSC does not perform e-discovery searches in-house but uses a vendor to assist with those e-discovery efforts. Clarkson Decl., ¶ 5. Since neither Palmetto nor CGS has the ability to reasonably identify custodians for RFPs 26 and 27, coming up with a definitive calculation of the costs to process the data to do email searches and produce documents is not possible, however, BCBSSC estimates that the e-discovery costs of producing data responsive to the requests would cost over $100,000 and well into the higher six figures. *Id.*, ¶¶ 4-7. Moreover, BCBSSC could not possibly complete the discovery requests as written by June 1, 2023. *Id.* ¶ 8.

Similarly, Methodist has taken the position that many more HHS-OIG custodians must be searched. Ex. 2. HHS-OIG analyzed this request and determined it would "result in at least 51 additional [HHS-OIG] custodians." Dougherty Decl. ¶ 6. If the results for these custodians are similar to the other searches run for this case, that would yield "approximately 1,692,185 additional items" for which a review "would take 28,203 hours." *Id.* Mathematically, that equates to over 1,175 days of 24-hour manpower review, which would plainly divert HHS-OIG from its mission of fighting Medicare fraud, waste and abuse.

These examples illustrate the incredibly large costs and burden that the May 10 Order imposes. Performing these burdensome and costly searches of scores of CMS, contractor and HHS-OIG custodians would not be proportional to the needs of this case.

**C. The Search Terms Proposed by Methodist on March 8, 2023 and Ordered by the Magistrate Judge in the May 10 Order Are Overly Broad and Would Potentially Require the Collection and Review of Hundreds of Thousands of Documents**

The Magistrate Judge also erred in determining that the United States should run the overly broad search terms requested in Methodist's March 8, 2023 email. The March 8th proposal include many searches that are not limited by the words "Blau" or "Foley" and thus pull in a massive number of additional document hits to be reviewed – a huge burden borne by the United States and the private companies that are MACs. After entry of the May 10 Order, HHS-OIG began attempting to run the searches ordered as to the seven custodians referenced in the order and at the December 20, 2022 hearing. But the searches are so broad that even running the searches has been difficult and time-consuming. The search terms contain common words and have no legitimate proximity limitations. For example, one of the search terms proposed by Methodist and ordered by the Magistrate Judge was: (LEA*) w/100 (presentation* or conference* or seminar* or meeting* or event*). ECF No. 334-7. The search term "LEA*" is called a wildcard search which will capture any word beginning with the letters "LEA" [14] within 100 words of "presentation" or "conference" or "seminar" or "event." Not surprisingly, these overly broad search terms yielded incredibly large results. For the three original HHS-OIG custodians referenced at the December 20, 2022 hearing, the broad searches proposed by Methodist and required by the May 10 Order would capture over 96,000 documents. *See* Dougherty Decl., ¶ 4.[15] There is a fourth custodian

---

[14] https://support.dtsearch.com/webhelp/dtsearch/Wildcard.htm. DT Search is a search tool utilized in many types of e-discovery software, including Relativity.

[15] For the four DOJ custodians, the searches are not yet complete, due to the complexity of the

who has been identified as a speaker at the 2009 meeting referenced in the December 20, 2022 hearing, according to the agenda that the United States was able to obtain online. ECF 334-11 at 5. Including this custodian would result in over 123,000 items. *Id*., ¶ 4. Any documents retrieved by these incredibly broad and unfocused search terms would need to be reviewed for responsiveness and privilege. Moreover, because all of the seven custodians are high-level officials within DOJ and HHS-OIG who are also attorneys, a large volume of these documents would likely be protected by the attorney-client or deliberative process privilege. As a result, the United States anticipates that the review of this incredibly large volume of documents could take thousands of hours. *Id.*

The various Rule 26(b)(1) proportionality factors on balance clearly weighed against permitting this discovery. *See Turner*, 2016 WL 323748, at \*1. At stake is the public's interest in protecting the integrity of the Medicare program and fighting fraud in that program.

Importantly, Magistrate Judge Holmes erred in failing to recognize that the burden of the complete March 8th search term list outweighs its likely benefit. As shown by the sixteen documents the United States already produced in March, none of them have any real bearing on this case and most of them are just invitations to conferences. *See* ECF No. 334-8. Based on a preliminary analysis from CMS, several Medicare contractors, and HHS-OIG, the heavy burden of complying with the May 10 Order is summarized below.

---

search terms.

| Entity | AKS Responsibility | Potential Number of Custodians | Estimated Manpower Hours to Review | Estimated Cost to Review | Possible to comply by June 1, 2023? |
|---|---|---|---|---|---|
| CMS | No | 3[16] | 1,113 hours (or 46 24-hour days) | Not quantified | No |
| Palmetto and CGS | No | 2,250 employees | Cannot quantify | $100,000+ | No |
| NGS | No | 117,000+ | 2 weeks per 10 email accounts (or 90 days+) | $19,792,500+ | No |
| HHS-OIG | Yes | 51+ | 28,203 hours (or 1,175 24-hour days) | Not quantified | Not for 51 custodians |
| Total | | 119,304 | 1,311 days+ | $19,792,500+ | No |

*See* Dougherty Decl.; Clarkson Decl.; Smith Decl.; Dickson Decl.; Nolan Decl.; Chan Decl., Griffey Decl. These burdens are significant. In addition to the high financial cost, the high manpower and time cost will force the United States and the contractors to divert their scarce personnel for this task. This, in turn, will interfere with their mission of preventing fraud.

In situations where discovery imposes similar burdens (including on non-parties like the contractors), courts within the Sixth Circuit have held that the discovery sought was not proportional to the needs of the case. *See Arriva,* 471 F. Supp. 3d at 844-45; *First Horizon*, 2016 WL 5869580, at *8 (denying "burdensome" discovery of claim files related to non-parties as non-proportional); *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2007 WL 3376831, at *5 (S.D. Ohio Nov. 8, 2007) (denying discovery regarding treatment of non-parties

---

[16] The United States does not agree that there are any custodians with relevant or responsive documents for CMS. But to comply with the May 10, 2023 Order, CMS selected three potential custodians, who are included above. *See* Nolan Decl.

because "the burden and expense of responding to this extensive discovery request outweighs its likely benefit").

## IV. Alternatively, the Court Should Postpone the June 1 Deadline for Compliance

Even if the Court does not reverse the Magistrate Judge's order about custodians and searches, the Magistrate Judge still committed clear error in setting a June 1, 2023 deadline to produce all responsive, non-privileged documents for these RFPs. As explained above, the United States simply cannot meet that deadline, particularly given that the Magistrate Judge's order essentially allows Methodist to unilaterally determine exactly how many custodians to search and Methodist here has sought a large number of custodians in addition to the very broad search terms ordered. This amounts to a Hobbesian choice, in which the United States wishes to comply by the Magistrate Judge's deadline, but cannot realistically do so.

## CONCLUSION

For the above reasons, the United States respectfully requests that this Court set aside the following aspects of the May 10 Order: (1) the determination that the United States violated the Magistrate Judge's orders of December 20, 2022 and January 4, 2023; (2) the order requiring the United States to perform searches as to custodians from CMS and Medicare contractors and any additional custodians from HHS-OIG; (3) the order for the United States to perform searches using search terms proposed by Methodist on March 8, 2023; and (4) the order to produce all responsive, non-privileged documents from CMS, Medicare contractors, and HHS-OIG by June 1, 2023.

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee

By:     s/ Ellen Bowden McIntyre
ELLEN BOWDEN MCINTYRE, BPR #023133
WYNN M. SHUFORD

24

Assistant United States Attorneys
United States Attorney's Office
719 Church Street, Suite 3300
Nashville, TN  37203
Phone: (615) 736-5151
ellen.bowden2@usdoj.gov
wynn.shuford@usdoj.gov

*Counsel for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2023, a true and correct copy of the foregoing was served via email to the following:

| | |
|---|---|
| Bryan A. Vroon<br>Law Offices of Bryan A. Vroon, LLC<br>1380 West Paces Ferry Road, Suite 2270<br>Atlanta, GA  30327<br>Email:  bryanvroon@gmail.com | Edward D. Robertson, Jr.<br>Bartimus, Frickleton & Robertson<br>715 Swifts Highway<br>Jefferson City, MO  65109<br>Email: crobertson@bflawfirm.com |
| Jerry E. Martin<br>David Rivera<br>Seth Marcus Hyatt<br>Barrett Johnston Martin & Garrison, LLC<br>Bank of America Plaza<br>414 Union Street, Suite 900<br>Nashville, TN  37219<br>Email: jmartin@barrettjohnston.com<br>Email: shyatt@barrettjohnston.com | Robert Salcido<br>(Admitted *Pro Hac Vice*)<br>Akin Grump Strauss Hauer & Feld LLP<br>2001 K Street, N.W.<br>Washington, D.C. 20006<br>Email: rsalcido@akingrump.com |
| Brian D. Roark<br>Anna M. Grizzle<br>J. Taylor Chenery<br>Taylor M. Sample<br>Hannah E. Webber<br>Bass, Berry & Sims PLC<br>150 Third Avenue South, Suite 2800<br>Nashville, TN 37201<br>Email: broark@bassberry.com<br>Email: agrizzle@bassberry.com<br>Email: tchenery@bassberry.com<br>Email: taylor.sample@bassberry.com<br>Email: hannah.webber@bassberry.com | Andrew F. Solinger, Esq.<br>HOLLAND & KNIGHT LLP<br>511 Union Street, Suite 2700<br>Nashville, TN 37219<br>Email: Andrew.solinger@hklaw.com |
| John-David H. Thomas, Esq.<br>Barnes & Thornburg, LLP<br>827 19th Avenue, Suite 930<br>Nashville, TN 37203<br>Email: jd.thomas@btlaw.com | |

s/ Ellen Bowden McIntyre
ELLEN BOWDEN MCINTYRE
Assistant United States Attorney

26