IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JEFFREY H. LIEBMAN and DAVID M. STERN, M.D., <br><br> Plaintiff-Relators, <br><br> v. <br><br> METHODIST LE BONHEUR HEALTHCARE and METHODIST HEALTHCARE-MEMPHIS HOSPITALS, <br><br> Defendants. | Case No.: 3:17-cv-00902 <br><br> JUDGE CAMPBELL <br> MAGISTRATE JUDGE HOLMES |

## **DECLARATION OF GEORGE GILBERT MILLS, JR.**

I, George Gilbert Mills, Jr., declare under penalty of perjury that the following statements are true and correct:

1. My name is George Gilbert Mills, Jr. I am over 21 years of age, and I am competent to make this declaration. My statements in this declaration are based on information personally known to me or conveyed to me by agency personnel who have reviewed the information described in subsequent paragraphs of this declaration. I am Deputy Director, Center for Program Integrity (CPI), Centers for Medicare and Medicaid Services (CMS). CPI serves as CMS' focal point for all national and State-wide Medicare and Medicaid programs and CHIP integrity fraud and abuse issues.

2. I have been in this position since June 2015.

3. The Department of Health and Human Services (HHS) is responsible for administration and supervision of Medicare. CMS, an agency within HHS, is directly responsible for administering Medicare.

4. The HHS Office of Inspector General (HHS-OIG) is the agency within HHS that has authority over the Anti-Kickback Statute (AKS). CMS has no enforcement, investigatory, or policy authority for the AKS. Accordingly, CMS does not issue regulations or advisory opinions regarding the AKS or initiate any investigations of potential violations of the AKS. Rather, that authority within HHS is exclusively granted to HHS-OIG. *See* Exhibit A. Consequently, there are no CMS employees whose subject matter expertise is AKS issues.

5. If CMS received a question about the AKS from a provider, CMS would refer that provider to HHS-OIG.

6. I understand that the defendants in this lawsuit seek for CMS to produce communications dated January 1, 2011 through December 31, 2018 that any CMS employee may

have had regarding any presentation, conference, seminar, meeting, or event in which any individual or group presented or offered remarks on physician-hospital alignment or integration, including the use of professional services agreements, co-management models, management services agreements, asset purchases, provider-based conversion, or leased employees. CMS does not maintain any central records of which employees of CMS attend which conferences from time to time, and I know of no way to begin to identify which employees or former employees of CMS might have attended such a presentation or conference for a given period of time.

7. Since HHS-OIG, and not CMS, has the authority within HHS regarding AKS issues, I am unaware of any way to narrow any search for documents to any particular group of CMS employees.

8. CMS has a vendor who handles e-discovery matters for the agency to discuss the feasibility of running searches on all of the more than 7,000 email accounts currently on CMS's server. CMS's e-discovery vendor has indicated that the searches proposed by Methodist would return millions of documents because of their breadth. That volume of documents cannot be accommodated in any of CMS' document review systems, all of which are maintained by CMS' e-discovery vendor.

9. CMS contracts with Medicare Administrative Contractors (MACs) to process Medicare Part A and Part B medical claims for Medicare Fee-For-Service (FFS) beneficiaries (A/B claims). MACs are private companies that have been awarded a geographic jurisdiction to process A/B claims for FPS beneficiaries.

10. CMS relies on a network of MACs to serve as the primary operational contact between the Medicare FFS program and the health care providers enrolled in the program. Currently, there are twelve jurisdictions that are served by seven different A/B MACs, as shown in attached Exhibit B.

11. The MACs do not have any contracted responsibilities regarding policy development or exercise of HHS's authority regarding prohibited business arrangements, including the AKS. As a result, I know of no way to identify potential employees who worked for a particular MAC at a particular point in time who had responsibility for AKS issues or prohibited business arrangements, because to my knowledge, no such groups exist.

12. From 2011 to 2018, there have been ten different companies with whom CMS contracted to review and pay claims submitted by health care providers under Medicare Parts A B in twelve different geographical regions of the United States at different points in time: Cahaba Government Benefit Administrators, LLC, CGS Administrators, LLC, First Coast Service Options, Inc., Highmark Medicare Services, Inc., National Government Services, Inc., Noridian Healthcare Solutions, LLC, Novitas Solutions, Inc., Palmetto GBA, LLC, TrailBlazer Health Enterprises, LLC, and Wisconsin Physicians Service Government Health Administrators.

13. Some of the MACs listed in Paragraph 12 above no longer have MAC contracts or in many cases, any contracts, with CMS. For example, Cahaba Government Benefit Administrators, LLC was the MAC for the jurisdiction including Tennessee from 2011 until the contract was awarded to Palmetto GBA, LLC in 2017. Cahaba Government Benefit Administrators, LLC is not currently contracted to be a MAC for any jurisdiction.

14. When a different MAC is awarded the contract to review and process claims for a particular jurisdiction, that MAC will receive relevant files from the former MAC that had the contract, however, that typically does not include a wholesale transfer of all of the emails of the

2

prior MAC. In addition, I am not aware of any way for CMS to compel any entity that is no longer under the contract to be a MAC with CMS to produce documents or emails to CMS or anyone else.

15. I understand that the defendants in this lawsuit seek for the United States to produce communications dated January 1, 2011 to December 31, 2018 that any individual employed by a MAC had regarding any presentation, conference, seminar, meeting, or event in which any individual or group presented or offered remarks on physician-hospital alignment or integration, including the use of professional services agreements, co-management models, management services agreements, asset purchases, provider-based conversion, or leased employees.

16. Each MAC is a private company that has its own IT infrastructure that is independent of CMS. As a result, the only way CMS could obtain documents such as emails that an employee of a MAC sent or received for a given time period would be for CMS to go to each MAC and ask it to perform searches. From my experience, at a given time, each MAC has potentially hundreds if not thousands of employees with different responsibilities for Part A and Part B claims. For example, Palmetto GBA, the current MAC for Part A and Part B claims for the jurisdiction that includes Tennessee, currently has over 2,300 employees according to its website. Other MACs also have thousands of employees as well.

17. I do not know of any way that CMS could determine what individuals who might have been employed by one of the ten A/B MACs that were contracted with CMS during the time frame of 2011 to 2018 might have attended any conference such as that described in Paragraph 15. In addition, I do not know of any way to identify any individuals employed by any MACs who might have had communications regarding physician-hospital alignment or integration, including the use of professional services agreements, co-management models, management services agreements, asset purchases, provider-based conversion, or leased employees. This is especially true since the MACs do not have contracted responsibilities regarding AKS policy development or exercise of HHS's authority regarding prohibited business arrangements.

18. The cost and man hours associated with obtaining and processing emails from thousands and thousands of employees who may have been employed by one of the ten MACs who were contracted with CMS from 2011 to 2018 would be extremely large.

Dated, this 17 day of MAY, 2023

_____
George Gilbert Mills, Jr.

3

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 25, 2023, a true and correct copy of the foregoing was served via email to the following:

| | |
|---|---|
| Bryan A. Vroon<br>Law Offices of Bryan A. Vroon, LLC<br>1380 West Paces Ferry Road, Suite 2270<br>Atlanta, GA 30327<br>Email: bryanvroon@gmail.com | Edward D. Robertson, Jr.<br>Bartimus, Frickleton & Robertson<br>715 Swifts Highway<br>Jefferson City, MO 65109<br>Email: crobertson@bflawfirm.com |
| Jerry E. Martin<br>David Rivera<br>Seth Marcus Hyatt<br>Barrett Johnston Martin & Garrison, LLC<br>Bank of America Plaza<br>414 Union Street, Suite 900<br>Nashville, TN 37219<br>Email: jmartin@barrettjohnston.com<br>Email: shyatt@barrettjohnston.com | Robert Salcido<br>(Admitted *Pro Hac Vice*)<br>Akin Grump Strauss Hauer & Feld LLP<br>2001 K Street, N.W.<br>Washington, D.C. 20006<br>Email: rsalcido@akingrump.com |
| Brian D. Roark<br>Anna M. Grizzle<br>J. Taylor Chenery<br>Taylor M. Sample<br>Hannah E. Webber<br>Bass, Berry & Sims PLC<br>150 Third Avenue South, Suite 2800<br>Nashville, TN 37201<br>Email: broark@bassberry.com<br>Email: agrizzle@bassberry.com<br>Email: tchenery@bassberry.com<br>Email: taylor.sample@bassberry.com<br>Email: hannah.webber@bassberry.com | Andrew F. Solinger, Esq.<br>HOLLAND & KNIGHT LLP<br>511 Union Street, Suite 2700<br>Nashville, TN 37219<br>Email: Andrew.solinger@hklaw.com |
| John-David H. Thomas, Esq.<br>Barnes & Thornburg, LLP<br>827 19th Avenue, Suite 930<br>Nashville, TN 37203<br>Email: jd.thomas@btlaw.com | |

                                           s/ Ellen Bowden McIntyre
                                           ELLEN BOWDEN MCINTYRE
                                           Assistant United States Attorney