# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

UNITED STATES OF AMERICA *ex rel*.
JEFFREY H. LIEBMAN and DAVID M.
STERN, M.D.

Plaintiff,

v.

METHODIST LE BONHEUR
HEALTHCARE, METHODIST
HEALTHCARE-MEMPHIS HOSPITALS,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 3:17-CV-00902

District Judge William L.
Campbell, Jr.

Magistrate Judge Barbara D.
Holmes

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE DECLARATION OF MICHAEL J. PETRON, CPA, CFE AND FOR SANCTIONS

BASS, BERRY & SIMS PLC
Brian D. Roark
J. Taylor Chenery
Taylor M. Sample
Hannah E. Webber
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201

AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Salcido
(Admitted Pro Hac Vice)
2001 K Street, N.W.
Washington, DC 20006

*Attorneys for Defendants Methodist Le
Bonheur Healthcare and Methodist
Healthcare-Memphis Hospitals*

## TABLE OF CONTENTS

BACKGROUND ....................................................................................................................1

ARGUMENT .......................................................................................................................5

    I.   The Charts are Not Admissible Under Federal Rule of Evidence 1006. ............................6

        A.  The Charts are not admissible under Rule 1006 because they are Petron's expert opinions, not summaries of voluminous documents...........................7

        B.  The government has not met its burden of proving the admissibility of the underlying Medicare claims data. ...............................................................10

        C.  The government has not met its burden of proving that the summary is accurate and nonprejudicial. .........................................................................15

    II.  The Court Should Exclude the Declaration and Award Sanctions Under Rule 37 Because the Government Did Not Disclose Petron as an Expert Witness. ......................17

    CONCLUSION.....................................................................................................................22

Case 3:17-cv-00902   Document 395   Filed 06/02/23   Page 2 of 29 PageID #: 12734

**TABLE OF AUTHORITIES**

**Cases**                                                                                     **Page(s)**

*Adams v. Farbota*,
    306 F.R.D. 563 (M.D. Tenn. 2015) ....................................................................21

*Anderson v. Otis Elevator Co.*,
    2012 WL 5493383 (E.D. Mich. Nov. 13, 2012).............................................7, 16

*Auto Indus. Supplier Emp. Stock Ownership Plan*,
    435 F. App'x 430 (6th Cir. 2011) .............................................................7, 8, 9, 14

*Bailey v. Floyd Cnty. Bd. of Educ.*,
    106 F.3d 135 (6th Cir. 1997) ...........................................................................6

*Campbell v. Cheatham Cnty.*,
    2020 WL 11191823 (M.D. Tenn. Aug. 19, 2020) ...................................18, 19, 20

*Church Joint Venture v. Blasingame*,
    2016 WL 6810873 (W.D. Tenn. Nov. 17, 2016).................................................16

*Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*,
    2016 WL 9460471 (W.D. Ky. June 29, 2016).............................................11, 14

*In re Courtney*,
    596 B.R. 645 (Bankr. S.D. Ohio 2019)...........................................................10

*Glock, Inc. v. Global Guns & Hunting, Inc.*,
    2015 WL 13614255 (N.D. Ga. Mar. 30, 2015)...........................................11, 15

*Gomez v. Great Lakes Steel Div.*,
    803 F.2d 250 (6th Cir. 1986) ...........................................................................7

*Hardison v. Lois Wagstrom, MD. P.C.*,
    2014 WL 7139997 (M.D. Tenn. Dec. 12, 2014)........................................20, 21

*Ierardi v. Lorillard*,
    1991 WL 66799 (E.D. Pa. Apr. 15, 1991) ............................................................11

*Kassim v. United Airlines, Inc.*,
    320 F.R.D. 451 (E.D. Mich. 2017) .................................................................18, 21

*Liadis v. Sears, Roebuck & Co.*,
    47 F. App'x 295 (6th Cir. 2002) ........................................................................7

*Loiseau v. Thompson, O'Brien, Kemp & Nasuti, P.C.*,
    499 F. Supp. 3d 1212 (N.D. Ga. 2020) ...............................................................16

*U.S. ex rel. Martin v. Hathaway*,
  63 F.4th 1043 (6th Cir. 2023) ...................................................................3

*Pugliese v. Pro. Recovery Serv., Inc.*,
  2010 WL 2632562 (E.D. Mich. June 29, 2010)......................................16

*QBE Ins. Corp. v. Jorda Enters., Inc.*,
  277 F.R.D. 676 (S.D. Fla. 2012) .............................................................11

*Sommer v. Davis*,
  317 F.3d 686 (6th Cir. 2003) ..................................................................20

*Teeples v. BIC USA, Inc.*,
  2022 WL 2793581 (M.D. Tenn. Jul. 15, 2022) .......................................18

*Tomazin v. Lincare, Inc.*,
  2015 WL 4545658 (M.D. Tenn. July 27, 2015) ........................... 18, 19, 20

*United States v. Bray*,
  139 F.3d 1104 (6th Cir. 1998) ...................................................... 7, 10, 15

*United States v. Moon*,
  513 F.3d 527 (6th Cir. 2008) ....................................................................7

*United States v. Ramer*,
  883 F.3d 659 (6th Cir. 2018) ..................................................................10

*United States v. Stone*,
  852 F. Supp. 2d 820 (E.D. Mich. 2012)..................................................15

*United States v. Trevino*,
  7 F.4th 414, 430 (6th Cir. 2021) .............................................................13

**Other Authorities**

31 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.*
  § 8042 (2d ed. 2023) .................................................................................6

Fed. R. Civ. P. 26 ....................................................................... *passim*

Fed. R. Civ. P. 30(b)(6)................................................................ *passim*

Fed. R. Civ. P. 37 .............................................................. 1, 5, 17, 18

Fed. R. Civ. P. 56 ....................................................................................6

Fed. R. Evid. 702 .......................................................................... 5, 7, 17

Fed. R. Evid. 703 ..................................................................................17

iii

Fed. R. Evid. 1002 ......................................................................................................6, 17

Fed. R. Evid. 1006 .............................................................................................. *passim*

The Court should exclude the proposed testimony as set forth in the Declaration of Michael Petron (Dkt. No. 347) filed by the government in support of the United States' Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 345). Although the government calls Petron a "summary fact witness," his analysis of Medicare claims data and the conclusions he seeks to offer from that analysis is the stuff of expert testimony – yet the government did not disclose Petron as an expert or provide any expert report for him. The government also has not established the admissibility of the underlying Medicare data that Petron purports to summarize. Petron did not pull the data or know how it was pulled, and the government has offered no other foundation for the data. Finally, the government actively misled Methodist regarding the evidence Petron would provide. During his deposition as one of the government's Rule 30(b)(6) designees, government counsel stated emphatically and repeatedly that Petron "is not talking about, at trial or here today, the causation aspect of anything." (Ex. 1, Petron Dep. 102:24–25.) Yet, now, in a bid to avoid summary judgment, the government seeks to offer Petron's Declaration and exhibits as essentially its only evidence on the element of causation.

Because the government has failed to follow Fed. R. Civ. P. 26's dictates on disclosing expert witnesses, failed to follow Fed. R. Evid. 1006's requirements for summary evidence, and misled Methodist by stating that Petron would offer no evidence on causation, the Court should exclude proposed testimony as set forth in the Petron Declaration and exhibits under Fed. R. Civ. P. 37 and should not take them into account for purposes of summary judgment, any hearing, or trial.

## BACKGROUND

The government alleges that certain financial arrangements between Methodist and West Clinic violated the Anti-Kickback Statute ("AKS"), which resulted in Methodist submitting false claims to Medicare in violation of the False Claims Act ("FCA"). In an effort to discover the

1

factual basis for these claims, Methodist served a Notice of Taking Fed. R. Civ. P. 30(b)(6) Deposition of Plaintiff United States (the "Notice"). (Dkt. No. 323, Statement of Undisputed Material Facts ("SUMF") Ex. 10, Roark Decl. ¶ 6.) Topic 2 of the Notice sought testimony regarding the identification and payment of claims that the government contends to be false. (SUMF Ex. 69, Notice at 5.) For any claim identified as false, Topic 3 sought testimony on "the factual basis and methodology for [the government's] determination that the [claim] resulted from any alleged kickback." (*Id.*)

The government designated Michael Petron as its witness for Topics 2 and 3. (SUMF Ex. 70, US Objections to 30(b)(6) Notice at 3–5.) Petron has no personal knowledge regarding any of the underlying events in question. (Dkt. No. 346, Response to SUMF ¶ 203.) Instead, he works for a consulting firm and is being paid by the government for his testimony and work in this case. (*Id.* at ¶ 201.) In Supplemental Initial Disclosures issued in September 2022, the government stated that Petron "will act as a summary fact witness for the United States as to Medicare Part A and B damages the United States intends to seek at trial." (Ex. 2 at 10.)

In connection with his 30(b)(6) deposition, Petron provided a "summary" document calculating the dollar amount of alleged false claims submitted by Methodist to Medicare during the pendency of the affiliation between Methodist and West (the "Original Chart"). (Ex. 3, GOV000891-GOV000896.) At his deposition, Petron testified that he received Medicare claims data from government counsel, which he analyzed using a statistical software system called SAS. (Ex. 1, Petron Dep. 11:12–13:7.) Petron testified that the SAS software was not something the average person could use:

> [I]f you, for instance, Mr. Roark, don't know SAS, you could not sit down today with no knowledge, no book, no information, and it be present. You couldn't do that. It's not in the same vein of a Microsoft Office product, where there are buttons and things. It's a coding – it's a coding exercise.

2

(*Id*. 14:4–9.)  Petron also testified that the Medicare claims data he analyzed had been queried and collected by a third party, he was not involved in pulling the data or confirming the accuracy of the collection, and he only had "some understanding" of the "[p]ortal" in which the data was housed.  (*Id*. 46:19–48:24.)  Petron conceded errors in his calculations during the deposition, including that he failed to remove claims for physicians during times when they were not working at West.  (*See, e.g.*, *id*. 108:2–8.)

Despite the United States designating Petron as its witness for Topic 3 (the factual basis and methodology for determining that a claim *resulted from any alleged kickback*), counsel for the government repeatedly insisted during the deposition that Petron could not and would not testify about causation.  (*Id*. 32:19 ("He is not testifying on causation.")); (*id*. 36:1–10 ("[H]e is not going to be talking about causation . . . he is not here to talk about causation . . . .  He is not talking about legal conclusions about causation, or anything else having to do with that.")); (*id*. 102:21–103:1 ("We have told you that he has been offered to testify as a summary fact witness on damages. That is what he is testifying to, the claims. **He is not talking about, at trial or here today, the causation aspect of anything.** That is not what we have put forth.") (emphasis added).)

On January 24, 2023, the government's deadline for disclosing expert witnesses, the government did not disclose Petron as an expert or provide an expert report for him pursuant to Rule 26(a)(2)(B).

On April 14, 2023, Methodist filed a Motion for Summary Judgment seeking dismissal of this case because, among other things, the government failed to establish that any claim submitted to Medicare *resulted from any alleged kickback* as required by *U.S. ex rel. Martin v. Hathaway*, 63 F.4th 1043 (6th Cir. 2023).  (Dkt. No. 321 at 14–21.)

On May 19, 2023, the government filed its opposition to Methodist's summary judgment motion, arguing that "there is ample evidence showing that false claims 'resulted from remuneration'" because during the time period of the affiliation, West's referrals to Methodist increased while its referrals to Baptist decreased. (Dkt. No. 345 at 21–25 (heading style omitted).) The only "evidence" cited by the government for that claim is a Declaration from Petron. (*Id.* at 23–24.) Petron declared the government had asked him "to identify and summarize any billing patterns present between Medicare payments to Methodist with the West providers as the attending physicians versus Medicare payments to Baptist Memorial Hospital ('Baptist') with the West providers as the attending physicians." (Dkt. No. 347 ¶ 2.) Petron went on to note that of 86 physicians employed by West during the relevant time period (*id.* ¶ 9), he was able to identify eight whose referrals to Methodist increased and referrals to Baptist decreased. (*Id.* ¶¶ 11, 16.)

Petron attached four charts (the "Charts")[1] to his Declaration that he created based on Medicare claims data received from government counsel, as well as a new document received from government counsel regarding physician enrollment dates.[2] (*Id.*) The Declaration does not describe the methodology Petron used in creating the Charts, nor does it describe his qualifications, CV, or other expert testimony he has provided. (*Id.*) During discovery, the government did not disclose that Petron would offer analysis regarding referral patterns at Methodist and Baptist. Until including them with his Declaration, the four Charts had not been produced in the litigation.

On May 31, 2023, just two days before Methodist's Reply to its Motion for Summary Judgment was due, the United States served Fourth Supplemental Initial Disclosures. (Ex. 4.) In

---

[1] For clarity, the argument below refers to the Original and New Charts collectively as "the Charts," as Petron relies on each of them in the Declaration.

[2] The new documents relied upon by Petron in the Declaration were never identified or produced by the United States during the course of discovery.

4

those untimely disclosures, the United States identified Safeguard Services, LLC, for the very first time as a custodian of records for Medicare claims. The government did not identify any specific person at Safeguard, but instead indicated that it had not yet identified any individuals with discoverable information or knowledge of the Medicare claims data. (Ex. 4 at 2) ("The United States will supplement these disclosures <u>when it has identified these individuals</u>, including but not limited to other employees or independent contractors, whom the United States may use to support its claims." (emphasis added).) Although discovery in this case closed in September 2022, the government also produced the four charts attached to Petron's declaration as well as almost 4,000 pages of documents not previously produced (GOV001028 – GOV004951) (*Id.*).

## **ARGUMENT**

The Court should exclude the proposed testimony set forth in Petron's Declaration and the Charts because they are not admissible evidence under Fed. R. Evid. 1006. First, Petron testified during his deposition that he performed the calculations underlying the Charts by using a methodology that required specialized knowledge of coding; he did more than compile figures. As such, the Charts do not qualify as "summar[ies]" under Rule 1006, but rather undisclosed expert opinion subject to Fed. R. Civ. P. 26(a)(2) and Fed. R. Evid. 702. Second, even if the Charts were "summar[ies]," the government has not met its burden of proving the admissibility of the data that the Charts purport to summarize. The government has not offered a single witness with personal knowledge of the recordkeeping practices of whatever governmental entity provided the Medicare claims data. Third, the government has not met its burden of proving that the Charts are accurate and non-prejudicial.

Additionally, the Court should exclude the Petron Declaration and Charts and award attorneys' fees as a sanction under Fed. R. Civ. P. 37 because of the government's failure to disclose Petron as an expert witness and because the government actively misled Methodist as to

his knowledge, anticipated testimony, and subjects appropriate for deposition. Government counsel explicitly stated that Petron would not testify in discovery or at trial on causation—yet, the government now offers Petron's opinions as its sole evidence of causation.

## I.     The Charts Are Not Admissible Under Federal Rule of Evidence 1006.

Under Fed. R. Civ. P. 56, a court can consider a declaration in deciding whether a genuine dispute exists for trial only if the contents of the declaration would be admissible at trial. *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997). Neither the Declaration nor the Charts would be admissible at trial.

Federal Rule of Evidence 1006[3] creates an exception to the "best evidence" rule, which requires the production of the original of a document in order to prove its contents, for summaries and charts, but only when the underlying documents are "voluminous" and certain safeguards are present. 31 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 8042 (2d ed. 2023); *see* Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."). By allowing a party to present the contents of "voluminous" documents through, for example, the presentation of a chart, Rule 1006 alleviates the logistical challenges of presenting the contents of the documents to the fact finder. *Wright & Miller*, *supra*, at § 8042. To minimize the risks to accurate fact-finding posed by this exception, the Sixth Circuit requires proof of the following in order for a summary to be admissible under Rule 1006:

---

[3] Fed. R. Evid. 1006 states as follows:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

(1) the underlying documents are so voluminous that they cannot be conveniently examined in court;

(2) the proponent of the summary must have made the documents available for examination or copying at a reasonable time and place;

(3) the underlying documents must be admissible in evidence;

(4) the summary must be accurate and nonprejudicial; and

(5) the summary must be properly introduced through the testimony of a witness who supervised its preparation.

*United States v. Moon*, 513 F.3d 527, 545 (6th Cir. 2008) (citing *United States v. Jamieson,* 427 F.3d 394, 409 (6th Cir. 2005)); *see also United States v. Bray*, 139 F.3d 1104, 1109–10 (6th Cir. 1998). The proponent of the summary has the burden of showing that these requirements are met. *See Liadis v. Sears, Roebuck & Co.*, 47 F. App'x 295, 303 (6th Cir. 2002) (noting that the proponent of evidence bears burden of proving its admissibility).

### A. The Charts are not admissible under Rule 1006 because they are Petron's expert opinions, not summaries of voluminous documents.

Rule 1006 permits a party to offer a summary of voluminous documents into evidence as a means of avoiding the logistical challenges of presenting the contents of the documents individually, but it is not a means for avoiding the expert disclosure requirements of Fed. R. Civ. P. 26 or the district court's gatekeeping function under Fed. R. Evid. 702. For that reason, courts have refused to admit summaries under Rule 1006 when a witness applies a methodology beyond "simply adding up" figures. Rather, Rule 702 must be satisfied in order for such a witness's testimony to be applicable. *Auto Indus. Supplier Emp. Stock Ownership Plan*, 435 F. App'x 430, 452 (6th Cir. 2011); *Gomez v. Great Lakes Steel Div.*, 803 F.2d 250, 257–58 (6th Cir. 1986) (holding that a chart that went beyond "simple compilation of voluminous records" was not admissible under Rule 1006); *Anderson v. Otis Elevator Co.*, 2012 WL 5493383, at *4 (E.D. Mich.

Nov. 13, 2012) (refusing to admit summary that went "far beyond simply summarizing the [data]").

In *Auto Industries Supplier Employee Stock Ownership Plan*, the Sixth Circuit considered whether a witness was permitted to testify regarding damages under Rule 1006. 435 F. App'x at 451–52. The court ruled that the witness could not offer this testimony because "although [he] summarized data and calculations . . . his report was more than just a summary of data under Fed. R. Evid. 1006 because his report also included data manipulations, adjustments, and calculations using the data presented, and therefore subject to rules governing opinion testimony and expert testimony." *Id.* at 452 (citing *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007)). The court noted that the witness indicated that "he employed his methodology based on his experience as an expert in arriving at the set amounts." *Id.*

Here, Petron has acknowledged that he employed a methodology requiring specialized knowledge in conducting his analysis. He testified that even if an average person obtained the software that he used in performing his calculations, he or she would not be able to use it without specialized knowledge:

> Q:     Yeah, I'm not – I'm not familiar with SAS. And so I was just trying to get an understanding of it, is it something that any person can use, or is it something that you need some specialized knowledge to know how to use SAS?
>
> A:     You would need to understand how to use SAS to use SAS.
>
> Q:     Okay.
>
> A.     And just, to be clear, you couldn't – if you, for instance, Mr. Roark, don't know SAS, you could not sit down today with no knowledge, no book, no information, and it be present. You couldn't do that. It's not in the same vein of a Microsoft Outlook product, where there are buttons and things. It's a coding – it's a coding exercise.

(Ex. 1, Petron Dep., 13:22–14:9.) Petron went on to credit his education and experience for his ability to manipulate data using SAS:

> Q: How is it that you know how to use SAS to query or manipulate data?
>
> A: I'll give you the short answer. I have an undergraduate degree in economics, double major in economics and statistics. I have one master's degree in statistics. And I have used SAS since I entered undergraduate school, so I've been using it for 25 years.

(*Id.* 14:14–20.) He also testified that his co-workers who assisted him in preparing his analysis have similar educational backgrounds and experiences. (*Id.* 16:14–18.)

Petron's Charts and Declaration are prototypical expert material, including "data manipulations, adjustments, and calculations." *Auto Indus. Supplier Emp. Stock Ownership Plan,* 435 F. App'x at 452. The Declaration admits that Petron was tasked not with summarizing damages, but rather with identifying "billing patterns" and comparing Medicare payments to Methodist versus payments to Baptist both over time and by physician. (Dkt. No. 347 at ¶ 2.) The Declaration analyzes multiple, complex datasets, calculating the amounts billed for services provided during the employment dates of each West Physician who was identified as an attending physician on patient claims. (*Id.* at ¶¶ 3–4, 9.) The Declaration also categorizes physicians by generalized billing characteristics, such as those who show increases or decreases in beneficiaries serviced at different hospitals over time, or those who had a "minimal" number of beneficiaries serviced during the affiliation. (*Id.* at ¶¶ 10–16.) That analysis far exceeds a lay summary of voluminous documents.

Because Petron employed specialized knowledge and skill to perform these calculations and create the Charts, they are not admissible under Rule 1006 as summaries. The government cannot dodge expert disclosure obligations merely by calling Petron a "summary witness" and his analysis a "summary chart."

**B.    The government has not met its burden of proving the admissibility of the underlying Medicare claims data.**

Even if the Charts qualified as summaries under Rule 1006, the government has failed to meet its burden to establish that the underlying claims data would be admissible evidence.  Petron, the *only* 30(b)(6) witness the government designated in connection with the Charts and the Medicare claims at issue in this case, admitted multiple times during his deposition that he is not familiar with the recordkeeping practices for the underlying claims data, nor the methodology used to collect it.  Thus, he is unable to lay a foundation for its admissibility.  The government is bound by his lack of knowledge and has identified no other witness who can lay a foundation for admissibility.[4]

Because a summary chart is admitted as substantive evidence under Rule 1006, it is axiomatic that the summary chart must be based on admissible evidence.  The proponent of the summary has the burden of proving, for example, that the underlying documents are either not hearsay or are subject to an exception to a hearsay rule as well as establishing their authenticity. *See Bray*, 139 F.3d at 1109–10; *see also Auto Indus. Supplier Emp. Stock Ownership Plan*, 435 F. App'x at 457–58 (refusing to consider summaries when none of proponent's witnesses could lay foundation for underlying documents).  To meet this burden, the proponent of the summary must offer a witness who is "familiar with the record keeping system."  *United States v. Ramer*, 883 F.3d 659, 678 (6th Cir. 2018) (quoting *United States v. Coffman*, 574 F. App'x 541, 556 (6th Cir. 2014)); *see also In re Courtney*, 596 B.R. 645, 662 (Bankr. S.D. Ohio 2019) (refusing to admit summaries into evidence when proponent of evidence did not offer "qualifying witness familiar

---

[4] Methodist also contests the underlined thousands of new pages of documents produced by the United States on May 31, 2023.  (Ex. 4.)  The late disclosure is yet another example of the government's flagrant disregard of the discovery rules.

with [the debtor's] record keeping system").  The proponent of the summary has the burden of proving the admissibility of the underlying documents.  *See Glock, Inc. v. Global Guns & Hunting, Inc.*, 2015 WL 13614255, at *8–9 (N.D. Ga. Mar. 30, 2015) (refusing to admit summary even when underlying documents would presumably qualify as business records because proponent had not presented any evidence establishing their admissibility).

A 30(b)(6) witness who answers questions by asserting lack of knowledge may bind the entity they represent to that lack of knowledge. *See Ierardi v. Lorillard*, 1991 WL 66799, at *2 (E.D. Pa. Apr. 15, 1991). "If the Rule 30(b)(6) designee 'legitimately lacks the ability to answer relevant questions on listed topics and the corporation cannot better prepare that witness or obtain an adequate substitute, then the 'we-don't-know' response can be binding on the corporation and prohibit it from offering evidence at trial on those points." *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, 2016 WL 9460471, at *5 (W.D. Ky. June 29, 2016) (quoting *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 690 (S.D. Fla. 2012)).  In other words, "the lack of knowledge answer is itself an answer which will bind the corporation at trial." *QBE Ins. Corp.*, 277 F.R.D. at 690 (citations omitted).

Petron did not pull the underlying Medicare claims data that he analyzes in his Declaration. SafeGuard Services ("SGS"), a government contractor, pulled the data and provided it to government counsel, who provided it to Petron.  (Ex. 1, Petron Dep. 47:8–21.)  Petron does not know how SGS pulled the data and cannot testify regarding its admissibility.  (*Id.*)  Petron's Declaration states that "[i]n creating the calculations and summary charts," he "reviewed and considered the documents and data that [he] requested or that Counsel has made available to [him]."  (Dkt. No. 347, Petron Decl. ¶ 3.)  According to Petron, the data files contained Medicare Part A inpatient and outpatient data for Methodist, and the "data was obtained using the Billing

Provider '1558365890' where the attending physician was one of the 86 West providers previously identified by Counsel." (*Id.* ¶ 4.) Petron does not provide any additional details regarding the source of the underlying claims data in his Declaration.

However, as the government's 30(b)(6) witness with respect to the government's identification of the claims at issue, Petron testified as to his lack of knowledge relating to the source of the claims data. He did not pull, query, or collect the data – rather, Petron testified that he received the claims data from counsel.

> Q: How did you come to have that data?
> A: Counsel provided the data.

(Ex. 1, Petron Dep. 12:16–17.) He also testified that he played "no role in pulling or supervising the pulling of the claims data," even though he used and relied on it.

> Q: Did you – and I think you've covered – you were not involved in pulling or supervising the pull of the CMS data files. Is that right?
> A: That's right.
>
> Q: Okay. But you did use and rely on these data files in preparing your summary, right?
> A: I did.

(*Id.* 50:5–11.)

Petron testified as to "some" understanding of a "portal" that houses Medicare claims data, but not a familiarity with the recordkeeping system as would be required to lay a proper foundation for the evidence. Instead, he testified that it was his "understanding" that a government contractor, SGS, "pulled" the claims data. (*Id.* 46:7–23.) But, he had no knowledge regarding how SGS determined what data to pull, nor was he educated on that topic prior to his deposition.

> Q: Did you – in connection with the summary that you have prepared here, did you speak with anyone at SGS as to how they pulled the data?
> A: I did not.

> Q:    I take it, you didn't supervise the creation of the CMS claims files?
>
> A:    I did not.
>
> Q:    Did you, Mr. Petron, take any steps to verify whether SGS pulled the data correctly?
>
> A:    I did not.
>
> Q:    Do you know, one way or the other, whether SGS pulled the data correctly?
>
> A:    I haven't audited their process, so I can't say that I know with certainly [sic], one way or the other.

(*Id.* 47:8–21.) Rather, Petron testified that any knowledge that he had regarding the source of the underlying claims data was based on assumptions.

> Q:    At the top, under source statement, it says, claim records included in this extract are those that were made available to us by CMS OnePI Portal All Claims Universe. Where it says, made available to us, do you know who the "us" is?
>
> A:    I assume the "us" refers to SGS.
>
> Q:    And I guess, if it's not an assumption, do you know, one way or the other, who the "us" is here?
>
> A:    I guess, technically, I don't know. It's my belief that the "us" is SGS, because I have some understanding of what the CMS OnePI Portal is. But it's an assumption.

(*Id.* 48:13–24.)

Petron's lack of knowledge regarding the recordkeeping practices of the entity that housed or pulled the Medicare claims data renders him incapable of laying a foundation for the data's admissibility and is binding on the United States as their 30(b)(6) witness. In *United States v. Trevino*, the Sixth Circuit found that a proper foundation had been laid for the sales records a government agent used in creating a Rule 1006 summary of defendant's sales when two former employees testified regarding the defendant's recordkeeping practices. 7 F.4th 414, 430 (6th Cir. 2021). One of the witnesses had regularly audited the sales records, and the other witness was

personally responsible for recording sales, which the Sixth Circuit said "demonstrates adequate familiarity with the record keeping process." *Id.* Petron lacks such "adequate familiarity."

Rather, Petron is akin to the plaintiff's consultant in *Auto Industries Supplier Employee Stock Ownership Plan*, where the Sixth Circuit affirmed the district court's finding that the consultant could not lay a proper foundation for the data used in creating a summary of damages. 435 F. App'x at 457. The witness in that case was not involved in the plaintiff's day-to-day operations, did not create the underlying documents, was not the custodian of the documents, and testified that he did not review the underlying documents. *Id*. Thus, he "was not a qualified witness because he was not familiar with [plaintiff's] record keeping procedures for the relevant documents, and his reliance was based solely on what he had been told, and not on his knowledge of [plaintiff's] record keeping procedures." *Id.*

Nor can the United States remedy this deficiency at trial or though the "initial disclosures" it just served two days ago on May 31, 2023. (Ex. 4.) *See Consumer Fin. Prot. Bureau*, 2016 WL 9460471 at *5 ("The corporation or agency that provides such a Rule 30(b)(6) designee, who testifies during deposition that the corporation or the agency does not know the answers to the questions, 'will not be allowed effectively to change its answer by introducing evidence at trial.'") (*quoting QBE Ins. Corp.,* 277 F.R.D. at 690). The government was requested to provide an individual with knowledge of the Medicare claims at issue as its 30(b)(6) designee nearly a year ago. (Dkt. No. 323, SUMF Ex. 10, Roark Decl. ¶ 6.) It produced Michael Petron and has made no effort to fix his fundamental lack of knowledge in the six months since his deposition. Even now, the late-revised disclosures do not actually identify any person at SGS with knowledge. If anything, they concede that the United States *still* cannot establish the admissibility or reliability

of the claims data on which it seeks to rely.[5]  (Ex. 4.)  Instead, the United States is bound by its

30(b)(6) testimony.

Because Petron admitted that he is not familiar with the recordkeeping practices for the

Medicare claims data underlying the Charts and cannot lay the foundation for such documents as

the government's 30(b)(6) designee, the government has not and could not meet its burden of

showing that the underlying data would be admissible.  Therefore, the Declaration and Charts must

be excluded.

### C.    The government has not met its burden of proving that the summary is accurate and nonprejudicial.

Because a Rule 1006 summary is substantive evidence that may be considered by the fact

finder in lieu of the underlying documents, the Sixth Circuit has emphasized that it must be

accurate and nonprejudicial.  *Bray*, 139 F.3d at 1110; *see also United States v. Stone*, 852 F. Supp.

2d 820, 828 (E.D. Mich. 2012) ("[I]t is especially important that the summary be accurate and

nonprejudicial.").  The Sixth Circuit has explained "[t]his means first that the information on the

document summarizes the information contained in the underlying documents accurately,

correctly, and in a nonmisleading manner.  Nothing should be lost in the translation."  *Bray*, 139

F.3d at 1110.  The proponent of the evidence has the burden of showing that the summary is

accurate and nonprejudicial.  *Glock, Inc.*, 2015 WL 13614255, at *9 (refusing to admit summary

---

[5] Indeed, by adding SGS to its disclosures, the United States acknowledges that they should have identified a witness to authenticate these claims at the outset, but fundamentally failed to do so. (Ex. 4.)  The late supplemental initial disclosures are improper and cannot remedy the government's failure.  Rule 37(c)(1) requires exclusion of undisclosed evidence that was required by Rule 26(a) and other appropriate sanctions "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Here, there is no argument that such a late disclosure is justified or harmless when this case was filed six years ago and the United States has been on notice of its obligations for this information for nearly a year, failed to remedy its designee's lack of knowledge for six months, and only disclosed a corporate entity (and no actual person) as a new witness just two days ago, which is more than eight months after the close of discovery.

because "Glock has presented no evidence . . . that the summaries are accurate and non-prejudicial"); *Loiseau v. Thompson, O'Brien, Kemp & Nasuti, P.C.*, 499 F. Supp. 3d 1212, 1221 n.5 (N.D. Ga. 2020) (excluding summary chart when proponent had not "sufficiently demonstrated the accuracy and non-prejudicial nature").

Courts frequently refuse to admit summaries based on concerns about their accuracy. *See, e.g., Loiseau*, 499 F. Supp. 3d at 1221 n.5 (excluding summary that was "impossible to verify and contain[ed] inaccuracies on its face"); *Church Joint Venture v. Blasingame,* 2016 WL 6810873, at *22 (W.D. Tenn. Nov. 17, 2016) (excluding summary of bank and accounting records because "the Court cannot tell from the materials provided whether [the] summary is 'accurate and nonprejudicial'"); *Anderson*, 2012 WL 5493383, at *4, 6 (excluding summary that had potential inaccuracies because data was incomplete); *Pugliese v. Pro. Recovery Serv., Inc.*, 2010 WL 2632562, at *5 (E.D. Mich. June 29, 2010) (excluding summary of calls because of "obvious discrepancies" between original and new call log).

Here, the government has not established that the summary is accurate and non-prejudicial. To the contrary, Petron's deposition testimony provides at least three reasons to suspect inaccuracies. First, Petron testified he does not know what query SGS used in pulling the claims data he relied on in creating his summary. (Ex. 1, Petron Dep. 55:1–3 ("But I don't know that, because I haven't gone in and actually looked at their query. I don't have the ability to do that.").)

Second, Petron's testimony does not provide any assurance that the summary does not include duplicate claims:

> Q: But do you know specifically what QC or not that SGS would have done on the claims files it pulled together?
> A: I have not spoken with anybody at SGS or audited their process about what they do.

(*Id*. 89:13–17.)

Third, Petron acknowledged that the Original Chart includes claims for Memphis physicians who were not working for West. He testified that the data could include claims for physicians who were referring patients to Methodist but who were not yet working for West.

> Q: But if there was a doctor who didn't start working for West until 2014, but they were in the Memphis market, they were referring claims to Methodist in 2012 and 2013, that doctor's claims would be captured in the totals that you did, correct?
>
> A: That is theoretically possible. I don't know that for a fact, but that is – the way I understand the data was pulled, that is possible.

(*Id.* 91:16–23); (*see also* (*id.* 95:7–10 ("Q: SGS didn't limit the data they pulled by the date that the physician worked for West? A: I don't believe so. But again, that's – I've not gotten behind their process and seen their queries.").) He also testified that the data could include claims for physicians who continued to refer patients to Methodist after they stopped working for West:

> So I'll repeat it back now, to be clear. If a West doctor stopped working in this relationship for Methodist or West, I'm not sure who they worked for. But if they stopped working, and they went somewhere else. And then they still went to Methodist as an attending, that data would be in the first two pages of my exhibit.

(*Id.* 108:2–8.)

The government has not met its burden of showing that the Charts are accurate and nonprejudicial, and thus they are inadmissible under Rule 1006.

## II. The Court Should Exclude the Declaration and Award Sanctions Under Rule 37 Because the Government Did Not Disclose Petron as an Expert Witness.

Federal Rule of Civil Procedure 26(a)(2)(A) requires a party to disclose "any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Under Rule 26(a)(2)(B), the party must also disclose a written report from the expert that sets forth the witness's opinions and basis for them, the facts or data considered in forming his/her opinions, any

exhibits supporting the opinion, the witness's qualifications, and the compensation the witness is receiving.

Under Rule 37, a party who fails to provide information or identify a witness as required by Rule 26(a) or (e) is "presumptively not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Teeples v. BIC USA, Inc.*, 2022 WL 2793581, at *3 (M.D. Tenn. Jul. 15, 2022). The burden of showing that a failure to disclose was harmless is on the disclosing party. *Campbell v. Cheatham Cnty.*, 2020 WL 11191823, at *2 (M.D. Tenn. Aug. 19, 2020) (citing *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)). "Harmless" is met only by proof of "an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Id.* (quoting *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003)).

Although the court has discretion with respect to the appropriate sanction to impose, "the exclusion of an expert witness' testimony is an available option that courts in this circuit commonly exercise when a party does not comply with the court's expert witness disclosure deadlines." *Tomazin v. Lincare, Inc.*, 2015 WL 4545658, at *11 (M.D. Tenn. July 27, 2015). A party may also be entitled to reimbursement for reasonable expenses, including attorney's fees, caused by the failure to make timely expert disclosures. *See Kassim v. United Airlines, Inc.*, 320 F.R.D. 451, 454-55 (E.D. Mich. 2017) (awarding fees where a party produced fact witnesses for deposition and later sought to disclose them as experts, finding that counsel "failed to take steps to learn what Rule 26(a)(2)(c) required and failed to take any steps to meet the requirements of that rule even after [Defendant] filed its motion.")

Pursuant to the Seventh Case Management Order, the government's deadline for disclosing experts was January 24, 2023. (Dkt. No. 298). On that date, the government disclosed Lucy Carter

and Timothy Smith as experts and provided copies of their reports. The government did not disclose Petron as an expert or provide any report from him.[6] The only disclosure the government provided with respect to Petron was its September 2022 Supplemental Initial Disclosures, which identified him "as a fact summary witness for the United States as to the Medicare Part A and B damages the United States intends to seek at trial." (Ex. 2 at 10.)

The government's failure to identify Petron as an expert witness and produce an expert report pursuant to Rule 26(a)(2) was not an honest mistake. Government counsel was present at Petron's deposition and heard him testify regarding how his academic background and work experience allowed him to produce calculations from Medicare claims data. *See Campbell*, 2020 WL 11191823, at *2 (finding that disclosing party failed to show honest mistake when it "allowed [expert disclosure] deadline to pass without making an expert disclosure or seeking an extension of the deadline"); *Tomazin*, 2015 WL 4545658, at *11 (finding that party had not shown honest mistake for failure to disclose when "Plaintiff could not have reasonably believed that [witness] could testify as to these opinions without providing official disclosures and a full expert report").

Counsel for the United States repeatedly argued during his testimony that Petron could not and would not testify on causation. (Ex. 1, Petron Dep. 32:19) (stating that Petron is "not testifying on causation."); (*id.* 36:1–10) ("[H]e is not going to be talking about causation . . . he is not here to talk about causation. . . . He is not talking about legal conclusions about causation, or anything else having to do with that."); (*id.* at 102:21–103:1) ("We have told you that he has been offered to testify as a summary fact witness on damages. That is what he is testifying to, the claims. He is

---

[6] Tellingly, the second sentence of Petron's professional biography on his firm's website asserts that "He is an **expert** in the application of statistics, accounting and finance to white collar crimes and civil litigation matters." *See* Michael Petron, https://www.stout.com/en/professionals/michael-petron (last visited June 1, 2023) (emphasis added).

not talking about, at trial or here today, the causation aspect of anything. That is not what we have put forth.") In stark contrast to those repeated representations, the government now seeks to rely on Petron's Declaration as its only "evidence" of causation that claims submitted to Medicare resulted from kickbacks. (*See* Dkt. No. 345 at 23–24.)[7]

Additionally, Methodist did not have sufficient knowledge of the government's intent to use Petron as an expert witness or of his opinions. *Tomazin*, 2015 WL 4545658, at *12 (finding that opposing party did not have sufficient knowledge to render mistake harmless when disclosing party did not have opportunity to review full expert report or conduct expert deposition); *Hardison v. Lois Wagstrom, MD. P.C.*, 2014 WL 7139997, at *7 (M.D. Tenn. Dec. 12, 2014) (concluding opposing party did not have sufficient knowledge that witness would testify as expert or of witness's opinions when witness had been previously identified as fact witness). Although Methodist deposed Petron as one of the United States' 30(b)(6) designees, Methodist did not have the opportunity to conduct an expert deposition of him, nor ask him about the substantive areas on which he now purports to opine. In fact, counsel for the government repeatedly sought to shut down questions regarding causation. Absent that opportunity, Methodist—and this Court—are left without knowledge of Petron's qualifications, the basis for his opinions, and other testimony Petron might have given in similar cases. The government's disclosure of Petron as a purported

---

[7] The reason the government only listed Petron as addressing "damages" and not "causation" is because at the time, the government decided that it did not need to establish FCA/AKS causation and hence specifically disclaimed that Petron would address causation and represented to Methodist that he would only address damages. Now that the government recognizes, following the Sixth Circuit's decision in *Martin*, that its decision not to seek competent evidence of FCA/AKS causation means that it cannot prove causation at summary judgment, it now seeks to transform Petron into an expert witness on causation. However, the government's perceived need to fill an evidentiary gap is insufficient to dispense with the Federal Rules of Evidence and the Federal Rules of Civil Procedure, especially when doing so is very prejudicial to Methodist because it lacks the ability to cross-examine Petron on the representations in his Declaration, which it would have done if he had been designated as an expert and the material were in an expert report.

20

"summary fact witness" in no way provided Methodist sufficient knowledge of the government's intent to rely on his expert opinions.

The Court should exclude Petron and award Methodist expenses for the government's flagrant violation of Rule 26(a)(2). *Sommer*, 317 F.3d at 691–92 (ruling that district court did not abuse its discretion in excluding expert witness when disclosure was untimely even if opposing party was not prejudiced by delay in disclosure); *Campbell*, 2020 WL 11191823, at *3 (excluding untimely disclosed expert witness because "deadlines matter"); *Adams v. Farbota*, 306 F.R.D. 563, 574 (M.D. Tenn. 2015) ("The court's orders are not recommendations – they are important deadlines designed to facilitate the disclosure of information and the timely disposition of cases."); *Hardison*, 2014 WL 7139997, at *7 (finding no justification to impose lesser sanction when "plaintiff failed to make a required expert disclosure on an issue for which expert testimony at trial is required"); *see also Kassim*, 320 F.R.D. at 454–55 (awarding fees for failure to disclose expert).

This is a repeat offense. As the Court has ruled on multiple occasions, the government has failed to exercise diligence or satisfactorily engage in discovery. (*See e.g.,* Dkt. Nos. 300, 312); (*see also* Dkt. No. 337 at 12 (noting that the "[o]nce again, the United States' argument on its production obligations is blinkered.").) As the Court has explained, the government's conduct repeatedly contradicts the representations and assurances it made to the Court about its involvement in the case. (*See e.g.,* Dkt. No. 299 at 7:20–25 ("[W]hen the United Sates intervened in this case, it was with the express representations and assurances to the Court that this would not become effectively a new lawsuit. And I find that based on the matters that have transpired during that time, those assurance[s] have not been kept."); (*id.* at 21:5–13 ("I find that in this case, it is an issue of the United States' diligence in attempting to comply with the original deadline. The United States made express representations to Judge Campbell in its request to intervene late in

this case that it would not upset, it did not intend[] to upset the progress of this case.  And I'm going to hold the United States to those representations.  I find that the government has not demonstrated diligence in attempt to comply with the September 23rd, 2022 deadline.").)

This is but the latest example of the government representing one thing but then doing the exact opposite.  Government counsel explicitly stated on the record at Petron's 30(b)(6) deposition that Petron "is not talking about, at trial or here today, the causation aspect of anything."  (Ex. 1, Petron Dep. 102:24–25.)  Now, the government seeks to offer testimony from Petron as proof of causation.  (*See* Dkt. No. 345 at 21 (relying on the Petron Declaration under the heading "Alternatively, There Is Ample Evidence Showing that False Claims 'Resulted from' Remuneration for the United States' § 1320a-7b(g) Claim.").)  And, the government elected not to disclose Petron as an expert, improperly claiming he is only a fact summary witness yet offering an entirely new and untested set of analyses from Petron not previously produced or offered when Methodist could have had any opportunity to cross examine or test Petron's opinions.

The United States' repeated disobedience of Court orders and deadlines, as well as rules of discovery, along with its repeated misrepresentations to Methodist and the Court, warrant that Petron's Declaration and charts be excluded.

## <u>CONCLUSION</u>

For the reasons stated above, the Court should exclude the testimony put forth in the Declaration of Michael J. Petron, CPA, CFE and its associated Charts, and order the government to pay the reasonable expenses, including attorney's fees, that Methodist incurred in deposing Petron and in filing its Motion to Exclude.


Dated: June 2, 2023.

Respectfully submitted,

_/s/ Brian D. Roark_____
Brian D. Roark
J. Taylor Chenery
Taylor M. Sample
Hannah E. Webber
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone (615) 742-6200
Facsimile (615) 742-6293
broark@bassberry.com
tchenery@bassberry.com
taylor.sample@bassberry.com
hannah.webber@bassberry.com

Robert S. Salcido
(Admitted _Pro Hac Vice_)
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4095
rsalcido@akingump.com

_Attorneys for Defendants Methodist Le_
_Bonheur Healthcare and Methodist_
_Healthcare-Memphis Hospitals_

23

## CERTIFICATE OF SERVICE

   I hereby certify that a true and exact copy of the foregoing has been served on the following counsel via the Court's CM/ECF email notification system on this the 2nd day of June, 2023:

Bryan A. Vroon
Law Offices of Bryan A. Vroon, LLC
1766 West Paces Ferry Road
Atlanta, GA 30327
(404) 441-9806
bryanvroon@gmail.com


Edward D. Robertson , Jr.
Bartimus Frickleton Robertson Rader PC
109 B East High Street
Jefferson City, MO 65101
(573) 659-4454
crobertson@bflawfirm.com

Jerry E. Martin
Seth Marcus Hyatt
Barrett Johnston Martin & Garrison, LLC
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
(615) 244-2202
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com


Kara F. Sweet
Wynn M. Shuford
Ellen Bowden McIntyre
U.S. Attorney's Office (Nashville Office)
Middle District of Tennessee
110 Ninth Avenue, S
Suite A961
Nashville, TN 37203-3870
(615) 401-6598
kara.sweet@usdoj.gov
Wynn.Shuford@usdoj.gov
Ellen.bowden2@usdoj.gov


          */s/ Brian D. Roark*

35713527.10