# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* JEFFREY H. LIEBMAN and DAVID M. STERN, M.D., | ) ) ) ) | Civil Case No.: 3:17-cv-00902 |
| Plaintiff, | ) ) ) | District Judge William L. Campbell, Jr. |
| v. | ) ) | Magistrate Judge Barbara D. Holmes |
| METHODIST LE BONHEUR HEALTHCARE and METHODIST HEALTHCARE-MEMPHIS HOSPITALS, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DEEM CERTAIN FACTS UNDISPUTED FOR PURPOSES OF SUMMARY JUDGMENT AND TO STRIKE OR DISREGARD PORTIONS OF PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

The United States' Response to Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment (Dkt. No. 346, the "Response") fails to comply with both the Federal Rules of Civil Procedure and the Local Rules of this Court: the 227-page document is impermissibly argumentative, non-responsive, speculative, and undermines the purpose of the Court's summary judgment guidelines. Pursuant to L.R. 56.01(b) and 56.01(c), a party moving for summary judgment must submit a statement of undisputed material facts and the non-moving party must respond directly to each fact "[i]n order to assist the Court in ascertaining whether there are any material facts in dispute." L.R. 56.01(b). The government's Response defies that purpose and asks the Court to deny summary judgment, not by disputing facts put forward by Methodist and supported by evidence, but by interjecting argument or narrative in an effort to "spin" the impact of the admissions it is required to make and by speaking past the asserted facts without controverting them. Such a response violates both the Federal and Local Rules.

1

Because Methodist's factual statements are not properly disputed through specific citation to admissible evidence, they should be deemed undisputed, and inappropriate portions of the government's Response should be struck or disregarded. *See* Fed. R. Civ. P. 56(e).

**I.      Federal Rule 56 and Local Rule 56.01 Require the Non-Moving Party to Respond to Each Fact Directly with Specific Citation to Record Evidence.**

The Local Rules of the United States District Court for the Middle District of Tennessee provide in relevant part as follows:

> Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:
> (1) Agreeing that the fact is undisputed;
> (2) Agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only; or
> (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record.
>
> . . . In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citation to the record supporting the contention that such fact is in dispute.

L.R. 56.01(c). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other relief, "consider the fact undisputed for purposes of the motion" or "issue any other appropriate order." Fed. R. Civ. P. 56(e). Where a statement of facts or a response to a statement of facts does not comply with the Federal and Local Rules, district courts routinely consider facts undisputed for purposes of summary judgment and/or strike or disregard portions of the statement or response. *See, e.g.*, *Anderson v. McIntosh Constr., LLC*, 2014 WL 2207924, at *1–2 & n.3 (M.D. Tenn. May 28, 2014), *aff'd*, 597 F. App'x 313 (6th Cir. 2015); *Vaden v. Gap, Inc.*, 2007 WL 954256, at *1 (M.D. Tenn. Mar. 26, 2007); *Artis v. Finishing Brands Holdings, Inc.*, 93 F. Supp. 3d 864, 869

(W.D. Tenn. 2015), *aff'd in part and rev'd in part on other grounds*, 639 F. App'x 313 (6th Cir. 2016).

Nowhere do the rules permit the non-moving party to "explain" or otherwise qualify its admission or to argue the facts, which is exactly what the government does repeatedly throughout its Response. Methodist's Statement of Undisputed Material Facts (Dkt. No. 322, "SUMF") is long because the relevant time period spans seven years and the government's theory of liability has shifted continually throughout this litigation, but the SUMF contains a concise statement of material facts relevant to the case pled by the government. *See McLemore v. Gumucio*, 619 F. Supp. 3d 816, 821 (M.D. Tenn. 2021) ("[W]hen the Local Rule calls for a 'concise' statement of fact, it is calling not necessarily for a statement of facts that is *short* or *brief*, but rather one that is free from unnecessary detail and is as brief as (reasonably) feasible.") (emphasis in original).

The government had the option of either admitting those asserted facts or disputing them with citations to the record. What the government cannot do under the Local Rules – but exactly what it did – is obfuscate the asserted facts by interjecting argument or narrative in an effort to "spin" the impact of the required admissions. Although the government purports to "dispute" virtually every asserted fact, the government's denials invariably speak past Methodist's facts without specifically controverting them, much less by providing specific citations to conflicting factual evidence.

This Court has recognized that such a response violates the Federal and Local Rules:

[The plaintiff's] response to the defendants' cited fact violates both letter and intent of the federal and local rules: every word after "the Plaintiff agrees that this was Swallows'" testimony—which is what the defendants' stated fact actually asserted—is unnecessary. If the plaintiff contends that the stated fact was *not* Swallows' testimony, then she can "dispute" that fact with appropriate citation to the record. If the plaintiff instead believes that, although Swallows testified about Fact X, Fact X is actually disputed, the plaintiff can file a separate statement of *disputed* material facts in compliance with the rules. Moreover, the two paragraphs

3

of text, even on their merits, are inadequate: they contain numerous statements and characterizations of the evidence, generally without citation to the record. Responses like this, which permeate [the plaintiff's] responsive submission, contain information that appears designed to distract from the core facts and issues in the case and do not further the responding party's case in any meaningful way.

*Anderson*, 2014 WL 2207924, at *1 n.3 (emphasis in original). The Court's summary may as well be describing the government's Response here. The same deficiencies permeate the Response, and they require the same result: that the Response be struck or disregarded and that Methodist's statement of facts be deemed undisputed.

## II.     The Government's Response Violates Federal Rule 56 and Local Rule 56.01.

The government's Response seeks to dispute factual assertions by (1) responding with statements that include *no* citation to the evidentiary record whatsoever; (2) offering non-responsive facts that are in no way related to Methodist's statement of fact; (3) offering legal arguments or statements of the law; (4) asserting unsupported conclusions, characterizations, or narrative statements of counsel; (5) purportedly disputing a fact because it "lacks specificity"; (6) objecting that a fact is not supported by *more* or *different* evidence; (7) purportedly disputing but then re-writing the same undisputed fact; and (8) raising unfounded hearsay objections. These issues are systemic throughout the Response. To attempt to bring some organization to the Response's numerous deficiencies, Methodist identifies some specific examples of these numerous issues below. They are only examples, however, as nearly every response in the government's 227-page filing contains one or more of these errors.[1]

---

[1] Methodist does not mean to suggest that these are the only deficiencies in the Response. As described in Section III, given the pervasiveness of the violations of Rule 56 and Local Rule 56.01, and the fact that, in many instances, numerous violations occur within each individual response, providing a full, item-by-item accounting of deficiencies would be unlikely to assist the Court. As such, Methodist has detailed a set of responses that most clearly and most repeatedly violate the Federal and Local Rules and therefore warrant the relief that Methodist seeks.

4

## A. Responses with No Supporting Citation to the Factual Record

In many responses, the government tries to dispute Methodist's statement of fact with argument instead of providing "specific citation to the record." L.R. 56.01(c)(3). (*E.g.*, Response ¶¶ 117, 179.)

| SUMF | Methodist Statement of Fact | Unsupported Government Response |
|---|---|---|
| ¶ 117 | West physicians worked with Methodist to reallocate resources, such as physical therapy, art therapy, psychology and nutrition resources, specific to oncology service line patients. (SUMF Ex. 2, Richey Decl. ¶ 12.) | There is no evidence as to which West physicians engaged in such conduct or what the reallocation of resources refers to, let alone when or how such alleged work was done. None of this demonstrates that it was work done under the MSA.<br><br>Even if West physicians performed some of the management services under the MSA, that does not mean that Methodist did not pay West for services that were not performed or for services that were performed by individuals that Methodist also paid for under the LEA. Further, whether Methodist paid remuneration to West under the MSA with an intent to induce referrals in violation of the AKS is a question for the jury to determine, and there is ample evidence for a jury to do so. |
| ¶ 179 | The West physicians' decisions were "based on where [they] could be assured that [their] patient got the best care," and as a result of the affiliation, West had more control over the quality of the services being provided at Methodist. (SUMF Ex. 55, Somer Dep. 235:12–20); (SUMF Ex. 54, Tauer Dep. 249:22–250:11); (SUMF Ex. 2, Richey Decl. ¶¶ 8, 17); (SUMF Ex. 1, Tillmanns Decl. ¶¶ 25–26); (SUMF Ex. 5, Berry Decl. ¶¶ 5, 7); (SUMF Ex. 4, Portnoy Decl. ¶ 18.) | As noted *supra*, there is sufficient evidence for a jury to conclude that Methodist's payments to West were made to induce referrals with the requisite intent. Although the medical judgment of the West physicians is not at issue in this case, but there is evidence that patients were referred to Methodist as a result of the affiliation. |

(*See also, e.g., id.* ¶¶ 122, 147, 151, 152, 179, 188, 209, 210.) Any response from the government that does not provide citation to record evidence should be struck, and those facts should be

5

deemed undisputed. *See* Fed. R. Civ. P. 56(e); *see also Artis*, 93 F. Supp. 3d at 869 ("Upon review of Artis's responses, the Court finds paragraphs 31, 37, 42, 53–54, and 58 of Defendant's SUMF undisputed, for the purposes of this motion, because he failed to provide record citations to support the disputed nature of these facts.") (citing Fed. R. Civ. P. 56(e)); *Vaden*, 2007 WL 954256, at *1 (granting motion to strike responses to a statement of undisputed material fact where the responding party failed to explain the basis for denying a fact and where responses lacked supporting record citations).

## B. Non-Responsive Facts and Arguments Unrelated to the Statement of Fact at Issue

Perhaps most pervasive is the government's strategy of "spinning" or raising non-responsive and irrelevant facts or arguments to "dispute" the fact at issue. For example, Methodist cites to the factual record to support the fact that "Methodist is a $2 billion healthcare system." (SUMF ¶ 7.) In response, the government interjects a non-responsive, unsupported, and irrelevant allegation that "[t]o the extent Methodist is a '$2 billion' not-for-profit business, then it is significant that . . . Methodist was not paying its employees a minimum wage of $15 per hour and had been suing its employees and under or uninsured patients." (Response ¶ 7.)

Similarly, Methodist provides evidentiary support to establish that it paid leased employees during the affiliation "on a pass-through basis, meaning West was not paid any additional fees above the salary and benefit amounts that went directly to these non-clinical employees." (SUMF ¶ 56.) In response, the government asserts in part that "Methodist appears to have paid for the holiday party for West and other random expenses that relate to personnel." (Response ¶ 56.)

In yet another example, Methodist provides sworn statements from physicians and executives who have practiced oncology in Memphis for years prior to 2012, testifying that because of a lack of integration during that time, patients often had to travel across the city to

6

receive treatment from different providers. (SUMF ¶ 2.) The government responds with the non-responsive and unsupported argument that "[t]here is no admissible evidence that cancer care in Memphis has become less integrated since 2012" and that West "relocated its principal place of business" in 2015, concluding, without citation to any record evidence: "Thus, there is less access to cancer care in Memphis following Methodist's transaction with West." (Response ¶ 2 (emphasis omitted)); (*see also id.* ¶¶ 142, 189.)

| SUMF | Methodist Statement of Fact | Non-Responsive Government Argument |
|---|---|---|
| ¶ 142 | ECG provided its original fair-market value opinion in 2011. (SUMF Ex. 21, 2011 ECG FMV.) | ECG provided to Jones Day a draft fair market value opinion, dated October 5, 2011, that purported to address terns of the proposed PSA. ECF No. 323-21. The United States disputes that this opinion is reliable. *See generally* ECF No. 328-1. |
| ¶ 189 | After the affiliation, West physicians have continued to refer patients to Methodist based on their professional judgment of their patients' best interests. (SUMF Ex. Berry Decl. ¶ 16); (Tillmanns Decl. ¶ 25); (Ballo Decl. ¶ 28); (Portnoy Decl. ¶ 19); (Richey Decl. ¶ 29); (Somer Dep. 234:4–24.) | West physicians may continue to refer patients to Methodist because of insurance requirements that necessitate that the patient be treated at Methodist or because it is the most convenient or closest hospital for the patient. ECF No. 323-11. The United States has never contended that West did not refer any patients to Methodist either before or after the affiliation, but that is not relevant to whether Methodist paid West remuneration with an intent to induce referrals in violation of the AKS. |

This tactic is especially acute in the government's response to a series of facts regarding West's management of Methodist's oncology service line. Because the government alleged that the Management Services Agreement ("MSA") was a sham, Methodist's SUMF includes numerous facts regarding the services performed by West and the positive impact on cancer care those services effected. (SUMF ¶¶ 106–131.) The government developed no proof calling into question the underlying services or the results obtained, so has instead argued that improved cancer care is not relevant. Yet, instead of acknowledging these facts as undisputed—as it must where it

7

can cite no proof to the contrary—the government still disputes paragraph after paragraph based solely on unsupported argument of counsel.

For example, citing to sworn testimony from West physician Dr. Michael Berry, Methodist asserted that "West physicians 'spent a significant amount of time' working to integrate the various providers and entities, including regularly providing input to Methodist regarding how the health system could better treat patients and develop a comprehensive service line." (SUMF ¶ 106.) The government responded by arguing that Dr. Berry does not reference specific West physicians, including Drs. Schwartzberg and Tauer, West did not keep documentation of work performed, and much of this work would have been done in connection with treating patients. (Response ¶ 106.) The government then argues that even if West physicians "performed some of the management services under the MSA," that still would not mean that Methodist did not pay West for other services not performed. (*Id.*) The government provides no factual citation for any of those claims, yet still asserts that Methodist's statement of fact is disputed. (*See also id.* ¶ 153.)

| SUMF | Methodist Statement of Fact | Non-Responsive Government Argument |
|---|---|---|
| ¶ 153 | The parties' affiliation improved cancer care. (SUMF Ex. 1, Tillmanns Decl. ¶¶ 25–27); (SUMF Ex. 4, Portnoy Decl. ¶ 18); (SUMF Ex. 2, Richey Decl. ¶ 8); (SUMF Ex. 3, Ballo Decl. ¶ 27.) | As the United States responded *supra*, there is no evidence in the record that the parties' affiliation broadly improved cancer care. Even if cancer care improved in the Memphis area during this time period, there are myriad factors that could have impacted cancer care, including breakthroughs in research, treatment options, and population makeup. To determine whether there are improvements in cancer care, there should be measured metrics, which Methodist does not point to in support of this generalized statement. Methodist's CHNAs, however, do not demonstrate that cancer care was improved. Sweet Decl., Exs.1 (2013 CHNA), 5 (2016 CHNA), and 6 (2019 CHNA). |

Responding to the SUMF with unsupported, argumentative, and even inflammatory statements that do not respond directly to the statement of fact asserted does not comport with Rule 56 or Local Rule 56.01. Such statements should be struck from the Response or disregarded, and those statements of fact by Methodist should be deemed undisputed for purposes of summary judgment. *See Vaden*, 2007 WL 954256, at \*1; *Blount v. D. Canale Beverages, Inc.*, 2003 WL 23412034, at \*1 (W.D. Tenn. Nov. 12, 2003) ("[A]ny of Blount's responses to D. Canale's Statement of Undisputed Material Facts that are incomplete or non-responsive to the actual undisputed fact alleged will be deemed undisputed for purposes of this motion.").

## C. Legal Arguments and Statements of the Law

Many of the government's responses contain legal arguments or statements of law, some of which include legal citation. (*See, e.g.*, Response ¶ 9.) Other responses refer generally to a separate motion that the government has filed and purport to "refer[] to and incorporate[] those arguments herein." (*Id.* ¶ 1.) "[T]o the extent that a statement is a statement of law, it simply *does not belong* in a statement of material facts." *McLemore*, 619 F. Supp. 3d at 821 (emphasis in original). That is true both for stand-alone statements of law and for legal arguments the government purports to incorporate into its Response. All such legal statements and arguments should be struck from the Response. *See Vaden*, 2007 WL 954256, at \*1.

| SUMF | Methodist Statement of Fact | Government Legal Argument |
|------|------------------------------|----------------------------|
| ¶ 9 | Before 2012, cancer care at Methodist lacked standardized order sets or protocols for tracking tumor types; patient-specific treatment plans; standardized discharge criteria; inpatient chemo order sets; end-of-life or palliative care tracking; dedicated oncology inpatient unit or tumor board for its Germantown Hospital; and sufficiently capable surgical oncologists. (SUMF Ex. 34, PwC | Even if Methodist had a purpose of entering into the affiliation with West to improve its ability to provide cancer care, that does not insulate it from liability if it also had a purpose of paying West kickbacks to induce West's referrals. "If the government proves that one of the purposes of the alleged payments was to induce referrals or for the arranging for referrals of Medicare patients, that is sufficient." *United States v. Davis*, Case No. 3:18-cr-00077 (M.D. Tenn. 2018) |

| | | Baseline Assessment at 16, 26); (SUMF Ex. 49, Deposition of Chris McLean Volume I ("McLean Dep. Vol. I") 146:4–148:4.) | (Campbell, J.), ECF No. 232 Trial Tr. 155:5-13. |
|---|---|---|---|
| ¶ 1 | | Prior to 2012, cancer care in Memphis was severely disjointed and suffered from a lack of collaboration between providers. (SUMF Ex. 1, Declaration of Todd Tillmanns, MD ("Tillmanns Decl.") ¶ 5); (SUMF Ex. 2, Declaration of Sylvia Richey, MD ("Richey Decl.") ¶ 7); (SUMF Ex. 3, Declaration of Matthew Ballo, MD ("Ballo Decl.") ¶ 7); (SUMF Ex. 4, Declaration of David Portnoy, MD "Portnoy Decl.") ¶ 6); (SUMF Ex. 5, Declaration of Michael Berry, MD ("Berry Decl.") ¶ 5); (SUMF Ex. 51, Deposition of Michael Ugwueke ("Ugwueke Dep.") 26:21–26:23); (SUMF Ex. 50, Deposition of Gary Shorb ("Shorb Dep.") 19:19–23); (SUMF Ex. 53, Deposition of Lee Schwartzberg ("Schwartzberg Dep.") 167:17–168:16.) | Whether Methodist may have entered into a relationship with West to improve cancer care does not detract from whether that relationship was in violation of the AKS. *SEES*, 570 F. Supp.3d at 578. The United States already has filed a motion to preclude Methodist from offering evidence of patient outcomes, which is *sub judice*. ECF No. 308. The United States refers to and incorporates those arguments herein. |

## D. Asserting Unsupported Conclusions, Characterization, or Narrative Statements

Many of the government's responses to Methodist's SUMF contain extended argument, characterization, and narrative statements by counsel that do not properly address Methodist's statement of fact and often are unsupported by specific citation to the factual record. For example, Methodist asserts that "[b]eyond the initial valuations, the parties also had the PSA and MSA revalued by independent third-party valuators throughout the course of the affiliation." (SUMF ¶ 76.) The government's response states that the fact is disputed and then provides *three pages* of argument, characterization, and additional purported facts, entire paragraphs of which contain no citation at all. (Response ¶ 76.)

10 10

| SUMF | Methodist Statement of Fact | Government Narrative |
|---|---|---|
| ¶ 76 | Beyond the initial valuations, the parties also had the PSA and MSA revalued by independent third-party valuators throughout the course of the affiliation. (E.g., SUMF Ex. 27, Email with Altegra FMV); (SUMF Ex. 28, 2016 Pinnacle FMV); (SUMF Ex. 30, 2017 Pinnacle FMV); (SUMF Ex. 22, 2016 ECG FMV); (SUMF Ex. 22, 2016 ECG Rad Onc FMV.) | The parties did not have the agreements "revalued" – let alone by "independent" valuators. Methodist and West obtained preliminary analyses and draft opinions from HAI and Altegra in 2014, and from Pinnacle in 2016 and 2017 that referenced the MSA. However, none of the valuators made any effort to determine whether West had been paid for performing services at all the locations under the MSA, and the valuators had no knowledge that Methodist was paying the salaries of many of the West employees who were seemingly doing management tasks, as they were leased to Methodist under the LEA.

In mid-2014, when West wanted to be paid more money, as Methodist was seeing more referrals and 340B Program savings than the parties had anticipated in 2011, Erich Mounce, wearing a dual hat as the CEO of West and an employee of Methodist, in opinion shopping to obtain the highest amount that Methodist could pay West under the MSA. Mr. Mounce initially sought an opinion from HAI, but HAI began to question West about the increase in revenues two years in and sought more specifics about the work performed and the new performance incentives. Mr. Mounce then engaged Altegra to provide another opinion. Altegra did not ask the same questions and came in about $1 million more than HAI's preliminary analysis. Methodist and West utilized the Altegra numbers for 2014 and 2015, and of course went with the highest end of the range in Altegra's opinion. Mr. Mounce advised the Operating Committee that the difference between HAI and Altegra was based on more having more significant performance incentives that West could earn. However, Altegra never set forth any detailed incentives, as reflected in its opinion. Rather, it was HAI that had been requesting more detailed metrics and would need those to provide a higher range of compensation, and absent that indicated it might lower the range in its preliminary |

| | | analysis. Sweet Decl., Ex. 34 (Ulery email to Mounce of 04/10/2014); Ex. 35 (Operations Committee Meeting Minutes of 06/04/2014); ECF No. 323-27. Of course, the higher the total range, the more West received automatically from Methodist, as 60% of the total was allocated for Base Management Services under the MSA, which Methodist paid West without any question, as discussed herein. |
|---|---|---|
| | | Further, the revenues that the valuators considered after the initial 2012 draft valuation HAI provided were based on information provided by Methodist, through Mr. Mounce and West CFO Ron Davis, another individual who fell under the LEA. These revenues included Methodist hospital locations such as Le Bonheur, which was expressly excluded from the MSA, as well as other locations that were never made a part of the MSA, such as the Olive Branch hospital and the Wolf River, as reflected for example on the first page of Pinnacle's 2016 valuation. ECF Nos. 323-12 and 323-28. These revenues were sent to the valuators because West expected to be paid on the basis of its referrals for both outpatient and inpatient services based on the revenues generated by West providers, as reflected in the materials that Methodist's leased employees provided to the valuators, which is discussed in more detail infra. Thus, the valuators essentially were determining how much West should be paid for managing its own patients, and the revenues were a significant factor, as reflected in each of the valuations. A jury can certainly conclude that there is ample evidence that the purported independent fair market value opinions for the MSA were manipulated with Methodist's knowledge in terms of the revenue provided to compensate West based on the volume or value of its referrals to Methodist. |

The response to this factual statement about obtaining revaluations contains argument ranging from the parties' finances to whether the valuators audited West's performance under the

MSA to the volume of West's referrals to management services performed under the MSA to payments made under the Leased Employee Agreement ("LEA")—nearly all of which is provided with no citation to any record evidence. (*Id.*) Such responses do not comport with Rule 56 or L.R. 56.01 and should be struck from the government's Response. *See Vaden,* 2007 WL 954256, at *1.

### E. Disputes Based on Lack of Specificity

The government disputes many of Methodist's facts because they are not "sufficiently specific." That a fact could have been stated in a different, arguably more specific way does not provide grounds for disputing an otherwise correct and properly supported fact. For example, the government disputes Methodist's statement that it "operated numerous acute care hospitals" because the word "'numerous' . . . is not accurate," and states that Methodist should have named each of the seven specific acute care facilities it operated. (Response ¶ 8.) The government also disputes Methodist's statement that the West practice included "nearly thirty doctors in various specialties" because it "lacks specificity," and states that Methodist should have stated that West had twenty-eight doctors, including "sixteen medical oncologists, four gynecological oncologists, four breast surgeons, and four radiologist/interventional radiologists." (*Id.* ¶ 13.)

Restating Methodist's otherwise correct facts with greater specificity does not create a *genuine* issue of material fact for purposes of summary judgment and frustrates the purpose of aiding the Court in determining what facts are truly disputed. Under that approach, Methodist could state that there are seven days in a week, and the government would dispute that fact if each day was not named individually. Attempting to dispute facts in this manner violates both the letter and intent of Rule 56 and L.R. 56.01, which are "designed to assist the court in identifying record evidence that establishes a genuine dispute of material fact." *Anderson*, 2014 WL 2207924, at *2.

### F. Objections that a Fact is Not Supported by *More* or *Different* Documentary Evidence

The government repeatedly disputes facts that are supported by sworn testimony because the fact is not *also* supported by a document produced in discovery. As the moving party, Methodist is not required to cite *every* piece of evidence produced in the case that supports a particular fact—just sufficient evidence to establish that fact. If the government contends that the fact is in dispute, it must provide its own citation to conflicting record evidence, but it consistently fails to do so in violation of the Federal and Local Rules. (*E.g.* Response ¶¶ 41, 51, 83.)

| SUMF | Methodist Statement of Fact | Government Sufficiency Arguments |
|---|---|---|
| ¶ 41 | Upon obtaining a fair market value range, the parties would negotiate payment amounts within that range, in reliance on the valuators' opinions. (SUMF Ex. 47, Mounce Dep. 443:15-24; 444:8-14; 605:24-606:9); (SUMF Ex. 50, Shorb Dep. 118:7-10, 131:25-1322); (SUMF Ex. 49, McLean Dep. Vol. I 264:15-17.) | [T]here is no evidence concerning any negotiations. There are no email communications that have been produced that show Methodist and West ever negotiated the amount of payment for base management services under the MSA or the total amount that could be attached for the performance incentive compensation. |
| ¶ 51 | Methodist engaged HORNE Healthcare Service to conduct a valuation of fixed assets, leasehold improvements, and inventory at the West locations to be converted to Cancer Center Sites. (SUMF Ex. 31, 2011 Horne FMV.) The parties agreed that Methodist would pay West—and indeed, Methodist did pay West—the amount Horne determined to be fair market value for those assets it valued. (SUMF Ex. 56, McLean Dep. Vol. II 147:17–21.) | The engagement letter is the best evidence of what Methodist engaged Horne to do, but Methodist does not refer to this document as the support for this statement. The United States objects to the support provided on the basis the best evidence for its terms. FED. R. EVID. 1002. |
| ¶ 83 | Drs. Schwartzberg and Tauer also attended Methodist's board meetings, Friday Strategy Meetings, and Kitchen Cabinet Meetings, among others. (SUMF Ex. 47, Mounce Dep. 448:8–22, 532:8–20); (SUMF Ex. 54, Tauer Dep. 43:9–44:10); (SUMF Ex. 53, Schwartzberg Dep. 184:23–185:24.) | Methodist did not present the best evidence of such attendance, which would be reflected in the meeting minutes for the duration of the entire seven years. |

The government cannot create a genuine dispute of fact by arguing that the fact could be supported by more or different evidence. Such responses should be struck from the government's Response or disregarded, and those facts in Methodist's SUMF should be deemed undisputed for purposes of summary judgment.

## G. Disputing and Re-Writing the Same Statement of Fact

The government consistently "disputes" Methodist's facts only to re-write them with the government's own language, characterizations, or argument. (*See e.g.,* Response ¶¶ 133, 138, 174, 211.)

| SUMF | Methodist Statement of Fact | Government Re-Statement |
|------|----------------------------|------------------------|
| ¶ 133 | In 2012 and in 2013, Methodist paid West Clinic less than $3,255,000 under the MSA. (SUMF Ex. 7, McLean Decl. ¶ 11.) | Methodist paid West $3,007,620 for the 2012 management fee, and $3,230,588 for the 2013 management fee. |
| ¶ 138 | In late 2017, Pinnacle Healthcare Consulting issued a fair-market value opinion of the services provided under the MSA, which provided a fair-market value range of up to $5,090,000. (SUMF Ex. 7, McLean Decl. ¶ 16); (SUMF Ex. 30, 2017 Pinnacle FMV.) | On September 13, 2017, Pinnacle provided a fair market value opinion that listed a range "from $3.68 million to $5.09 million per year." ECF No. 323-30. |
| ¶ 174 | Before the affiliation, many West physicians were already sending their patients to Methodist. (*See e.g.,* SUMF Ex. 4, Portnoy Decl. ¶ 19.) | Before the affiliation, West sent the majority of its patients who needed in-patient care to Baptist and was closely aligned with Baptist for pathology needs. ECF No. 323-34 at 24, 30. The United States does not contend that West did not send any patients to Methodist before the affiliation. |
| ¶ 211 | The government produced two expert witnesses, both whom expressly disclaimed that they were opining on the fair-market value of any alleged remuneration in the case. (SUMF Ex. 63, Smith Expert Dep. 56:17–25, 59:15–24); (SUMF Ex. 62, Expert Deposition of Lucy Carter ("Carter Expert Dep.") 51:5–9.) | For these reasons, the United States did not put forth any opinions on what the fair market value would be for the services under the various agreements. |

15

Clearly, no genuine dispute exists as to those facts. By consistently attempting to manufacture disputes where none exist, the government failed to respond to many of Methodist's facts in good faith and has wasted both the parties' and the Court's valuable time and resources in the process. All such manufactured disputes should be struck from the government's Response or disregarded, and the facts should be deemed undisputed.

## H. Unsupported Hearsay Objections

The government's Response raises more than 165 hearsay objections in response to the record cites that Methodist provides to support its SUMF. Those objections consistently are raised against sworn deposition or declaration testimony obtained from Methodist and third-party witnesses with personal knowledge of the facts on which they are testifying. The government's general approach appears to be that if it does not like or agree with a particular fact or piece of testimony, it objects to it as hearsay. (*See e.g.,* Response ¶¶ 10, 11, 14, 43, 53, 69, 84, 94.) For example, in SUMF ¶ 115, Methodist asserts that the management services provided by West physicians included dedicating significant time and attention to modernizing Methodist's facilities and equipment, including working with vendors, submitting plans for equipment, meeting with architects, and dealing with payors to obtain reimbursement for the use of advanced equipment. (SUMF ¶ 115.) As support, Methodist cited to sworn testimony from Drs. Ballo, Richey, Berry, and Tillmanns, who are all West physicians who testified to their personal involvement with improving Methodist's facilities and equipment. (*Id*.) The government provides no basis for its response that this is "inadmissible hearsay testimony." (Response ¶ 115.)

The government's numerous hearsay objections to sworn statements are unfounded, not made in good faith, and should be struck from the government's Response.

## III.    The Errors Permeate the Government's Response.

The examples provided herein are just that—examples. The government's violations of the Federal and Local Rules are so numerous that neither Methodist nor the Court should be required to scour the 227-page Response to identify each and every deficiency. Nearly every one of the government's responses contains some combination of the identified deficiencies.

Take SUMF ¶ 115 for example. As noted above, this paragraph provides that the West physicians dedicated significant time and attention to modernizing Methodist's facilities and equipment and lists several specific examples from sworn statements of West physicians. (SUMF ¶ 115.) In response, as it does more than 165 times, the government raises an unsupported objection that those sworn statements from West physicians constitute "inadmissible hearsay testimony." (Response ¶ 115.) The government also purports to dispute that fact because there is no other evidence "beyond those whose declarations were submitted" about the time and efforts devoted by West physicians to modernizing Methodist facilities. (*Id.*) The government then raises several other "facts" that are not responsive and do not dispute the fact stated in ¶ 115, including that the Cancer Council was not tasked with oversight of the MSA, that any work performed by the West physicians "continued to be for the benefit of West," and that West "engaged in conduct in furtherance of the Expansion Plan attached to the PSA." (*Id.*) In addition, the government provides its unsupported opinion about the credibility of the sworn testimony, saying "[i]t is doubtful that West physicians . . . engaged in conduct to improve physical space." (*Id.*) The government then provides its own conclusions and legal arguments, saying "[e]ven if West physicians performed some of the management services under the MSA, that does not mean that Methodist did not pay West for services that were not performed or for services that were performed by individuals that Methodist also paid for under the LEA. Further, whether Methodist paid remuneration to West

17

under the MSA with an intent to induce referrals in violation of the AKS is a question for the jury to determine, and there is ample evidence for a jury to do so." (*Id.*)

Thus, in response to **just one** fact supported by sworn testimony, the government offers unfounded evidentiary objections, statements of other "facts" not related to the fact at issue, unfounded characterization of the credibility of Methodist's cited evidence, and unsupported legal arguments and conclusions—all without citation to any admissible evidence that the West physicians did *not* dedicate significant time and attention to modernizing Methodist's facilities. As this Court said in *Anderson*, "Responses like this, which permeate [the plaintiff's] responsive submission, contain information that appears designed to distract from the core facts and issues in the case and do not further the responding party's case in any meaningful way." 2014 WL 2207924, at *1 n.3.

## CONCLUSION

The government's Response ignores its obligation under the Federal and Local Rules to admit the asserted fact, admit it for purposes of summary judgment only, or dispute it with citation to the record. Instead, it repeatedly attempts to obfuscate the asserted facts by interjecting argument, narrative, or unfounded objections to argue its own side of the case, to manufacture factual disputes where none exist, and to "spin" or downplay the effect that its admissions otherwise would have. This method of responding violates both the letter and intent of the Federal Rules and Local Rules and undermines the process intended to aid the Court in narrowing the issues and focusing its analysis. Allowing a party to respond to a SUMF in this fashion would establish a dangerous and almost unworkable precedent. Because the government has failed to comply with the Federal and Local Rules, the Court should strike or disregard the government's Response and deem Methodist's asserted facts undisputed for purposes of summary judgment.

Respectfully submitted,

*/s/ Brian D. Roark*
Brian D. Roark
J. Taylor Chenery
Taylor M. Sample
Hannah E. Webber
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone (615) 742-6200
Facsimile (615) 742-6293
broark@bassberry.com
tchenery@bassberry.com
taylor.sample@bassberry.com
hannah.webber@bassberry.com

Robert S. Salcido
(Admitted *Pro Hac Vice*)
Akin Gump Strauss Hauer & Feld LLP
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4095
rsalcido@akingump.com

*Attorneys for Defendants Methodist Le
Bonheur Healthcare and Methodist
Healthcare-Memphis Hospitals*

19

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been served on the following counsel via the Court's CM/ECF email notification system on this the 2nd day of June, 2023:

Bryan A. Vroon
Law Offices of Bryan A. Vroon, LLC
1766 West Paces Ferry Road
Atlanta, GA 30327
(404) 441-9806
bryanvroon@gmail.com

Jerry E. Martin
Seth Marcus Hyatt
Barrett Johnston Martin & Garrison, LLC
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
(615) 244-2202
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com

Edward D. Robertson, Jr.
Bartimus Frickleton Robertson Rader PC
109 B East High Street
Jefferson City, MO 65101
(573) 659-4454
crobertson@bflawfirm.com

Kara F. Sweet
Wynn M. Shuford
Ellen B. McIntyre
U.S. Attorney's Office
Middle District of Tennessee
719 Church Street
Suite 330
Nashville, TN 37203
(615) 401-6598
kara.sweet@usdoj.gov
wynn.shuford@usdoj.gov
ellen.bowden2@usdoj.gov

*/s/ Brian D. Roark*