IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* LIEBMAN, *et al.*, | Case No.: 3:17-cv-00902 |
| Plaintiff-Relators, | JUDGE CAMPBELL |
| v. | MAGISTRATE JUDGE HOLMES |
| METHODIST LE BONHEUR HEALTHCARE, *et al.*, | |
| Defendants. | |

**UNITED STATES' OPPOSITION TO
METHODIST'S MOTION FOR ATTORNEY'S FEES**

The United States respectfully opposes Methodist's motion for attorney's fees. ECF No. 340. The United States does not believe that it violated this Court's orders at the December 20, 2022 hearing and the subsequent January 4, 2023 written order by not performing certain searches for certain custodians that were demanded by Methodist after the entry of the orders. In addition, sanctions in the form of attorney's fees are not appropriate under Federal Rule of Civil Procedure 37(b)(2)(C), because the United States' position was substantially justified, and such an award would be unjust under the circumstances. Finally, Methodist has failed to meet its burden of showing that the attorney's fees claimed were caused by any alleged violation of a court order or that the fees reflect the prevailing market rate in this district.

**I.  The United States Acted in Good Faith and Did Not Violate Prior Orders**

When the United States stipulated that it would not rely upon Foley presentations, it believed in good faith that the stipulation would resolve the discovery dispute. The United States offered that stipulation promptly, the day after the Court's written order was entered, fully

1

expecting this would resolve the pending dispute based on express representations from Methodist's counsel at the December 2022 hearing. *See* ECF No. 299 at 56. Indeed, Methodist's counsel failed to respond to the United States' request for confirmation that the stipulation would resolve the dispute until *after* the United States had already stipulated. ECF Nos. 334-5, 371-1.

The United States was genuinely surprised when Methodist reversed course from its unambiguous statements at the December 2022 hearing that it would withdraw RFPs 26 and 27 if the United States was not going to rely upon presentations made by Foley. Nonetheless, when Methodist did reverse course, the United States made reasonable efforts to perform searches for documents based upon statements by Methodist, and its reasonable interpretation of the Court's December 20, 2022 and January 4, 2023 orders. At the December hearing, the Court stated: "This is going to be the court's ruling: that the government must search *the terms and custodians* based on discussions with West *regarding Foley presentations as described by Mr. Solinger today* and produce responsive documents." ECF No. 299 at 60:2-6 (emphasis added). In its January 4, 2023 written order, the Court ordered: [T]he United States must also provide supplemental responses to [Request] Nos. 26 and 27 to confirm it has produced all non-privileged documents responsive to *the narrowed requests as defined in open court*." ECF No. 300 at 8-9 (emphasis added). Accordingly, the Court ordered production *only* from the DOJ and HHS-OIG custodians mentioned by West's counsel, and thus it did *not* order the United States to produce documents from CMS or Medicare contractors.[1] Moreover, the Court did not order the United States on either December 20th or January 4th to utilize *any and all* search terms that Methodist would later propose.

---

[1] The Court's subsequent order signed on May 10, 2023 ordered the United States to perform searches as to CMS custodians. That order does not explicitly state that the United States must perform searches as to CMS contractors, but Methodist has since taken the position that the United States must perform such searches because the order did not expressly exclude contractors. ECF 371-2.

2

Rather, the Court only ordered production of documents "regarding Foley presentations." ECF No. 299 at 60:2-6. After entry of the January 4, 2023 order, Methodist indicated that it wanted more than the "narrowed requests" discussed at the December hearing, and the United States objected to Methodist's demands for additional searches beyond what the Court ordered. The United States respectfully submits that this *subsequent* disagreement between the United States and Methodist concerning the scope of potential searches does not indicate that the United States violated any *prior* Court orders. Simply put, the language of the Court's orders did not put the United States on notice that the Court expected the United States to produce documents from CMS and the Medicare contractors or use every search term – delimited from Foley and Blau – that Methodist would propose.

II. **Sanctions in the Form of Attorney's Fees Are Not Appropriate under Rule 37(B)(2)(C), Because the United States' Position Was Substantially Justified and Such a Sanction Would Be Unjust Under the Circumstances**

Rule 37(b)(2)(C) provides that a court must order a disobedient party to pay reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). A party's position is "substantially justified" if it raises an issue about which "there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Doe v. Lexington-Fayette Urb. Cnty. Gov't*, 407 F.3d 755, 766 (6th Cir. 2005) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988)). "Substantially justified" is "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 553. "Courts look to the background of objections to discovery requests, not simply the outcomes, to determine if the resistance to discovery is substantially justified." *Kenney v. Strauss Troy Co., LPA*, 2019 WL 13212433, at *4 (E.D. Ky. Oct. 31, 2019). "A position can be incorrect, but still substantially justified." *Id.*; *Ham*

3

*v. Marshall Cty., Ky.*, No. 2012 WL 4340655, at *1 (W.D. Ky. Sept. 21, 2012) (declining to award expenses for preparing motion to compel where defendants' "initial refusal to disclose the requested information appear[ed] grounded in a good faith belief they were legally entitled to do so under the Federal Rules"); *Villalona-Rodriguez v. United States*, 2019 WL 13218325, at *6 (W.D. Ky. Aug. 22, 2019) (finding conduct of party to be substantially justified under Rule 37 where it was "not completely without reason"); *Bisig v. Time Warner Cable, Inc,* 2015 WL 13950940, at *1 (W.D. Ky. Aug. 14, 2015) ("Thus, even if Time Warner's position was ultimately determined to be incorrect, it nonetheless would be considered to be substantially justified if a reasonable person would think it was correct, in that it has a reasonable basis in law and fact.") (citations omitted). While a finding of bad faith is not necessary to determine whether a party has failed to comply with a court order, it is relevant in assessing whether "circumstances make an award of expenses unjust" under Rule 37(b)(2)(C). *Second Ave Museum, LLC v. RDN Heritage, LLC*, 2022 WL 18639032, at *4 (M.D. Tenn. Mar. 3, 2022) (recognizing that "whether a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault" is relevant to whether to award fees pursuant to Rule 37) (citing *Doe*, 407 F.3d at 766); *Villalona-Rodriguez*, 2019 WL 13218325, at *6 (finding that award of attorney's fees would be unjust under the circumstances where party did not act in bad faith).

      Here, at a minimum, reasonable minds could differ as to the appropriateness of the United States' actions. Based on Methodist's counsel's unambiguous statements at the December hearing, the United States had a reasonable, good faith belief that entering a stipulation that it would not rely on any Foley presentations would resolve the dispute. Moreover, when Methodist unexpectedly went back on its unambiguous statements at the December hearing, the United States performed searches for documents based upon its reasonable interpretation of the Court's

4

December 2022 and January 2023 orders. As noted above, the Court stated in December that the United States "must search the terms and custodians based on discussions with West *regarding Foley presentations*." *Id.* at 60:7-11. The January order stated that the United States must "provide supplemental responses to [Request] Nos. 26 and 27 to confirm that it has produced all non-privileged documents responsive to the *narrowed requests as defined in open court*." ECF No. 300 at 8-9 (emphasis added).[2] During the meet and confer process,[3] the United States searched these seven DOJ and HHS-OIG custodians for presentations regarding the general physician-hospital alignment structure that Foley purportedly discussed.[4] *See* ECF No. 334-10. While Methodist argued after the hearing that the United States should perform searches beyond the "narrowed requests as defined in open court," the United States acted reasonably and in good faith by using search terms specifically targeted to search the custodians and documents relating to Foley presentations.

---

[2] The reference to "discussions with West" is based on a presentation that West gave to the United States prior to the United States moved to intervene in this action. The West presentation identified one slide that included pictures of certain personnel from DOJ and HHS who West claimed attended a conference with Mr. Blau. *See* ECF No. 371-4.

[3] Methodist wrongly implies that delays were caused by bringing the new Deputy Civil Chief up to speed. ECF No. 341 at 5. In fact, Ellen Bowden McIntyre was detailed to the Department of Justice for twelve months and only returned to the U.S. Attorney's Office in her new role as Deputy Civil Chief on February 27, 2023. She had a call with Methodist's counsel on approximately March 3, 2023 when she expressed her goal to resolve this discovery dispute and then met and conferred with Methodist counsel on March 8, 2023 – just seven business days after her return. Since Ms. McIntyre had a planned trip out of the country from March 10 through 16, 2023, she acted as quickly as she could to have DOJ and HHS-OIG conduct searches and produce documents by the March 24, 2023 date requested by Methodist's counsel. Far from being "contradictory" to the stipulation, ECF No. 337 at 10, these searches were part of the United States' "belt and suspenders" approach to comply with the Court's December 2022 and January 2023 orders.

[4] No truly relevant documents were found. The United States produced some emails that were at best *arguably* responsive, but were merely emails referencing *other* conferences that DOJ and HHS-OIG officials attended. *See* ECF No. 334-8.

Moreover, the United States was not unreasonable in refusing to accede to every one of Methodist's demands that the United States perform searches exactly as Methodist requested after the December and January orders. A reasonable person could find the United States' position on CMS and contractors was correct, because neither CMS nor its contractors have any enforcement, investigatory, or policy authority regarding the Anti-Kickback Statute, and there has been no way to identify what employees might have had communications about any presentation that involved the transaction structure that Foley discussed. *See* ECF Nos. 372, ¶¶ 4, 6, 11, 17; 372-1.

Moreover, the search terms that Methodist asked the United States to perform were incredibly overbroad, contained common words, and had no legitimate proximity limitations. These search terms were not actually logically tied to Methodist's proffered justifications for the United States to conduct additional searches for documents. Methodist argued at the December hearing that the reason it needed these searches to be performed was in case there were communications about presentations that Foley made regarding a specific type of transaction structure between cancer centers and hospitals. ECF No. 299 at 47:3-20. But the search terms Methodist proposed were much broader than that, seeking *any* presentations that discussed physician-hospital alignment generally, delimited from Foley. ECF No. 334-7.

In addition, the search terms themselves were overly broad, unfocused, and contained common words. For example, one of the search terms proposed by Methodist was: (LEA*) w/100 (presentation* or conference* or seminar* or meeting* or event*). ECF No. 334-7. The search term "LEA*" is called a wildcard search which will capture any word beginning with the letters "LEA"[5] within 100 words of "presentation" or "conference" or "seminar" or "event."

---

[5] https://support.dtsearch.com/webhelp/dtsearch/Wildcard.htm. DT Search is a search tool utilized in many types of e-discovery software, including Relativity.

6

Accordingly, application of this particular search term turned up items such as an email regarding a lunch meeting with someone named LeeAnn. ECF No. 377. Similarly, another search term that Methodist insisted that the United States use was: (APA*) w/100 (presentation* or conference* or seminar* or meeting* or event*)." Such a broad search term would pick up irrelevant items such as a meeting regarding an apartment, a conference about apathy in the workplace, or a seminar on apartheid. Likewise, another search term that Methodist proposed was "(MSA*) (presentation* or conference* or seminar* or meeting* or event*)." ECF No. 334-7 at 3. However, "MSA" is a more common abbreviation of other terms, such as Medicare Medical Savings Accounts. https://www.cms.gov/files/document/medicare-guide-medical-savings-account-plans.pdf. Thus, a reasonable person could find support for the United States' objections to such common terms.

### III. Methodist Has Failed to Meet Its Burden of Establishing Reasonable Attorney's Fees Caused by Any Alleged Failure to Obey a Discovery Order

Rule 37 provides for the payment of reasonable attorney's fees "caused by the failure" of a party to comply with a discovery order. Fed. R. Civ. P. 37(b)(2)(C). "The burden falls directly upon the party that seeks an award of attorney's fees to set forth adequate proof of the number of hours reasonably expended along with the reasonableness of the attorney fee rates claimed." *Bisig*, 2015 WL 13950940, at *3 (citing *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999). "While the district court may take into consideration an attorney's skill level in identifying the market rate, this Circuit holds that 'reasonable' fees need not be 'liberal' fees, and that '[s]uch fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region.'" *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 716 (6th Cir. 2016) (citation omitted). "Courts look to the 'prevailing market rate in the relevant community'— or 'that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record'— to determine a reasonable hourly billing rate." *McGruder*

*v. Metro. Gov't of Nashville & Davidson Cnty., TN,* 2022 WL 2975298, at *2 (M.D. Tenn. July 27, 2022) (quoting *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 899 (6th Cir. 2020)). Courts have "discretion to question the reasonable of an out of town attorney's billing rate if there is reason to believe that the services of equal quality were readily available at a lower charge or rate in the area where the services were to be rendered." *The Gathering Spot, LLC, v. The Gathering Spot at Burlington Village LLC,* 2023 WL 3612399, at *4 (E.D. Tenn. May 1, 2023), *report and recommendation adopted sub nom.*, 2023 WL 3611541 (E.D. Tenn. May 23, 2023).

Importantly, Rule 37(b)(2)(C) is not a general fee-shifting provision; rather, it only provides for recovery of reasonable attorney's fees "caused by the failure" of a party to obey a court order. Accordingly, "the first step" is "assess[ing] whether the fees requested relate to the conduct the Court found fell under Rule 37." *EPAC Techs., Inc. v. Harpercollins Christian Publ'g, Inc.*, 2022 WL 989103, at *5 (M.D. Tenn. Mar. 31, 2022) (Newbern, J.), *aff'd,* 2023 WL 2505905 (M.D. Tenn. Mar. 14, 2023) (citation omitted). "The 'key requirement for an award of attorney fees is that '[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.'" *EPAC Techs,* 2022 WL 989103, at *6 (quotation omitted).

When the Court entered its January 4, 2023 order, it did not require the United States to obey every single demand Methodist may make after that point. Yet, Methodist has made a motion for attorney's fees that is based on the premise that – because the United States did not accede to every demand Methodist made *after* the entry of the Court's orders – it violated those orders, and the United States is therefore liable for any fees that Methodist incurred afterwards. Thus, Methodist has not even attempted to limit its fees to those allegedly "caused" by the United States'

8

failure to abide by any order of the Court. For example, the United States informed Methodist on January 5, 2023, that it would not rely upon any Foley presentations in the litigation. ECF No. 334-5. Methodist did not respond to that until January 17, 2023. ECF No. 371-1. But Methodist seeks recovery of fees for its own internal discussions regarding the issue *before* it even informed the United States on January 17, 2023 that it was reversing course on the statements it made at the December 20, 2022 hearing. *See* ECF No. 340-1 at 7.

Moreover, Methodist has not limited the attorney's fees sought to the issues surrounding RFPs 26 and 27. Throughout January 2023, the United States and Methodist had discussions on several other discovery issues that were unrelated to RFPs 26 and 27. But Methodist still seeks recovery of fees that do not relate to those RFPs. For example, Methodist seeks recovery for fees incurred on January $11^{th} - 18^{th}$ and February 1st, 6th, 7th, 8th and 9th regarding the United States interrogatory responses and the scheduling of the United States' 30(b)(6) depositions on topics unrelated to RFPs 26 and 27. *See id*. at 7. Similarly, Methodist seeks recovery for fees incurred on March 8th and 9th related to the parties' conference on proposed search terms. While Methodist disagreed with the United States' position regarding proposed search terms, the fees incurred on those date were not "caused" by an alleged failure to comply with any order.

In addition, Methodist has failed to meet its burden of proving that the hours claimed for California-based attorney Robert Salcido were reasonable or that his claimed fees were caused by any alleged violation of a court order. Indeed, Methodist not only has not submitted excerpts from any Salcido invoices, but Methodist has not provided any information whatsoever as to the dates or tasks making up the basis for this claim, which falls far short of its burden. *EPAC Techs.,* 2022 WL 989103, at *6 (reduction of fees appropriate given inadequate descriptions of work performed) (citing *Howe v. City of Akron*, 705 Fed. App'x 376, 383 (6th Cir. 2017)).

9

Furthermore, Methodist has not met its burden of establishing that its fees represent the "prevailing market rate in the relevant community." *McGruder*, 2022 WL 2975298, at *2. Indeed, the carefully worded declarations Methodist submitted in support of its motion do not claim that the fees charged represent the prevailing market rate for this district. *See* ECF Nos. 340-1, 340-2, and 340-3. Recent decisions from courts in this district suggest that the rates charged are more than the prevailing market rate for this district. *Id.* (concluding that "$500 [per hour] is within the realm of what is ordinary and reasonable for experienced litigation counsel in this district"); *Southall v. USF Holland, Inc.*, 2023 WL 2668509, at *3 (M.D. Tenn. Mar. 28, 2023) ("Considering the prevailing hourly rate for attorneys of similar experience to [plaintiff's counsel] during the timeframe addressed by this fee award, the Court finds that an hourly rate of $500.00 is appropriate."); *Tennessee State Conf. of the N.A.A.C.P. v. Hargett*, No. 3:19-CV-00365, 2021 WL 4441262, at *9 (M.D. Tenn. Sept. 28, 2021), *aff'd sub nom. Tennessee State Conf. of NAACP v. Hargett*, 53 F.4th 406 (6th Cir. 2022) (reducing lodestar rate to $500 per hour).[6] Similarly, Methodist has not even tried to argue that Mr. Salcido's fees constitute the "prevailing market rate" in this district. *See The Gathering Spot*, 2023 WL 3612399, at *5 (finding no basis to depart from community market rate rule for out of state patent counsel).

For the above reasons, the United States respectfully asks the Court to deny Methodist's motion or, at a minimum, reduce any fee award.

---

[6] Courts in this district have also utilized the Clio Legal Trends Report (https://www.clio.com/wp-content/uploads/2022/09/2022-Legal-Trends-Report-16-02-23.pdf) to be informative as to the prevailing market rate in this district. *Howard v. Ellis Moving & Storage, LLC*, 2022 WL 1005304, at *4 (M.D. Tenn. Apr. 4, 2022).

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee

By: s/ Ellen Bowden McIntyre
THOMAS J. JAWORSKI
First Assistant United States Attorney
ELLEN BOWDEN MCINTYRE, B.P.R. #023133
SARAH K. BOGNI, B.P.R. #028326
ROBERT S. LEVINE
Assistant United States Attorneys
United States Attorney's Office
719 Church Street, Suite 3300
Nashville, TN 37203
thomas.jaworski2@usdoj.gov
ellen.bowden2@usdoj.gov
sarah.bogni@usdoj.gov
robert.levine@usdoj.gov

*Counsel for the United States*

# CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2023, a true and correct copy of the foregoing was served via email to the following:

| | |
|---|---|
| Bryan A. Vroon<br>Law Offices of Bryan A. Vroon, LLC<br>1380 West Paces Ferry Road, Suite 2270<br>Atlanta, GA 30327<br>Email: bryanvroon@gmail.com | Edward D. Robertson, Jr.<br>Bartimus, Frickleton & Robertson<br>715 Swifts Highway<br>Jefferson City, MO 65109<br>Email: crobertson@bflawfirm.com |
| Jerry E. Martin<br>David Rivera<br>Seth Marcus Hyatt<br>Barrett Johnston Martin & Garrison, LLC<br>414 Union Street, Suite 900<br>Nashville, TN 37219<br>Email: jmartin@barrettjohnston.com<br>Email: shyatt@barrettjohnston.com | Robert Salcido<br>(Admitted *Pro Hac Vice*)<br>Akin Grump Strauss Hauer & Feld LLP<br>2001 K Street, N.W.<br>Washington, D.C. 20006<br>Email: rsalcido@akingrump.com |
| Brian D. Roark<br>Anna M. Grizzle<br>J. Taylor Chenery<br>Taylor M. Sample<br>Hannah E. Webber<br>Bass, Berry & Sims PLC<br>150 Third Avenue South, Suite 2800<br>Nashville, TN 37201<br>Email: broark@bassberry.com<br>Email: agrizzle@bassberry.com<br>Email: tchenery@bassberry.com<br>Email: taylor.sample@bassberry.com<br>Email: hannah.webber@bassberry.com | Andrew F. Solinger, Esq.<br>HOLLAND & KNIGHT LLP<br>511 Union Street, Suite 2700<br>Nashville, TN 37219<br>Email: Andrew.solinger@hklaw.com |
| John-David H. Thomas, Esq.<br>Barnes & Thornburg, LLP<br>827 19th Avenue, Suite 930<br>Nashville, TN 37203<br>Email: jd.thomas@btlaw.com | |

s/ Ellen Bowden McIntyre
ELLEN BOWDEN MCINTYRE
Assistant United States Attorney