IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* LIEBMAN, *et al.*, | Case No.: 3:17-cv-00902 |
| Plaintiff-Relators, | JUDGE CAMPBELL |
| | MAGISTRATE JUDGE HOLMES |
| v. | |
| METHODIST LE BONHEUR HEALTHCARE, *et al.*, | |
| Defendants. | |

**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Methodist made a clear and unconditional offer to the United States to settle this case. The United States, just 15 days later, accepted Methodist's offer. That is an enforceable settlement agreement. Nonetheless, after the United States accepted the offer, Methodist attempted to attach conditions—conditions that the parties had contemplated would *not* be part of the agreement—to the already-accepted offer. For the reasons that follow, the United States moves the Court to enforce the settlement agreement.

### BACKGROUND

On April 11, 2022, the United States filed its complaint-in-intervention in this False Claims Act ("FCA") case. D.E. 235. On September 30, 2022, the parties engaged in an unsuccessful mediation, which was followed by further communications between the mediator Steve Altman and each side through December 2022 about a possible resolution to this suit. *See* D.E. 287-1; Ex. 2. Since Spring 2023, the undersigned Assistant U.S. Attorney and Methodist's counsel met or spoke intermittently about settling this lawsuit.

1

In approximately May 2023, Methodist's counsel also had a call with counsel for the United States Department of Health and Human Services ("HHS-OIG") about its administrative remedies, including the possibility of HHS-OIG imposing a Corporate Integrity Agreement ("CIA") on Methodist. HHS-OIG alone has legal authority to take administrative action against Methodist under 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities). In contrast, the FCA provides for treble damages and civil penalties as the only available relief to the Government under the FCA itself. 31 U.S.C. §3729(a)(1). Thus, this FCA suit necessarily seeks only monetary relief from Methodist—not injunctive or administrative relief. *See* D.E. 235, ¶ 1; Prayer for Relief.[1]

On August 29, 2023, Methodist, through counsel, extended a written settlement offer via email to the United States:

> Thank you for your email. Methodist previously offered to settle the case for $[REDACTED]. Methodist remains willing to settle for that amount. We understand that Relators' attorneys' fees are $[REDACTED]. Given those numbers, there is not going to be much movement on Methodist's part until the Court rules on the pending dispositive motion. If the government is not interested in settling in that range, we do not believe mediation would be a worthwhile effort at this time, unless there are additional facts and evidence the government believes we are missing in which case we are always open to additional dialogue—and, along those lines, please contact us if you ever want to discuss further because you believe we are missing an issue or fact. Those discussions are useful. And, as discussed before, we are open to hearing a substantial counter-offer from the government which might be fruitful in re-igniting discussions. But otherwise we are seeking to reasonably set expectations so that the parties do not waste additional expense and effort in this already six-year long investigation and litigation. We remain willing to engage in further direct discussions about resolution.

---

[1] When Relators receive a share of the proceeds from an FCA suit, they are also entitled to receive reasonable expenses plus attorneys' fees and costs. 31 U.S.C. §3730(d)(1). The FCA expressly affords a path for Relators to raise any fee disputes with the Court if they are not resolved in settlement agreements. *See id.*; *United States ex rel. Bryant v. Community Health Sys., Inc.*, 24 F.4th 1024, 1027 (6th Cir. 2022).

Ex. 1 at 1.[2]

Counsel for the United States then sought some clarification about the amount of the offer, noting that Relators' counsel had suggested the prior offer was somewhat higher. Ex. 2 at 1. And counsel for the United States stressed that Relators' attorney's fees were not, and could not be, a part of the settlement discussion between the United States and Methodist. *Id.*

Counsel for Methodist responded by agreeing that both the Relators' attorney's fees *and* any administrative consequences required by HHS-OIG were separate matters from the agreement with the United States to settle this case: "We recognize that the government does not negotiate relators' attorneys' fees. I wanted to inform you of the reasoning for Methodist's current offer, which must take into account all aspects of any settlement including relators' attorneys' fees and whether OIG would insist upon a CIA." *Id.* In other words, the fact that those matters were not resolved by a settlement with the United States was what drove the amount Methodist offered for settlement.

With that clarification made, the United States accepted without condition Methodist's still-outstanding offer on September 13, 2023. Ex. 1. But counsel for Methodist quickly sought to add in a new condition—that "there will be no CIA as part of the settlement." Ex. 3 at 3. Counsel for the United States noted in reply that the CIA had been explicitly contemplated *not* to be a part of the settlement, since it was entirely up to HHS-OIG and had not been part of the negotiations or the offer the United States had already accepted. *Id.* at 2. Counsel for Methodist reiterated that Methodist "will need to hear that there will be no CIA." *Id*. And days later he added *another* new (and previously disclaimed) condition to Methodist's already-accepted offer: that the amount of

---

[2] Several courts have recognized that Federal Rule of Evidence 408 is no barrier to admissibility in relation to enforcement of a settlement agreement. *See, e.g., David v. En Pointe Prods., LLC*, No. 122CV287RDAIDD, 2023 WL 5867424, at *5 (E.D. Va. Sept. 11, 2023).

Relators' attorney's fees needed to be resolved first. *Id.* at 1. Two weeks later, on September 27, 2023, Methodist added *yet another* belated condition: that HHS-OIG assure Methodist that it does not intend to impose any further administrative actions, including "adding Methodist to the Heightened Scrutiny list." Ex. 4.

Since then, Methodist has continued to refuse to honor the settlement agreement. The United States now brings this matter to the Court's attention, so that it may enforce the binding agreement between the United States and Methodist.

**LEGAL STANDARD**

District courts have inherent authority to enforce settlement agreements. *Bamerliease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992); *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988). The court can exercise this power even if the agreement has not been reduced to writing, *Bowater N. Am. Corp. v. Murray Mach.*, 773 F.2d 71, 77 (6th Cir. 1985), but the court must conclude that agreement has been reached on all material terms, *Brock*, 841 F.2d at 154; *see also Quint v. A.E. Staley Mfg. Co.*, 246 F.3d 11, 15 (1st Cir. 2001) (enforcing oral settlement under federal common law). "Settlement agreements should . . . be upheld whenever equitable and policy considerations so permit." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 172 (6th Cir. 1976).

Because a settlement agreement is a type of contract, its enforceability would typically be governed by state contract law. *Cuyahoga Valley Ry. Co. v. U.S. Bank Trust Nat'l Ass'n*, 515 F. App'x 494, 498 (6th Cir. 2013). But here, federal common law controls, because "obligations to and rights of the United States under its contracts are governed exclusively by federal law."[3] *Boyle*

---

[3] Several courts have recognized as much when considering a settlement agreement involving the United States, *e.g.*, *E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177, 192-93 (3d Cir. 2020); *N. E. Med. Servs., Inc. v. California Dep't of Health Care Servs.*, 710 F. App'x

4

*v. United Techs. Corp.*, 487 U.S. 500, 504 (1988). That said, "the federal common law incorporates the common-sense canons of contract interpretation," *Commonwealth Sch., Inc. v. Commonwealth Acad. Holdings LLC*, 994 F.3d 77, 87 (1st Cir. 2021), and so federal courts applying common law frequently "draw upon state law principles," although "state law is not controlling authority," *Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 615 (6th Cir. 2002).

**ARGUMENT**

This is a simple case of offer and acceptance. Methodist extended an offer to settle the case that was not conditioned on the lack of a CIA or the amount of Relators' attorney's fees. Indeed, those matters were contemplated *not* to be part of the agreement. The United States accepted this offer without reservation. At that point, the contract was formed and became binding on Methodist. The Court should enforce it.

"[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." Restatement (Second) of Contracts § 17 (1981); *see U.S. ex rel. Ubl v. IIF Data Sols.*, 650 F.3d 445, 451 (4th Cir. 2011) (noting, in a case about enforcement of an FCA settlement, that "[w]hen applying federal common law to contract issues, courts generally look to the Restatement for guidance"). Under the Restatement, "[t]he manifestation of mutual assent to an exchange ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties." Restatement (Second) of Contracts § 22. "An offer is the manifestation of willingness to enter into a bargain, so made as to

---

737, 739 (9th Cir. 2017) (recognizing as much in a False Claims Act settlement case); *United States v. Segal*, 938 F.3d 898, 904 n.3 (7th Cir. 2019), though some courts have seemingly held otherwise, *e.g.*, *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000). Regardless, even if the Court applies state law, Tennessee courts also enforce settlement agreements, *Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012), and they similarly rely on established principles of offer and acceptance, *Moody Realty Co., Inc. v. Huestis*, 237 S.W.3d 666, 675 n.8 (Tenn. Ct. App. 2007).

5

justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id.* § 24. "Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." *Id.* § 50.

This case is straightforward. Methodist made a clear offer: "Methodist previously offered to settle the case for $[REDACTED]. Methodist remains willing to settle for that amount." Ex. 1. In further discussion, Methodist referred to this offer as its "current offer." Ex. 2 at 1. And Methodist plainly contemplated that this was an acceptable offer, since Methodist also invited "a substantial *counter*-offer from the government." Ex. 1 at 1 (emphasis added). But the United States did not counter. Instead, the United States unconditionally accepted Methodist's "current offer": "I am authorized to accept Methodist's settlement offer of $[REDACTED] to settle the case as listed below." *Id.* This was a classic offer and acceptance, which makes a binding settlement agreement. *See Ingram v. ADT, LLC*, No. 3:20-CV-376-HBG, 2021 WL 6137264, at *5 (E.D. Tenn. Dec. 29, 2021) (enforcing e-mail agreement with this acceptance: "I accept your offer of $(REDACTED). I will also sign the short release. What are the next steps?"), *appeal dismissed*, No. 22-5042, 2022 WL 1160623 (6th Cir. Feb. 24, 2022). Thus, Methodist and the United States came to a clear meeting of the minds on the only material terms of the agreement: whether the United States would settle the FCA case, i.e., release Methodist from liability for the FCA allegations in the complaint, and for how much.

But after the contract was formed, Methodist rushed to add conditions it had not held out during negotiations. This it cannot do. "[A] prior meeting of the minds is not undone by the decision of one party to back out of the last version, even if it is the most formal version, of a settlement agreement." *Remark, LLC v. Adell Broad. Corp.*, 702 F.3d 280, 283 (6th Cir. 2012); *see also, e.g.*, *Cyrus v. Univ. of Toledo*, No. 20-3913, 2022 WL 985819, at *6 (6th Cir. Apr. 1,

6

2022) ("That OOD is unhappy with the fruits of those subsequent discussions cannot be used as a basis to rescind a valid settlement agreement."). And that holds true where a party tries to back out of a settlement agreement by adding a condition *after* the agreement was reached. *See Remark, LLC*, 702 F.3d at 284 (enforcing a settlement agreement where the defendant did not reserve the right to pull out before the final agreement was signed); *Ingram*, 2021 WL 6137264, at *5 (concluding that a confidentiality provision never discussed during negotiations was not an essential term when it was later broached); *Burgess v. Bank of Am., N.A.*, No. 3:09-00737, 2009 WL 4067844, at *2 (M.D. Tenn. Nov. 23, 2009) (granting motion to enforce settlement agreement where, one hour after the agreement was reached, the plaintiff decided to "up the ante" after doing further research); *Grace v. Grace*, No. W2016-00650-COA-R3-CV, 2016 WL 6958887, at *4 (Tenn. Ct. App. Nov. 29, 2016) (enforcing a settlement agreement over the defendant's argument that she made a "counter offer" by allegedly "conditioning" acceptance on dismissal with prejudice).

Moreover, "[c]onditions precedent are disfavored absent unambiguous language." *N. E. Med. Servs., Inc. v. California Dep't of Health Care Servs.*, 710 F. App'x 737, 739 (9th Cir. 2017) (applying federal contract law to a FCA settlement (citing *United States v. Schaeffer*, 319 F.2d 907, 911 (9th Cir. 1963)); *see also Renasant Bank v. Ericson*, No. 3:10-CV-0302, 2012 WL 640659, at *12 (M.D. Tenn. Feb. 27, 2012) ("Contract law disfavors condition precedents.") (citing *Koch v. Constr. Tech., Inc.*, 924 S.W.2d 68, 71 (Tenn. 1996)). Methodist's offer here did not contain any unambiguous language establishing that Methodist's belated terms—a commitment from HHS-OIG not to impose a CIA or put Methodist on a list and an agreement on Relators' attorney's fees—were conditions precedent to the settlement. Methodist's offer was not conditioned at all, let alone on the lack of administrative action or the amount of Relators' fees.

7

Ex. 1. One would expect that if there had been some additional term or condition in need of resolution, Methodist's experienced FCA counsel here would have mentioned it when he extended the offer. *See United States v. Sforza*, 326 F.3d 107, 116 (2d Cir. 2003) (rejecting defendant's claim that a government release from criminal liability was a condition of the settlement where the sole condition was sign-off of the civil division chief); *compare N. E. Med. Servs.*, 710 F. App'x at 739-40 (where parties agreed that waiver of HHS-OIG's administrative remedies was expressly made a condition precedent to settlement); *United States ex rel. Allen v. Alere Home Monitoring*, Inc., 355 F. Supp. 3d 18, 26 (D. Mass. 2019) (refusing to enforce a settlement because the defendant "objectively manifested its position that a full release from the government for Tambra's individual officers was a condition precedent to the company's desire to settle").

Not only did Methodist not make any condition on acceptance of its offer, but the parties also explicitly discussed these issues *not* being part of the agreement at all. As counsel for Methodist made clear, the fact that these matters were outside the scope of the agreement was why Methodist offered the amount that it did. Ex. 2 (noting that the "current offer" "must account for" these unresolved matters). That is, Methodist could only agree to pay so much since its agreement with the United States would not be resolving these other issues.

And that is fully consistent with the legal framework under which the parties were operating. The administrative remedies, such as a CIA or listing on the Heightened Scrutiny list, that Methodist is now seeking to avoid are fully and solely within the discretion of OIG; they are not part of this FCA case, which seeks only monetary relief, and the Department of Justice, through the United States Attorney, cannot bind HHS-OIG's separate administrative process. *See supra* at 2. The same is true with Relator's attorney's fees. As Methodist's counsel acknowledged during negotiations, "the government does not negotiate relators' attorneys' fees." Ex. 2 at 1. Where, as

8

here, the United States has intervened in a *qui tam*, the United States has "the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action." 31 U.S.C. § 3730(c)(1). Further, the "Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." *Id*. § 3730(c)(2)(B). The United States clearly has the right to settle this litigation absent any fee agreement between Methodist and Relators.

In this case, there was an offer, and there was an acceptance, which created a binding settlement agreement. The United States respectfully requests that the Court enforce it.

## CONCLUSION

For the above reasons, the United States' motion to enforce the settlement agreement should be granted and an appropriate order should enter.

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee

By: s/ Ellen Bowden McIntyre
THOMAS J. JAWORSKI
First Assistant United States Attorney
ELLEN BOWDEN MCINTYRE, BPR #023133
SARAH K. BOGNI, B.P.R. #028326
ROBERT S. LEVINE
Assistant United States Attorneys
United States Attorney's Office
719 Church Street, Suite 3300
Nashville, TN 37203
Email: thomas.jaworski2@usdoj.gov
Email: ellen.bowden2@usdoj.gov
Email: sarah.bogni@usdoj.gov
Email: robert.levine@usdoj.gov

*Counsel for the United States*

9

# CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2023, a true and correct copy of the foregoing was served via email to the following:

| | |
|---|---|
| Bryan A. Vroon<br>Law Offices of Bryan A. Vroon, LLC<br>1380 West Paces Ferry Road, Suite 2270<br>Atlanta, GA 30327<br>Email: bryanvroon@gmail.com | Edward D. Robertson, Jr.<br>Bartimus, Frickleton & Robertson<br>715 Swifts Highway<br>Jefferson City, MO 65109<br>Email: crobertson@bflawfirm.com |
| Jerry E. Martin<br>David Rivera<br>Seth Marcus Hyatt<br>Barrett Johnston Martin & Garrison, PLLC<br>200 31st Ave. North<br>Nashville, TN 37203<br>Email: jmartin@barrettjohnston.com<br>Email: shyatt@barrettjohnston.com<br>Email: drivera@barrettjohnston.com | Robert Salcido<br>(Admitted *Pro Hac Vice*)<br>Akin Grump Strauss Hauer & Feld LLP<br>2001 K Street, N.W.<br>Washington, D.C. 20006<br>Email: rsalcido@akingrump.com |
| Brian D. Roark<br>Anna M. Grizzle<br>J. Taylor Chenery<br>Taylor M. Sample<br>Hannah E. Webber<br>Bass, Berry & Sims PLC<br>150 Third Avenue South, Suite 2800<br>Nashville, TN 37201<br>Email: broark@bassberry.com<br>Email: agrizzle@bassberry.com<br>Email: tchenery@bassberry.com<br>Email: taylor.sample@bassberry.com<br>Email: hannah.webber@bassberry.com | Andrew F. Solinger, Esq.<br>HOLLAND & KNIGHT LLP<br>511 Union Street, Suite 2700<br>Nashville, TN 37219<br>Email: Andrew.solinger@hklaw.com |
| John-David H. Thomas, Esq.<br>Barnes & Thornburg, LLP<br>827 19th Avenue, Suite 930<br>Nashville, TN 37203<br>Email: jd.thomas@btlaw.com | |

s/ Ellen Bowden McIntyre
ELLEN BOWDEN MCINTYRE
Assistant United States Attorney